**E-FILED**
Wednesday, 09 December, 2015  04:58:44 PM
Clerk, U.S. District Court, ILCD
36,38,APPEAL,REFER,STAYED

SHORT RECORD
NO. 15-3738
FILED 12/9/15

# U.S. District Court
## CENTRAL DISTRICT OF ILLINOIS (Springfield)
## CIVIL DOCKET FOR CASE #: 3:14−cv−03320−SEM−TSH

| | |
|---|---|
| Culp et al v. Madigan et al | Date Filed: 10/22/2014 |
| Assigned to: Judge Sue E. Myerscough | Jury Demand: None |
| Referred to: Magistrate Judge Tom Schanzle−Haskins | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**Plaintiff**

**Kevin W. Culp**    represented by    **David G Sigale**
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road
Suite 207
Glen Ellyn, IL 60137
630−452−4547
Fax: 630−596−4445
Email: dsigale@sigalelaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Marlow Davis**    represented by    **David G Sigale**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Freddie Reed−Davis**    represented by    **David G Sigale**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Douglas W. Zylstra**    represented by    **David G Sigale**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**John S. Koller**    represented by    **David G Sigale**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Steve Stevenson**    represented by    **David G Sigale**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

Paul Heslin                              represented by   **David G Sigale**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Marlin Mangels**                       represented by   **David G Sigale**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Gus C Browne, II**                     represented by   **David G Sigale**
*TERMINATED: 09/14/2015*                                  (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Jeanelle Westrom**                     represented by   **David G Sigale**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Second Amendment Foundation, Inc.**    represented by   **David G Sigale**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Illinois Carry**                       represented by   **David G Sigale**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**Illinois State Rifle Association**     represented by   **David G Sigale**
                                                          (See above for address)
                                                          *ATTORNEY TO BE NOTICED*

V.

<u>Defendant</u>

**Lisa Madigan**                         represented by   **Joshua D Ratz**
*In her Official Capacity as Attorney*                    ILLINOIS ATTORNEY GENERAL
*General of the State of Illinois*                        500 S Second St
                                                          Springfield, IL 62706
                                                          217−782−9094
                                                          Fax: 217−524−5091
                                                          Email: jratz@atg.state.il.us
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Hiram Grau**                                              represented by  **Joshua D Ratz**
*In his Official Capacity as Director of the*                                 (See above for address)
*Illinois State Police*                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**Jessica Trame**                                          represented by  **Joshua D Ratz**
*as Bureau Chief of the Illinois State*                                       (See above for address)
*Police Firearms Services Bureau*                                             *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 10/22/2014 | 1 | | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0753−1935460.), filed by Second Amendment Foundation, Inc., Paul Heslin, Marlow Davis, Kevin W. Culp, Illinois State Rifle Association, Steve Stevenson, Freddie Reed−Davis, Gus C. Browne, Illinois Carry, Marlin Mangels, Douglas W. Zylstra, Jeanelle Westrom, John S. Koller.(Sigale, David) (Entered: 10/22/2014) |
| 10/22/2014 | 2 | | NOTICE *(Civil Cover Sheet)* re 1 Complaint, (Sigale, David) (Entered: 10/22/2014) |
| 10/23/2014 | 3 | | NOTICE *F.R.Civ.P. 7.1 Corporate Disclosure Statement (SAF)* (Sigale, David) (Entered: 10/23/2014) |
| 10/23/2014 | 4 | | NOTICE *F.R.Civ.P. 7.1 Corporate Disclosure Statement (IL Carry)* (Sigale, David) (Entered: 10/23/2014) |
| 10/23/2014 | 5 | | NOTICE *F.R.Civ.P. 7.1 Corporate Disclosure Statement (ISRA)* (Sigale, David) (Entered: 10/23/2014) |
| 10/24/2014 | 6 | | Summons Issued as to Hiram Grau, Lisa Madigan, and Jessica Trame. Originals returned to Attorney David G. Sigale for service. (GL, ilcd) (Entered: 10/24/2014) |
| 11/22/2014 | 7 | | Return of Service Executed by Second Amendment Foundation, Inc., Paul Heslin, Marlow Davis, Kevin W. Culp, Illinois State Rifle Association, Steve Stevenson, Freddie Reed−Davis, Gus C Browne, II, Illinois Carry, Marlin Mangels, Douglas W. Zylstra, Jeanelle Westrom, John S. Koller as to Lisa Madigan 10/31/2014. (Sigale, David) (Entered: 11/22/2014) |
| 11/22/2014 | 8 | | SUMMONS Returned Executed by Second Amendment Foundation, Inc., Paul Heslin, Marlow Davis, Kevin W. Culp, Illinois State Rifle Association, Steve Stevenson, Freddie Reed−Davis, Gus C Browne, II, Illinois Carry, Marlin Mangels, Douglas W. Zylstra, Jeanelle Westrom, John S. Koller. Hiram Grau served on 10/30/2014, answer due 11/20/2014., Return of Service Executed by Second Amendment Foundation, Inc.; Paul Heslin; Marlow Davis; Kevin W. Culp; Illinois State Rifle Association; Steve Stevenson; Freddie Reed−Davis; Gus C Browne, II; Illinois Carry; Marlin Mangels; Douglas W. Zylstra; Jeanelle Westrom; John S. Koller as to Hiram Grau 10/30/2014. (Sigale, David) (Entered: 11/22/2014) |
| 11/22/2014 | 9 | | SUMMONS Returned Executed by Second Amendment Foundation, Inc., Paul Heslin, Marlow Davis, Kevin W. Culp, Illinois State Rifle Association, Steve Stevenson, Freddie Reed−Davis, Gus C Browne, II, Illinois Carry, |

| | | Marlin Mangels, Douglas W. Zylstra, Jeanelle Westrom, John S. Koller. (Sigale, David) (Entered: 11/22/2014) |
|---|---|---|
| 11/22/2014 | 10 | Return of Service Executed by Second Amendment Foundation, Inc., Paul Heslin, Marlow Davis, Kevin W. Culp, Illinois State Rifle Association, Steve Stevenson, Freddie Reed−Davis, Gus C Browne, II, Illinois Carry, Marlin Mangels, Douglas W. Zylstra, Jeanelle Westrom, John S. Koller as to Jessica Trame 10/30/2014., SUMMONS Returned Executed by Second Amendment Foundation, Inc.; Paul Heslin; Marlow Davis; Kevin W. Culp; Illinois State Rifle Association; Steve Stevenson; Freddie Reed−Davis; Gus C Browne, II; Illinois Carry; Marlin Mangels; Douglas W. Zylstra; Jeanelle Westrom; John S. Koller. Jessica Trame served on 10/30/2014. (Sigale, David) (Entered: 11/22/2014) |
| 12/29/2014 | 11 | MOTION for Extension of Time to File by Defendants Hiram Grau, Jessica Trame. Responses due by 1/15/2015 (Ratz, Joshua) (Entered: 12/29/2014) |
| 12/29/2014 | | TEXT ORDER by Magistrate Judge Tom Schanzle−Haskins. Defendants' Motion for Extension of Time 11 is ALLOWED. Defendants granted extension to 1/28/2015 to answer or otherwise plead. (LB, ilcd) (Entered: 12/29/2014) |
| 01/28/2015 | 12 | MOTION for Extension of Time to File by Defendant Hiram Grau. Responses due by 2/17/2015 (Ratz, Joshua) (Entered: 01/28/2015) |
| 01/29/2015 | | TEXT ORDER by U.S. Magistrate Judge Tom Schanzle−Haskins. Unopposed Second Motion for Extension of Time 12 ALLOWED. Extension granted to 2/11/2015 for Defendants to answer or otherwise plead. (LB, ilcd) (Entered: 01/29/2015) |
| 02/11/2015 | 13 | ANSWER to 1 Complaint, by Hiram Grau, Lisa Madigan, Jessica Trame.(Ratz, Joshua) (Entered: 02/11/2015) |
| 02/13/2015 | | NOTICE OF HEARING: Rule 16 Scheduling Conference set Thursday, 3/26/2015, at 11:00 AM by telephone (court will place call) before U.S. Magistrate Judge Tom Schanzle−Haskins. Attorneys are directed to comply with Federal Rule of Civil Procedure 26(f) by meeting as soon as practicable, and in any event at least fourteen (14) days prior to the scheduling conference, and are to submit a proposed discovery plan in writing to the Court on or before 3/24/2015. Such a plan must include, at a minimum, those items listed in CDIL−LR 26.2(3), Rule 16(b), Rule 26(f), and CDIL−LR 16.2(E) with proposed deadlines. The parties are directed to specifically address the provisions, if any, for discovery or disclosure of electronically stored information, and to discuss agreements, if any, the parties reach for asserting claims of privilege or of protection as trial preparation material, after inadvertent production. Any plan filed shall specifically address the need, or lack thereof, concerning discovery of electronically stored information. If a discovery plan is not submitted as required, the scheduling hearing will not be held and costs may be assessed. Lead counsel or other counsel of record with knowledge of the case should be available to participate in the Rule 16 scheduling hearing. (LB, ilcd) (Entered: 02/13/2015) |
| 03/24/2015 | 14 | STATUS REPORT *(Joint)* by Gus C Browne, II, Kevin W. Culp, Marlow Davis, Paul Heslin, Illinois Carry, Illinois State Rifle Association, John S. Koller, Marlin Mangels, Freddie Reed−Davis, Second Amendment |

| | | |
|---|---|---|
| | | Foundation, Inc., Steve Stevenson, Jeanelle Westrom, Douglas W. Zylstra. (Sigale, David) (Entered: 03/24/2015) |
| 03/26/2015 | 15 | MINUTE ENTRY for proceedings held before U.S. Magistrate Judge Tom Schanzle−Haskins. Rule 16 Scheduling Conference held by telephone on 3/26/2015 with counsel for Plaintiffs, David G. Sigale, and counsel for Defendants, Joshua D. Ratz. Written Scheduling Order to follow. Parties are reminded of their option to consent to proceed before U.S. Magistrate Judge. See attached form. (LB, ilcd) (Entered: 03/26/2015) |
| 03/26/2015 | 16 | SCHEDULING ORDER entered by U.S. Magistrate Judge Tom Schanzle−Haskins. TIME LIMITS AND SETTINGS ARE ORDERED AS FOLLOWS: Initial Disclosures due by 4/16/2015; Amended Pleadings / Joinder of Parties due by 4/27/2015; Fact Discovery due by 6/24/2015; Plaintiff`s Expert Disclosure due by 7/24/2015; Defendant`s Expert Disclosure due by 9/22/2015; Expert Discovery due by 10/22/2015; Dispositive Motions due by 11/23/2015. Final Pretrial Conference set 2/29/2016 at 2:00 PM in Courtroom 1 in Springfield before U.S. District Judge Sue E. Myerscough. Bench Trial set 3/15/2016 at 9:00 AM before Judge Myerscough. Telephonic Status Conference set Monday, 10/26/2015, at 2:00 PM (court will place call) before U.S. Magistrate Judge Tom Schanzle−Haskins. See written order. (Attachments: # 1 Mediation Memo, # 2 Courtroom Technology Brochure) (LB, ilcd) (Entered: 03/27/2015) |
| 08/05/2015 | 17 | MOTION for Preliminary Injunction by Plaintiffs Kevin W. Culp, Marlow Davis, Paul Heslin, Illinois Carry, Illinois State Rifle Association, John S. Koller, Marlin Mangels, Freddie Reed−Davis, Second Amendment Foundation, Inc., Steve Stevenson, Jeanelle Westrom, Douglas W. Zylstra. Responses due by 8/24/2015 (Sigale, David) (Entered: 08/05/2015) |
| 08/05/2015 | 18 | MEMORANDUM in Support re 17 MOTION for Preliminary Injunction filed by Plaintiffs Kevin W. Culp, Marlow Davis, Paul Heslin, Illinois Carry, Illinois State Rifle Association, John S. Koller, Marlin Mangels, Freddie Reed−Davis, Second Amendment Foundation, Inc., Steve Stevenson, Jeanelle Westrom, Douglas W. Zylstra. (Attachments: # 1 Exhibit Declaration of Steven Stevenson, # 2 Exhibit Declaration of Julianne Versnel, # 3 Exhibit Declaration of Paul Heslin, # 4 Exhibit Declaration of Marlin Mangels, # 5 Exhibit Declaration of Tim Bowyer)(Sigale, David) (Entered: 08/05/2015) |
| 08/06/2015 | 19 | Exhibit re 18 Memorandum in Support of Motion,, *Declaration of Kevin W. Culp* by Kevin W. Culp, Marlow Davis, Paul Heslin, Illinois Carry, Illinois State Rifle Association, John S. Koller, Marlin Mangels, Freddie Reed−Davis, Second Amendment Foundation, Inc., Steve Stevenson, Jeanelle Westrom, Douglas W. Zylstra. (Attachments: # 1 Exhibit Declaration of Marlow Davis, # 2 Exhibit Declaration of Freddie Reed−Davis, # 3 Exhibit Declaration of Douglas W. Zylstra, # 4 Exhibit Declaration of John S. Koller)(Sigale, David) (Entered: 08/06/2015) |
| 08/07/2015 | 20 | MEMORANDUM in Support re 17 MOTION for Preliminary Injunction *(Corrected for pagination and unintended typographical error)* filed by Plaintiffs Kevin W. Culp, Marlow Davis, Paul Heslin, Illinois Carry, Illinois State Rifle Association, John S. Koller, Marlin Mangels, Freddie Reed−Davis, Second Amendment Foundation, Inc., Steve Stevenson, Jeanelle Westrom, Douglas W. Zylstra. (Sigale, David) (Entered: 08/07/2015) |

| | | | |
|---|---|---|---|
| 08/07/2015 | 21 | | Exhibit re 20 Memorandum in Support of Motion, *(Declaration of Richard Pearson)* by Kevin W. Culp, Marlow Davis, Paul Heslin, Illinois Carry, Illinois State Rifle Association, John S. Koller, Marlin Mangels, Freddie Reed−Davis, Second Amendment Foundation, Inc., Steve Stevenson, Jeanelle Westrom, Douglas W. Zylstra. (Sigale, David) (Entered: 08/07/2015) |
| 08/20/2015 | 22 | | MOTION for Extension of Time to File Response/Reply as to 17 MOTION for Preliminary Injunction by Defendants Hiram Grau, Lisa Madigan, Jessica Trame. Responses due by 9/8/2015 (Ratz, Joshua) (Entered: 08/20/2015) |
| 08/20/2015 | | | TEXT ORDER: Defendants' Motion for Extension of Time to Respond to Motion for Preliminary Injunction 22 is GRANTED. Defendants shall file their response on or before August 31, 2015. Entered by Judge Sue E. Myerscough on 8/20/2015. (ME, ilcd) (Entered: 08/20/2015) |
| 08/31/2015 | 23 | | MOTION for Leave to File by Defendants Hiram Grau, Lisa Madigan, Jessica Trame. Responses due by 9/17/2015 (Attachments: # 1 Exhibit A, # 2 Exhibit A−1)(Ratz, Joshua) (Entered: 08/31/2015) |
| 09/02/2015 | | | TEXT ORDER: Defendants' Motion to File Instanter Oversized Brief 23 is GRANTED. The Clerk is DIRECTED to file Defendants' Objection to Plaintiffs' Motion for Preliminary Injunction [23−1] and Exhibits [23−2]. Entered by Judge Sue E. Myerscough on 9/2/2015. (GL, ilcd) (Entered: 09/02/2015) |
| 09/02/2015 | 24 | | OBJECTION to Plaintiff's Motion for Preliminary Injunction by Defendants. (Attachments: # 1 Exhibits)(GL, ilcd) (Entered: 09/02/2015) |
| 09/08/2015 | | | TEXT ORDER: A hearing on Plaintiffs' Motion for Preliminary Injunction is set for October 8, 2015 at 9:30 a.m. in Courtroom 1 in Springfield before U.S. District Judge Sue E. Myerscough. Entered by Judge Sue E. Myerscough on 9/8/2015. (GL, ilcd) (Entered: 09/08/2015) |
| 09/11/2015 | 25 | | MOTION to Continue *Hearing on Motion for Preliminary Injunction (Unopposed)* by Plaintiffs Kevin W. Culp, Marlow Davis, Paul Heslin, Illinois Carry, Illinois State Rifle Association, John S. Koller, Marlin Mangels, Freddie Reed−Davis, Second Amendment Foundation, Inc., Steve Stevenson, Jeanelle Westrom, Douglas W. Zylstra. Responses due by 9/28/2015 (Sigale, David) (Entered: 09/11/2015) |
| 09/11/2015 | 26 | | MOTION to Dismiss *Gus C. Browne, II, only, and voluntarily, with remainder of case and Plaintiffs to proceed uninterrupted (Unopposed)* by Plaintiff Gus C Browne, II. Responses due by 9/28/2015 (Attachments: # 1 Exhibit Stipulation as to Voluntary Dismissal (of Gus C. Browne II, only))(Sigale, David) (Entered: 09/11/2015) |
| 09/14/2015 | | | TEXT ORDER: Plaintiff Gus C. Browne, II, has filed a Federal Rule of Civil Procedure 41(a)(1)(A) Agreed Motion to Voluntarily Dismiss 26 . The parties also filed a Federal Rule of Civil Procedure 41(a)(1)(A)(ii) Stipulation to Dismiss Plaintiff Gus C. Browne, II [26−1]. The Motion 26 is GRANTED. Plaintiff Gus C. Browne, II, is DISMISSED as a party to this case. The remainder of the Plaintiffs and their claims in this suit shall proceed unaffected. Entered by Judge Sue E. Myerscough on 9/14/2015. (GL, ilcd) (Entered: 09/14/2015) |

| 09/14/2015 | | | TEXT ORDER: Plaintiffs' Motion to Continue Hearing on Motion for Preliminary Injunction 25 , to which Defendants do not object, is GRANTED. The hearing scheduled for October 8, 2015, at 9:30 a.m. is VACATED and RESET to October 16, 2015 at 10:30 a.m. Entered by Judge Sue E. Myerscough on 9/14/2015. (GL, ilcd) (Entered: 09/14/2015) |
|---|---|---|---|
| 10/16/2015 | | | Minute Entry for proceedings held before Judge Sue E. Myerscough: MOTION HEARING as to Motion for Preliminary Injunction 17 held on 10/16/2015. Attorney David Sigale present in person on behalf of Plaintiffs. Plaintiffs Culp and Valinda Rowe, representative of IL Carry, present in person. Assistant IL Attorney General Joshua Ratz person in person on behalf of Defendants. Positions and arguments presented by counsel. Court took matter under advisement with written ruling to enter. Hearing adjourned. (Court Reporter KS.) (DM, ilcd) (Entered: 10/19/2015) |
| 10/26/2015 | | | MINUTE ENTRY for proceedings held before U.S. Magistrate Judge Tom Schanzle−Haskins. Telephonic status conference held with counsel for Plaintiffs, David Sigale, and counsel for Defendants, Joshua Ratz. Discussion held regarding setting settlement conference or mediation. Parties report that no settlement negotiations are outstanding. Parties to contact the Court for scheduling of mediation or settlement conference if parties deem such appropriate. (LB, ilcd) (Entered: 10/26/2015) |
| 11/23/2015 | 27 | | MOTION for Summary Judgment by Defendants Hiram Grau, Lisa Madigan, Jessica Trame. Responses due by 12/17/2015 (Attachments: # 1 Exhibit 1)(Ratz, Joshua) (Entered: 11/23/2015) |
| 11/23/2015 | 28 | | MEMORANDUM in Support re 27 MOTION for Summary Judgment filed by Defendants Hiram Grau, Lisa Madigan, Jessica Trame. (Ratz, Joshua) (Entered: 11/23/2015) |
| 12/04/2015 | 29 | 10 | OPINION: Plaintiffs' Motion for Preliminary Injunction 17 is DENIED. (SEE WRITTEN OPINION) Entered by Judge Sue E. Myerscough on 12/4/2015. (GL, ilcd) (Entered: 12/07/2015) |
| 12/08/2015 | 30 | 9 | NOTICE OF APPEAL as to 29 Order on Motion for Preliminary Injunction by Kevin W. Culp, Marlow Davis, Paul Heslin, Illinois Carry, Illinois State Rifle Association, John S. Koller, Marlin Mangels, Freddie Reed−Davis, Second Amendment Foundation, Inc., Steve Stevenson, Jeanelle Westrom, Douglas W. Zylstra. Filing fee $ 505, receipt number 0753−2216941. (Sigale, David) (Entered: 12/08/2015) |
| 12/09/2015 | | 74 | TEXT ORDER: Plaintiffs have appealed this Court's denial of the Motion for Preliminary Injunction. See Notice of Appeal 30 . An appeal of an interlocutory decision "does not divest a district court of jurisdiction or prevent the court 'from finishing its work and rendering a final decision.'" Staffa v. Pollard, 597 F. App'x 893, 895 (7th Cir. 2015) (unpublished decision) (quoting Wis. Mut. Ins. Co. v United States, 441 F.3d 502, 504 (7th Cir. 2006)). However, in light of the current state of the law concerning the Second Amendment, and the fact that the Seventh Circuit decision on the preliminary injunction will be extremely beneficial to the ultimate resolution of this case, the Court sua sponte stays these proceedings. See, e.g., Jackson v. Van Kampen Series Fund, Inc., No. 06−cv−944−DRH, 2007 WL 1532090, at *2 (S.D. Ill. May 24, 2007) (discussing the court's inherent authority to stay |

|  |  |  | proceedings sua sponte). Defendants' pending Motion for Summary Judgment 27 is DENIED AS MOOT with leave to refile after the interlocutory appeal is decided. Entered by Judge Sue E. Myerscough on 12/9/2015. (ME, ilcd) (Entered: 12/09/2015) |
| --- | --- | --- | --- |

E-FILED
Tuesday, 08 December, 2015  09:08:39 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | |
|---|---|
| KEVIN W. CULP, MARLOW DAVIS, ) <br> FREDDIE REED-DAVIS, ) <br> DOUGLAS W. ZYLSTRA, ) <br> JOHN S. KOLLER, STEVE STEVENSON, ) <br> PAUL HESLIN, MARLIN MANGELS, ) <br> JEANELLE WESTROM, ) <br> SECOND AMENDMENT FOUNDATION, ) <br> INC., ILLINOIS CARRY and ) <br> ILLINOIS STATE RIFLE ASSOCIATION, ) <br> ) <br>        Plaintiffs, ) <br> v. ) <br> ) <br> LISA MADIGAN, in her Official Capacity ) <br> as Attorney General of the State of Illinois; ) <br> HIRAM GRAU, in his Official Capacity as ) <br> Director of the Illinois State Police, and ) <br> JESSICA TRAME, as Bureau Chief of the ) <br> Illinois State Police Firearms Services ) <br> Bureau, ) <br> ) <br>        Defendants. ) | Case No. 3:14-CV-3320-SEM-TSH |

## NOTICE OF APPEAL

Plaintiffs, KEVIN W. CULP, MARLOW DAVIS, FREDDIE REED-DAVIS, DOUGLAS

W. ZYLSTRA, JOHN S. KOLLER, STEVE STEVENSON, PAUL HESLIN, MARLIN

MANGELS, JEANELLE WESTROM, SECOND AMENDMENT FOUNDATION, INC.,

ILLINOIS CARRY and ILLINOIS STATE RIFLE ASSOCIATION, do hereby appeal to the

United States Court of Appeals for the Seventh Circuit from the decision of this Court entered on

December 7, 2015, that denied Plaintiffs' Motion for a Preliminary Injunction (Dkt. #29).

By: _____/s/ David G. Sigale_____
          David G. Sigale
          Attorney for Plaintiffs

LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| **KEVIN W. CULP, MARLOW DAVIS, FREDDIE REED-DAVIS, DOUGLAS W. ZYLSTRA, JOHN S. KOLLER, STEVE STEVENSON, PAUL HESLIN, MARLIN MANGELS, JEANELLE WESTROM, SECOND AMENDMENT FOUNDATION, INC., ILLINOIS CARRY, and ILLINOIS STATE RIFLE ASSOCIATION,** ) | |
| **Plaintiffs** ) | |
| **v.** ) | No. 14-CV-3320 |
| **LISA MADIGAN, in her Official Capacity as Attorney General of the State of Illinois; LEO P. SCHMITZ, in his Official Capacity as Director of the Illinois State Police, and JESSICA TRAME, as Bureau Chief of the Illinois State Police Firearms Services Bureau,** ) | |
| **Defendants.** ) | |

### OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on Plaintiffs' Motion for

Preliminary Injunction (d/e 17). On October 16, 2015, the Court

held a hearing on the Motion. Following the hearing, the Court took the matter under advisement.

The Motion is DENIED. Although Plaintiffs have met the threshold requirements for a preliminary injunction, the balance of the harms and consideration of the public interest favor denying the request for a preliminary injunction.

## I. PROCEDURAL BACKGROUND

In October 2014, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief. Compl. (d/e 1). Plaintiffs allege that Section 40 of the Illinois Firearm Concealed Carry Act (430 ILCS 66/40) and all other statutory language that restricts otherwise-qualified nonresidents of Illinois the rights and privileges of carrying concealed firearms based solely on their state of residence violate Plaintiffs' Second Amendment rights, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Privileges and Immunities Clause of Article IV, § 2, and the Due Process Clause of the Fourteenth Amendment. See id., Counts I-IV. Currently, the Firearm Concealed Carry Act allows nonresidents to obtain an Illinois concealed carry license only if the nonresident is a

Page **2** of **64**

resident of a state or U.S. Territory with laws related to firearm ownership, possession, and carrying that are substantially similar to Illinois' requirements. The Illinois State Police (ISP) has found that only four states have substantially similar laws: Hawaii, New Mexico, South Carolina, and Virginia.

The named Plaintiffs include nine individuals who work in or visit Illinois, hold concealed carry licenses in their resident states, and wish to carry concealed weapons in Illinois. The individual Plaintiffs are residents of Colorado, Indiana, Iowa, Missouri, Pennsylvania, and Wisconsin.

The named Plaintiffs also include three associations—the Second Amendment Foundation, Inc., Illinois Carry, and the Illinois State Rifle Association—whose members include non-Illinois residents who wish to obtain Illinois concealed carry licenses but do not have a concealed carry license from a state approved by the ISP. Plaintiffs assert that they (or their members) would apply for a concealed carry permit if able and would carry concealed firearms in Illinois but fear prosecution. Compl. ¶¶ 21, 23, 25, 27; see also

720 ILCS 5/24-1 (unlawful use of weapons statute); 720 ILCS 5/24-1.6 (aggravated unlawful use of a weapon statute).

Plaintiffs have sued three defendants in their official capacity. Plaintiffs sue Attorney General Lisa Madigan, who Plaintiffs assert is responsible for executing and administering the laws of the State of Illinois, including the Firearm Concealed Carry Act. Also named as a defendant is Leo P. Schmitz[1], the Director of the ISP, who is responsible for executing and administering the Firearm Concealed Carry Act. Finally, Plaintiffs sue Jessica Trame, the Bureau Chief of the ISP Firearms Services Bureau, who is the ISP employee directly responsible for the administration of the Firearm Concealed Carry Act. See Compl. ¶¶ 29-31 (d/e 1); Defs. Answer ¶¶ 29-31 (d/e 13).

In the Complaint, Plaintiffs seek a declaratory judgment that Section 40 of the Firearm Concealed Carry Act and all other Illinois statutory language that restrict qualified nonresidents of Illinois

---

[1] Plaintiffs originally sued Hiram Grau in his official capacity as the Director of ISP. Since the filing of the lawsuit, Leo P. Schmitz has replaced Grau as Director. Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Schmitz is substituted for Grau as a party defendant.

from carrying a concealed firearm based solely on their states of residence are null and void. Compl., Prayer for Relief ¶ 2(a). Plaintiffs also ask that the Court issue preliminary and permanent injunctions against Defendants barring enforcement of Section 40 of the Firearm Concealed Carry Act and all other Illinois statutory language that restrict otherwise-qualified nonresidents of Illinois from carrying concealed firearms based solely on their states of residence. Id. ¶ 2(b).

On August 7, 2015, Plaintiffs filed the Motion for Preliminary Injunction (d/e 17) at issue herein. In the Motion, Plaintiffs ask the Court to preliminarily enjoin Defendants from enforcing the nonresident application ban contained in Section 40 of the Firearm Concealed Carry Act against Plaintiffs and/or their members. Motion ¶ 1. Plaintiffs also ask that Defendants be preliminarily enjoined from enforcing any other sections of the Illinois Compiled Statutes which restrict the firearm rights and privileges of nonresidents of Illinois based solely on their states of residence. Id. ¶ 2.

Page **5** of **64**

## II. RELEVANT ILLINOIS LAW REGARDING THE POSSESSION AND CARRYING OF FIREARMS

Two Illinois statutes govern this dispute: the Firearm Owners Identification Card Act (430 ILCS 65/0.01 et seq.,) (FOID Act) which permits qualified individuals to possess firearms, and the Firearm Concealed Carry Act (430 ILCS 66/1 et seq.), which permits qualified individuals to carry concealed handguns in public. Because nonresident applicants for a concealed carry license must meet all of the requirements for a FOID card except residency, the FOID Act is addressed first.

### A.   The FOID Act Regulates the Possession of Firearms in Illinois

Illinois regulates the possession of firearms through the FOID Act.  The FOID Act generally prohibits a person from possessing a firearm in Illinois unless the person has a FOID card.  430 ILCS 65/2(a).

One of the requirements for obtaining a FOID card is that the applicant must be a resident of Illinois.  See 430 ILCS 65/4 (a)(2)(xiv) (requiring that each applicant for a Firearm Owner's Identification Card submit evidence to the ISP that "[h]e or she is a

Page **6** of **64**

resident of the State of Illinois"). The FOID Act makes exceptions for law enforcement officers, armed security officers in Illinois, and United States Military personnel permanently assigned in Illinois. See 430 ILCS 65/4(a-10) (providing that a FOID applicant "who is employed as a law enforcement officer, an armed security officer in Illinois, or by the United States Military permanently assigned in Illinois and who is not an Illinois resident" must submit a driver's license or identification card number from their resident states); 430 ILCS 65/8(q) (providing that the ISP has the authority to deny a FOID card to nonresidents of Illinois except as provided in 430 ILCS 65/4(a-10)).

In addition, the FOID Act contains exceptions that allow nonresidents to possess a firearm in Illinois without a FOID card, including nonresidents who are currently licensed or registered to possess a firearm in their resident states (430 ILCS 65/2(b)(10)); certain nonresident hunters (430 ILCS 65/2(b)(5), (13)); nonresidents while on a firing or shooting range (430 ILCS 65/2(b)(7)); nonresidents while at a firearm showing or display recognized by the ISP (430 ILCS 65/2(8)); and nonresidents whose

Page **7** of **64**

firearms are unloaded and enclosed in a case (430 ILCS 65/2(9)). See also Mishaga v. Schmitz, No. 10-cv-03187, 2015 WL 5731653 (C.D. Ill. Sept. 30, 2015) (finding the non-Illinois resident plaintiff lacked standing to seek an order declaring the FOID Act unconstitutional because she did not face a credible threat of prosecution; the FOID Act permitted the plaintiff to possess a functional firearm in the home of her Illinois-resident friend).

Further, an application for a FOID card may be denied or revoked based on the applicant's criminal or mental health history (among other reasons not relevant to the issues herein). See generally 430 ILCS 65/8; see also 430 ILCS 65/4 (requiring that an applicant submit evidence to the ISP that he meets the qualifications for obtaining a FOID card). Grounds for denial include that the applicant has been convicted of a felony (740 ILCS 65/8(c)); has been convicted within the past five years of battery, assault, aggravated assault, violation of an order of protection, or a substantially similar offense in another jurisdiction in which a firearm was used or possessed (430 ILCS 65/8(k)); has been convicted of domestic battery, aggravated domestic battery, or a

Page **8** of **64**

substantially similar offense in another jurisdiction before, on, or after January 1, 2012 (the effective date of Public Act 97-158, amending Section 8) (430 ILCS 65/8(l)); or is prohibited under Illinois state statute or federal law from acquiring or possessing a firearm or ammunition (430 ILCS 65/8(n)).[2]

In addition, the application may be denied or the license revoked if the person has been a patient in a mental health facility within the past five years (430 ILCS 65/8(e)); has been a patient in a mental facility more than five years ago and has not received a certification[3] from a qualified examiner that he is not a clear and present danger to himself or others (Id.); has a mental condition of such a nature that it poses a clear and present danger to the

_____

[2] Those prohibited by federal law from possessing a firearm include those convicted of a crime punishable by imprisonment for a term exceeding one year; persons adjudicated as a mental defective or who have been committed to a mental institution; and persons convicted in any court of a misdemeanor crime of domestic violence. See 18 U.S.C. § 922(g)(1), (g)(4), (g)(9).

[3] See 430 ILCS 65/8(u) (requiring that an person who had his FOID card revoked or denied because he was a patient in a mental health facility shall not be permitted to obtain a FOID card after the 5-year period has lapsed unless he receives a mental health evaluation and a certification that he is not a clear and present danger to himself or others); Mental Health Certification for Firearm Possession form, available at https://ispfsb.com/Public/Firearms/FOID/mentalhealthcert.pdf (all websites last visited December 4, 2015).

applicant or other person or the community (430 ILCS 65/8(f)); or has been adjudicated a mentally disabled person (430 ILCS 65/8(r)).

The FOID Act also contains a reporting mechanism that allows the ISP to monitor the ongoing qualifications of FOID card holders. See 430 ILCS 65/8.1. For example, under the FOID Act, the Illinois circuit court clerks must notify the ISP of certain criminal arrest, charge, and disposition information. See 430 ILCS 65/8.1(a) (requiring the circuit clerk to notify the ISP "of all final dispositions of cases for which [the ISP] has received information reported to it under Sections 2.1 and 2.2 of the Criminal Identification Act"); see also 20 ILCS 2630/2.1 (requiring the clerk of the circuit court, Illinois Department of Corrections, sheriff of each county, and state's attorney of each county to submit certain criminal arrest, charge, and disposition information to the ISP); 20 ILCS 2630/2.2 (requiring the circuit court clerk to report to the ISP's Firearm Owner's Identification Card Office convictions for certain violations of the Criminal Code when the defendant has been determined to be

subject to the prohibitions of 18 U.S.C. 922(g)(9)).[4]  In addition, a

court that adjudicates an individual as a mentally disabled person

or finds that a person has been involuntarily admitted must direct

the circuit court clerk to notify the ISP's FOID department and

forward a copy of the court order to the ISP.  430 ILCS 65/8.1(b).

   In addition, the FOID Act requires that the Department of

Human Services (DHS) report to the ISP all information collected

under subsection (b) of Section 12 of the Mental Health and

Developmental Disabilities Confidentiality Act[5] "for the purpose of

determining whether a person who may be or may have been a

---

[4] Providing that a person convicted of a misdemeanor crime of domestic
violence cannot possess a firearm.  18 U.S.C. § 922(g)(9).

[5] Section 12(b) of the Mental Health and Developmental Disabilities
Confidentiality Act provides that all physicians, clinical psychologists, and
qualified examiners must provide notice directly to DHS or his or her employer
(who shall then notify DHS) within 24 hours of determining a person poses a
clear and present danger to himself, herself, or others, or within 7 days after a
person 14 years or older is determined to be a person with a developmental
disability as described in Section1.1 of the FOID Act.  Notice of an admission of
a patient—which includes a person who voluntarily receives mental health
treatment as an inpatient or resident or who receives mental health treatment
as an outpatient and who poses a clear and present danger to himself, herself,
or to others—must be furnished to DHS within 7 days of admission.  DHS and
all public or private hospitals and mental health facilities shall furnish to ISP
only that information that may be required for determining whether an
individual should be disqualified from receiving or retaining a FOID card.  740
ILCS 110/12(b); see also 430 ILCS 65/1.1 (defining "patient").

Page **11** of **64**

patient in a mental health facility is disqualified under State or
federal law from receiving or retaining a Firearm Owner's
Identification Card, or purchasing a weapon."  430 ILCS 65/8.1(c).
Similarly, every physician, clinical psychologist, or qualified
examiner who determines that a person poses a clear and present
danger to himself or others must notify DHS within 24 hours of that
determination.  430 ILCS 65/8.1(d)(1).  Further, a law enforcement
official or school administrator who determines a person poses a
clear and present danger to himself or others must notify the ISP
within 24 hours of that determination.  430 ILCS 65/8.1(d)(2).  DHS
must also update its records and, "if appropriate," notify the ISP.
430 ILCS 65/8.1(d).

## B.   The Firearm Concealed Carry Act Regulates the Carry of Concealed Weapons in Illinois

Illinois also provides a mechanism for individuals to carry a
concealed firearm in Illinois by way of the Firearm Concealed Carry
Act.  430 ILCS 66/1 et seq.  Illinois is a "shall issue" state, meaning
that the ISP must issue a license if the applicant meets the
qualifications, provides the application and documentation

Page **12** of **64**

required, submits the requisite fee, and does not pose a danger to himself or a threat to public safety as determined by the Carry Licensing Review Board.  430 ILCS 66/10(a).  The license is valid for five years and allows the licensee to carry a loaded or unloaded concealed or partially concealed firearm on or about his person and within a vehicle.  430 ILCS 66/10(c).

To qualify for a concealed carry license, the applicant must be at least 21 years of age; have a valid FOID card and, at the time of the application, meet the requirements for the issuance of a FOID card; have not been in residential or court-ordered treatment for alcoholism, alcohol detoxification, or drug treatment within five years immediately preceding the date of the application; and have completed firearms training.  430 ILCS 66/25(1), (2), (6).

In addition, the Firearm Concealed Carry Act imposes additional requirements relating to the applicant's criminal history. The applicant must not have been convicted or found guilty in any state of a misdemeanor involving the use or threat of physical force or violence to any person within five years preceding the date of the application or have two or more violations relating to driving while

Page **13** of **64**

under the influence of drugs or alcohol within five years preceding the date of the application.  430 ILCS 66/25(3).  Moreover, the applicant must not be the subject of a pending arrest, warrant, prosecution, or proceeding for an offense or action that could lead to disqualification to own or possess a firearm.  430 ILCS 66/25(4).

The Firearm Concealed Carry Act requires that ISP conduct background checks of the applicants for concealed carry licenses. 430 ILCS 66/35.  The background check must consist of a search of the following: the Federal Bureau of Investigation's National Instant Criminal Background Check System (NICS)[6]; all available state and local criminal history record information files, including records of juvenile adjudications; all available federal, state, and local records regarding wanted persons, domestic violence restraining orders, and protective orders; DHS files relating to mental health and developmental disabilities; and all other available

---

[6] According the FBI website, NICS is a "national system that checks available records on persons who may be disqualified from receiving firearms." https://www.fbi.gov/about-us/cjis/nics/general-information/fact-sheet. "The NCIS is a computerized background check system designed to respond within 30 seconds on most background check inquiries so the [Federal Firearms Licensees] receive an almost immediate response."  Id.

Page **14** of **64**

records of any federal, state, local agency, or other public entity likely to contain information relevant to whether the applicant is prohibited from purchasing, possessing, or carrying a firearm. 430 ILCS 66/35 (also providing that the ISP may charge applicants for conducting the criminal history records check but that the fee shall not exceed the actual cost of the records check).

The specific statutory provision Plaintiffs challenge here, Section 40 of the Firearm Concealed Carry Act, governs nonresident concealed carry license applications. Specifically, this section of the Firearm Concealed Carry Act directs ISP to by rule allow for nonresident license applications from any state or territory of the United States with laws related to firearm ownership, possession, and carrying "that are substantially similar to the requirements to obtain a license under" the Firearm Concealed Carry Act. 430 ILCS 66/40(b). The ISP currently defines substantially similar as:

> The comparable state regulates who may carry firearms, concealed or otherwise, in public; prohibits all who have involuntary mental health admissions, and those with voluntary admissions within the past 5 years, from carrying firearms, concealed or otherwise, in public; reports denied persons to NICS; and participates in reporting persons authorized to carry firearms, concealed

Page **15** of **64**

Case 3:14-cv-03320-SEM-TSH #1  Document 529 7  Filed 12/04/15  Page 16 of 64

> or otherwise, in public through NLETs [sic] [(the National
> Law Enforcement Telecommunications System)].

20 Ill. Admin. Code 1231.10.  According to the ISP's website, only

four states have substantially similar laws: Hawaii, New Mexico,

South Carolina, and Virginia.  See 20 Ill. Adm. Code 1231.110(c)

(providing that the ISP shall determine which states are

substantially similar); 20 Ill. Adm. Code 1231.110(b)(providing that

ISP "shall post on its website a list of all states determined to be

substantially similar"); https://www.ispfsb.com/Public/Faq.aspx

(listing the four states with substantially similar laws—Hawaii, New

Mexico, South Carolina, and Virginia).

The nonresident applicant must meet all of the requirements

contained in section 25 of the Firearm Concealed Carry Act, except

for the Illinois residency requirement.  430 ILCS 66/40(c).  The

nonresident applicant must submit a notarized document affirming

that he is eligible to own or possess a firearm under federal law and

the laws of his state or territory of residence; that, if applicable, he

has a license or permit to carry a firearm, concealed or otherwise,

issued by his state; that he understands Illinois law pertaining to

the possession and transport of firearms; and acknowledging that he is subject to the jurisdiction of the ISP and Illinois courts for any violation of the Firearm Concealed Carry Act.  Id.

The Firearm Concealed Carry Act specifically provides that nothing in the Act prohibits a nonresident from transporting a concealed firearm in his or her vehicle if the concealed firearm remains in the vehicle and the nonresident: is not prohibited from owning a firearm under federal law; is eligible to carry a firearm in public under the laws of his state of residence; and is not in possession of a license under the Firearm Concealed Carry Act. 430 ILCS 66/40(e).  If the vehicle is unattended, however, the firearm must be stored within a locked vehicle or a locked container.  Id.

The Firearm Concealed Carry Act imposes an additional reporting obligation.  Section 105 requires that school administrators report to the ISP when a student of a public or private elementary school, secondary, school, community college, college, or university is determined to pose a clear and present danger to himself or others within 24 hours of such determination.

Page **17** of **64**

430 ILCS 66/105 (but not indicating who makes that determination).

### III. DEFENDANTS' JUSTIFICATION FOR THE RESIDENCY REQUIREMENT

Defendants support the residency requirement of the Firearm Concealed Carry Act with the Affidavit of Defendant Trame, the Bureau Chief of the ISP Firearms Services Bureau. Trame explains the difficulty of verifying nonresident applicants' identities, criminal history, mental health information, and obtaining updated nonresident information necessary to revoke a concealed carry license.

According to Trame, the Firearms Services Bureau performs an extensive background check on each applicant for a concealed carry license. Trame Aff. ¶ 4. This background check process is intended to ensure public safety by identifying persons who are unqualified to carry firearms. Id. ¶ 8.

The background check includes queries of the national systems such as the National Crime Information Center (NCIC),[7] NICS, the Interstate Identification Index,[8] Immigration and Customs Enforcement, and NLETS.  The Bureau also checks the Illinois systems, including the Criminal History Record Information system, driver's license or identification systems maintained by the Secretary of State, and the Computerized Hot Files system, which is "a central online repository for numerous officer and public safety information repositories" that is maintained by the ISP.  Trame Aff. ¶ 6.  In addition, the applicant's information is made available to Illinois law enforcement agencies, which may submit an objection to a concealed carry license applicant.  Trame Aff. ¶ 7; see also 430

---

[7] This is the mechanism criminal justice agencies use to access over 13 million active records.  The NCIC database consists of 21 files, including 14 "persons" files such as the National Sex Offender Registry, Foreign Fugitives, Immigration Violations, Orders of Protection, and Wanted Persons.  See Trame Aff. ¶ 13. "The NCIC has operated under a shared management concept between the FBI and federal, state, local, and tribal criminal justice users since its inception." https://www.fbi.gov/about-us/cjis/ncic.

[8] The Interstate Identification Index is the national criminal history record system.  See Trame Aff. ¶ 13.  Thirty-two states participate only in the Interstate Identification Index while 19 participate in Interstate Identification Index and the National Fingerprint File.  https://www.fbi.gov/about-us/cjis/cc/quick-links-to-maps/IIImaps.

ILCS 66/15 (providing that any law enforcement agency may submit an objection to a license applicant); 430 ILCS 66/5 (defining law enforcement agency to include "any federal, State, or local law enforcement agency, including offices of State's Attorneys and the Office of the Attorney General").

## A.    Defendants Identify the Difficulties in Verifying Nonresident Applicant's Identities

Trame states that the ISP does not have direct access to other states' driver's license, state ID, or similar databases.  Therefore, to verify a nonresident's identity, the Firearm Services Bureau must rely on NLETS to check the validity of an out-of-state driver's license.  Trame Aff. ¶ 10.  Currently, the ISP is not able to receive identifying photographs or signatures from NLETS but has contracted for development of a system that would allow the ISP access to such information.  Arizona, California, Colorado, Kansas, New York, New Hampshire, Oklahoma, South Carolina, and the District of Columbia do not currently make images available to NLETS.  Id.

**B.** **Defendants Identify the Difficulties in Verifying Nonresident Criminal History**

For Illinois residents, the Firearm Services Bureau is able to locate criminal history through Illinois' Criminal History Record Inquiry, a system maintained by ISP, the Computerized Hot Files, and from federal systems. Because the Bureau does not have direct access to other states' local or state criminal history databases, the Bureau relies on federal databases to obtain criminal history information on nonresidents. Trame Aff. ¶ 12.

Trame indicates, however, that many states provide the federal databases with only a summary of an arrest. This information is often inadequate to assess an applicant's eligibility for a concealed carry license. Id. Although the ISP may request a criminal record if the federal database is incomplete, many jurisdictions charge for records, and ISP does not have funds appropriated to pay for any records. Id.

The ISP uses NLETS to determine whether a nonresident applicant's state-issued concealed carry license is valid and to check the continued validity of the home-state issued concealed

Page **21** of **64**

carry license every 90 days.  Trame Aff. ¶ 13.  The ISP is unable to
obtain accurate and updated information via NLETS for residents
from states that do not fully participate in those systems.  Id. ¶ 14
(ISP is also unable to obtain accurate and updated information via
NCIC for those states that do not fully participate in NCIC).

    In addition, information from the Interstate Identification
Index may be limited because states are not uniform in their
reporting of different levels and types of offenses. Id. ¶ 15.   Only
the National Fingerprint File provides detailed extracts directly from
states' local databases.  Id.  However, as of August 2015, only 19
states participate in the NFF: Colorado, Florida, Georgia, Hawaii,
Idaho, Iowa, Kansas, Maryland, Minnesota, Missouri, Montana,
North Carolina, New Jersey, Ohio, Oklahoma, Oregon, Tennessee,
West Virginia, and Wyoming.  Id.

## C.  Defendants Identify the Difficulties in Verifying Nonresident Mental Health Information

    Through the Illinois DHS FOID Mental Health System, the
Firearm Services Bureau can access information on Illinois mental
health facility admissions and determine whether an individual has

been involuntarily admitted into a mental health facility in Illinois or been a patient in a mental health facility in Illinois within the past five years or more.  Trame Aff. ¶ 17.  This System does not, however, contain records on out-of-state mental health facility admissions.  Id. ¶ 18.  In addition, the ISP does not have access to other states' mental health facility admission databases, to the extent the other states may have them.  Id.

Trame states that, in her experience, federal databases contain only limited information regarding involuntary mental health admissions or mental disability adjudications and do not contain voluntary mental health admission information.  Trame Aff. ¶ 19. To search for mental health information regarding nonresidents, the ISP is limited to information available through the NICS Index, but not all states participate in the NICS Index.  Id. ¶ 20.  NICS contains information from participating states regarding individuals prohibited from firearm possession for mental health reasons under

18 U.S.C. § 922(g)(4)[9] but again does not provide any information on voluntary mental health admissions.  Id.

## D. Defendants Identify the Difficulties in Obtaining Updated Nonresident Information Necessary to Revoke a Concealed Carry License

Trame states that all resident concealed carry license holders are checked against the Illinois Criminal History Record Inquiry and DHS Mental Health Systems (by virtue of their FOID card) for any new conditions that would disqualify them from holding a FOID card or a concealed carry license.  Trame Aff. ¶ 21.  All concealed carry license holders, both resident and nonresident, are checked against the federal databases on a quarterly basis.  Id.

Trame explains in her affidavit why it is difficult for the Firearm Services Bureau to obtain updated nonresident information relevant to revoking a concealed carry license.  Trame claims that, while Illinois physicians, Illinois school administrators, Illinois circuit clerks, and DHS are required to report certain mental health information to the ISP, no such requirement is imposed on out-of-

---

[9] This statute provides that it is unlawful for any person who has been adjudicated as a mental defective or who has been committed to a mental institution from possessing a firearm or ammunition.  18 U.S.C. § 922(g)(4).

state physicians, administrators, and circuit clerks to report information to the ISP.  Trame Aff. ¶ 22.  Moreover, daily checks of the DHS Mental Health Systems would not reveal information concerning persons in other states.  Id.

The ISP can request information from out-of-state mental health entities, but many of the out-of-state mental health entities do not provide mental health information even after an ISP request.  Id. ¶ 24.  According to Trame, the ISP's lack of access to this type of data held by other states would make it virtually impossible to effectively conduct the level of screening and monitoring on nonresident concealed carry license applications that is performed on resident applicants.  Id. ¶

## E.    Illinois Surveyed Other States to Determine Whether the Other States Have Substantially Similar Laws Regulating Firearms

In 2013, the ISP sent surveys to the 49 other states and the District of Columbia requesting information regarding their regulation of firearms use.  The survey sought information on each state's reporting and tracking mechanisms relative to criminal activity and mental health issues for the purpose of determining if

the other states' laws were substantially similar to Illinois' law.  In 2014, the ISP sent a second survey to those states who did not respond to the first survey.  Most states and the District of Columbia eventually responded but for seven states:  Colorado, Maine, Maryland, Massachusetts, Nevada, Pennsylvania, and Rhode Island.  The survey asked:

1.  Does your state issue a Concealed Carry License?

2.  Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)?

3.  Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)?

4.  Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years?

5.  Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license?

6.  If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms?

See Trame Aff., Ex. C (d/e 23-3).

Based on these two surveys (and, according to defense counsel at the hearing, the receipt of additional information), the ISP determined that four states had laws similar to Illinois that regulate who may carry firearms in public, report persons authorized to carry through NLETS, report denied persons through NICS, prohibit persons voluntarily admitted to a mental health facility in the last five years from possessing or using firearms, and prohibit persons involuntarily admitted to mental health facilities from possessing or using firearms.  Trame Aff. ¶ 28.  These states were Hawaii, New Mexico, South Carolina, and Virginia.  Id.

Trame states that the Firearm Services Bureau would not have the time or resources to properly research the necessary information for nonresident applicants if all such nonresidents could apply for a concealed carry license.  Trame Aff. ¶ 30.  The Firearm Concealed Carry Act requires that the ISP either approve or deny an application within as few as 90 days from the date received, subject to certain exceptions.  Id.  To process applications this quickly, Trame believes it is likely that the out-of-state

Page **27** of **64**

applicants would not be held to the same standards set forth in the FOID Act or the Firearm Concealed Carry Act as Illinois residents are held. Id. Otherwise, applications would have to be approved without a complete and thorough background check. Id. Applicants residing in states that lack reporting and eligibility requirements similar to Illinois and who are issued licenses under the Firearm Concealed Carry Act cannot be held to the same monitoring standards (notification of mental health issues or a subsequent felony conviction that would disqualify the person from possessing/carrying a firearm) necessary to ensure continued eligibility due to the lack of, or an inability to obtain—either at all or in a timely manner—information concerning those nonresidents. Id.

## IV. PLAINTIFFS HAVE STANDING TO BRING THIS SUIT

Defendants do not object to Plaintiffs' standing. However, standing is jurisdictional and is not subject to waiver. Freedom From Religion Found., Inc. v. Nicholson, 536 F.3d 730, 737 (7th Cir. 2008).

The individual Plaintiffs include the following nine individuals. Plaintiff Kevin W. Culp is an Air Force Colonel stationed on orders at Scott Air Force Base near Belleville, Illinois, but he is a legal resident of Pennsylvania.  Culp possesses a license to carry a concealed weapon from Pennsylvania and Florida.  Culp is also a Basic Pistol Instructor and meets the qualifications to be an Illinois concealed carry licensing instructor.

Marlow Davis is a resident of Wisconsin. Davis is retired and spends approximately one-half of his time in Chicago.  Davis holds a Wisconsin license to carry a concealed weapon.

Freddie Reed-Davis, the wife of Marlow Davis, is also a resident of Wisconsin.  Reed-Davis is a nurse working in Chicago. Reed-Davis holds a Wisconsin license to carry a concealed weapon.

Douglas W. Zylstra is a resident of Indiana.  He possesses an Indiana license to carry a concealed weapon, a Utah concealed carry license, and an instructor certification from Utah.  Zylstra is an ISP concealed carry instructor working for a firearm training company in Lansing, Illinois.

John S. Koller is a resident of Colorado. He holds a license to carry a concealed weapon from Colorado, Utah, Nevada, and Arizona. Koller was born and raised in Chicago and visits family in the Chicago area. He also makes periodic business trips to Illinois.

Steve Stevenson is also a resident of Colorado. Stevenson holds concealed carry licenses from Colorado and Utah. Stevenson occasionally traverses Illinois on I-80 and I-88 to visit relatives in Illinois and Michigan.

Paul Heslin is a resident of Missouri. He holds a Missouri and Florida license to carry a concealed weapon and a Type 03 federal firearms license.[10] He is also an Illinois certified concealed carry instructor.

Marlin Mangels is a resident of Iowa. Mangels possesses a concealed carry license from Iowa, Utah, and Arizona. Mangels frequently rides his bicycle up the River Road in Illinois, eats in restaurants in Hamilton, Illinois, travels to see his wife's family in

---

[10] This is a Collector of Curios and Relics license. 18 U.S.C. § 923(b); see https://www.atf.gov/firearms/listing-federal-firearms-licensees-ffls-2015

the Chicago area, and travels I-80 through Illinois to visit friends in Massachusetts.

Jeanelle Westrom is a resident of Iowa.  Westrom possesses a license to carry a concealed weapon from Iowa and Georgia.  She has a firearms business in Iowa and a separate firearms business in Geneseo, Illinois, where she spends a considerable amount of her time.  Westrom also has three federal firearms licenses that are required for her businesses.

The individual Plaintiffs are licensed to possess concealed handguns in their states of residence.  The individual Plaintiffs are prohibited by Section 40 of the Firearm Concealed Carry Act from applying for and obtaining Illinois concealed carry licenses because their states of residence are not approved for applications for concealed carry licensing by Defendants. The individual Plaintiffs would carry a loaded and functional concealed handgun in public for self-defense but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment.

The named Plaintiffs also include several organizations.  The individual Plaintiffs are members of these organizations.

Page **31** of **64**

40

The organizations include the Second Amendment Foundation, Inc. (SAF), a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. The purposes of SAF include education, research, publishing, and legal action focusing on the Constitutional right to own and possess firearms.

SAF brings this action on behalf of itself and its members. SAF has over 650,000 members and supporters nationwide. SAF's membership includes nonresidents of Illinois who wish to obtain Illinois concealed carry licenses but do not have a concealed carry license from a state approved by the ISP. These members would carry a loaded and functional concealed handgun in public for self-defense but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment.

Illinois Carry is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Shelbyville, Illinois. Illinois Carry is dedicated to the preservation of Second Amendment rights. Illinois Carry's purposes

include education and supporting and defending the people's right to keep and bear arms.

Illinois Carry has over 10,000 members and supporters in Illinois and many members outside the State of Illinois.  Members of Illinois Carry who are not residents of Illinois and do not have a concealed carry license from an approved state are prohibited from applying for and obtaining an Illinois concealed carry license. Those members would carry a loaded and functional concealed handgun in public for self-defense but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment.

The Illinois State Rifle Association is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois.  The Illinois State Rifle Association has over 17,000 members and supporters in Illinois, and many members outside the State of Illinois.  The purposes of the Illinois State Rifle Association include securing the Constitutional right to privately own and possess firearms in Illinois through education, outreach, and litigation.  The Illinois State Rifle Association brings this action on behalf of itself and its members.

Page **33** of **64**

Members of the Illinois Rifle Association who are not residents of Illinois and do not have concealed carry licenses from an approved state are prohibited from applying and obtaining an Illinois concealed carry license.  However, those members would carry a loaded and functional concealed handgun in public for self-defense but do not do so because they fear arrest, prosecution, fine, and imprisonment.

"Standing exists when the plaintiff suffers an actual or impending injury, no matter how small; the injury is caused by the defendant's acts; and a judicial decision in the plaintiff's favor would redress the injury." See Ezell v. City of Chi., 651 F.3d 684, 695 (7th Cir. 2011) (quoting Bauer v. Shepard, 620 F.3d 704, 708 (7th Cir. 2010)) (internal quotation marks omitted).

In this case, Plaintiffs characterize the statute as imposing a complete ban on qualified nonresidents in 45 states, Washington, D.C., and U.S. territories from publicly carrying firearms while Illinois residents and those nonresidents from a few states are not so banned.  According to Plaintiffs, this statute violates their Second Amendment right to keep and bear arms, as well as their

rights under the Equal Protection Clause of the Fourteenth Amendment, the Privileges and Immunities Clause of Article IV of the Constitution, and the Fourteenth Amendment Due Process Clause.  Because the individual Plaintiffs allege that they have suffered an actual injury caused by Defendants' acts (enforcement of the statute), the individual Plaintiffs have alleged causation and injury.  Moreover, a decision enjoining the enforcement of Section 40 of the Firearm Concealed Carry Act would redress the individual Plaintiffs' injury.  Therefore, the individual Plaintiffs have satisfied the requirement that a judicial decision in their favor would redress their injury.  Although the individual Plaintiffs did not apply for a concealed carry permit, this fact does not deprive them of standing because the residency requirement in the statute demonstrates that the permit would not have been granted even had they applied.  See, e.g., Sporhase v. Neb., ex rel. Douglas, 458 U.S. 941, 944 n.2 (1982) (finding that the appellants' failure to submit an application did not deprive them of standing to challenge the reciprocity requirement because they would not have been granted a permit had they applied for one).

Page **35** of **64**

The organizational Plaintiffs also have standing. The SAF, Illinois Carry, and the Illinois Rifle Association allege that they have members who are not residents of Illinois and who do not have concealed carry licenses from an approved state.  These members want to carry loaded and functional concealed handguns in public in Illinois for self-defense but do not do so because they fear arrest, prosecution, fine, and imprisonment.  These organizations meet the requirements for association standing because: "(1) their members would otherwise have standing to sue in their own right; (2) the interests the associations seek to protect are germane to their organizational purposes; and (3) neither the claim asserted nor the relief requested requires the participation of individual association members in the lawsuit." Ezell, 651 F.3d at 696 (citing United Food & Commercial Workers Union Local 751 v. Brown Grp., 517 U.S. 544, 553 (1996); Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977); Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors, 522 F.3d 796, 801–02 (7th Cir. 2008)).

Page **36** of **64**

# V. ANALYSIS

As noted above, Plaintiffs seek a preliminary injunction enjoining Defendants from enforcing against Plaintiffs and/or their members the nonresident application ban contained in the Firearm Concealed Carry Act and any other laws that restrict nonresidents' firearm rights and privileges.

"A preliminary injunction is an extraordinary remedy that is available only when the movant shows clear need." Turnell v. CentiMark Corp., 796 F.3d 656, 661 (7th Cir. 2015).  A party seeking to obtain a preliminary injunction must demonstrate: (1) a reasonable likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that the party will suffer irreparable harm if the injunction is not granted.  See Planned Parenthood of Ind., Inc., v. Comm'n of Ind. State Dep't of Health, 699 F.3d 962, 972 (7th Cir. 2012).  The threshold for establishing a likelihood of success on the merits is low.  Mich. v. U.S. Army Corps of Eng'rs, 667 F.3d 765, 782 (7th Cir. 2011); see also Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc., 549 F.3d 1079, 1096 (7th Cir. 2008) (noting that the party seeking a preliminary injunction

"must show that it has a 'better than negligible' chance of success on the merits on at least one of its claims," which is an "admittedly low requirement") (citations omitted).

If these threshold conditions are met, the district court then weighs the balance of the harm to the parties if the injunction is granted or denied.  <u>Girl Scouts of Manitou</u>, 549 F.3d at 1086.  That is, the Court must consider the irreparable harm to Plaintiffs if the preliminary injunction is wrongfully denied versus the irreparable harm to Defendants if the preliminary injunction is wrongfully granted.  <u>Turnell</u>, 796 F.3d at 662.  The Court must also consider the effects, if any, the grant or denial of the preliminary injunction would have on non-parties (the public interest).  <u>Id.</u>

In weighing the harm, the Court applies a sliding scale approach.  <u>Id.</u> That is, "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor."  <u>Roland Mach. Co. v. Dresser Indus., Inc.</u>, 749 F.2d 380, 387 (7th Cir. 1984).  This balancing test requires that the Court "exercise its discretion 'to arrive at a decision based on a subjective evaluation of

Page **38** of **64**

the import of the various factors and a personal, intuitive sense about the nature of the case.'" Girl Scouts of Manitou, 549 F.3d at 1086 (quoting Lawson Prods., Inc. v. Avnet, Inc., 782 F.2d 1429, 1436 (7th Cir. 1986)).  Whether to grant a preliminary injunction is within the Court's discretion.  Ashcroft v. ACLU, 542 U.S. 656, 664 (2004) (noting that the Supreme Court and appellate courts review preliminary injunctions for an abuse of discretion); but see Turnell, 796 F.3d at 662 (noting that a "district court may abuse its discretion by making a clear factual error or a mistake of law").

**A.    Plaintiffs Can Satisfy the Threshold Requirements for a Preliminary Injunction**

1.    Plaintiffs Have Demonstrated a Reasonable Likelihood of Success on the Merits of Their Second Amendment Claim

Plaintiffs argue that they can show a strong likelihood of success on the merits of their claim that Section 40 of the Firearm Concealed Carry Act violates the Second Amendment.  According to Plaintiffs, the law denies virtually all nonresidents of Illinois the fundamental Second and Fourteenth Amendment right of handgun possession available to Illinois residents.  Plaintiffs claim that the State has no interest in denying virtually all nonresidents the right

Page **39** of **64**

to handgun possession based solely on their state of residence.  As such, Plaintiffs assert that under any level of scrutiny, the statute must be enjoined.

The Second Amendment of the United States Constitution provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.  In <u>District of Columbia v. Heller</u>, the United States Supreme Court held that there is a guaranteed "individual right to possess and carry weapons in case of confrontation" based on the Second Amendment.  <u>Heller</u>, 554 U.S. 570, 592 (2008) (also holding that the Second Amended "codified a <u>pre-existing</u> right") (emphasis in original).  Consequently, the Court found that the District of Columbia's ban on handgun possession in the home violated the Second Amendment.  <u>Id.</u> at 635.

Nonetheless, the Court recognized that the right was not unlimited, and that:

> nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the

> carrying of firearms in sensitive places such as schools
> and government buildings, or laws imposing conditions
> and qualifications in the commercial sale of arms.

Id. at 627 (also recognizing that limits on the carrying of dangerous and unusual weapons may be imposed).

Two years later, in McDonald v. City of Chicago, 561 U.S. 742, 750 (2010), the Supreme Court held that the Second Amendment was fully applicable to the states through the due process clause of the Fourteenth Amendment. The Court noted that "the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty." Id. at 778.

Since then, the Seventh Circuit has addressed several cases involving the Second Amendment. See, e.g., Friedman v. City of Highland Park, Ill., 784 F.3d 406 (7th Cir. 2015), petition for cert. filed (finding that an ordinance that prohibited the possession of assault weapons or large-capacity magazines did not violate the Second Amendment); Moore v. Madigan, 702 F.3d 933, 942 (7th Cir. 2012) (directing the district court to enter declarations that Illinois' unlawful use of weapons and aggravated unlawful use of a

weapon statutes—which generally prohibited the carrying of guns in

public in Illinois—violated the Second Amendment and to enter

permanent injunctions); Ezell, 651 F.3d at 711 (finding the

plaintiffs were entitled to a preliminary injunction against Chicago's

firing range ban).  In each of these cases, the Seventh Circuit has

explicitly or implicitly used a two-step framework to analyze the

claim.  See, e.g., Friedman, 784 F.3d 406; Moore, 702 F.3d 933;

Ezell, 651 F.3d at 702-03.  Under that framework, the court (1)

determines whether the restricted activity is protected by the

Second Amendment and (2) if so, examines the "strength of the

government's justification for restricting or regulating the exercise

of Second Amendment rights."  Ezell, 651 F.3d at 702-03.

Under step one, the Court must determine whether the

restricted activity is protected by the Second Amendment in the first

place.  Ezell, 651 F.3d at 701.  If the government can establish that

the challenged firearms law regulates activity that falls outside the

scope of the Second Amendment as it was understood at the

relevant historical time—1791, when the Second Amendment was

ratified, or 1868, when the Fourteenth Amendment was ratified—

Page **42** of **64**

then the analysis ends.  Ezell, 651 F.3d at 703; but see Moore, 702

F.3d at 935 (suggesting that the critical year is always 1791).  In

such a case, the regulated activity is unprotected and the law is not

subject to further Second Amendment review.  Ezell, 651 F.3d at

703.  If the government cannot make such a showing, either

because the "historical evidence is inconclusive or suggests that the

regulated activity is not categorically unprotected," then the Court

must examine the second step of the framework.  Ezell, 651 F.3d at

703 (emphasis in original).  In this case, Defendants concede that

the regulated conduct falls within the scope of the Second

Amendment.  Defs. Mem. at 10.

Turning to the second step of the framework, the Court must

inquire into the "strength of the government's justification for

restricting or regulating the exercise of Second Amendment rights."

Ezell, 651 F.3d at 703.  Specifically, the Court must examine the

"regulatory means the government has chosen and the public-

benefits end it seeks to achieve."  Id.  The rigor of this review

depends on "how close the law comes to the core of the Second

Amendment right and the severity of the law's burden on the right."

Ezell, 651 F.3d at 703; see also Ill. Ass'n of Firearms Retailers v. City of Chi., 961 F.Supp.2d 928, 935 (N.D. Ill. 2014) ("[T]he level of scrutiny applied varies according to the breadth of the challenged Second Amendment restriction").

Broad prohibitory laws restricting core Second Amendment rights are likely categorically unconstitutional.  Ezell, 651 F.3d at 703 (citing Heller and McDonald, which involved regulations that prohibited handgun possession in the home).  For other laws, however, the appropriate standard of review is somewhere between intermediate and strict scrutiny, as Heller made clear that a rational basis review was inappropriate in the Second Amendment context.  Heller, 554 U.S. at 628 n. 27 (holding that "if all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect"); Ezell, 651 F.3d at 703; but see Friedman, 784 F.3d at 410 ("But instead of trying to decide what 'level' of scrutiny applies, and how it works, inquiries that do not resolve any concrete dispute, we think it better to ask whether a regulation

Page **44** of **64**

bans weapons that were common at the time of ratification or those that have 'some reasonable relationship to the preservation or efficiency of a well regulated militia' [citations omitted] and whether law-abiding citizens retain adequate means of self-defense.").

When determining the appropriate level of scrutiny, courts have noted that "a severe burden on the core Second Amendment right of self-defense will require an extremely strong public interest justification and a close fit between the government's means and its end." Ezell, 651 F. 3d at 708.  In contrast, laws that restrict "activity lying closer to the margins of the Second Amendment right, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified." Id.  "How much more easily depends on the relative severity of the burden and its proximity to the core of the right." Id.; compare United States v. Skoien, 614 F.3d 638, 643-44 (7th Cir. 2010) (en banc) (accepting the United States' concession that some form of strong showing, possibly intermediate scrutiny, applied to review law that barred persons convicted of a misdemeanor crime of domestic violence from possessing a firearm); United States v. Williams, 616 F.3d 685,

692 (7th Cir. 2010) (applying intermediate scrutiny to examine statute that prohibits felons from possessing guns but not deciding whether intermediate scrutiny is the precise test applicable to all challenges to gun restrictions); United States v. Yancey, 621 F.3d 681, 683 (7th Cir. 2010) (citing Skoien and Williams and evaluating whether the government made a strong showing that the statute prohibiting habitual drug abusers from possessing a firearm was substantially related to an important governmental objective but not deciding whether a different kind of regulation might require a different approach); with Ezell, 651 F.3d at 708 (applying a more rigorous showing than applied in Skoien, "if not quite 'strict scrutiny,'" where plaintiffs were law-abiding citizens, the firing range ban was not merely regulatory, and the ban seriously encroached on an important corollary to the exercise of the core right to possess firearms for self-defense); Moore, 702 F.3d at 940 (requiring something more than the level of scrutiny applied in Skoien because the gun rights of the entire law-abiding adult population of Illinois were affected by the "blanket prohibition on carrying guns in public").

Page **46** of **64**

Although Plaintiffs assert that Section 40 of the Firearm Concealed Carry Act fails under any standard of scrutiny, Plaintiffs also argue that the prohibition on virtually all nonresidents constitutes a severe burden on the core Second Amendment right of self-defense and violates the rights of even more law-abiding people than in the <u>Moore</u> case. Pls. Mem. at 16 (citing <u>Moore</u>, 702 F.3d at 940 (noting that the law affected "the gun rights of the entire law-abiding adult population of Illinois"). Therefore, Plaintiffs assert that a level of scrutiny akin to strict scrutiny should be applied.

Defendants argue that the conduct falls outside the core protections of the Second Amendment, which Defendants describe as the right of law-abiding citizens to use arms in defense of hearth and home. Defs. Mem. at 11. Defendants also argue that the regulated conduct is outside the core protections of the Second Amendment because the regulation implicates longstanding prohibitions that are presumptively lawful—prohibitions against possession by the criminally dangerous and mentally ill; public carriage of firearms; and possession by nonresidents. Defs. Mem. at 12. Defendants cite laws pertaining to prohibitions against

Page **47** of **64**

public carriage of firearms dating back nearly a century.  Mot. at

13.  For example, Defendants cite statutes that required obtaining a

firearm carry license in the county in which the person resides or

requiring that an individual be a resident of the state.  <u>See</u> Act of

Feb. 16, 1909, ch. 51, 1909 W. Va. Acts 394, 395-96; Act of Mar. 3,

191, ch. 74, § 5, 1919 Mont. Acts 147, 148; At of Apr. 7, 1921, § 2,

1921 Mo. Laws 692.  Accordingly, Defendants assert that

intermediate scrutiny should apply.

Determining the correct level of scrutiny here is difficult

because, on the one hand, the regulation infringes on most

nonresidents' Second Amendment right to carry a handgun for self-

defense.[11]  Moreover, while some courts have held that the core

Second Amendment right is self-defense in the home, the Seventh

---

[11] The law is not a wholesale ban on all nonresidents, which might warrant a
different result.  <u>See</u> <u>Application of Griffiths</u>, 413 U.S. 717, 725 (1973) ("Nor
would the possibility that some resident aliens are unsuited to the practice of
law be a justification for a wholesale ban" on resident aliens practicing law in
the state); <u>Palmer v. D.C.</u>, 59 F. Supp. 3d 173, 184 (D.D.C. 2014) (finding a
total ban on carrying a handgun outside the home for self-defense was
unconstitutional under any standard of scrutiny and, enjoining "the District
from completely banning the carrying of handguns in public for self-defense by
otherwise qualified non-residents based solely on the fact that they are not
residents of the District"), <u>appeal</u> <u>dismissed</u>, No. 14-7180, 2015 WL 1607711
(D.C. Cir. Apr. 2, 2015).

Page **48** of **64**

Circuit in <u>Moore</u> clearly held that the Supreme Court "decided that the amendment confers a right to bear arms for self-defense, which is as important outside the home as inside." <u>Moore</u>, 702 F.3d at 942.  Under Illinois law, the residents of all but four states cannot apply for or obtain a concealed carry license in Illinois because their states do not have substantially similar laws.  Further, as was the case in <u>Moore</u> and <u>Ezell</u>, which applied something more than intermediate scrutiny, Plaintiffs are law-abiding, responsible citizens and the case involves the central self-defense component of the Second Amendment.  <u>See</u> <u>Ezell</u>, 651 F.3d at 708; <u>Moore</u>, 702 F.3d at 940.

On the other hand, the Supreme Court specifically stated that long-standing prohibitions on the possession of firearms by felons and the mentally ill are permissible.  <u>Heller</u>, 554 U.S. at 627.  If Illinois' law is considered a prohibition on certain people carrying concealed handguns in public, then intermediate scrutiny would be appropriate.  <u>See</u> <u>Moore</u>, 702 F. 3d at 940 (a law that merely bans guns in certain places or forbids a class of persons who present a higher than average risk of misusing a gun from possessing them

Page **49** of **64**

require a lesser showing of justification).  Admittedly, the law at

issue here does not just prohibit nonresidents who are felons or

mentally ill from obtaining a license because the law limits

nonresident applications based on the nonresident's states' law.

However, the regulations are meant to identify individuals who

would be unqualified to carry a concealed firearm—something

Defendants assert they cannot do if the nonresident's state does not

have substantially similar laws.  The very few cases that have

addressed a similar issue (and which involved bans on most, if not

all, nonresidents) suggest that intermediate scrutiny is appropriate.

For example, in <u>Peterson v. Martinez</u>, 707 F.3d 1197 (10th Cir.

2013), the majority found that Colorado law, which did not grant

nonresidents concealed carry licenses, did not violate the Second

Amendment.  The majority found that carrying a concealed firearm

was not protected by the Second Amendment because bans on the

concealed carry of firearms were longstanding.  The concurring

judge further noted, however, that even if concealed carry were

protected, he would have applied intermediate scrutiny and found

the state carried its burden.  <u>Id.</u> at 1216 (Lucero, J., concurring).  In

that case, the government had proffered unrefuted evidence demonstrating that much of the information necessary to determine whether an individual was qualified was kept in locally maintained databases and Colorado did not have access to such information with respect to nonresident applicants. The concurring judge would have found that, while the residency requirement governed the vast majority of individuals in the United States, it burdened a relatively small proportion of individuals present in the state at any time. Id. at 1219. In light of the state officials' statements that they would be unable to determine whether a nonresident applicant was qualified to obtain a concealed handgun license, the concurring judge concluded that the residency requirement was substantially related to the stated governmental objective. Id. at 1217; see also, e.g., Bach v. Pataki, 408 F.3d 75, 92-94 (2d Cir. 2005), overruled on other grounds by McDonald, 561 U.S. 742 (2010) (holding, on review of a Privileges and Immunities Clause claim, that New York's interest in monitoring gun licenses was substantial and that the restriction of licenses to residents and those working primarily within the state was sufficiently related to that interest). The Court

Page **51** of **64**

notes, however, that <u>Peterson</u> may be distinguishable because Colorado allows open carry for residents and nonresidents alike, which would suggest that the prohibition on concealed carry by nonresidents was less onerous. <u>See</u> <u>Peterson</u>, 707 F.3d at 1209 (noting that the law the plaintiff was challenging did not "affect the ability of non-residents to openly carry firearms in the state").

Upon review of the relevant case law and the regulation at issue, the Court finds that intermediate scrutiny is appropriate. The statute at issue does not ban all nonresidents from public carry in Illinois, the statute regulates which nonresidents may publicly carry in Illinois, and the statute only burdens a small number of people at any one time. Because the regulation does not constitute a complete ban and instead regulates concealed carry by nonresidents in Illinois, intermediate scrutiny is appropriate.

Intermediate scrutiny requires that the law must be "substantially related to an important government objective." <u>Clark v. Jeter</u>, 486 U.S. 456, 461 (1988); <u>see</u> <u>also</u> <u>Friedman</u>, 784 F. 3d at 410 (Manion, J., dissenting) (noting that "intermediate scrutiny does not require that the ordinance be the least restrictive means,

Page **52** of **64**

but that it serve an important government interest in a way that is substantially related to that interest"). Intermediate scrutiny requires a reasonable fit between the ends and the means, not necessarily a fit that is perfect. Ezell, 651 F.3d at 708 (quoting Bd. of Trs. of State Univ. of N.Y. v. Fox, 492 U.S. 469, 480 (1989)).

Defendants assert that Plaintiffs do not have a reasonable likelihood of success on the merits because they cannot show a Second Amendment violation. Defendants argue that Firearm Concealed Carry Act is reasonably related to Illinois' substantial interest in preventing unqualified people from publicly carrying loaded firearms. Defendants assert that Illinois cannot ensure that nonresidents from states without similar firearms laws are qualified to publicly carry firearms without endangering Illinois' citizens. Defs. Mem. at 16. Even if Defendants could confirm an applicant were qualified when he or she applied, Defendants have no means to ensure that that individual continues to be qualified. Information on disqualifying out-of-state mental health conditions, arrests, and prosecutions is not reliably available through national databases. Id. Moreover, out-of-state mental health providers and

Page **53** of **64**

law enforcement officials are under no obligation to notify Illinois should they discover a nonresident's disqualifying condition.  Id.

In response, Plaintiffs argue that the statute will not survive intermediate scrutiny.  Plaintiffs assert the State has no interest in denying virtually all nonresidents their right to handgun possession based solely on their states of residence and they should at least be allowed to apply for a concealed carry license.  Pls. Mem. at 17. Plaintiffs assert that it is enough that the nonresidents would have to meet the same qualifications that every Illinois concealed carry license holder must meet.  Id. at 20 (argument raised in support of the Equal protection challenge).  At the hearing, Plaintiffs argued that Illinois trusts nonresidents with firearms in numerous other capacities, as demonstrated by the exceptions to the FOID Act for hunting, carrying a weapon in a vehicle, and possessing a functional firearm in the home of an Illinois resident.  See 430 ILCS 65/2(b)(5), 2(b)(9), 2(b)(10), 2(b)(13).  Plaintiffs additionally pointed out, by way of example, that if an Illinois resident with an Illinois concealed carry license goes to college in a state without laws

Page **54** of **64**

substantially similar to Illinois, Illinois is not in a position to monitor that person's conduct in that other state.

At this stage of the litigation, the Court finds that Plaintiffs can show at least a better-than-negligible likelihood of success on the merits. While Defendants have pointed to evidence tending to show an important and strong governmental interest, it is possible that Defendants' evidence will not ultimately show that the regulations will, in actuality, alleviate the problem identified— preventing unqualified individuals from publicly carrying loaded firearms. See, e.g., Mance v. Holder, 74 F. Supp. 3d 795, 813 (N.D. Tex. 2015) (finding that the federal interstate handgun transfer ban was unconstitutional on its face, even under intermediate scrutiny, because the defendants did not carry their burden of showing how the ban would "alleviate, in a material way, the problem of prohibited persons obtaining handguns" and unconstitutional as applied because the plaintiffs likely did not pose the threat to public safety that motivated Congress to enact the ban), appeal filed. For instance, the Court notes that the survey sent to the other states may not have been tailored toward finding out all of the information

Page **55** of **64**

Illinois claims it needs to ensure that the other state has substantially similar laws.  In addition, on the record currently before the Court, two of the states found to have substantially similar laws answered one of the questions on the survey, "no."  <u>See</u> d/e 23-1, p. 41 of 87; d/e 23-2, p. 63 of 87 (wherein New Mexico and Virginia answered "No" to Question No. 5—"Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license?").

Consequently, the Court finds that Plaintiffs can show at least a better-than-negligible likelihood of success on the merits.  Having found that Plaintiffs have a better-than-negligible chance of success on their Second Amendment claim, the Court need not address Plaintiffs' likelihood of success on the merits of the remaining claims. <u>See</u> <u>Girls Scouts</u>, 549 F.3d at 1096.

2.   <u>Plaintiffs Can Show Irreparable Harm and No Adequate Remedy at Law</u>

To obtain a preliminary injunction, the movant must "establish that it will be irreparably harmed if it does not receive

preliminary relief, and that money damages and/or an injunction

ordered at final judgment would not rectify that harm." Abbott

Labs. v. Mead Johnson & Co, 971 F.2d 6, 16 (7th Cir. 1992).  As

stated in Roland Machinery:

> The absence of an adequate remedy at law is a
> precondition to any form of equitable relief. The
> requirement of irreparable harm is needed to take care of
> the case where although the ultimate relief that the
> plaintiff is seeking is equitable, implying that he has no
> adequate remedy at law, he can easily wait till the end of
> trial to get that relief.

749 F.2d at 386.

Plaintiffs argue that they enjoy a fundamental right to keep

and bear arms.  The denial of that right, even temporarily,

constitutes irreparable harm for purposes of granting injunctive

relief.

In Ezell, the Seventh Circuit recognized that irreparable harm

is presumed for some kinds of constitutional violations, such as

First Amendment violations.  Ezell, 651 F.3d at 699.  The Court

stated, "[t]he Second Amendment protects similarly intangible and

unquantifiable interests." Id.  Moreover, the Ezell Court noted that

Heller held that the central component of the right to possess

Page **57** of **64**

firearms is for protection, and infringement of such a right could not be compensated by damages.  Id.

Defendants attempt to distinguish Ezell on the basis that Ezell involved a firing-range ban which, coupled with Chicago's training requirement, implicated a ban on the core right to possess firearms in the home for self-protection.  Defendants contend that Plaintiffs cannot demonstrate any infringement on their right to defend "hearth and home" because they live in other states and the Carry Act only concerns public carriage.  Defendants also contend that Plaintiffs have failed to demonstrate any continuing violation because they travel or visit only occasionally or half of their time, they have not indicated that they work in places that would allow them to bring their firearms to work (for those who work in Illinois), and those who travel on Illinois highways are permitted to carry the gun inside a vehicle so long as the gun is unloaded and cased.  Finally, Defendants argue that the Plaintiffs only seek the ability to apply for a license and whether they would be found qualified is speculative.

Page **58** of **64**

Given the strong language in <u>Ezell</u>, Plaintiffs meet the requirement of showing a lack of an adequate remedy at law and irreparable harm if the injunction is not granted. <u>See</u> <u>Bolton v. Bryant</u>, 71 F. Supp. 3d 802, 818 (N.D. Ill. 2014) (holding that the denial of a license to carry a concealed weapon without due process of law would infringe on the plaintiff's  Second Amendment right, he would suffer irreparable harm, and he would have no adequate remedy at law) (citing <u>Ezell</u>, 651 F.3d 699); <u>see</u> <u>also</u> <u>e.g.</u>, <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976) (plurality opinion) ("the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury").[12]

## B.    The Balance of Harms and the Public Interest Weigh in Favor of Denying the Preliminary Injunction

Because the Court has found that Plaintiffs have a reasonable likelihood of success on the merits, no adequate remedy at law, and irreparable harm, the Court must weigh the balance of harm to the parties if the injunction is granted or denied.  The Court must also

---

[12] The Seventh Circuit has noted that "<u>Heller</u> and <u>McDonald</u> suggest that First Amendment analogues are more appropriate" to develop the appropriate level of scrutiny for reviewing Second Amendment violations.  <u>Ezell</u>, 651 F. 3d at 706.

consider the public interest.  And, as noted above, the likelihood of success on the merits affects the balance of the harms.  <u>Planned Parenthood</u>, 699 F. 3d at 972; <u>Backpage.com, LLC v. Dart</u>, --- F. Supp. 3d ---, No. 15 C 06340, 2015 WL 5174008, at *12 (N.D. Ill. Sept. 2, 2015)(finding that the small likelihood of success on the merits affected the balancing test and concluding that the plaintiff therefore must establish that the balance of harms "falls decisively on its side"), <u>appeal</u> <u>filed</u>.

Plaintiffs argue that the balance of interests favor immediate injunctive relief.  According to Plaintiffs, they are certain to prevail on the merits.  Absent relief, they will continue to suffer irreparable injury, if not actual physical harm.  According to Plaintiffs, the State has no legitimate interest in the prohibition, and the public interest strongly favors equal protection of the law, respecting fundamental rights, and the ability of all law-abiding persons in Illinois to defend themselves equally.  Plaintiffs also ask that the Court at least allow them to apply for a concealed carry license.

Defendants disagree that the balance of interests favor immediate injunctive relief.  Defendants assert that the goal of

Page **60** of **64**

preserving the status quo warrants denial of the Plaintiffs' motion in favor of preserving the current firearm scheme pending a full adjudication on the merits. The risk to the public of an erroneous decision involving firearms is self-evident and outweighs the speculative harm to Plaintiffs while the case proceeds. Defendants also assert that even if Plaintiffs are entitled to injunctive relief at this stage, their request is overly broad. Even if a preliminary injunction were warranted, the Court should order no more than that the ISP permit the named Plaintiffs who have expressed a desire to apply to do so notwithstanding the residency requirements.

Before balancing the harms, the Court must determine how likely Plaintiffs are to win because that likelihood affects the balance of harms. The Court finds that Plaintiffs' likelihood of success is neither strong nor weak. Therefore, the balance of harms must weigh slightly more in Plaintiffs' favor than in Defendants' favor for the preliminary injunction to be granted. See, e.g., Roland Mach., 749 F.2d at 387 (the more likely the plaintiff is to win, the less heavily the balance of harms must favor the plaintiff

Page **61** of **64**

and vice versa).  Moreover, the effect on the public must favor
granting a preliminary injunction.

In this case, the balance of harms favors denying a
preliminary injunction.  When comparing the potential irreparable
harm faced by Plaintiffs if the preliminary injunction is wrongfully
denied versus the potential irreparable harm faced by Defendants if
the preliminary injunction is wrongfully granted, the Court finds
that balance of harms weights more strongly in favor of Defendants.
Defendants have indicated that they do not have the funds to
perform a complete record search of applicants in other states.
Even if Plaintiffs meet the application requirements and are issued
a concealed carry license, Defendants do not have the means to
monitor those Plaintiffs in the same manner that Illinois residents
are monitored.  Therefore, if the preliminary injunction is
erroneously granted, Plaintiffs could obtain concealed carry licenses
because they qualify, but Illinois would have no procedure in place
to ensure continued compliance with the Illinois requirements
should Plaintiffs' circumstances change.  Moreover, the public has a
strong interest in ensuring that those permitted to carry concealed

Page **62** of **64**

handguns in Illinois are qualified to do so and remain qualified to do so even after the license is granted. See, e.g., See Bolton, 71 F. Supp. 3d at 818 (finding the harm to the plaintiff if the preliminary injunction were denied did not overcome the harm to the public interest where the public had a significant interest in "keeping a concealed weapon out of the hands of a man who allegedly impersonated a peace officer and unlawfully used a weapon").

In contrast, while Plaintiffs are being denied the ability to carry concealed in Illinois, Plaintiffs are permitted to carry concealed handguns in their home states, can bring firearms to Illinois in their vehicles, can possess functioning firearms in the homes of Illinois residents with permission, can hunt, and can take their firearms to shooting ranges. The Court points this out not to suggest that the harm is measured by the extent to which the right to bear arms may be exercised in another jurisdiction. See Ezell, 651 F.3d at 697 (rejecting the argument that the plaintiffs did not suffer irreparable harm because they could travel longer distances to use a firing range, which was a quantifiable expense). Instead, the Court mentions this fact to demonstrate that the extent of the

Page **63** of **64**

irreparable harm is limited to those occasions when Plaintiffs will be present in Illinois in a capacity in which they would be able to carry a concealed handgun if they had the appropriate license.  Moreover, the Court by no means intends to diminish the potential irreparable harm to Plaintiffs by not being able to carry concealed in Illinois. However, given that the Plaintiffs' likelihood of success on the merits is not strong and the balance of harms favors Defendants and the public, the Court denies Plaintiffs' request for a preliminary injunction.

## VI. CONCLUSION

For the reasons stated, Plaintiffs' Motion for Preliminary Injunction (d/e 17) is DENIED.

ENTER: December 4, 2015

FOR THE COURT:

 s/Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE

Page **64** of **64**

```
MIME-Version:1.0
From:ECF_Returns@ilcd.uscourts.gov
To:ECF_Notices
Bcc:
--Case Participants: David G Sigale (dgslaw@att.net, dsigale@sigalelaw.com), Joshua D Ratz
(bmyers@atg.state.il.us, cstarkweather@atg.state.il.us, jratz@atg.state.il.us,
kturnbull@atg.state.il.us, kwerth@atg.state.il.us, mabecker@atg.state.il.us), Judge Sue E.
Myerscough (chambers.myerscough@ilcd.uscourts.gov), Magistrate Judge Tom Schanzle-Haskins
(chambers.schanzle-haskins@ilcd.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:2550105@ilcd.uscourts.gov
Subject:Activity in Case 3:14-cv-03320-SEM-TSH Culp et al v. Madigan et al Order on Motion
for Summary Judgment
```
Content−Type: text/html

## U.S. District Court

## CENTRAL DISTRICT OF ILLINOIS

**Notice of Electronic Filing**

The following transaction was entered on 12/9/2015 at 4:21 PM CST and filed on 12/9/2015

| | |
|---|---|
| **Case Name:** | Culp et al v. Madigan et al |
| **Case Number:** | 3:14−cv−03320−SEM−TSH |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
 **TEXT ORDER: Plaintiffs have appealed this Court's denial of the Motion for Preliminary Injunction. See Notice of Appeal [30]. An appeal of an interlocutory decision "does not divest a district court of jurisdiction or prevent the court 'from finishing its work and rendering a final decision.'" Staffa v. Pollard, 597 F. App'x 893, 895 (7th Cir. 2015) (unpublished decision) (quoting Wis. Mut. Ins. Co. v United States, 441 F.3d 502, 504 (7th Cir. 2006)). However, in light of the current state of the law concerning the Second Amendment, and the fact that the Seventh Circuit decision on the preliminary injunction will be extremely beneficial to the ultimate resolution of this case, the Court sua sponte stays these proceedings. See, e.g., Jackson v. Van Kampen Series Fund, Inc., No. 06−cv−944−DRH, 2007 WL 1532090, at *2 (S.D. Ill. May 24, 2007) (discussing the court's inherent authority to stay proceedings sua sponte). Defendants' pending Motion for Summary Judgment [27] is DENIED AS MOOT with leave to refile after the interlocutory appeal is decided. Entered by Judge Sue E. Myerscough on 12/9/2015. (ME, ilcd)**

**3:14−cv−03320−SEM−TSH Notice has been electronically mailed to:**

David G Sigale   dsigale@sigalelaw.com, dgslaw@att.net

Joshua D Ratz   jratz@atg.state.il.us, bmyers@atg.state.il.us, cstarkweather@atg.state.il.us, kturnbull@atg.state.il.us, kwerth@atg.state.il.us, MABecker@atg.state.il.us

**3:14−cv−03320−SEM−TSH Notice has been delivered by other means to:**