No. 15-3738

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| KEVIN W. CULP, MARLOW DAVIS, FREDDIE REED-DAVIS, DOUGLAS W. ZYLSTRA, JOHN S. KOLLER, STEVE STEVENSON, PAUL HESLIN, MARLIN MANGELS, GUS C. BROWNE II, JEANELLE WESTROM, SECOND AMENDMENT FOUNDATION, INC., ILLINOIS CARRY, and ILLINOIS STATE RIFLE ASSOCIATION, | ) ) ) ) ) ) ) ) ) ) | Appeal from the United States District Court for the Central District of Illinois. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 3:14-CV-3320 |
| LISA MADIGAN, in her official capacity as Attorney General of the State of Illinois, HIRAM GRAU, in his official capacity as Director of the Illinois State Police, and JESSICA TRAME, as Bureau Chief of the Illinois State Police Firearm Services Bureau, | ) ) ) ) ) ) ) ) | |
| Defendants-Appellees. | ) ) ) | The Honorable SUE E. MYERSCOUGH, Judge Presiding. |

**BRIEF OF DEFENDANTS-APPELLEES**

**LISA MADIGAN**
Attorney General
State of Illinois

**BRETT E. LEGNER**
Deputy Solicitor General
100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-2146
blegner@atg.state.il.us

**CAROLYN E. SHAPIRO**
Solicitor General

100 West Randolph Street
12th Floor
Chicago, Illinois 60601
(312) 814-3312

Attorneys for Defendants-Appellees.

# TABLE OF CONTENTS

**PAGE(S)**

TABLE OF AUTHORITIES........................................... iii

JURISDICTIONAL STATEMENT....................................... 1

ISSUES PRESENTED FOR REVIEW................................... 2

STATEMENT OF THE CASE......................................... 3

SUMMARY OF ARGUMENT.......................................... 10

ARGUMENT...................................................... 11

I.  This Court reviews the district court's denial of plaintiffs' motion for preliminary injunction for an abuse of discretion...................... 11

II. Illinois's statutory regime governing public carry of firearms............ 11

III. Plaintiffs do not have a likelihood of success on the merits of their claims. 16

    A.  The nonresidents provision of the Concealed Carry Act is constitutional because it is substantially related to an important State interest and is necessary to determine whether nonresidents are, and remain, eligible for a concealed carry license. ........... 16

        1.  The nonresidents provision does not significantly affect core Second Amendment rights............................. 17

        2.  The nonresident provision is substantially related to the State's interest in protecting the public by ensuring that only qualified individuals carry concealed firearms in public........................... 22

    B.  Plaintiffs' other constitutional challenges also fail. .............. 28

        1.  The nonresidents provision does not deny nonresidents privileges and immunities that are granted to Illinois residents........................... 28

        2.  The nonresidents provision does not violate equal protection. 30

3.      The nonresidents provision does not violate
due process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   31

IV.   The harm to the public of granting a preliminary injunction outweighs the
harm plaintiffs risk in waiting for a final
resolution of their action. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   32

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   35

# TABLE OF AUTHORITIES

**CASES**                                                           **PAGE(S)**

*Baskin v. Bogan*,
    766 F.3d 648 (7th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*BBL, Inc. v. City of Angola*,
    809 F.3d 317 (7th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Berron v. Ill. Concealed Carry Licensing Review Bd.*,
    __ F.3d __ , 2016 WL 3361551 (7th Cir. June 17, 2016). . . . . . . . . . 16, 23, 24

*D.U. v. Rhoades*,
    ___ F.3d ___ , 2016 WL 3126263 (7th Cir. June 3, 2016). . . . . . . . . . . . . . 11

*Dist. of Columbia v. Heller*,
    554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Drake v. Filko*,
    724 F.3d 426 (3d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ezell v. City of Chi.*,
    651 F.3d 684 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20, 23

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*,
    549 F.3d 1079 (7th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Hightower v. City of Boston*,
    693 F.3d 61 (1st Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 30

*Horsley v. Trame*,
    808 F.3d 1126 (7th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 22, 27

*Kachalsky v. County of Westchester*,
    701 F.3d 81 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Kuttner v. Zaruba*,
    819 F.3d 970 (7th Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Kwong v. Bloomberg*,
    723 F.3d 160 (2nd Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Matthews v. Eldridge,*
    424 U.S. 319 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Moore v. Madigan,*
    702 F.3d 933 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 21, 23

*Moore v. Madigan,*
    708 F.3d 901 (7th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 27

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco,*
    *Firearms & Explosives,*
    700 F.3d 185 (5th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Peruta v. Cty. of San Diego,*
    __ F.3d __ , 2016 WL 3194315 (9th Cir. June 9, 2016). . . . . . . . . . . . . . . 18

*Peterson v. Martinez,*
    707 F.3d 1197 (10th Cir. 2013). . . . . . . . . . . . . . . . . . . . . 18, 25, 26, 27, 29

*Robertson v. Baldwin,*
    165 U.S. 275 (1897). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Shepard v. Madigan,*
    734 F.3d 748 (7th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Supreme Ct. of New Hampshire v. Piper,*
    470 U.S. 274 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Teixeira v. Cty. of Alameda,*
    __ F.3d __ , 2016 WL 2849245 (9th Cir. May 16, 2016). . . . . . . . . . . . . . . 30

*United States v. Masciandro,*
    638 F.3d 458 (4th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Shields,*
    789 F.3d 733 (7th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Williams,*
    616 F.3d 685 (7th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Williams v. Ind. State Police Dep't,*
    797 F.3d 468 (7th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Winter v. Natural Resources Defense Council, Inc.,*
      555 U.S. 7 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Woollard v. Gallagher,*
      712 F.3d 865 (4th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CONSTITUTIONAL PROVISIONS and STATUTES

U.S. Const. art. IV, § 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

28 U.S.C. § 1292(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

430 ILCS 65/0.01 *et seq.* (2014).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

430 ILCS 65/1 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

430 ILCS 65/2(a) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

430 ILCS 65/2(b) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

430 ILCS 65/2(b)(5) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

430 ILCS 65/2(b)(7) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

430 ILCS 65/2(b)(8) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

430 ILCS 65/2(b)(9) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

430 ILCS 65/2(b)(10) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

430 ILCS 65/4(a) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

430 ILCS 65/4(a)(2)(ii) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

430 ILCS 65/4(a)(2)(iv) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

430 ILCS 65/4(a)(2)(vii) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

430 ILCS 65/4(a)(2)(ix) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

430 ILCS 65/7 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

430 ILCS 65/8 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

430 ILCS 65/8(u) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

430 ILCS 66/1 *et seq.* (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

430 ILCS 66/10 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

430 ILCS 66/10(a) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

430 ILCS 66/10(a)(4) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

430 ILCS 66/15(a) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

430 ILCS 66/20 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

430 ILCS 66/20(a) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

430 ILCS 66/20(c) (2014).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

430 ILCS 66/25 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

430 ILCS 66/25(1) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

430 ILCS 66/25(2) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

430 ILCS 66/25(3)(A) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

430 ILCS 66/25(3)(B) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

430 ILCS 66/25(4) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

430 ILCS 66/25(5) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

430 ILCS 66/25(6) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

430 ILCS 66/40 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

430 ILCS 66/40(a) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

430 ILCS 66/40(b) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

430 ILCS 66/40(c) (2014).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15, 24

430 ILCS 66/40(c)(2) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

430 ILCS 66/40(d) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

430 ILCS 66/40(e) (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

430 ILCS 66/75 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellants' jurisdictional statement is not complete and correct. Defendants-Appellees provide this jurisdictional statement pursuant to Circuit Rule 28(b).

Plaintiffs are individuals who reside in States other than Illinois and organizations whose membership includes residents of States other than Illinois. They brought their complaint against defendants Lisa Madigan, Attorney General of Illinois, Hiram Grau, former Director of the Illinois State Police, and Jessica Trame, as Bureau Chief of the Illinois State Police Firearm Services Bureau, alleging that a provision of the Illinois Firearm Concealed Carry Act (Concealed Carry Act), 430 ILCS 66/40 (2014), was unconstitutional because it violated their rights under the Second and Fourteenth Amendments and the Privileges and Immunities Clause of the United States Constitution. Doc. 1. The district court had jurisdiction over these claims raising federal questions pursuant to 28 U.S.C. § 1331.

Plaintiffs moved for a preliminary injunction, seeking to enjoin enforcement of § 40 of the Concealed Carry Act. Doc. 17. On December 4, 2015, the district court denied that motion. Doc. 29. On December 8, 2015, plaintiffs timely filed a notice of appeal from that order. Doc. 30. This Court has jurisdiction over this interlocutory appeal from denial of a preliminary injunction pursuant to 28 U.S.C. § 1292(a).

**ISSUES PRESENTED FOR REVIEW**

1.  Whether plaintiffs have no likelihood of success on the merits where the Illinois statute that permits nonresidents to apply for a concealed carry license only if the nonresident's home State has gun possession laws "substantially similar" to Illinois is substantially related to Illinois's important interest in protecting public safety.

2.  Whether the district court acted within its discretion in balancing the harms and denying the motion for preliminary injunction where the injunction would pose a serious risk of unqualified individuals carrying concealed firearms in public in Illinois.

## STATEMENT OF THE CASE

## I. Procedural Background

Plaintiffs are (1) individual residents of States other than Illinois who wish to receive a license to carry concealed firearms while in Illinois as well as (2) organizations whose membership includes such nonresidents.  Doc. 1.  They challenged an Illinois law that allows nonresidents to apply for an Illinois concealed carry license only if their home State's gun possession laws are substantially similar to Illinois's and they are licensed in their home State.  *Id*.  Plaintiffs moved for a preliminary injunction, seeking to enjoin enforcement of what they referred to as the "non-residency application ban."  Doc. 17.  The district court denied that motion on the ground that the balance of the harms weighed against granting the injunction and this interlocutory appeal followed.  Docs. 29-30.

## II. Factual background

### Plaintiffs' complaint

Plaintiffs are residents of States other than Illinois or organizations whose memberships includes individuals who are not Illinois residents.  Doc. 1 at 4-9.  The various individual plaintiffs reside in Pennsylvania, Wisconsin, Indiana, Colorado, Missouri, or Iowa.  *Id*. at 4-6.  Their complaint challenges § 40 of the Concealed Carry Act, 430 ILCS 66/40 (2014), and claims that the law prevents them from obtaining a license to carry a concealed firearm in Illinois because their home State's gun possession laws are not substantially similar to Illinois's gun possession laws.  *Id*.  They allege that this violates their rights under the Second and

Fourteenth Amendments and the Privileges and Immunities Clause of the Constitution. *Id*. at 14-18. Plaintiffs seek a declaration that "the Illinois residency requirement contained in 430 ILCS 66/40, as applied to Plaintiffs, is unconstitutional." *Id*. at 16.

**Proceedings on preliminary injunction motion**

Plaintiffs moved for a preliminary injunction. Doc. 18. They asserted that, under § 40, only a resident of a State that has requirements that are "substantially similar" to Illinois's gun possession requirements may apply for an Illinois concealed carry license. *Id*. at 3. As the Illinois Administrative Code defines substantial similarity, four States — Hawaii, New Mexico, South Carolina, and Virginia — have substantially similar laws. *Id*. at 4; *see* 20 Ill. Admin. Code § 1231.110.

In response to the motion, defendants presented the affidavit of Jessica Trame, Bureau Chief of the Firearms Services Bureau of the Illinois State Police. Doc. 23-2. Trame is responsible for administering the Firearm Owner's Identification Program, the Firearms Transfer Inquiry Program, and the Concealed Carry Licensing Program in Illinois. *Id*. at ¶ 2. She explained that to qualify for an Illinois concealed carry license, an Illinois resident must have a valid Illinois Firearm Owner's Identification (FOID) card. *Id*. at ¶ 3. Nonresidents, however, do not need a valid Illinois FOID card to obtain a concealed carry license, though they must otherwise meet the remaining eligibility criteria for obtaining such a card. *Id*.

This system ensures that Illinois residents and nonresidents are subject to the same substantive standards to qualify for a concealed carry license. *Id*.

In processing a concealed carry license application, the State Police performs an extensive background check on each applicant who is an Illinois resident. *Id*. at ¶ 4. The initial phase of the process is to make sure that the application is complete and to verify the identity of the applicant. *Id*. at ¶ 5. After that, the State Police determines whether the applicant is eligible for a concealed carry license. *Id*. at ¶ 6. This involves a background check that includes queries of national databases and systems such as the National Crime Information Center, National Instant Criminal Background Check System, Interstate Identification Index, Immigration Customs and Enforcement, and National Law Enforcement Telecommunications System. *Id*. Illinois databases such as the Criminal History Record Information System, the Illinois Secretary of State's identification systems, and the State Police's central online repository are also checked. *Id*.

The Concealed Carry Act requires the State Police to determine whether another State's gun possession laws are substantially similar to the laws in Illinois, and to make this determination, the State Police looks at five factors. *Id*. at 85-87. First, the State Police determines whether the State regulates who may carry firearms in public. *Id*. Second, the State Police determines whether the State reports persons authorized to carry firearms through the National Law Enforcement Telecommunications System. *Id*. Because the State Police does not

have access to other States' driver's license or state identification databases, it must rely on this national system to check the validity of an out-of-state driver's license, including personal identifiers of the individual and the individual's address. *Id.* at ¶ 10. The State Police also uses this database to determine if a nonresident's home state-issued concealed carry license is valid. *Id.* at ¶ 13.

Third, the State Police determines whether the State reports persons ineligible to possess firearms due to involuntary mental health admissions on the National Instant Criminal Background Check System. *Id.* at 85-87. Fourth, the State Police determines whether the State prohibits individuals who have been voluntarily admitted to a mental health institution in the last five years from owning or possessing firearms and whether the State has a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license. *Id.* And fifth, the State Police determines whether the State prohibits all individuals who have an involuntary admission to a mental health facility from carrying firearms in public. *Id.*

Trame explained that under Illinois law, an applicant is not eligible for a concealed carry license if he has been involuntarily admitted into a mental health institution, adjudicated mentally disabled, or a patient in a mental health facility within the last five years, regardless of their State of residence, unless they have a mental health certification. *Id.* at ¶ 16. The State Police can verify an Illinois resident's mental health facility admissions through information maintained by the

Illinois Department of Human Services, but that database does not contain out-of-state data. *Id*. at ¶¶ 17-18. In addition, federal databases do not contain the information necessary to verify whether a nonresident has a disqualifying mental health admission. *Id*. at ¶ 19. Some States report mental health prohibitors for nonresidents to the National Instant Criminal Background Check System, but not all States participate in that system and that system does not track voluntary admissions to mental health facilities. *Id*. at ¶ 20. Additionally, many States or local governments charge fees for information requests. *Id*. at ¶ 12. The State Police lacks the resources to perform comprehensive background checks on nonresidents and is not able to monitor an applicant's continued eligibility to possess a concealed carry license. *Id*. at ¶ 30.

In 2013 and again in 2014, the State Police sent surveys to the other 49 States and the District of Columbia requesting information regrading the categories listed above. *Id*. at ¶ 26. Seven States — Colorado, Maine, Maryland, Massachusetts, Nevada, Pennsylvania, and Rhode Island — never responded. *Id*. at ¶ 27. Of the States that did respond, Hawaii, New Mexico, South Carolina, and Virginia had laws similar to Illinois. *Id*. at ¶ 28. Some States, including Indiana, Iowa, Missouri, and Wisconsin, responded that they do not prohibit use or possession of firearms based on voluntary admission to a mental health facility in the past five years and do not have a mechanism for tracking that information for its residents. *Id*. at ¶ 29. Additionally, Iowa and Missouri responded that they do

not participate in reporting concealed carry licenses via the National Law Enforcement Telecommunications System. *Id*.

**District court decision**

The district court denied plaintiffs' motion. Doc. 29. The court held that though plaintiffs met the threshold requirements for a preliminary injunction, the balance of harms and consideration of the public interest favored denying the motion. *Id*. at 2. The court noted that defendants explained that their lack of access to data from other States and inability to monitor situations in those States means that the only practical way for Illinois to determine whether a nonresident applicant meets and continues to meet Illinois's firearm requirements is to determine whether those States have substantially similar laws. *Id*. at 25. The court determined that plaintiffs had a "better-than-negligible likelihood of success on the merits" on their Second Amendment claim, had no adequate remedy at law, and would suffer some irreparable harm to their Second Amendment rights in the absence of an injunction. *Id*. at 52, 55, 59. In balancing the harms, however, the court noted that plaintiffs' likelihood of success on the merits was neither strong nor weak. *Id*. at 61. The court held that the public would be harmed because the State Police does not have the resources to do comprehensive background checks on out-of-state applicants or to monitor their continued eligibility. *Id*. at 62. Furthermore, the public has a strong interest in permitting only qualified individuals carry concealed firearms in public. *Id*. at 63. Balanced against this, plaintiffs could carry

their firearms in their home State, could carry the firearms in their vehicles while in Illinois, and could hunt and go to firing ranges in Illinois. *Id*. Because the harms to the public would be greater, the court denied the injunction. *Id*.

Plaintiffs appealed. Doc. 30.

# SUMMARY OF ARGUMENT

The district court's denial of plaintiffs' motion for preliminary injunction should be affirmed.  Illinois, through its statutory scheme, imposes requirements on applicants for licenses to carry concealed firearms in public.  Those requirements largely relate to the applicant's criminal history, mental health status, and whether the individual poses a clear and present danger to themselves or others.  The State Police has access to comprehensive criminal history and mental health information for Illinois residents.  But it cannot meaningfully access and monitor that information for nonresidents, who are subject to the same licensure criteria as Illinois residents.  Accordingly, the nonresidents provision of the Concealed Carry Act requires the State Police to determine which other States' gun possession laws are substantially similar to Illinois's laws and allow concealed license applications only from residents of those States who have been licensed in their home State.  That law is substantially related to Illinois's compelling interest in ensuring that only individuals who are qualified to carry concealed firearms in public may do so.

Furthermore, the district court correctly balanced the harms and found that the injunction was not warranted.  If the nonresidents provision is enjoined, the State Police will not be able to effectively verify and monitor nonresidents' qualifications to carry concealed firearms.  The resultant risk to the public safety is obvious.  Balanced against that, nonresidents may still carry concealed weapons in their home States as well as in their vehicles when traveling in Illinois.

-10-

**ARGUMENT**

**I.     This Court reviews the district court's denial of plaintiffs' motion for preliminary injunction for an abuse of discretion.**

The district court denied plaintiffs' motion for preliminary injunction based on its balancing of the factors. That decision is reviewed for an abuse of discretion. *D.U. v. Rhoades*, ___ F.3d ___ , 2016 WL 3126263, at *2 (7th Cir. June 3, 2016); *see BBL, Inc. v. City of Angola*, 809 F.3d 317, 324 (7th Cir. 2015). A court's findings of fact made as part of its analysis of the preliminary injunction motion are reviewed for clear error and its legal conclusions are reviewed *de novo*. *D.U.*, 2016 WL 3126263, at *2.

To obtain a preliminary injunction, the movant must first show that it will suffer irreparable harm before the final resolution of its claims, its legal remedies are inadequate, and its claim has some likelihood of success on the merits. *BBL, Inc.*, 809 F.3d at 323-24. If the movant makes that showing, then the court weighs the factors and assesses whether the balance of the harms favors granting the injunction. *Id.* at 324. If the harm to the other parties or the public is "sufficiently weighty," the injunction should be denied. *Id.*

**II.     Illinois's statutory regime governing public carry of firearms**

To be entitled to a concealed carry license in Illinois, a nonresident must first meet all of the requirements for a FOID card (which entitles an Illinois resident to own or possess firearms) other than the Illinois residency requirement. 430 ILCS 66/25, 40(c) (2014). The ownership or possession of a firearm or ammunition is

governed by the FOID Act, 430 ILCS 65/0.01 *et seq.* (2014). The purpose of the FOID Act is to protect the public health, safety, and welfare by "provid[ing] a system of identifying persons who are not qualified to acquire or possess firearms" in Illinois. 430 ILCS 65/1 (2014).

That statute provides that no one may acquire or possess a firearm without having a FOID card issued by the Illinois State Police. 430 ILCS 65/2(a) (2014). But the FOID Act also contains a number of exceptions to the FOID card requirement. 430 ILCS 65/2(b) (2014). For instance, nonresidents whose firearms are unloaded and enclosed in a case do not require a FOID card to possess a firearm in Illinois. 430 ILCS 65/2(b)(9) (2014). Nonresidents who are licensed to possess a firearm in their State do not need a FOID card to possess firearms in Illinois. 430 ILCS 65/2(b)(10) (2014). Also, nonresident hunters who have a valid nonresident hunting license issued by the Illinois Department of Natural Resources may carry a firearm, but that weapon must be unloaded and encased when the nonresident is not in an area where hunting is permitted. 430 ILCS 65/2(b)(5) (2014). Additionally, nonresidents may possess firearms and ammunition while on a firing or shooting range recognized by the State Police, though their firearms must be unloaded and encased when not at those ranges. 430 ILCS 65/2(b)(7) (2014). And nonresidents may possess firearms at a gun show, but in all other cases must have their firearms unloaded and encased. 430 ILCS 65/2(b)(8) (2014).

Where a FOID card is required, the FOID Act excludes certain individuals from eligibility for a card. 430 ILCS 65/4(a) (2014). For instance, a person who has

been convicted of a felony, certain offenses involving firearm use or possession within the past five years, or a misdemeanor crime of domestic violence are prohibited from obtaining a FOID card. 430 ILCS 65/4(a)(2)(ii), (vii), (ix) (2014). In addition, an individual who has been a patient in a mental health facility within the past five years is prohibited from obtaining a FOID card. 430 ILCS 65/4(a)(2)(iv) (2014). Individuals who have been a patient in a mental health facility more than five years ago must submit a certification from a mental health evaluator stating that the individual is not "a clear and present danger to himself, herself, or others." *Id*.; 430 ILCS 65/8(u) (2014).

A FOID card is valid for 10 years from the date of issuance unless it is revoked because the individual is ineligible to possess firearms in Illinois. 430 ILCS 65/7 (2014); *see* 430 ILCS 65/8 (2014) (grounds for revocation).

The Concealed Carry Act, 430 ILCS 66/1 *et seq.* (2014), provides that the Illinois State Police shall issue a license to carry a concealed firearm to qualified individuals under the statute. 430 ILCS 66/10 (2014). A concealed carry license is valid for five years and enables the licensee to carry a loaded or unloaded firearm fully or partially concealed about his person and to keep or carry a loaded or unloaded firearm on or about his person while in a vehicle. 430 ILCS 66/20(c) (2014).

The State Police shall issue a license to a resident who: (1) meets the qualifications set forth in § 25 of the Concealed Carry Act; (2) provided the required documentation; (3) submitted the necessary fees; and (4) does not pose a clear and

present danger to himself or others, or a threat to public safety. 430 ILCS 66/10(a) (2014). The clear-and-present danger determination is made by the Concealed Carry Licensing Review Board. 430 ILCS 66/10(a)(4) (2014); *see* 430 ILCS 66/20 (2014). Law enforcement agencies may submit an objection to an application based on a reasonable suspicion that the applicant is a danger to himself or others, or is a threat to public safety. 430 ILCS 66/15(a) (2014). If a law enforcement objection is received, the State Police refers the matter to the Board for a determination. 430 ILCS 66/20(a) (2014).

As mentioned, § 25 sets forth certain qualifications for a licensee. Under this section, a licensee must be 21 years old and have a valid Illinois FOID card. 430 ILCS 66/25(1), (2) (2014). Additionally, the licensee must not have any convictions for a misdemeanor involving the use or threat of physical force or violence to any person within the last five years. 430 ILCS 66/25(3)(A) (2014). An applicant with two or more violations related to driving under the influence of drugs or alcohol within the last five years is ineligible for a concealed carry license. 430 ILCS 66/25(3)(B) (2014). The licensee may not be the subject of a pending arrest warrant, prosecution, or proceeding that could lead to disqualification of his right to possess a firearm. 430 ILCS 66/25(4) (2014). The licensee may not have been in a residential or court-ordered drug or alcohol treatment program within the last five years. 430 ILCS 66/25(5) (2014). And the licensee must complete the training and education requirements of the statute. 430 ILCS 66/25(6) (2014); *see* 430 ILCS 66/75 (2014).

The Concealed Carry Act also makes provision for nonresident license applications. 430 ILCS 66/40 (2014). A nonresident is a person who has not resided in Illinois for more than 30 days and resides in another State or territory. 430 ILCS 66/40(a) (2014). Under § 40, the Illinois State Police "shall by rule allow for non-resident license applications" from any State or territory that has "laws related to firearm ownership, possession, and carrying, that are substantially similar to the requirements to obtain a license under this Act." 430 ILCS 66/40(b) (2014). A nonresident who lives in a substantially similar State must meet all of the qualifications set forth in § 25 of the Act other than the residency requirement that is required to posses an Illinois FOID card. 430 ILCS 66/40(c) (2014). The nonresident applicant also must submit a notarized statement that, among other things, he is eligible under federal law and the laws of his home State to own or possess firearms, and he has a license to carry a firearm issued by his home State, if applicable. 430 ILCS 66/40(c)(2) (2014). In lieu of an Illinois FOID card, the nonresident applicant shall submit to the State Police the information required to possess a firearm under Illinois law, including an affidavit that the applicant meets the mental health standards set forth in the FOID Act. 430 ILCS 66/40(d) (2014). The Department is required to ensure that the applicant would meet the requirements for a FOID card if he were a resident of Illinois. *Id*.

The Concealed Carry Act also provides that a nonresident who does not have a nonresident license may transport a concealed firearm in his vehicle so long as the firearm remains in the vehicle, the individual is not prohibited from possessing a

firearm under federal law, and the individual is eligible to carry a firearm under the laws of his home State as evidenced by a concealed carry license from his State, if applicable. 430 ILCS 66/40(e) (2014). If the nonresident leaves his vehicle unattended, he must store the firearm in the vehicle in a locked container. *Id.*

## III. Plaintiffs do not have a likelihood of success on the merits of their claims.

### A. The nonresidents provision of the Concealed Carry Act is constitutional because it is substantially related to an important State interest and it is necessary to determine whether nonresidents are, and remain, eligible for a concealed carry license.

The nonresidents provision of the Concealed Carry Law does not violate plaintiffs' Second Amendment rights. Review of a Second Amendment claim begins with the threshold question of whether the restricted activity is protected by the Second Amendment. *Horsley v. Trame*, 808 F.3d 1126, 1130 (7th Cir. 2015). If the law regulates activity that falls outside the scope of the Second Amendment at the historically relevant time, the activity is not protected, and the inquiry ends. *Id.* If, however, the activity is within the scope of the Second Amendment, the court turns to means-end scrutiny. *Id.* at 1131. The level of scrutiny depends on how close the law comes to the core of the Second Amendment and the severity of the law's burden on the right. *Id.* Here, intermediate scrutiny applies.

In *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), this Court held that the protections of the Second Amendment apply outside an individual's home. *Berron v. Ill. Concealed Carry Licensing Review Bd.*, __ F.3d __ , 2016 WL 3361551, at *1 (7th

Cir. June 17, 2016).  Specifically, the right to keep and bear arms "must permit law-abiding and mentally healthy persons to carry loaded weapons in public." *Id.* (citing *Moore*).  Insofar as the nonresidents provision regulates the ability of certain law-abiding and mentally healthy people to carry loaded weapons in public, under *Moore*, it falls within the scope of the Second Amendment.  *See Horsley*, 808 F.3d at 1131.

### 1.   The nonresidents provision does not significantly affect core Second Amendment rights.

The nonresidents provision of the Concealed Carry Act does not severely burden the core of the Second Amendment right, however.  *See Horsley*, 808 F.3d at 1131 ("The level of scrutiny we apply 'will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right.'") (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 703 (7th Cir. 2011)).  The right of a nonresident to carry a concealed weapon in public is not at the core of the Second Amendment.  In *Heller*, the Supreme Court held that the "'need for defense of self, family, and property is most acute' in the home." *Horsley*, 808 F.3d at 1131 (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 628 (2008)).  As this Court stated in *Ezell*, laws that prohibit handgun possession in the home restrict core Second Amendment rights.  651 F.3d at 703.  Thus, the ability to possess firearms for self defense at home is at the core of the Second Amendment right.

Concealed carry of firearms in public is not close to that core.  Indeed, some circuit courts have found that the Second Amendment right does not extend to

concealed carry of firearms at all.  For instance, the Tenth Circuit held that "the carry of concealed weapons is not protected by the Second Amendment." *Peterson v. Martinez*, 707 F.3d 1197, 1201 (10th Cir. 2013). *Peterson* noted that the Supreme Court, in *Robertson v. Baldwin*, 165 U.S. 275, 281-82 (1897), stated "in dicta that 'the right of the people to keep and bear arms is not infringed by laws prohibiting the carrying of concealed weapons.'" 707 F.3d at 1201.  Moreover, the Supreme Court in *Heller* "noted that 'the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment,'" and held that "'nothing in our opinion should be taken to cast doubt on longstanding prohibitions.'" *Id.* (quoting *Heller*, 554 U.S. at 626); *see also id.* at 1210 ("There can be little doubt that bans on the concealed carrying of firearms are longstanding.").  This led the Tenth Circuit to conclude that, "[i]n light of our nation's extensive practice of restricting citizens' freedom to carry firearms in a concealed manner," concealed carry "does not fall within the scope of the Second Amendment's protections." *Id.*  Along these lines, the Ninth Circuit recently held that while the Second Amendment "may or may not protect, to some degree, a right of a member of the general public to carry firearms in public," "there is no Second Amendment right for members of the general public to carry concealed firearms in public." *Peruta v. Cty. of San Diego*, __ F.3d __ , 2016 WL 3194315, at *5 (9th Cir. June 9, 2016) (en banc).

Although the Third Circuit has declined to hold that the protections of the Second Amendment extend beyond the home, it has assumed that the Second Amendment may apply to a state regulation that imposed a "justifiable need" requirement for a public carry license. *Drake v. Filko*, 724 F.3d 426, 431 (3d Cir. 2013). As part of its discussion, that court explained that possession of guns in the home is the "'core' of the right as identified by *Heller*." *Id.* Thus, "if the Second Amendment protects the right to carry a handgun outside the home for self-defense at all, that right is not part of the core of the Amendment." *Id.* at 436 (internal quotation marks omitted). Accordingly, the court applied intermediate scrutiny to the state regulation. *Id.* Similarly, the Fourth Circuit has explained that "as we move outside the home, firearm rights have always been more limited, because public safety interests often outweigh individual interests in self defense." *United States v. Masciandro*, 638 F.3d 458, 470-71 (4th Cir. 2011). Therefore, "intermediate scrutiny applies to laws that burden any right to keep and bear arms outside of the home." *Woollard v. Gallagher*, 712 F.3d 865, 876 (4th Cir. 2013) (internal quotation marks omitted). And the First Circuit has explained that "[l]icensing of the carrying of concealed weapons is presumptively lawful." *Hightower v. City of Boston*, 693 F.3d 61, 73-74 (1st Cir. 2012).

In *Kachalsky v. County of Westchester*, the Second Circuit examined the lengthy history of state regulation of public carry and observed that the "historical prevalence of the regulation of firearms in public demonstrates that while the

Second Amendment's core concerns are strongest inside hearth and home, states have long recognized a competing and countervailing set of concerns with regard to handgun ownership and use in public." 701 F.3d 81, 96 (2d Cir. 2012). As such, state regulation of the use of firearms in public was "enshrined within the scope of the Second Amendment when it was adopted." *Id.* (internal quotation marks omitted). Due to this tradition, regulation of public use of firearms is subject to intermediate, not strict, scrutiny. *Id.*

Plaintiffs contend that their lawsuit involves core Second Amendment rights, but they make no effort to discuss any of the case law or historical traditions concerning concealed carry. Rather, they argue that because *Moore* found the Second Amendment applicable outside the home, their issue must involve the core right. Pl. Br. at 25. Simply extending the Second Amendment right outside the home, as *Moore* did, does not mean that all laws regulating the carrying of guns in public affects the *core* of the Second Amendment right. To the contrary, the foregoing discussion shows that carrying a firearm in public, to the extent it is a Second Amendment right, is outside the core because it does not involve self-defense in the home.

Moreover, the residency requirement is not a flat ban. This Court has applied a higher form of Second Amendment scrutiny where the challenged law imposes a blanket ban on protected activity. *See Ezell*, 651 F.3d at 708. In *Moore*, for instance, this Court examined an Illinois statutory scheme that imposed "a flat

ban on carrying ready-to-use guns outside the home." 702 F.3d at 940. But the

level of scrutiny warranted for flat bans is not applicable here because Illinois now

permits all qualified individuals to obtain a concealed carry license — both

residents and nonresidents who are from States with substantially similar

requirements.

Plaintiffs try to paint the nonresidents provision as a blanket ban, asserting

that it curtails the rights of "the entire law-abiding adult population." Pl. Br. at 25.

They go on to claim that the provision "violates the rights of even more law-abiding

people than in *Moore*." *Id*. But this is not true. The law at issue in *Moore*

essentially prevented all adults — resident or not — from carrying a firearm in

public in Illinois. Now, Illinois permits qualified residents and nonresidents to

carry a concealed firearm in public. Such a law does not impose a broader ban than

a law that prohibited all persons from carrying concealed guns. At best, plaintiffs

argue that the nonresidents provision imposes a flat ban on all people it bans, but

that is true in every case and it is not the proper inquiry under the Second

Amendment.

Plaintiffs argue that the State cannot "ban otherwise qualified non-residents

from possessing concealed firearms." Pl. Br. at 27. That, however, mischaracterizes

the state law. Instead of banning qualified nonresidents from carrying firearms in

public, Illinois licenses those individuals. The difficulty, which plaintiffs fail to

credit but which is dispositive in this case, is that the State does not have access to

the necessary information to determine whether nonresidents are qualified (under

the same criteria as residents) or the ability to monitor continued eligibility on an ongoing basis.

In sum, States have traditionally regulated the public carriage of firearms and those restrictions do not affect an individual's interest in self-defense in the home, which is the core of the Second Amendment. Moreover, plaintiffs' claim is one further step removed from the core because they seek to carry concealed weapons in public in a State that is not even their home State. Whatever their right under the Second Amendment to do so, it is not central to that Amendment so intermediate scrutiny applies.

2. **The nonresident provision is substantially related to the State's interest in protecting the public by ensuring that only qualified individuals carry concealed firearms in public.**

The nonresident provision serves the important government objective of protecting the public safety by ensuring that individuals who pose a threat or danger to themselves or the public are not permitted to carry firearms in public. Under the intermediate scrutiny applicable to Second Amendment challenges like that here, the law will be upheld if it is substantially related to an important government objective. *United States v. Shields*, 789 F.3d 733, 750 (7th Cir. 2015); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010). In *Horsley*, this Court held that "Illinois has an important and compelling interest in its citizens' safety" by "protecting the public from firearms violence." 808 F.3d at 1132. *Horsley* recognized that the FOID Act is intended to further that interest. *Id*. In the same

way, the Concealed Carry Act, which conditions a concealed carry license on, among other things, compliance with and eligibility under the FOID Act, is intended to further that interest. Moreover, the nonresident provision specifically is intended to ensure that only qualified individuals from other States are allowed to publicly carry concealed firearms in Illinois, and the State has the same compelling interest in protecting the public in that manner as it does in ensuring that its own residents are properly qualified to carry firearms in public.

The nonresident provision is substantially related to that purpose. In determining whether a statute is substantially related to the government's important object, the court does not require a perfect fit. *See Ezell*, 651 F.3d at 708. Instead, the State is permitted to impose reasonable limits on who may carry a loaded firearm in public. *Moore*, 702 F.3d at 942; *see Moore v. Madigan*, 708 F.3d 901, 903 (7th Cir. 2013) (Hamilton, J., dissenting from denial of rehearing en banc).

Here, plaintiffs do not argue that the criteria for issuing a concealed carry license to Illinois residents are in any way improper. Therefore, they do not take issue with the restrictions on individuals with certain criminal histories or a history of admittance to mental health facilities, or who may pose a present danger to themselves or the public. *See Berron*, 2016 WL 3361151, at *1 (*Moore* held that States "must permit law-abiding and mentally healthy persons to carry loaded weapons in public"). Nor do plaintiffs dispute that those same valid criteria apply to nonresidents, with the exception of the residency requirement. As Bureau Chief Trame explained, the purpose of the nonresident provision is to "ensure that

residents and non-residents are subject to the same substantive requirements to qualify for a [concealed carry license]." Doc. 23-2 at ¶ 3. Logically, then, the nonresident requirement is a reasonable restriction because it seeks to determine whether the laws of another State are substantially similar to the eligibility requirements that Illinois imposes. *See* 430 ILCS 66/40(c) (2014).

Given that the substantive criteria are valid and the goal of applying the same valid criteria to residents and nonresidents is legitimate, the question becomes whether the nonresident provision is substantially related to ensuring that individuals who do not reside in Illinois meet those standards. The FOID Act and Concealed Carry Act endeavor to keep concealed firearms out of the hands of individuals with criminal histories and who do not meet mental health qualifications. As this Court recently held, "Illinois is entitled to check an applicant's record of convictions, and any concerns about his mental health, close to the date the applicant proposes to go armed on the streets." *Berron*, 2016 WL 3361551, at *3. Within Illinois, the State Police can monitor both criteria because it has access to Illinois criminal records as well as the Illinois Department of Human Services's database containing information on mental health facility admissions in Illinois. Doc. 23-2 at ¶¶ 11, 17-18, 21. Furthermore, Illinois law requires its physicians, qualified examiners, law enforcement officials, and school administrators to report individuals who may be a clear and present danger to themselves or others. *Id*. at ¶ 22. And Illinois circuit court clerks are required to report to the State Police individuals who have been adjudicated as mentally

disabled or who have had a finding for involuntary admittance to a mental health facility. *Id*. at ¶ 23.

But the State Police does not have access to the same criminal and mental health information from other States. *Id*. at ¶¶ 12, 14, 19-20, 24. Because the State Police cannot undertake the ongoing monitoring of this information in other States, it surveyed those States to determine whether their laws impose the same or similar criteria as Illinois and whether those States themselves undertake ongoing monitoring of that information. That way, the State Police can be satisfied that if a nonresident has a concealed carry license from his home State, he meets the eligibility criteria in Illinois. And plaintiffs do not contend that the State Police's survey results were inaccurate or otherwise failed to show which States have similar firearms restrictions to Illinois.

The concurring opinion in *Peterson* is instructive on this point. There, the Tenth Circuit upheld Colorado's law that prevented all nonresidents from obtaining a concealed carry license. The court determined that the Second Amendment did not provide a right to carry a concealed firearm, so there was no Second Amendment violation. 707 F.3d at 1209. But the concurrence assumed that the Second Amendment was implicated and analyzed the Colorado law under intermediate scrutiny, and found that "the residency requirement is substantially related to the stated governmental objective" of ensuring that concealed carry license holders are qualified under state law. *Id*. at 1206-07, 1220-21 (Lucero, J., concurring).

That opinion noted that Colorado law enforcement officials explained they did not have access to the necessary information for nonresidents to be able to determine whether they were qualified for a concealed carry license and that local officials could not monitor nonresidents' qualifications on an ongoing basis. *Id.* In particular, "the unrefuted evidence demonstrates that Colorado law enforcement officials have access to a greater level of information with respect to resident [concealed carry license] applicants than non-resident" and the "data limitations for non-resident applicants would make it more or less impossible to ensure statutory qualification." *Id.* at 1221 (internal quotation marks omitted). Among other things, a "state flagging system alerts sheriffs when a Coloradoan comes into contact with law enforcement in her state of residence; this is not so for residents of other states." *Id.*

Here, the unrefuted evidence shows the same thing. The State Police have ongoing access to criminal and mental health information about Illinois residents, and Illinois law requires certain people to report changes that in information. Therefore, the State Police can verify initial qualification for a concealed carry license and monitor continued eligibility. But the State Police does not have similar access to information for nonresidents or the ability to continually monitor nonresidents' ongoing eligibility. As the *Peterson* concurrence determined, "this evidence establishes the requisite substantial relationship between the challenged statute and the objective of ensuring [concealed carry licenses] are held only by

qualified individuals." *Id*. And the Illinois law does not go as far as the Colorado law at issue in *Peterson* because Illinois, unlike Colorado, attempts to discern which States' residents are qualified to carry concealed firearms in Illinois.

Rather than challenge the evidence showing that the State Police cannot monitor nonresidents eligibility for a concealed carry license, plaintiffs argue that "there is no harm shown from that scenario." Pl. Br. at 28. But the harm in not being able to determine whether an applicant for a license to carry a gun in public would pose a danger to himself or the public is obvious. As Judge Hamilton noted, "*Heller* itself made clear that the right to keep and bear arms may be denied based on a felony conviction or mental illness." *Moore*, 708 F.3d at 903 (Hamilton, J., dissenting from denial of rehearing en banc) (citing *Heller*, 554 U.S. at 626). Indeed, such restrictions on individuals with criminal histories or mental illness are presumptively valid. *See Horsley*, 808 F.3d at 1131. The nonresidents provision is a result of the State's attempt to monitor whether an individual's criminal history or mental illness renders him unqualified to carry a firearm in public. The State need not show that unlicensed nonresidents have committed gun violence in Illinois to justify that statute.

Therefore, plaintiffs' Second Amendment challenge fails. The right of nonresidents to carry a concealed firearm is not at the core of the Second Amendment. And there is no dispute that the State's criteria for determining who is eligible for a concealed carry license are valid. The nonresidents provision is the

mechanism by which the State measures nonresidents' eligibility, and the evidence establishes that the provision is necessary because the State Police is otherwise unable to verify and monitor nonresidents' initial and continued qualification.

**B.     Plaintiffs' other constitutional challenges also fail.**

Although the district court considered only plaintiffs' Second Amendment claim, on appeal they argue that they have a likelihood of success on the merits on their other theories.  Each of those is addressed in turn.

**1.     The nonresidents provision does not deny nonresidents privileges and immunities that are granted to Illinois residents.**

For the same reasons that the Second Amendment challenge is doomed, plaintiffs' Privileges and Immunities Clause challenge fails.  The Privileges and Immunities Clause provides that the "Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  U.S. Const. art. IV, § 2.  This provision applies only to privileges and immunities bearing on the vitality of the nation as a single entity and concerns those things fundamental to the preservation of interstate harmony.  *Supreme Ct. of New Hampshire v. Piper*, 470 U.S. 274, 279 (1985).  The protections of this clause are not absolute.  *Id*. at 285. Instead, a State's conduct that discriminates against the citizens of another State will be upheld if there is a substantial reason for the difference in treatment and the discrimination against nonresidents bears a substantial relationship to the State's objective.  *Id*.

The nonresident provision satisfies this test. First, Illinois treats nonresidents differently because it cannot verify and monitor the information necessary to establish that nonresidents are qualified for a concealed carry license under the same criteria as Illinois residents. Second, the nonresident provision bears a substantial relationship to the State's important goal of ensuring that only qualified individuals carry firearms in public. Because of the data collection and monitoring problems the State Police faces, which are discussed in detail above, Illinois must avail itself of other States' policing of their residents' qualifications. But not all States have eligibility requirements similar to Illinois. Therefore, simply obtaining a license in a different State does not establish that Illinois's criteria are satisfied. But if a State does have substantially similar eligibility requirements, the State Police can be reasonably certain that the individual applicant would be eligible, and maintain eligibility, under Illinois law.

The *Peterson* concurrence noted that the test under the Privileges and Immunities Clause is "essentially identical to intermediate scrutiny." 707 F.3d at 1223-24 (Lucero, J., concurring). Because the nonresidents provision satisfies intermediate scrutiny under the Second Amendment, it also meets the test under the Privileges and Immunities Clause. *See id.*

Plaintiffs argue that the nonresident provision fails this test because there is no evidence that qualified nonresidents pose a danger or cause "any violence problem in Illinois." Pl. Br. at 43. But as with the Second Amendment analysis, plaintiffs miss the point. Illinois has a substantial and important interest in

ensuring that all people who carry concealed firearms in the State are qualified to do so. Therefore, Illinois unquestionably has the authority to impose eligibility requirements on concealed carry license applicants. And plaintiffs do not assert that the requirements Illinois has chosen are in any way improper. The question then becomes whether the nonresidents provision is substantially related to that interest, and because of the unrebutted difficulties Illinois faces in verifying and monitoring nonresidents' eligibility, the answer to that question is "yes."

**2. The nonresidents provision does not violate equal protection.**

Next, plaintiffs' equal protection challenge fails because there is a rational basis for the nonresidents provision. Under the Equal Protection Clause, a court should uphold a challenged law if there is a rational basis supporting it. *Baskin v. Bogan*, 766 F.3d 648, 654 (7th Cir. 2014). Plaintiffs argue that this Court should apply strict scrutiny to their challenge because they claim infringement of their fundamental right to carry firearms in public. Pl. Br. at 30-31, 33. But where a law is upheld under the appropriate Second Amendment analysis, the question for equal protection purposes is whether the law has a rational basis, so long as some other suspect class in not involved. *See Teixeira v. Cty. of Alameda*, __ F.3d __ , 2016 WL 2849245, at *3 (9th Cir. May 16, 2016); *Kwong v. Bloomberg*, 723 F.3d 160, 170 n.19 (2d Cir. 2013); *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 211-12 (5th Cir. 2012); *Hightower*, 693 F.3d at 83.

A law survives this level of review when any reasonably conceivable set of facts could show a rational basis for the law. *Baskin*, 766 F.3d at 654. Here, the rational basis for the nonresidents provision is provided by the evidence that the State Police does not have access to information to enable it to verify that nonresidents are qualified to carry concealed firearms under the Concealed Carry Act. Far from the "arbitrary and discriminatory" law plaintiffs claim it to be (Pl. Br. at 33), the nonresidents provision is a measured response to a serious problem. Plaintiffs assert that the requirements of a nonresident's home State are irrelevant because they must meet the requirements of the Concealed Carry Act to carry a gun in public in Illinois. *Id.* But because of the information and monitoring difficulties, the nonresident's home State requirements are relevant. As a practical matter, if a nonresident comes from a State with substantially similar requirements to Illinois and has obtained a still-valid license from that State, it is rational to conclude that the nonresident meets Illinois's requirements.

### 3. The nonresidents provision does not violate due process.

Finally, plaintiffs are incorrect that the nonresidents provision violates their procedural due process rights. Pl. Br. at 44-46. To start, plaintiffs are nonresidents whose qualifications for a concealed carry license cannot be confirmed, and therefore they do not have a right that is subject to protection by procedural due process. Furthermore, there is no additional process that Illinois could offer. *See Matthews v. Eldridge*, 424 U.S. 319, 334 (1976). Even if the State could provide a

hearing to determine whether a nonresident was qualified under Illinois law, the State still would not be able to monitor his continued eligibility. That is why Illinois must rely on similar State regimes; no other method is practicable. And insofar as plaintiffs claim a substantive due process violation, that inquiry is subsumed by the Second Amendment analysis. *See Williams v. Ind. State Police Dep't*, 797 F.3d 468, 472 (7th Cir. 2015).

## IV. The harm to the public of granting a preliminary injunction outweighs the harm plaintiffs risk in waiting for a final resolution of their action.

The district court correctly balanced the hardships and held that the risk to the public from the preliminary injunction would outweigh any minimal harm to plaintiffs' rights. In the balancing phase of the preliminary injunction inquiry, the court weighs the harm to the moving party without the injunction against the harm to the nonmoving party and public of granting the injunction. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). The court should pay particular attention to "the public consequences in employing the extraordinary remedy of injunction." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). The court employs a sliding scale, so the more likely a movant is to win on the merits, the less strongly the balance of harms must weigh in this favor, and vice versa. *Girl Scouts*, 549 F.3d at 1086.

As explained above, plaintiffs are not likely to win on the merits of their constitutional challenges. And the harm they face in the absence of an injunction is

minimal because, as the district court explained, they can still carry their concealed firearm in their home State, they may carry a concealed firearm in their vehicle while in Illinois, they may hunt in Illinois, they may visit firing ranges in Illinois, and they carry a concealed firearm in another person's home with that person's permission.  Doc. 29 at 62-63.  Plaintiffs do not dispute any of these things.

Balanced against those considerations is the serious risk to public safety that would result if the State Police were required to entertain applications for a concealed carry license when it cannot meaningfully monitor continued compliance with the State's qualifications, as is the case with nonresidents.  After *Moore*, this Court did not require the State to begin issuing concealed carry licenses, but rather gave the Illinois legislature time to create a regulatory regime for public carry that imposed "reasonable limitations, consistent with the public safety and the Second Amendment."  702 F.3d at 942.  Subsequently, this Court denied a challenge based on the time it took to implement Illinois's concealed carry regime.  *Shepard v. Madigan*, 734 F.3d 748, 750 (7th Cir. 2013).  *Shepard* made clear that this Court did not intend to leave a "regulatory gap" in Illinois by invalidating one set of laws and requiring Illinois to act before it could pass and implement new laws.  *Id*. at 751.  Plaintiffs' preliminary injunction would create such a regulatory gap and place the public in an unacceptably dangerous position.

Accordingly, the district court did not abuse its discretion when it weighed these harms and denied the injunction.  *See Kuttner v. Zaruba*, 819 F.3d 970, 974

(7th Cir. 2016) (district court abuses its discretion only when decision has no basis in law or fact or decision "clearly appears to be arbitrary").

**CONCLUSION**

For these reasons, Defendants-Appellees request that this Court affirm the district court's denial of Plaintiffs-Appellants' motion for preliminary injunction.

Respectfully submitted,

LISA MADIGAN
Attorney General
State of Illinois

CAROLYN E. SHAPIRO
Solicitor General

100 West Randolph Street
12th Floor
Chicago, Illinois  60601
(312) 814-3312

Attorneys for Defendants-Appellees.

s/ *Brett E. Legner*
BRETT E. LEGNER
Deputy Solicitor General
100 West Randolph Street
12th Floor
Chicago, Illinois  60601
(312) 814-2146
blegner@atg.state.il.us

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, and TYPE STYLE REQUIREMENTS

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using WordPerfect X4, in 12-point Century Schoolbook font, and complies with Federal Rule of Appellate Procedure Rule 32(a)(7)(B) in that the brief contains 8,264 words.

s/ *Brett E. Legner*
BRETT E. LEGNER
Deputy Solicitor General
100 West Randolph Street,
12th Floor
Chicago, Illinois 60601
(312) 814-2146
blegner@atg.state.il.us

**CERTIFICATE OF SERVICE**

I certify that on June 24, 2016, I electronically filed the foregoing Brief of

Defendants-Appellees with the Clerk of the Court for the United States Court of

Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by

the CM/ECF system.

Respectfully submitted,

s/ *Brett E. Legner*
Brett E. Legner
blegner@atg.state.il.us