No. 15-3738

# In The United States Court of Appeals
# For the Seventh Circuit

KEVIN W. CULP, MARLOW DAVIS, FREDDIE REED-DAVIS, DOUGLAS
W. ZYLSTRA, JOHN S. KOLLER, STEVE STEVENSON, PAUL HESLIN,
MARLIN MANGELS, JEANELLE WESTROM, SECOND AMENDMENT
FOUNDATION, INC., ILLINOIS CARRY and ILLINOIS STATE RIFLE
ASSOCIATION,

Plaintiffs-Appellants,

v.

LISA MADIGAN, in her Official Capacity as Attorney General of the State of
Illinois; LEO P. SCHMITZ, in his Official Capacity as Director of the Illinois
State Police, and JESSICA TRAME, as Bureau Chief of the Illinois State
Police Firearms Services Bureau,

Defendants-Appellees.

Appeal from a Judgment of the United States District Court
for the Central District of Illinois
The Hon. Sue E. Myerscough, District Judge
Case No. 3:14-CV-3320

## APPELLANTS' REPLY BRIEF

David G. Sigale
Law Firm of David G. Sigale, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
Tel. 630.452.4547/Fax 630.596.4445
dsigale@sigalelaw.com

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 15-3738

Short Caption: Kevin W. Culp, et al v. Lisa Madigan, et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[   ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Kevin W. Culp, Marlow Davis, Freddie Reed-Davis, Douglas W. Zylstra, John S. Koller, Steve Stevenson

Paul Heslin, Marlin Mangels, Jeanelle Westrom, Second Amendment Foundation, Inc.,

Illinois Carry, Illinois State Rifle Association

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Law Firm of David G. Sigale, P.C.

(3)   If the party or amicus is a corporation:

   i)   Identify all its parent corporations, if any; and

Second Amendment Foundation, Inc. - None; Illinois Carry - None; Illinois State Rifle Association - None

   ii)   list any publicly held company that owns 10% or more of the party's or amicus' stock:

Second Amendment Foundation, Inc. - None; Illinois Carry - None; Illinois State Rifle Association - None

Attorney's Signature: s/ David G. Sigale                    Date: January 28, 2016

Attorney's Printed Name: David G. Sigale

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes  X    No _____

Address:   799 Roosevelt Road, Suite 207

           Glen Ellyn, IL 60137

Phone Number:  630.452.4547              Fax Number:  630.596.4445

E-Mail Address:  dsigale@sigalelaw.com

rev. 01/15 GA

# TABLE OF CONTENTS

Disclosure Statement....................................................................... i

Table of Contents .......................................................................... ii

Table of Authorities..................................................................... iii

Summary of Argument ................................................................. 1

Argument..................................................................................... 5

I.    THE SECOND AMENDMENT CONFERS A CORE
FUNDAMENTAL RIGHT TO CARRY ("BEAR") ARMS IN
PUBLIC FOR SELF-DEFENSE PURPOSES, AND THE NON-
RESIDENT VIRTUAL CCL APPLICATION BAN VIOLATES
THAT RIGHT............................................................... 5

II.   THE SUBJECT BAN SHOULD BE ANALYZED USING
STRICT OR NEAR-STRICT SCRUTINY ............................... 9

III.  THE VIRTUAL BAN FAILS EVEN UNDER INTERMEDIATE
SCRUTINY................................................................ 12

IV.  THE BALANCE OF HARMS FAVORS THE PLAINTIFFS
AND THE UPHOLDING OF CONSTITUTIONAL RIGHTS......16

V.   PLAINTIFFS SHOULD ALSO SUCCEED ON THEIR OTHER
CONSTITUTIONAL CHALLENGES.................................... 19

      1.    Article IV Privileges and Immunities............................. 19

      2.    Fourteenth Amendment Equal Protection Clause............ 20

      3.    Fourteenth Amendment (Procedural) Due Process
Clause .................................................................... 21

Conclusion.............................................................................. 22

# TABLE OF AUTHORITIES

*Cases*

*Baskin v. Bogan,*
    766 F.3d 648 (7th Cir. 2014) ................................................ 20

*District of Columbia v. Heller,*
    128 S. Ct. 2783 (2008)......................................................... *passim*

*Drake v. Filko,*
    724 F.3d 426 (3d Cir. 2013) .................................................. 9

*Ezell v. City of Chicago,*
    651 F.3d 684 (7th Cir. 2011) ....................................….. *passim*

*Gilbert v. Homar,*
    520 U.S. 924 (1997) .............................................................. 21

*Horsley v. Trame,*
    808 F.3d 1126 (7th Cir. 2015) ............................................... 15

*Mance v. Holder,*
    74 F.Supp.3d 795 (N.D.TX 2015) ......................................... 14

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) ............................................................. 21

*McDonald v. City of Chicago,*
    130 S. Ct. 3020 (2010) ................................................. *passim*

*Moore v. Madigan,*
    702 F.3d 933 (7th Cir. 2012) ....................................…. *passim*

*Peruta v. County of San Diego,*
    2016 U.S.App. LEXIS 10436 (9th Cir. 2016) ......................... 6, 7

*Peruta v. County of San Diego,*
    742 F.3d 1144 (9th Cir. 2014) ............................................. 6, 7

*Peterson v. Martinez,*
    707 F.3d 1197 (10th Cir. 2013) ................................................. 6

*United States v. Chester,*
    628 F.3d 673 (4th Cir. 2010) ................................................. 10, 12

*United States v. Marzzarella,*
    614 F.3d 85 (3d Cir. 2010) .................................................. 10

*United States v. Reese,*
    627 F.3d 792 (10th Cir. 2010) .............................................. 10

*United States v. Shields,*
    789 F.3d 733 (7th Cir. 2015) .............................................. 12

*United States v. Skoien,*
    614 F.3d 638 (7th Cir. 2010) (*en banc*) .......................... 10, 11, 12

*United States v. Williams,*
    616 F.3d 685 (7th Cir. 2010) ............................................. 10, 12

*United States v. Yancey,*
    621 F.3d 681 (7th Cir. 2010) ............................................. 10

*Constitutional Provisions*

U.S. Const. Art. IV § 2 ............................................................ 19

U.S. Const. amend. II ................................................... *passim*

U.S. Const. amend. XIV........................................................ 20, 21

*Statutes, Rules, and Ordinances*

430 ILCS 66/40 ............................................................... 8

*Other Authorities*

Cook, Philip J., Ludwig, Jens & Samaha, Adam M., *Gun Control After Heller: Threats and Side-shows from a Social Welfare Perspective*, 56 UCLA L. Rev. 1041, 1082 (2009) .................................................17

APPELLANTS' REPLY BRIEF

SUMMARY OF ARGUMENT

Defendants acknowledge that the Plaintiffs' claim is within the scope of the Second Amendment (Dkt. 24, p.17), but continue to argue, as if *Moore v. Madigan* never occurred, that the core of the Second Amendment right is limited to the home. This fallacy allows the State to act as if the Plaintiffs are requesting a privilege instead of demanding a right, which in turn allows the State to diminish the Plaintiffs' claim and argue for a lesser level of scrutiny than that required on this issue in this Circuit. Because the virtual non-resident CCL application ban strikes at the core Second Amendment right of self-defense, it must be struck down. To the extent any level of scrutiny is applied to analyze the carrying ban, it must be strict scrutiny, or the "not quite" strict scrutiny used in *Ezell v. City of Chicago,* 651 F.3d 684 (7th Cir. 2011).

Fundamental right notwithstanding, Defendants continue to wrongly argue that the State's ban on the public carry of firearms in Illinois by qualified individuals from 45 states substantially serves an important governmental interest, and that some sort of harm is actually being

prevented by the 45 state non-resident CCL application ban. Even if intermediate scrutiny were appropriate, the Defendants are wrong for four reasons:

First, the Plaintiffs are the law-abiding persons described in *Heller*, *McDonald*, *Ezell*, and *Moore*, with CCLs in their home states, if not additionally from other states. One Plaintiff is a Colonel in the United States Air Force, one owns a firearms company, and multiple of the Plaintiffs are actually Illinois concealed carry instructors. The only element for a preliminary injunction of which the District Court erroneously ruled against the Plaintiffs was the "balance of harms" test, but granting them licenses or, more to the point, allowing them to apply for concealed carry licenses, will not endanger the public in the slightest.

Second, the State already trusts these Plaintiffs (and all non-residents with CCLs in their home states) to carry firearms in their vehicles, on others' property with permission, and while hunting or at a firing range, all without a concealed carry license in Illinois. This belies any concern about allowing the Plaintiffs access to firearms in Illinois, as if the applying for/granting of an Illinois CCL will suddenly turn

them all into criminals.  Rather, the State should be encouraging them to undergo training and comply with all the Firearms Concealed Carry Act requirements, pay the required fees, and voluntarily enter themselves into the State's network.

Third, the people committing gun crimes in Illinois, whether they are from Illinois or elsewhere, are not the ones who are complying with all the training and other requirements under the Firearms Concealed Carry Act, paying all fees, and voluntarily entering themselves into the ISP network.  This point should be obvious, but the State continues to act as if everyone with possession of a firearm, even those who go through the rigmarole of obtaining a license, will eventually turn into a mentally deranged person, a terrorist, or a criminal.

Fourth, the substantial concerns the State is claiming are also belied by the fact that the ISP does not know what an Illinois resident is doing when they are out of state, yet their CCL's are not revoked when they return.  Likewise, a non-resident who lives in one of the 45 banned states for decades is instantly eligible to apply for an Illinois CCL once they move to Illinois or one of the four approved states, even though the

ISP does not know what that person was doing during those prior decades.

The public carrying of firearms for self-defense is a core fundamental right protected by the Second Amendment, as this Court held in *Moore v, Madigan*, 702 F.3d 933 (7th Cir. 2012). Defendants attempt to confuse the issue by making this a case purely about concealed carry, but it is not, any more than it was in *Moore.* Given Illinois's open carry ban, the issue is, and always has been, a complete ban on the public carry of firearms by non-residents, notwithstanding the exceptions about which Illinois apparently has no concern. Further, this case is one degree removed from that, as the Plaintiffs simply wish to *apply* for a CCL in Illinois. They would still need to meet all qualification requirements of the Firearms Concealed Carry Act. This is not a lawsuit about reciprocity or automatic acceptance.

When viewed logically, the challenged non-resident virtual CCL application ban is clearly unconstitutional, and Plaintiffs were entitled to preliminary injunctive relief.

# ARGUMENT

## I. THE SECOND AMENDMENT CONFERS A CORE FUNDAMENTAL RIGHT TO CARRY ("BEAR") ARMS IN PUBLIC FOR SELF-DEFENSE PURPOSES, AND THE NON-RESIDENT VIRTUAL CCL APPLICATION BAN VIOLATES THAT RIGHT.

This Court should not be swayed by Defendants' repeated assertions that this case is about concealed carry, because it is not. The Second Amendment secures a right to carry firearms, the issue of concealed carry is a straw man debate about a particular manner of carrying. While the alternative is allowing open carry[1], for qualified non-residents in 45 states the Defendants and State of Illinois prohibit both open and concealed carry. This is an unconstitutional violation of Second Amendment rights.

In *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), the Plaintiffs argued that the State had to allow the public carrying of firearms, but was able to choose the manner of carrying. Going further, the Plaintiffs pointed out that the State could allow concealed carry, allow open carry, or allow both, but it could not *ban* both. Though the State predictably

---

[1]     Illinois actually did allow the open carry of firearms until 1961, when the Criminal Code of that year was enacted.

chose a concealed carry system, of which the Plaintiffs wish to avail themselves because it is the only carry option in existence in Illinois, that does not change this case from one involving public carry, which was held to be a fundamental right in *Moore*, to a concealed carry case like *Peterson v. Martinez*, 707 F.3d 1197 (10th Cir. 2013). In *Peterson*, the challenged concealed carry ban did not affect a statewide allowance on open carry for non-residents, which made the public carry of firearms for non-residents still possible. The District Court noted this significant distinction in its Opinion of January 29, 2016 (SA 52).

The Defendants also cite to the recent *en banc* decision in *Peruta v. County of San Diego*, 2016 U.S.App. LEXIS 10436 (9th Cir. 2016), but in that case the Ninth Circuit panel held the good cause requirement for a CCL was unconstitutional because California also banned open carry: "California's favoring concealed carry over open carry does not offend the Constitution, so long as it allows one of the two." *Peruta v. County of San Diego*, 742 F.3d 1144, 1172 (9th Cir. 2014). The *en banc* Court chose to reframe this issue, and made the case entirely about concealed carry: "We hold only that there is no Second Amendment right for members of the general public to carry concealed firearms in public."

*Peruta*, 2016 U.S.App. LEXIS 10436 at *19. "The Second Amendment may or may not protect to some degree a right of a member of the general public to carry a firearm in public. If there is such a right, it is only a right to carry a firearm openly. But Plaintiffs do not challenge California's restrictions on open carry; they challenge only restrictions on concealed carry." *Id.* at 57. "In light of our holding, we need not, and do not, answer the question of whether or to what degree the Second Amendment might or might not protect a right of a member of the general public to carry firearms openly in public." *Id.* at 58-59.

Of course the plaintiffs in *Peruta* challenged the California open carry ban the same way the *Moore* Plaintiffs did: the state could allow open carry, concealed carry, or both, but it could not disallow both. The panel made that the basis of its opinion, but as noted the *en banc* Court reframed the issue.

This entire discussion is to note the significant differences between the issues in the *en banc Peruta* decision and the issue in this case. Illinois bans open carry, which means that for non-residents who wish to exercise their Second Amendment right to public carry within the State, they must obtain a CCL. Except that the non-residents in 45

states are ineligible to do so per 430 ILCS 66/40 and the Defendants'
application of that statute, regardless of the individuals' personal
qualifications, solely due to their state of residence.  And the exceptions
for carrying within vehicles, on others' property, and at firing ranges
and hunting grounds, are instructive to show the State's actual lack of
concern for non-residents coming into the State with firearms, but they
do not satisfy the constitutional requirement that Illinois allow the
public carry of firearms.  In short, the non-resident virtual ban on CCL
applications cuts right to the core of the Second Amendment right,
which is self-defense.

The Defendants chide Plaintiffs for not discussing the law or
traditions of concealed carry, though Plaintiffs refuse to buy into
Defendants' faulty premise.  The history of public carrying of firearms
was amply discussed in *Moore*, 702 F.3d at 934 ("The parties and the
*amici curiae* have treated us to hundreds of pages of argument, in nine
briefs. The main focus of these submissions is history.")

Further, Plaintiff's Complaint in this case does not invoke a right to
concealed carry.  In fact, Plaintiffs' Complaint at Paragraph 44
specifically states:

> The residency requirement contained in 430 ILCS
> 66/40, and all other Illinois statutory language,
> which restricts otherwise qualified non-residents
> of Illinois the rights and privileges of carrying
> concealed firearms based solely on their State of
> residence, on their face and as applied, *violate the
> Plaintiffs' individual right to possess and carry a
> handgun for self-defense as secured by the
> Second Amendment to the United States
> Constitution.* (italics added)

App. 14.

Additionally, this Court should specifically reject Defendants'
specious argument that *Heller* only identified the core of the Second
Amendment right as being in the home (Dkt.24. p.19). Though
Defendants cite to *Drake v. Filko*, 724 F.3d 426, 431 (3d Cir. 2013) for
this proposition, the Defendants very well know about this Court's
opposite holding in *Moore*, which is controlling in this Circuit over
*Drake.* Further, this insistence on ignoring *Moore* is puzzling given the
same people and/or employing agencies were Defendants in *Moore* as
are Defendants in this case.

## II. THE SUBJECT BAN SHOULD BE ANALYZED USING STRICT OR NEAR-STRICT SCRUTINY.

It is well-settled that *Heller* requires heightened scrutiny for
analyzing Second Amendment claims. *District of Columbia v. Heller*,

554 U.S. at 628, fn 27 (specifically rejecting "rational basis" as a permissible level of scrutiny for Second Amendment challenges). It is true that some Courts have employed intermediate scrutiny, *See, e.g.*, *United States v. Skoien*, 614 F.3d 638, 641-42 (7th Cir. 2010) (*en banc*); *United States v. Chester*, 628 F.3d 673, 682-83 (4th Cir. 2010); *United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010); *United States v. Yancey*, 621 F.3d 681, 683 (7th Cir. 2010); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 98 (3rd Cir. 2010). However, all those cases involved federal disqualification under 18 U.S.C. § 922. The first three involved domestic violence misdemeanants, the fourth a habitual drug user, the fifth a convicted felon, and the last a firearm with the serial number illegally removed. All six cases, therefore, were criminal prosecutions.

Instead, this case is closer to the situation in *Ezell*, in that the ban on public carrying is analogous to the City of Chicago's stricken ban on firing ranges. In *Ezell*, this Court found firing range training to be sufficiently close to the core right of self-defense that "not quite" strict scrutiny was used to analyze plaintiffs' challenge. The Court noted that:

Here, in contrast, the plaintiffs are the "law-abiding, responsible citizens" whose Second Amendment rights are entitled to full solicitude under *Heller*, and their claim comes much closer to implicating the core of the Second Amendment right. The City's firing-range ban is not merely regulatory; it prohibits the "law-abiding, responsible citizens" of Chicago from engaging in target practice in the controlled environment of a firing range. This is a serious encroachment on the right to maintain proficiency in firearm use, an important corollary to the meaningful exercise of the core right to possess firearms for self-defense.

*Ezell*, 651 F.3d at 708.

The State statute at issue here is likewise a near-complete prohibition on the exercise of the core Second Amendment right of self-defense by law-abiding citizens.

Though Defendants urge intermediate scrutiny, this Court in *Ezell* specifically distinguished its use of intermediate scrutiny in *Skoien* by noting the plaintiff there was not a responsible, law-abiding citizen, as opposed to the *Ezell* and *Heller* plaintiffs, and this Court found the right implicated in *Skoien* was not "the central self-defense component of the right." *Id.* In this case, Plaintiffs are the law-abiding citizens favored in *Heller, McDonald, Ezell* and *Moore*, and the challenged statutes directly infringe on the Plaintiffs' core right of self-defense.

Therefore, following this Court's now oft-cited analysis in *Ezell*, to the extent a level of scrutiny is employed at all for the challenged categorical bans, strict or near-strict scrutiny is appropriate.

The Fourth Circuit used intermediate rather than strict scrutiny in a challenge to the same law at issue in *Skoien* only because the defendant's claim was "not within the core right identified in *Heller*— the right of a *law-abiding*, responsible citizen to possess and carry a weapon for self-defense." *Chester*, 628 F.3d at 683 (emphasis in original). Defendants keep citing to intermediate scrutiny as if the Plaintiffs were felons (*United States v. Shields*, 789 F.3d 733 (7th Cir. 2015); *Williams*) or domestic abusers (*Skoien*). The Plaintiffs are of the same law-abiding quality as in *Heller*, *McDonald*, *Ezell*, and *Moore*, and it would be improper to evaluate their claim on the same level as criminals.

## III. THE VIRTUAL BAN FAILS EVEN UNDER INTERMEDIATE SCRUTINY.

Though the 45 state non-resident application certainly cannot survive strict or near-strict scrutiny, even if intermediate scrutiny is employed, the State's defense still fails, because the virtual CCL ban for non-residents is in no way substantially related to any legitimate

governmental interest. The District Court erred when it found the balance of harms favored the Defendant and therefore denied the preliminary injunction, because the Defendants and the public would suffer no harm at all by the Plaintiffs being allowed to apply for a CCL. In fact, it would benefit the public that the Plaintiffs are making sure they are trained in compliance with the Illinois requirements, and that they are voluntarily entering themselves into the Illinois system.

Defendants attempt to minimize the impact of the ban's effect, and the Plaintiffs' claim, by arguing that "[a]t best, plaintiffs argue that the nonresidents provision imposes a flat ban on all people it bans," (Dkt. 24 at p.21), but "all people it bans" are CCL holders in 45 states. These are people who qualified in their home states, who want to file an application showing they complied with all of Illinois's requirements and paid the fees, people the State already trusts to possess firearms in Illinois in numerous other instances. The virtual ban against most qualified United States residents from even filing an application is completely arbitrary and serves no governmental interest. This Court should reject a result that one's Second Amendment fundamental right

to self-defense ends at one's state line. *See*, *e.g.*, *Mance v. Holder*, 74 F.Supp.3d 795 (N.D.TX 2015) (*on appeal*).

The State claims it cannot monitor or vet non-residents from the 45 states, but the State also cannot monitor the Illinois resident who leaves the State. That person may check themselves into a mental health facility or commit a crime while out-of-state, but Illinois does not revoke the CCL of those persons because they cannot be monitored.

Further, someone from the 45 states who moves to Illinois or one of the four approved states becomes eligible for an Illinois CCL, regardless of how, under the Defendants' logic, the State has no way to know what that person did before moving to the approved state.

Because Illinois cannot monitor Illinois resident CCL holders who leave the State, or vet peoples' pasts once they move to an approved state, and because all the banned non-residents are (with a CCL in their home state) allowed to possess firearms in Illinois in multiple scenarios, and because there is no evidence of any crimes, terrorism or mayhem resulting from any of this, the Defendants' claims that the non-resident CCL ban has a significant relationship to any governmental interest is simply false.

The State cites to *Horsley v. Trame*, 808 F.3d 1126 (7th Cir. 2015), which involved a restriction on those between the ages of 18-20 from obtaining a FOID card without permission. In rejecting the claim, the Court held:

> Significantly, although Horsley's arguments treat the challenged statute as a categorical ban on firearm possession, the FOID Card Act does not in fact ban persons under 21 from having firearms without parent or guardian consent. Having a parent or guardian signature may speed up the process, but it is not a prerequisite to obtaining a FOID card in Illinois. Rather, a person for whom a parent's signature is not available can appeal to the Director of the Illinois State Police. Upon a sufficient showing regarding the applicant's criminal record, lack of dangerousness, and the public interest, the Director may issue a card. 430 ILCS 65/10(c). And if the Director were to deny the application, the denial is subject to judicial review. 430 ILCS 65/11(a).

*Id.* at 1131-1132.

Contrary to all the safeguards listed in *Horsley*, there are no such possibilities in the instant case. If you reside in one of the 45 banned states, you are banned regardless of your qualifications. Unless, of course, you move to Illinois or one of the four approved states; then you are immediately eligible.

## IV. THE BALANCE OF HARMS FAVORS THE PLAINTIFFS AND THE UPHOLDING OF CONSTITUTIONAL RIGHTS.

The sort of deferential treatment sought by the Defendants, that which defers to a prohibition of the exercise of fundamental rights, is not allowed (". . . the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller*, 554 U.S. at 636). It is undisputed the State may regulate the use of firearms within constitutional boundaries. But a prohibition dressed up as a regulation is still a prohibition, and that the State may not do.

This Court did not give in to the State's speculative fear-mongering in *Moore*, nor did it accept Chicago's baseless speculations in *Ezell*:

> In the district court, the City presented no data or expert opinion to support the range ban, so we have no way to evaluate the seriousness of its claimed public-safety concerns. Indeed, on this record those concerns are entirely speculative and, in any event, can be addressed through sensible zoning and other appropriately tailored regulations.

*Ezell*, 651 F.3d at 709.

The State has no evidence that allowing non-residents with CCLs in their home states to apply for a CCL here after complying with all requirements and paying all fees has caused any harm to the public, in

Illinois or anywhere else. This makes perfect sense, because in Illinois where non-residents with CCLs from their home state are already able to bring firearms into the State for a variety of purposes, the potential harm of allowing those people to apply for an Illinois CCL is nil. This Court addressed this exact question in *Moore*, relying on the study of social scientists:

> "The available data about permit holders also imply that they are at fairly low risk of misusing guns, consistent with the relatively low arrest rates observed to date for permit holders. Based on available empirical data, therefore, we expect relatively little public safety impact if courts invalidate laws that prohibit gun carrying outside the home, assuming that some sort of permit system for public carry is allowed to stand." Philip J. Cook, Jens Ludwig & Adam M. Samaha, *Gun Control After Heller: Threats and Sideshows from a Social Welfare Perspective*, 56 UCLA L. Rev. 1041, 1082 (2009).

*Moore*, 702 F.3d at 937-38.

And while Plaintiffs do not take issue with "restrictions on individuals with certain criminal histories or a history of admittance to mental health facilities, or who may pose a present danger to themselves or the public" (Dkt.24 at p.23), Plaintiffs do take issue with the State's default blanket assumption that all people from 45 states are criminals and/or mentally ill and/or terrorists who must be lying

about it on an Illinois concealed carry license application. And Plaintiffs do not need to contend that the State survey results were inaccurate, as the District Court already did that (SA 56).

The Defendants can speculate all they want about the boogeyman from outside Illinois who brings a firearm into the State to commit mayhem, but even in that extremely unlikely scenario the fact that the person was allowed to apply for a CCL (or was even granted a CCL) would have nothing to do with it.

This Court should follow its analysis in *Ezell* and *Moore* in this case, and not allow the Defendants to offer only guesswork and fear, without any evidence anywhere that allowing a non-resident with a CCL in their home state to apply for a CCL in a foreign state, after complying with all requirements, ever caused any public harm. Because there is no such evidence of harm, the balance should not have tipped towards the Defendants, and the District Court should be reversed on this issue, which means the Plaintiffs' request for a preliminary injunction should have been granted.

## V. PLAINTIFFS SHOULD ALSO SUCCEED ON THEIR OTHER CONSTITUTIONAL CHALLENGES.

As noted in their main Appellants' Brief, the District Court did not consider Plaintiffs' remaining challenges once it found the Second Amendment was implicated in the Plaintiffs' claim, but Plaintiffs will reply to Defendants' Responses on these issues.

### 1. *Article IV Privileges and Immunities*

This claim succeeds, and the Defendants' arguments fail, for the same reason as the Second Amendment claim discussed above. Defendants argue that the 45 state ban on CCL applications bears a substantial relationship to the State's objective, but as noted above the non-resident ban has no relationship to any governmental interest that involves public safety or crime prevention. The two are simply not related. And because the State cannot even satisfy intermediate scrutiny on the Second Amendment claim, much less near-strict scrutiny, they likewise are unable to meet that burden under the Article IV analysis. Defendants claim that Plaintiffs miss the point and that there is a substantial interest in "ensuring that all people who carry concealed firearms in the State are qualified to do so." (Dkt. 24 at p.30). But it is Defendants who miss the point; it is not the interest that is in

dispute, it is the fact that the 45 state CCL application ban has nothing to do with furthering that interest. It is simply another example of stripping rights from the law-abiding people and claiming that is somehow stopping crime. It is not.

## 2. *Fourteenth Amendment Equal Protection Clause*

The Defendants are completely wrong when they assert rational basis as the standard of review for Plaintiffs' Equal Protection claim. As this Court noted in *Baskin v. Bogan*, 766 F.3d 648 (7th Cir. 2014): "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* at 654.

In this case, a fundamental constitutional right, namely Plaintiffs' Second Amendment rights, are infringed. Defendant disingenuously attempt to sidestep this through the aforementioned two-step: insisting *Heller* is limited to the home, and insisting this case is about concealed carry alone, when it is really about the right to public carry recognized in *Moore*. Since a fundamental constitutional right is involved,

however, rational basis is off the table. And just as for a suspect class, the analysis of discrimination as to a fundamental right requires "a compelling showing that the benefits of the discrimination to society as a whole clearly outweigh the harms to its victims." *Id.* at 655. Defendants cannot possibly meet this standard, especially when they cannot cite to any benefits of the 45 state CCL application ban at all.

### 3. *Fourteenth Amendment (Procedural) Due Process Clause*

The State cannot meet any of the four factors of *Mathews v. Eldridge*, 424 U.S. 319 (1976) or *Gilbert v. Homar*, 520 U.S. 924 (1997). By again trying to make the case about concealed carry rather than public carry, the Defendants again erroneously argue there is no right at stake. This is untrue. The risk of error is enormous, since practically no qualified non-resident is even allowed to file an application. Procedural safeguards, such as being allowed to file an application and be evaluated on the merits, would certainly provide value, and the State's interest in this may be important, but the means are unconnected to serving that interest. In the meantime, Plaintiffs suffer irreparable harm.

## CONCLUSION

In light of the above, Plaintiffs are entitled to a preliminary injunction against the challenged statute. The historical evidence, and Supreme Court's language in *Heller* and *McDonald*, make clear that some method of carrying is within the core fundamental right of armed self-defense. The State has chosen a concealed carry regime to the exclusion of allowing open carry, but wrongfully denies the meaningful exercise of that fundamental right to qualified persons from most of the Country.

The State's ban on, and criminal penalties for, carrying of firearms by non-residents without a license for which they are ineligible, are subject to the "not quite" strict scrutiny employed by this Court in *Ezell*, which held, when considering an analogous ban infringing the core right of self-defense, that the Defendants "must establish a close fit between the range ban and the actual public interests it serves, and also that the public's interests are strong enough to justify so substantial an encumbrance on individual Second Amendment rights." *Ezell*, 651 F.3d at 708-09. While the State may claim the generic "public safety" as an interest, there is not a close fit between that

interest and the virtual ban on non-resident CCL applications. As with the laws stricken down in *Heller*, *McDonald*, *Ezell*, and *Moore*, the statute here targets only the law-abiding; criminals do not follow or care about getting a CCL, and thus public safety is lessened, in that the likelihood that only criminals will possess firearms in public is increased, as is the risk that harm will befall a qualified non-resident who is arbitrarily denied the right to defend herself. Thus, while regulation will be allowed in some constitutional measure, the challenged statute is an unconstitutional prohibition infringing on a core right without a close fit to the professed interest it allegedly serves.

Because of this, Plaintiffs are suffering irreparable harm every day the statute is in effect. They have no remedy at law, as money damages are obviously inappropriate as a substitute for fundamental constitutional rights. Further, based on the record, and as noted by the District Court, Plaintiffs are likely to succeed on the merits, since Defendants cannot show the challenged statutes meet the required level of heightened scrutiny mandated by *Ezell*.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court reverse the District Court's Order that denied Plaintiffs' Motion for a Preliminary Injunction. Plaintiffs request this case be remanded with instructions to enter a Preliminary Injunction in Plaintiffs' favor, as well as to grant Plaintiffs any and all other relief this Court deems just and proper.

Dated: July 9, 2016               Respectfully submitted,

David G. Sigale
Law Firm of David G. Sigale, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
Tel. 630.452.4547/Fax 630.596.4445
dsigale@sigalelaw.com

By:      /s/ David G. Sigale
          David G. Sigale
          Attorney for Plaintiffs-Appellants
          Kevin W. Culp, Marlow Davis, Freddie
          Reed-Davis, Douglas W. Zylstra, John
          S. Koller, Steve Stevenson, Paul
          Heslin, Marlin Mangels, Jeanelle
          Westrom, Second Amendment
          Foundation, Inc., Illinois Carry and
          Illinois State Rifle Association

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4731 words, excluding the parts of the brief excluded by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Circuit Rule 32(b), and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionately spaced typeface using Microsoft Word 2016 in 14 point Century font.


_____/s/ David G. Sigale_____
David G. Sigale
Attorney for Plaintiffs-Appellants

Dated: July 9, 2016

# CERTIFICATE OF SERVICE

**✔**

## Certificate of Service When All Case Participants Are CM/ECF Participants

I hereby certify that on ___July 9, 2016___, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ ___David G. Sigale___

# CERTIFICATE OF SERVICE

☐

## Certificate of Service When Not All Case Participants Are CM/ECF Participants

I hereby certify that on _____, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants:

counsel / party:                                    address:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

s/ _____