# U.S. District Court
## CENTRAL DISTRICT OF ILLINOIS (Springfield)
## CIVIL DOCKET FOR CASE #: 3:14−cv−03320−SEM−TSH

Culp et al v. Madigan et al

Assigned to: Judge Sue E. Myerscough

Referred to: Magistrate Judge Tom Schanzle−Haskins

Case in other court:  Seventh Circuit, 15−03738

Cause: 42:1983 Civil Rights Act

Date Filed: 10/22/2014

Jury Demand: None

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: Federal Question

**Plaintiff**

**Kevin W. Culp**

represented by **David G Sigale**
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road
Suite 207
Glen Ellyn, IL 60137
630−452−4547
Fax: 630−596−4445
Email: dsigale@sigalelaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Marlow Davis**

represented by **David G Sigale**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Freddie Reed−Davis**

represented by **David G Sigale**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Douglas W. Zylstra**

represented by **David G Sigale**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**John S. Koller**

represented by **David G Sigale**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Steve Stevenson**

represented by **David G Sigale**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Paul Heslin**                                    represented by   **David G Sigale**
                                                                    (See above for address)
                                                                    *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Marlin Mangels**                                 represented by   **David G Sigale**
                                                                    (See above for address)
                                                                    *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Gus C Browne, II**                               represented by   **David G Sigale**
*TERMINATED: 09/14/2015*                                            (See above for address)
                                                                    *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Jeanelle Westrom**                               represented by   **David G Sigale**
                                                                    (See above for address)
                                                                    *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Second Amendment Foundation, Inc.**              represented by   **David G Sigale**
                                                                    (See above for address)
                                                                    *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Illinois Carry**                                 represented by   **David G Sigale**
                                                                    (See above for address)
                                                                    *ATTORNEY TO BE NOTICED*


**Plaintiff**

**Illinois State Rifle Association**               represented by   **David G Sigale**
                                                                    (See above for address)
                                                                    *ATTORNEY TO BE NOTICED*


V.

**Defendant**

**Lisa Madigan**                                   represented by   **Joshua D Ratz**
*In her Official Capacity as Attorney*                              ILLINOIS ATTORNEY GENERAL
*General of the State of Illinois*                                  500 S Second St
                                                                    Springfield, IL 62706
                                                                    217−782−9094
                                                                    Fax: 217−524−5091
                                                                    Email: jratz@atg.state.il.us
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

**Defendant**

| | |
|---|---|
| **Hiram Grau** | represented by **Joshua D Ratz** |
| *In his Official Capacity as Director of the* | (See above for address) |
| *Illinois State Police* | *ATTORNEY TO BE NOTICED* |

**Defendant**

| | |
|---|---|
| **Jessica Trame** | represented by **Joshua D Ratz** |
| *as Bureau Chief of the Illinois State* | (See above for address) |
| *Police Firearms Services Bureau* | *ATTORNEY TO BE NOTICED* |

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 10/22/2014 | 1 | 9 | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0753−1935460.), filed by Second Amendment Foundation, Inc., Paul Heslin, Marlow Davis, Kevin W. Culp, Illinois State Rifle Association, Steve Stevenson, Freddie Reed−Davis, Gus C. Browne, Illinois Carry, Marlin Mangels, Douglas W. Zylstra, Jeanelle Westrom, John S. Koller.(Sigale, David) (Entered: 10/22/2014) |
| 10/22/2014 | 2 | | NOTICE *(Civil Cover Sheet)* re 1 Complaint, (Sigale, David) (Entered: 10/22/2014) |
| 10/23/2014 | 3 | | NOTICE *F.R.Civ.P. 7.1 Corporate Disclosure Statement (SAF)* (Sigale, David) (Entered: 10/23/2014) |
| 10/23/2014 | 4 | | NOTICE *F.R.Civ.P. 7.1 Corporate Disclosure Statement (IL Carry)* (Sigale, David) (Entered: 10/23/2014) |
| 10/23/2014 | 5 | | NOTICE *F.R.Civ.P. 7.1 Corporate Disclosure Statement (ISRA)* (Sigale, David) (Entered: 10/23/2014) |
| 10/24/2014 | 6 | | Summons Issued as to Hiram Grau, Lisa Madigan, and Jessica Trame. Originals returned to Attorney David G. Sigale for service. (GL, ilcd) (Entered: 10/24/2014) |
| 11/22/2014 | 7 | | Return of Service Executed by Second Amendment Foundation, Inc., Paul Heslin, Marlow Davis, Kevin W. Culp, Illinois State Rifle Association, Steve Stevenson, Freddie Reed−Davis, Gus C Browne, II, Illinois Carry, Marlin Mangels, Douglas W. Zylstra, Jeanelle Westrom, John S. Koller as to Lisa Madigan 10/31/2014. (Sigale, David) (Entered: 11/22/2014) |
| 11/22/2014 | 8 | | SUMMONS Returned Executed by Second Amendment Foundation, Inc., Paul Heslin, Marlow Davis, Kevin W. Culp, Illinois State Rifle Association, Steve Stevenson, Freddie Reed−Davis, Gus C Browne, II, Illinois Carry, Marlin Mangels, Douglas W. Zylstra, Jeanelle Westrom, John S. Koller. Hiram Grau served on 10/30/2014, answer due 11/20/2014., Return of Service Executed by Second Amendment Foundation, Inc.; Paul Heslin; Marlow Davis; Kevin W. Culp; Illinois State Rifle Association; Steve Stevenson; Freddie Reed−Davis; Gus C Browne, II; Illinois Carry; Marlin Mangels; Douglas W. Zylstra; Jeanelle Westrom; John S. Koller as to Hiram Grau 10/30/2014. (Sigale, David) (Entered: 11/22/2014) |
| 11/22/2014 | 9 | | |

| | | | |
|---|---|---|---|
| | | | SUMMONS Returned Executed by Second Amendment Foundation, Inc., Paul Heslin, Marlow Davis, Kevin W. Culp, Illinois State Rifle Association, Steve Stevenson, Freddie Reed−Davis, Gus C Browne, II, Illinois Carry, Marlin Mangels, Douglas W. Zylstra, Jeanelle Westrom, John S. Koller. (Sigale, David) (Entered: 11/22/2014) |
| 11/22/2014 | 10 | | Return of Service Executed by Second Amendment Foundation, Inc., Paul Heslin, Marlow Davis, Kevin W. Culp, Illinois State Rifle Association, Steve Stevenson, Freddie Reed−Davis, Gus C Browne, II, Illinois Carry, Marlin Mangels, Douglas W. Zylstra, Jeanelle Westrom, John S. Koller as to Jessica Trame 10/30/2014., SUMMONS Returned Executed by Second Amendment Foundation, Inc.; Paul Heslin; Marlow Davis; Kevin W. Culp; Illinois State Rifle Association; Steve Stevenson; Freddie Reed−Davis; Gus C Browne, II; Illinois Carry; Marlin Mangels; Douglas W. Zylstra; Jeanelle Westrom; John S. Koller. Jessica Trame served on 10/30/2014. (Sigale, David) (Entered: 11/22/2014) |
| 12/29/2014 | 11 | | MOTION for Extension of Time to File by Defendants Hiram Grau, Jessica Trame. Responses due by 1/15/2015 (Ratz, Joshua) (Entered: 12/29/2014) |
| 12/29/2014 | | | TEXT ORDER by Magistrate Judge Tom Schanzle−Haskins. Defendants' Motion for Extension of Time 11 is ALLOWED. Defendants granted extension to 1/28/2015 to answer or otherwise plead. (LB, ilcd) (Entered: 12/29/2014) |
| 01/28/2015 | 12 | | MOTION for Extension of Time to File by Defendant Hiram Grau. Responses due by 2/17/2015 (Ratz, Joshua) (Entered: 01/28/2015) |
| 01/29/2015 | | | TEXT ORDER by U.S. Magistrate Judge Tom Schanzle−Haskins. Unopposed Second Motion for Extension of Time 12 ALLOWED. Extension granted to 2/11/2015 for Defendants to answer or otherwise plead. (LB, ilcd) (Entered: 01/29/2015) |
| 02/11/2015 | 13 | 27 | ANSWER to 1 Complaint, by Hiram Grau, Lisa Madigan, Jessica Trame.(Ratz, Joshua) (Entered: 02/11/2015) |
| 02/13/2015 | | | NOTICE OF HEARING: Rule 16 Scheduling Conference set Thursday, 3/26/2015, at 11:00 AM by telephone (court will place call) before U.S. Magistrate Judge Tom Schanzle−Haskins. Attorneys are directed to comply with Federal Rule of Civil Procedure 26(f) by meeting as soon as practicable, and in any event at least fourteen (14) days prior to the scheduling conference, and are to submit a proposed discovery plan in writing to the Court on or before 3/24/2015. Such a plan must include, at a minimum, those items listed in CDIL−LR 26.2(3), Rule 16(b), Rule 26(f), and CDIL−LR 16.2(E) with proposed deadlines. The parties are directed to specifically address the provisions, if any, for discovery or disclosure of electronically stored information, and to discuss agreements, if any, the parties reach for asserting claims of privilege or of protection as trial preparation material, after inadvertent production. Any plan filed shall specifically address the need, or lack thereof, concerning discovery of electronically stored information. If a discovery plan is not submitted as required, the scheduling hearing will not be held and costs may be assessed. Lead counsel or other counsel of record with knowledge of the case should be available to participate in the Rule 16 scheduling hearing. (LB, ilcd) (Entered: 02/13/2015) |

| | | | |
|---|---|---|---|
| 03/24/2015 | 14 | 36 | STATUS REPORT *(Joint)* by Gus C Browne, II, Kevin W. Culp, Marlow Davis, Paul Heslin, Illinois Carry, Illinois State Rifle Association, John S. Koller, Marlin Mangels, Freddie Reed−Davis, Second Amendment Foundation, Inc., Steve Stevenson, Jeanelle Westrom, Douglas W. Zylstra. (Sigale, David) (Entered: 03/24/2015) |
| 03/26/2015 | 15 | | MINUTE ENTRY for proceedings held before U.S. Magistrate Judge Tom Schanzle−Haskins. Rule 16 Scheduling Conference held by telephone on 3/26/2015 with counsel for Plaintiffs, David G. Sigale, and counsel for Defendants, Joshua D. Ratz. Written Scheduling Order to follow. Parties are reminded of their option to consent to proceed before U.S. Magistrate Judge. See attached form. (LB, ilcd) (Entered: 03/26/2015) |
| 03/26/2015 | 16 | 40 | SCHEDULING ORDER entered by U.S. Magistrate Judge Tom Schanzle−Haskins. TIME LIMITS AND SETTINGS ARE ORDERED AS FOLLOWS: Initial Disclosures due by 4/16/2015; Amended Pleadings / Joinder of Parties due by 4/27/2015; Fact Discovery due by 6/24/2015; Plaintiff`s Expert Disclosure due by 7/24/2015; Defendant`s Expert Disclosure due by 9/22/2015; Expert Discovery due by 10/22/2015; Dispositive Motions due by 11/23/2015. Final Pretrial Conference set 2/29/2016 at 2:00 PM in Courtroom 1 in Springfield before U.S. District Judge Sue E. Myerscough. Bench Trial set 3/15/2016 at 9:00 AM before Judge Myerscough. Telephonic Status Conference set Monday, 10/26/2015, at 2:00 PM (court will place call) before U.S. Magistrate Judge Tom Schanzle−Haskins. See written order. (Attachments: #1 Mediation Memo, #2 Courtroom Technology Brochure) (LB, ilcd) (Entered: 03/27/2015) |
| 08/05/2015 | 17 | 48 | MOTION for Preliminary Injunction by Plaintiffs Kevin W. Culp, Marlow Davis, Paul Heslin, Illinois Carry, Illinois State Rifle Association, John S. Koller, Marlin Mangels, Freddie Reed−Davis, Second Amendment Foundation, Inc., Steve Stevenson, Jeanelle Westrom, Douglas W. Zylstra. Responses due by 8/24/2015 (Sigale, David) (Entered: 08/05/2015) |
| 08/05/2015 | 18 | 50 | MEMORANDUM in Support re 17 MOTION for Preliminary Injunction filed by Plaintiffs Kevin W. Culp, Marlow Davis, Paul Heslin, Illinois Carry, Illinois State Rifle Association, John S. Koller, Marlin Mangels, Freddie Reed−Davis, Second Amendment Foundation, Inc., Steve Stevenson, Jeanelle Westrom, Douglas W. Zylstra. (Attachments: #1 Exhibit Declaration of Steven Stevenson, #2 Exhibit Declaration of Julianne Versel, #3 Exhibit Declaration of Paul Heslin, #4 Exhibit Declaration of Marlin Mangels, #5 Exhibit Declaration of Tim Bowyer)(Sigale, David) (Entered: 08/05/2015) |
| 08/06/2015 | 19 | 103 | Exhibit re 18 Memorandum in Support of Motion,, *Declaration of Kevin W. Culp* by Kevin W. Culp, Marlow Davis, Paul Heslin, Illinois Carry, Illinois State Rifle Association, John S. Koller, Marlin Mangels, Freddie Reed−Davis, Second Amendment Foundation, Inc., Steve Stevenson, Jeanelle Westrom, Douglas W. Zylstra. (Attachments: #1 Exhibit Declaration of Marlow Davis, #2 Exhibit Declaration of Freddie Reed−Davis, #3 Exhibit Declaration of Douglas W. Zylstra, #4 Exhibit Declaration of John S. Koller)(Sigale, David) (Entered: 08/06/2015) |
| 08/07/2015 | 20 | 113 | MEMORANDUM in Support re 17 MOTION for Preliminary Injunction *(Corrected for pagination and unintended typographical error)* filed by Plaintiffs Kevin W. Culp, Marlow Davis, Paul Heslin, Illinois Carry, Illinois |

| | | | State Rifle Association, John S. Koller, Marlin Mangels, Freddie Reed−Davis, Second Amendment Foundation, Inc., Steve Stevenson, Jeanelle Westrom, Douglas W. Zylstra. (Sigale, David) (Entered: 08/07/2015) |
|---|---|---|---|
| 08/07/2015 | 21 | 156 | Exhibit re 20 Memorandum in Support of Motion, *(Declaration of Richard Pearson)* by Kevin W. Culp, Marlow Davis, Paul Heslin, Illinois Carry, Illinois State Rifle Association, John S. Koller, Marlin Mangels, Freddie Reed−Davis, Second Amendment Foundation, Inc., Steve Stevenson, Jeanelle Westrom, Douglas W. Zylstra. (Sigale, David) (Entered: 08/07/2015) |
| 08/20/2015 | 22 | | MOTION for Extension of Time to File Response/Reply as to 17 MOTION for Preliminary Injunction by Defendants Hiram Grau, Lisa Madigan, Jessica Trame. Responses due by 9/8/2015 (Ratz, Joshua) (Entered: 08/20/2015) |
| 08/20/2015 | | | TEXT ORDER: Defendants' Motion for Extension of Time to Respond to Motion for Preliminary Injunction 22 is GRANTED. Defendants shall file their response on or before August 31, 2015. Entered by Judge Sue E. Myerscough on 8/20/2015. (ME, ilcd) (Entered: 08/20/2015) |
| 08/31/2015 | 23 | | MOTION for Leave to File by Defendants Hiram Grau, Lisa Madigan, Jessica Trame. Responses due by 9/17/2015 (Attachments: # 1 Exhibit A, # 2 Exhibit A−1)(Ratz, Joshua) (Entered: 08/31/2015) |
| 09/02/2015 | | | TEXT ORDER: Defendants' Motion to File Instanter Oversized Brief 23 is GRANTED. The Clerk is DIRECTED to file Defendants' Objection to Plaintiffs' Motion for Preliminary Injunction [23−1] and Exhibits [23−2]. Entered by Judge Sue E. Myerscough on 9/2/2015. (GL, ilcd) (Entered: 09/02/2015) |
| 09/02/2015 | 24 | 158 | OBJECTION to Plaintiff's Motion for Preliminary Injunction by Defendants. (Attachments: # 1 Exhibits)(GL, ilcd) (Entered: 09/02/2015) |
| 09/08/2015 | | | TEXT ORDER: A hearing on Plaintiffs' Motion for Preliminary Injunction is set for October 8, 2015 at 9:30 a.m. in Courtroom 1 in Springfield before U.S. District Judge Sue E. Myerscough. Entered by Judge Sue E. Myerscough on 9/8/2015. (GL, ilcd) (Entered: 09/08/2015) |
| 09/11/2015 | 25 | | MOTION to Continue *Hearing on Motion for Preliminary Injunction (Unopposed)* by Plaintiffs Kevin W. Culp, Marlow Davis, Paul Heslin, Illinois Carry, Illinois State Rifle Association, John S. Koller, Marlin Mangels, Freddie Reed−Davis, Second Amendment Foundation, Inc., Steve Stevenson, Jeanelle Westrom, Douglas W. Zylstra. Responses due by 9/28/2015 (Sigale, David) (Entered: 09/11/2015) |
| 09/11/2015 | 26 | 272 | MOTION to Dismiss *Gus C. Browne, II, only, and voluntarily, with remainder of case and Plaintiffs to proceed uninterrupted (Unopposed)* by Plaintiff Gus C Browne, II. Responses due by 9/28/2015 (Attachments: # 1 Exhibit Stipulation as to Voluntary Dismissal (of Gus C. Browne II, only))(Sigale, David) (Entered: 09/11/2015) |
| 09/14/2015 | | | TEXT ORDER: Plaintiff Gus C. Browne, II, has filed a Federal Rule of Civil Procedure 41(a)(1)(A) Agreed Motion to Voluntarily Dismiss 26 . The parties also filed a Federal Rule of Civil Procedure 41(a)(1)(A)(ii) Stipulation to Dismiss Plaintiff Gus C. Browne, II [26−1]. The Motion 26 is GRANTED. Plaintiff Gus C. Browne, II, is DISMISSED as a party to this case. The |

| | | | |
|---|---|---|---|
| | | | remainder of the Plaintiffs and their claims in this suit shall proceed unaffected. Entered by Judge Sue E. Myerscough on 9/14/2015. (GL, ilcd) (Entered: 09/14/2015) |
| 09/14/2015 | | | TEXT ORDER: Plaintiffs' Motion to Continue Hearing on Motion for Preliminary Injunction 25 , to which Defendants do not object, is GRANTED. The hearing scheduled for October 8, 2015, at 9:30 a.m. is VACATED and RESET to October 16, 2015 at 10:30 a.m. Entered by Judge Sue E. Myerscough on 9/14/2015. (GL, ilcd) (Entered: 09/14/2015) |
| 10/16/2015 | | | Minute Entry for proceedings held before Judge Sue E. Myerscough: MOTION HEARING as to Motion for Preliminary Injunction 17 held on 10/16/2015. Attorney David Sigale present in person on behalf of Plaintiffs. Plaintiffs Culp and Valinda Rowe, representative of IL Carry, present in person. Assistant IL Attorney General Joshua Ratz person in person on behalf of Defendants. Positions and arguments presented by counsel. Court took matter under advisement with written ruling to enter. Hearing adjourned. (Court Reporter KS.) (DM, ilcd) (Entered: 10/19/2015) |
| 10/26/2015 | | | MINUTE ENTRY for proceedings held before U.S. Magistrate Judge Tom Schanzle−Haskins. Telephonic status conference held with counsel for Plaintiffs, David Sigale, and counsel for Defendants, Joshua Ratz. Discussion held regarding setting settlement conference or mediation. Parties report that no settlement negotiations are outstanding. Parties to contact the Court for scheduling of mediation or settlement conference if parties deem such appropriate. (LB, ilcd) (Entered: 10/26/2015) |
| 11/23/2015 | 27 | 276 | MOTION for Summary Judgment by Defendants Hiram Grau, Lisa Madigan, Jessica Trame. Responses due by 12/17/2015 (Attachments: # 1 Exhibit 1)(Ratz, Joshua) (Entered: 11/23/2015) |
| 11/23/2015 | 28 | 370 | MEMORANDUM in Support re 27 MOTION for Summary Judgment filed by Defendants Hiram Grau, Lisa Madigan, Jessica Trame. (Ratz, Joshua) (Entered: 11/23/2015) |
| 12/04/2015 | 29 | 396 | OPINION: Plaintiffs' Motion for Preliminary Injunction 17 is DENIED. (SEE WRITTEN OPINION) Entered by Judge Sue E. Myerscough on 12/4/2015. (GL, ilcd) (Entered: 12/07/2015) |
| 12/08/2015 | 30 | 460 | NOTICE OF APPEAL as to 29 Order on Motion for Preliminary Injunction by Kevin W. Culp, Marlow Davis, Paul Heslin, Illinois Carry, Illinois State Rifle Association, John S. Koller, Marlin Mangels, Freddie Reed−Davis, Second Amendment Foundation, Inc., Steve Stevenson, Jeanelle Westrom, Douglas W. Zylstra. Filing fee $ 505, receipt number 0753−2216941. (Sigale, David) (Entered: 12/08/2015) |
| 12/09/2015 | | | TEXT ORDER: Plaintiffs have appealed this Court's denial of the Motion for Preliminary Injunction. See Notice of Appeal 30 . An appeal of an interlocutory decision "does not divest a district court of jurisdiction or prevent the court 'from finishing its work and rendering a final decision.'" Staffa v. Pollard, 597 F. App'x 893, 895 (7th Cir. 2015) (unpublished decision) (quoting Wis. Mut. Ins. Co. v United States, 441 F.3d 502, 504 (7th Cir. 2006)). However, in light of the current state of the law concerning the Second Amendment, and the fact that the Seventh Circuit decision on the preliminary injunction will be extremely beneficial to the ultimate resolution of this case, |

| | | | |
|---|---|---|---|
| | | | the Court sua sponte stays these proceedings. See, e.g., Jackson v. Van Kampen Series Fund, Inc., No. 06−cv−944−DRH, 2007 WL 1532090, at *2 (S.D. Ill. May 24, 2007) (discussing the court's inherent authority to stay proceedings sua sponte). Defendants' pending Motion for Summary Judgment 27 is DENIED AS MOOT with leave to refile after the interlocutory appeal is decided. Entered by Judge Sue E. Myerscough on 12/9/2015. (ME, ilcd) (Entered: 12/09/2015) |
| 12/09/2015 | 31 | | Short Record of Appeal Sent to US Court of Appeals re 30 Interlocutory Notice of Appeal. (ME, ilcd) (Entered: 12/09/2015) |
| 12/10/2015 | 32 | | NOTICE of Docketing Record on Appeal from USCA re 30 Notice of Appeal, filed by Kevin W. Culp et al. USCA Case Number 15−3738. (GL, ilcd) (Entered: 12/10/2015) |
| 12/16/2015 | | | TEXT ORDER: In light of the Court's stay of the case, all pending deadlines and hearings are VACATED. Entered by Judge Sue E. Myerscough on 12/16/2015. (GL, ilcd) (Entered: 12/16/2015) |
| 01/11/2016 | 33 | | NOTICE OF FILING OFFICIAL TRANSCRIPT of Proceedings held on 10/16/2015, before Judge Sue E. Myerscough. Court Reporter/Transcriber K.S., Telephone number 217−492−4810. Transcript purchased by: David Sigale.<br><br>**IMPORTANT: The parties have seven (7) business days to file with the Court a Notice of Intent to Request Redaction of this transcript. Within 21 days of the filing of the transcript, a Motion of Requested Redactions shall be e−filed with the Court. Access to this motion will be restricted to the Court and the attorneys of record in the case. If no such Notice and Motion are filed, the transcript may be made remotely, electronically available to the public, without redaction, 90 days from the date initially filed. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the Clerk's Office public terminal or contact the Court Reporter for purchase. Counsel are strongly urged to share this notice with all clients so that an informed decision about the inclusion of certain materials may be made. The responsibility for redacting these personal identifiers rests solely with counsel and the parties. The Clerk and Court Reporter will not review each transcript for compliance with this rule.**<br><br>Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. Redaction Request due 2/4/2016. Redacted Transcript Deadline set for 2/16/2016. Release of Transcript Restriction set for 4/14/2016. (GL, ilcd) (Entered: 01/11/2016) |
| 07/29/2016 | 34 | | Request from USCA for Long Record re 30 Notice of Appeal,. (SW, ilcd) (Entered: 07/29/2016) |
| 07/29/2016 | | | Certified and Transmitted Record on Appeal to US Court of Appeals re 30 Notice of Appeal. (SW, ilcd) (Entered: 07/29/2016) |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KEVIN W. CULP, MARLOW DAVIS, | ) | |
| FREDDIE REED-DAVIS, | ) | |
| DOUGLAS W. ZYLSTRA, | ) | |
| JOHN S. KOLLER, STEVE STEVENSON, | ) | |
| PAUL HESLIN, MARLIN MANGELS, | ) | |
| GUS C. BROWNE II, | ) | |
| JEANELLE WESTROM, | ) | |
| SECOND AMENDMENT FOUNDATION, | ) | |
| INC., ILLINOIS CARRY and | ) | |
| ILLINOIS STATE RIFLE ASSOCIATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. |
| | ) | |
| LISA MADIGAN, in her Official Capacity | ) | |
| as Attorney General of the State of Illinois; | ) | |
| HIRAM GRAU, in his Official Capacity as | ) | |
| Director of the Illinois State Police, and | ) | |
| JESSICA TRAME, as Bureau Chief of the | ) | |
| Illinois State Police Firearms Services | ) | |
| Bureau, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, KEVIN W. CULP, MARLOW DAVIS, FREDDIE REED-DAVIS,

DOUGLAS W. ZYLSTRA, JOHN S. KOLLER, STEVE STEVENSON, PAUL

HESLIN, MARLIN MANGELS, GUS C. BROWNE II, JEANELLE WESTROM,

SECOND AMENDMENT FOUNDATION, INC., ILLINOIS CARRY, and ILLINOIS

STATE RIFLE ASSOCIATION, by and through undersigned counsel, as and for

their Complaint against Defendants LISA MADIGAN, in her Official Capacity as

Attorney General of the State of Illinois; HIRAM GRAU, in his Official Capacity as

Director of the Illinois State Police, and JESSICA TRAME, as Bureau Chief of the Illinois State Police Firearms Services Bureau, allege as follows:

**INTRODUCTION**

1.      This is an action pursuant to 42 U.S.C. § 1983 for deprivation of civil rights under color of law, which seeks equitable, declaratory, and injunctive relief challenging the State of Illinois's prohibition on virtually all otherwise qualified non-Illinois residents from obtaining a concealed carry license, pursuant to Illinois Compiled Statute ("ILCS") 430 ILCS 66/40.

2.      The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation," *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 2797 (2008), and is "fully applicable against the States," *McDonald v. City of Chicago*, 561 U.S. 3025, 130 S. Ct. 3020, 3026 (2010).

3.      The Seventh Circuit, in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) held that the Second Amendment right to armed self-defense extends outside of the home.  As a result, the State passed the Firearms Concealed Carry Act in July, 2013.

4.      However, the laws of Illinois, as applied by the Defendants, prohibit most non-Illinois residents from obtaining a license for the concealed carry of guns, in public, for the purpose of self-defense. In Illinois, only residents of the State, plus residents of only four other states (Hawaii, New Mexico, South Carolina, and Virginia), may have the benefit of applying for and obtaining an Illinois license for armed defense by concealed carry.

- 2 -

5.     Plaintiffs seek to establish that the recognition and incorporation of the Second Amendment, and the Fourteenth Amendment's due process and equal protection clauses, plus the U.S. Constitution itself, renders the State's ban on virtually all non-Illinois residents from obtaining a concealed carry license unconstitutional. As the Plaintiffs only seek to be treated the same as law-abiding Illinois residents, the Second and Fourteenth Amendments, and Article IV, §2 of the Constitution, render a virtual ban such as that challenged in this action impermissible.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983, in that this action seeks to redress the deprivation, under color of the laws, statute, ordinances, regulations, customs, and usages of the Defendants as they execute, administer and enforce the complained-of laws, of the rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

7.     This Court has personal jurisdiction over the Defendants because, *inter alia*, they acted under the color of laws, policies, customs, and/or practices of the State of Illinois and/or within the geographic confines of the State of Illinois.

8.     Venue is proper pursuant to 28 U.S.C. § 1391 because the Defendants execute, administer, and enforce the complained-of laws against Plaintiffs in this District, and because the events and omissions giving rise to this action are

- 3 -

harming Plaintiffs in this District, and the State laws were enacted in the State capital in this District.

9.      Pursuant to CDIL-LR 40.1(F), the Springfield Division is proper for this action because Defendants maintain their offices in Sangamon County and because the events and omissions giving rise to this action are State laws enacted in the State capitol of Springfield.

## PLAINTIFFS

10.     KEVIN W. CULP is a natural person and a resident of the City of Blairsville, State of Pennsylvania.  Culp is an Air Force Colonel stationed on orders at Scott Air Force Base near Belleville, IL, but is a legal resident of Pennsylvania who possesses a Pennsylvania driver's license and Pennsylvania license to carry a concealed weapon, as well as a concealed carry license from Florida.  Culp is also a Basic Pistol Instructor and meets the qualifications to be an Illinois concealed carry licensing instructor.

11.     MARLOW DAVIS is a natural person and a resident of the City of Milwaukee, State of Wisconsin.  He possesses a Wisconsin driver's license and a Wisconsin license to carry a concealed weapon.  He is retired and spends approximately half of his time in Chicago.  He is the husband of co-Plaintiff Freddie Reed-Davis.

12.     FREDDIE REED-DAVIS is a natural person and a resident of the City of Milwaukee, State of Wisconsin.  She is the wife of co-Plaintiff Marlow Davis.  She

- 4 -

possesses a Wisconsin driver's license and a Wisconsin license to carry a concealed weapon.  She is a nurse working in Chicago.

13.     DOUGLAS W. ZYLSTRA is a natural person and a resident of the City of Munster, State of Indiana.  He possesses an Indiana driver's license and an Indiana license to carry a concealed weapon, as well as a concealed carry license and instructor certification from Utah.  Zylstra is an Illinois State Police certified concealed carry instructor working for a firearm training company in Lansing, Illinois.

14.     JOHN S. KOLLER is a natural person and a resident of the City of Castle Rock, State of Colorado.  He possesses a Colorado driver's license and a Colorado license to carry a concealed weapon, as well as concealed carry licenses from Utah, Nevada and Arizona.  Koller was born & raised in Chicago, Illinois, and still has family in the Chicago area, who he visits.  He also makes periodic business trips to Illinois.

15.     STEVEN STEVENSON is a natural person and a resident of the City of Aurora, State of Colorado.  He possesses a Colorado driver's license.  Stevenson has a Colorado resident concealed carry license, as well as a concealed carry license from Utah, and must occasionally traverse Illinois on I-80 or I-88 to visit relatives in both Illinois and Michigan.

16.     PAUL HESLIN is a natural person and a resident of the City of Defiance, State of Missouri.  He is originally from Lake County, Illinois.  He possesses a Missouri driver's license and a Missouri license to carry a concealed

- 5 -

weapon, as well as a concealed carry license from Florida, and a Class 3 federal firearms license.  He is also an Illinois certified concealed carry instructor.

17.     MARLIN MANGELS is a natural person and a resident of the City of Keokuk, State of Iowa.  He possesses an Iowa driver's license and an Iowa license to carry a concealed weapon, as well as concealed carry licenses from Utah and Arizona.  Keokuk is just across the Mississippi River from Hamilton, Illinois. Mangels frequently rides his bicycle up the River Road in Illinois, eats in restaurants in Hamilton, Illinois, travels to see his wife's family in the Chicago area, and travels I-80 through Illinois to visit friends in Massachusetts.

18.     GUS BROWNE is a natural person and a resident of the City of South Bend, State of Indiana.  He possesses an Indiana driver's license and an Indiana license to carry a concealed weapon.  He also has a residence in Kankakee, Illinois, where he spends much of his time.

19.     JEANELLE WESTROM is a natural person and a resident of the City of Davenport, Iowa.  She possesses an Iowa driver's license and an Iowa license to carry a concealed weapon, as well as one in Georgia.  She has a firearms business in Davenport, Iowa but also a separate firearms business in Geneseo, Illinois, where she spends a considerable amount of her time.  Westrom also possesses three federal firearms licenses, which are required for her businesses.

20.     The individual Plaintiffs are licensed to possess concealed handguns in their states of residence, but are prohibited by 430 ILCS 66/40 from obtaining Illinois concealed carry permits, and thus carrying a handgun in a concealed

- 6 -

manner in Illinois for self-defense.  This is because their states of residence are not approved for applications for concealed carry licensing by the Defendants.

21.    The individual Plaintiffs would apply for and obtain an Illinois concealed carry license, and would carry a loaded and functional concealed handgun in public in a concealed manner for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment as they understand it is unlawful for an unlicensed individual to carry a concealed handgun in Illinois.

22.    SAF is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF's membership includes non-residents of Illinois who wish to obtain an Illinois concealed carry license but do not have a concealed carry license from an "approved state" according to the Illinois State Police.  SAF has over 650,000 members and supporters nationwide. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right privately to own and possess firearms.  SAF brings this action on behalf of itself and its members.

23.    Members of SAF who are not residents of Illinois and do not have concealed carry licenses from an approved state, and thus are prohibited from applying for and obtaining an Illinois concealed carry license, would carry a loaded and functional concealed handgun in public in a concealed manner for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment as they understand it is unlawful for an unlicensed individual to carry a concealed handgun in Illinois.

24.     ILLINOIS CARRY is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Shelbyville, Illinois.  Illinois Carry has over 10,000 members and supporters in Illinois, and many members outside the State of Illinois.  Illinois Carry is dedicated to the preservation of Second Amendment rights.  Among Illinois Carry's purposes are educating the public about Illinois laws governing the purchase and transportation of firearms, aiding the public in every way in its power, and supporting and defending the people's right to keep and bear arms, including the right of its members and the public to purchase, possess, and carry firearms.

25.     Members of IC who are not residents of Illinois and do not have concealed carry licenses from an approved state, and thus are prohibited from applying for and obtaining an Illinois concealed carry license, would carry a loaded and functional concealed handgun in public in a concealed manner for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment as they understand it is unlawful for an unlicensed individual to carry a concealed handgun in Illinois.

26.     ILLINOIS STATE RIFLE ASSOCIATION is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois.  ISRA has over 17,000 members and supporters in Illinois, and many members outside the State of Illinois.  The purposes of ISRA include securing the Constitutional right to privately own and possess firearms

- 8 -

within Illinois, through education, outreach, and litigation.  ISRA brings this action

on behalf of itself and its members.

27.     Members of ISRA who are not residents of Illinois and do not have

concealed carry licenses from an approved state, and thus are prohibited from

applying for and obtaining an Illinois concealed carry license, would carry a loaded

and functional concealed handgun in public in a concealed manner for self-defense,

but refrain from doing so because they fear arrest, prosecution, fine, and

imprisonment as they understand it is unlawful for an unlicensed individual to

carry a concealed handgun in Illinois.

28.     The individual Plaintiffs are members of the above-named

organizations.

## **DEFENDANTS**

29.     Defendant Attorney General LISA MADIGAN is sued in her official

capacity as the Attorney General of the State of Illinois, responsible for executing

and administering the laws of the State of Illinois, including 430 ILCS 66/40.

Defendant Attorney General Madigan has enforced the challenged laws, customs

and practices against Plaintiffs and is in fact presently enforcing the challenged

laws, customs and practices against Plaintiffs.

30.     Defendant HIRAM GRAU is the Director of the Illinois State Police,

and is the person ultimately responsible for executing and administering the laws of

the State of Illinois, including Section 66/40 of the FCCA.  He is sued in his official

capacity.

- 9 -

31.     Defendant JESSICA TRAME is the Bureau Chief of Firearms Services for the Illinois State Police.  She is the ISP employee directly responsible for the administration of the FCCA, and is the ISP employee directly responsible for the denial of concealed carry licensing to the Plaintiffs.  She is sued in her official capacity.

## CONSTITUTIONAL PROVISIONS

32.     The Second Amendment provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

33.     The Second Amendment "is fully applicable against the States."

*McDonald v. City of Chicago*, 561 U.S. 3025, 130 S. Ct. 3020, 3026 (2010).

34.     Section 1 of the Fourteenth Amendment provides, in relevant part:

> **No state shall** make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; **nor shall any state deprive any person of life, liberty, or property, without due process of law;** nor **deny to any person within its jurisdiction the equal protection of the laws**.

U.S. Const. amend. XIV (emphasis added).

35.     Article IV, Section 2 of the United States Constitution provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

- 10 -

36.     There is a fundamental right to carry handguns for self-defense in public. *Moore v. Madigan*, 702 F.3d 933 (7th Cir., 2012).

## STATE LAW

37.     430 ILCS 66/40 provides in pertinent part:

> (a)     For the purposes of this Section, "non-resident" means a person who has not resided within this State for more than 30 days and resides in another state or territory.

> (b)     The Department shall by rule allow for non-resident license applications from any state or territory of the United States with laws related to firearm ownership, possession, and carrying, that are substantially similar to the requirements to obtain a license under this Act.

> (c)     A resident of a state or territory approved by the Department under subsection (b) of this Section may apply for a non-resident license. The applicant shall apply to the Department and must meet all of the qualifications established in Section 25 of this Act, except for the Illinois residency requirement in item (xiv) of paragraph (2) of subsection (a) of Section 4 of the Firearm Owners Identification Card Act….

38.     According to the Illinois State Police website, "substantially similar" as used in the paragraph above means "the comparable state regulates who may carry firearms, concealed or otherwise, in public; prohibits all who have involuntary mental health admissions, and those with voluntary admissions within the past 5 years, from carrying firearms, concealed or otherwise, in public; reports denied persons to NICS; and participates in reporting persons authorized to carry firearms, concealed or otherwise, in public through Nlets."

- 11 -

39.    The Illinois State Police has deemed Hawaii, New Mexico, South

Carolina and Virginia "substantially similar" for non-resident application purposes.

None of the individual Plaintiffs reside in these states.

40.    720 ILCS 5/24-1 provides in pertinent part:

Sec. 24-1. Unlawful Use of Weapons

(a) A person commits the offense of unlawful use of weapons when he knowingly:

> (4) Carries or possesses in any vehicle or concealed on or about his person except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm. . . ; or...

> (10) Carries or possesses on or about his person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm.

(b) Sentence. A person convicted of a violation of subsection 24-1(a)(1) through (5), subsection 24-1(a)(10), subsection 24-1(a)(1 1), or subsection 24-1(a)(13) commits a Class A misdemeanor.

41.    720 ILCS 5/24-1.6 provides in pertinent part:

Sec. 24-1.6. Aggravated unlawful use of a weapon

(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

> (1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or

- 12 -

her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; or

(2) Carries or possesses on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his or her own land or in his or her own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; and

(3) One of the following factors is present:

(A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or

(B) the firearm possessed was uncased, unloaded and the ammunition for the weapon was immediately accessible at the time of the offense.

(d) Sentence.

(1) Aggravated unlawful use of a weapon is a Class 4 felony; a second or subsequent offense is a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 7 years.

42.     A person who is carrying a concealed handgun in public for self-defense is subject to the above-referenced criminal penalties (with certain exceptions that do not apply to any of the Plaintiffs) unless the person had a valid Illinois concealed carry permit per 720 ILCS 5/24-1.6(3)(A-5),(B-5) and 720 ILCS 5/24-2(a-5).

### COUNT I— VIOLATION OF RIGHT TO KEEP AND BEAR FIREARMS
### (U.S. CONST. AMENDS. II AND XIV; 42 U.S.C. § 1983)

43.    Paragraphs 1 through 42 are realleged and incorporated herein by reference.

44.    The residency requirement contained in 430 ILCS 66/40, and all other Illinois statutory language, which restricts otherwise qualified non-residents of Illinois the rights and privileges of carrying concealed firearms based solely on their State of residence, on their face and as applied, violate the Plaintiffs' individual right to possess and carry a handgun for self-defense as secured by the Second Amendment to the United States Constitution.

### COUNT II - VIOLATION OF EQUAL PROTECTION
### (U.S. CONST. AMEND. XIV; 42 U.S.C. 1981(a), 1983)

45.    Paragraphs 1 through 44 are realleged and incorporated herein by reference.

46.    The residency requirement contained in 430 ILCS 66/40, and all other Illinois statutory language, which restricts otherwise qualified non-residents of Illinois the rights and privileges of carrying concealed firearms based solely on their State of residence, on their face and as applied, are unconstitutional denials of equal protection of the laws and are in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

- 14 -

## COUNT III - VIOLATION OF DUE PROCESS
## (U.S. CONST. AMEND. XIV; 42 U.S.C. § 1983)

47.     Paragraphs 1 through 46 are realleged and incorporated herein by reference.

48.     The residency requirement contained in 430 ILCS 66/40, and all other Illinois statutory language, which restricts otherwise qualified non-residents of Illinois the rights and privileges of carrying concealed firearms based solely on their State of residence, violates the right to due process of the law secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, facially and as applied to the individual Plaintiffs in this action, damaging the Plaintiffs in violation of 42 U.S.C. 1983.

## COUNT IV - VIOLATION OF PRIVILEGES AND IMMUNITIES
## (U.S. CONST. ART. IV, § 2)

49.     Paragraphs 1 through 48 are realleged and incorporated herein by reference.

50.     The residency requirement contained in 430 ILCS 66/40, and all other Illinois statutory language, which restrict otherwise qualified non-residents of Illinois the rights and privileges of carrying concealed firearms based solely on their State of residence, discriminates against the Plaintiffs, under Article IV, § 2 of the United States Constitution, by denying them the Privileges and Immunities granted to Illinois residents merely because they are not residents of Illinois, facially and as applied to said individual Plaintiffs in this action.

- 15 -

51.     The residency requirement contained in 430 ILCS 66/40, and all other Illinois statutory language, which restrict otherwise qualified non-residents of Illinois the rights and privileges of carrying concealed firearms based solely on their State of residence, also violates the right to travel secured by the Privileges and Immunities Clause of Article IV, § 2 of the United States Constitution, facially and as applied to the individual Plaintiffs in this action.

## FOR ALL COUNTS

52.     Paragraphs 1 through 51 are realleged and incorporated herein by reference.

53.     A controversy exists as to whether the residency and reciprocity requirements contained in 430 ILCS 66/40 are unconstitutional.

54.     A declaration from this Court would settle this issue.

55.     A declaration would also serve a useful purpose in clarifying the legal issues in dispute.

56.     The Plaintiffs seek a declaration that the Illinois residency requirement contained in 430 ILCS 66/40, as applied to Plaintiffs, is unconstitutional.

57.     In the absence of an injunction, the residency requirements of 430 ILCS 66/40 would continue to be enforced and would prevent the individual Plaintiffs and organizational Plaintiffs' non-Illinois members who wish to obtain a concealed carry license for armed self-defense while in the State of Illinois, from (1) successfully obtaining a concealed carry permit and/or (2) legally carrying a

handgun in a concealed manner that any otherwise-qualified Illinois residents may possess and carry concealed in public.

58.     The Plaintiffs would continue to suffer irreparable injury if the Court does not issue an injunction.

59.     There is no adequate remedy at law because only a declaration and injunction, as opposed to monetary damages, would allow the individual Plaintiffs, and SAF's, IC's and ISRA's non-Illinois members who wish to obtain a concealed carry license for armed self-defense while in the State of Illinois, the opportunity to obtain a permit to carry a handgun in a concealed manner for self-defense.

WHEREFORE, Plaintiffs pray that this Honorable Court:

1.     Issue preliminary and permanent injunctions (a) enjoining Defendants LISA MADIGAN, in her Official Capacity as Attorney General of the State of Illinois; HIRAM GRAU, in his Official Capacity as Director of the Illinois State Police, and JESSICA TRAME, as Bureau Chief of the Illinois State Police Firearms Services Bureau from enforcing the virtual non-resident CCL ban of 430 ILCS 66/40 against the Plaintiffs and/or their members; and

2.     Enter the following:

(a)     A declaratory judgment that 430 ILCS 66/40, and all other Illinois statutory language which restricts otherwise qualified non-residents of Illinois the rights and privileges of carrying concealed firearms based solely on their State of residence, are null and void

- 17 -

because they (1) violate the due process requirements and equal protection of the laws guaranteed by the Fourteenth Amendment to the United State Constitution; and (ii) infringe on the right of the people to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution; and

(b)     Issue preliminary and permanent injunctions against the Defendants and their political subdivisions, including officers, agents, and employees thereof, from enforcement of 430 ILCS 66/40 and all other Illinois statutory language, which restrict otherwise qualified non-residents of Illinois the rights and privileges of carrying concealed firearms based solely on their State of residence.

3.     Award Plaintiffs attorney's fees and costs pursuant to 42 U.S.C. § 1988.

4.     Grant such other and further relief, in law and equity, as the Court deems just and proper.


Dated: October 22, 2014                    Respectfully submitted,


                                   By:     /s/ David G. Sigale
                                           Attorney for Plaintiffs

David G. Sigale, Esq. (#6238103 (IL))
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
Tel: 630.452.4547
Fax: 630.596.4445
dsigale@sigalelaw.com

- 18 -

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KEVIN W. CULP, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.:  14-3320 |
| | ) | |
| LISA MADIGAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER

NOW COME Defendants, LISA MADIGAN, in her Official Capacity as Attorney

General of the State of Illinois, LEO SCHMITZ,[1] in his Official Capacity as Acting Director of

the Illinois State Police, and JESSICA TRAME, in her Official Capacity as Bureau Chief of the

Illinois State Police Firearms Services Bureau, by and through their attorney, Lisa Madigan,

Attorney General of Illinois, and hereby submit their Answer to the complaint, stating as follows:

1.      Defendants admit that Plaintiffs seek relief pursuant to 42 U.S.C. § 1983 for

alleged deprivation of civil rights under color of law and seek equitable, declaratory, and

injunctive relief. Defendants deny that they have deprived Plaintiffs of civil rights under color of

law, deny that Plaintiffs are entitled to any relief, and deny the remaining allegations in

paragraph 1.

2.      Defendants admit that Plaintiffs have accurately quoted a portion of *District of*

*Columbia v. Heller*, 554 U.S. 570 (2008). Defendants deny that Plaintiffs have accurately quoted

or accurately cited *McDonald v. City of Chicago*, 561 U.S. 742 (2010). Defendants admit that the

Supreme Court has held that the operative clause of the Second Amendment guarantees the

---

[1] Leo Schmitz is automatically substituted in pursuant Rule 25(d) of the Federal Rules of Civil
Procedure as the current Acting Director of the Illinois State Police, replacing former Director
Hiram Grau.

individual right to possess and carry weapons in case of confrontation. Defendants admit that the

Second Amendment right is fully applicable to the States.

      3.      Defendants admit the allegations in paragraph 3.

      4.      Defendants admit that, currently, Hawaii, New Mexico, South Carolina, and

Virginia have been identified as states or territories of the United States that have laws related to

firearm ownership, possession, and carrying that are substantially similar to the requirements to

obtain a license under the Firearm Concealed Carry Act. Defendants admit that residents of

Illinois, Hawaii, New Mexico, South Carolina, and Virginia may apply for and obtain an Illinois

concealed carry license. Defendants deny the remaining allegations in paragraph 4.

      5.      Defendants admit that Plaintiffs seek to establish what is stated in paragraph 5.

Defendants deny that the laws and regulations challenged in the complaint are unconstitutional

and deny the remaining allegations in paragraph 5.

      6.      Defendants admit the Court has subject matter jurisdiction. Defendants deny the

remaining allegations in paragraph 6.

      7.      Defendants admit the allegations in paragraph 7.

      8.      Defendants admit that venue is proper. Defendants admit that the Illinois State

Police executes, administers, and enforces the complained-of-laws. Defendants deny that the

Attorney General executes, administers, or enforces the complained-of-laws. Defendants deny

that the laws have been executed administered or enforced against Plaintiffs. Defendants admit

that the State laws were enacted in the State capital. Defendants deny the remaining allegations

in paragraph 8.

      9.      Defendants admit the allegations in paragraph 9.

10.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 10.

11.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 11.

12.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 12.

13.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 13.

14.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 14.

15.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 15.

16.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 16.

17.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 17.

18.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18.

19.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 19.

20.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 20.

21.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 21.

22.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 22.

23.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 23.

24.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 24.

25.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 25.

26.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 26.

27.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 27.

28.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 28.

29.     Defendants admit that Attorney General Lisa Madigan is sued in her official capacity as the Attorney General of the State of Illinois. Defendants admit that Attorney General Lisa Madigan is responsible for executing and administering some of the laws of the State of Illinois. Defendants deny that Attorney General Lisa Madigan is responsible for executing and administering 430 ILCS 66/40 and deny the remaining allegations in paragraph 29.

30.     Defendants deny that Hiram Grau is the Director of the Illinois State Police but admit that his successor, Leo Schmitz, is the Acting Director. Defendants deny that the Acting

Director is the person ultimately responsible for executing and administering all of the laws of the State of Illinois. Defendants admit that the Acting Director is the person ultimately responsible for executing and administering 430 ILCS 66/40. Defendants admit that the Acting Director is sued in his official capacity. Defendants deny the remaining allegations in paragraph 30.

31.     Defendants admit that Jessica Trame is the Bureau Chief of the Firearms Services Bureau for the Illinois State Police. Defendants admit that Jessica Trame is an ISP employee directly responsible for the administration of the Firearms Concealed Carry Act. Defendants admit that Jessica Trame is sued in her official capacity. Defendants deny the remaining allegations in paragraph 31.

32.     Defendants admit the allegations in paragraph 32.

33.     Defendants deny that Plaintiffs have accurately quoted or cited *McDonald v. City of Chicago*, 561 U.S. 742 (2010). Defendants admit that the Second Amendment is applicable to the States under the Fourteenth Amendment.

34.     Defendants admit that Plaintiffs have accurately quoted a portion of the Fourteenth Amendment.

35.     Defendants admit that Plaintiffs have accurately quoted a portion of Article IV, Section 2 of the United States Constitution.

36.     Defendants deny the allegations in paragraph 36.

37.     Defendants admit that Plaintiffs have accurately quoted a portion of 430 ILCS 66/40.

38.     Defendants admit the allegations in paragraph 38.

39.     Defendants lack knowledge or information sufficient to form a belief as to whether the individual Plaintiffs reside in Hawaii, New Mexico, South Carolina, or Virginia. Defendants admit that the Illinois State Police has deemed Hawaii, New Mexico, South Carolina, and Virginia as "substantially similar" for non-resident application purposes.

40.     Defendants admit that Plaintiffs have accurately quoted a portion of 720 ILCS 5/24-1.

41.     Defendants admit that Plaintiffs have accurately quoted a portion of 720 ILCS 5/24-1.6.

42.     Defendants admit that 720 ILCS 5/24-1 and 720 ILCS 5/24-1.6 apply to all persons, subject to certain exceptions, unless the person has a valid Illinois concealed carry permit. Defendants lack knowledge or information sufficient to form a belief as to whether any of the exceptions apply to Plaintiffs.

## COUNT I

43.     Defendants reassert and incorporate herein their answers to paragraphs 1 through 42 as their answer to paragraph 43.

44.     Defendants deny the allegations in paragraph 44.

WHEREFORE, Defendants deny that Plaintiffs are entitled to any relief and request judgment in Defendants' favor and against Plaintiffs.

## COUNT II

45.     Defendants reassert and incorporate herein their answers to paragraphs 1 through 44 as their answer to paragraph 45.

46.     Defendants deny the allegations in paragraph 46.

WHEREFORE, Defendants deny that Plaintiffs are entitled to any relief and request judgment in Defendants' favor and against Plaintiffs.

## COUNT III

47.     Defendants reassert and incorporate herein their answers to paragraphs 1 through 46 as their answer to paragraph 47.

48.     Defendants deny the allegations in paragraph 48.

WHEREFORE, Defendants deny that Plaintiffs are entitled to any relief and request judgment in Defendants' favor and against Plaintiffs.

## COUNT IV

49.     Defendants reassert and incorporate herein their answers to paragraphs 1 through 48 as their answer to paragraph 49.

50.     Defendants deny the allegations in paragraph 50.

51.     Defendants deny the allegations in paragraph 51.

WHEREFORE, Defendants deny that Plaintiffs are entitled to any relief and request judgment in Defendants' favor and against Plaintiffs.

## FOR ALL COUNTS

52.     Defendants reassert and incorporate herein their answers to paragraphs 1 through 51 as their answer to paragraph 52.

53.     The allegations in paragraph 53 consist of legal conclusions which defendants neither admit nor deny.

54.     The allegations in paragraph 54 consist of legal conclusions which defendants neither admit nor deny.

55.     The allegations in paragraph 55 consist of legal conclusions which defendants neither admit nor deny.

56.     Defendants admit that Plaintiffs seek the relief stated in paragraph 56. Defendants deny that Plaintiffs are entitled to any relief and deny that 430 ILCS 66/40 is unconstitutional.

57.     The State Police defendants admit that they will continue to enforce the challenged law in the absence of an injunction.  Defendants deny the remaining allegations in paragraph 57.

58.     Defendants deny the allegations in paragraph 58.

59.     Defendants deny the allegations in paragraph 59.

WHEREFORE, Defendants deny that Plaintiffs are entitled to any relief and request judgment in Defendants' favor and against Plaintiffs.

Respectfully submitted,

LISA MADIGAN, Attorney General of the State of Illinois, LEO SCHMITZ, Acting Director of the Illinois State Police, and JESSICA TRAME, Bureau Chief of the Illinois State Police Firearms Services Bureau,

Defendants,

LISA MADIGAN, Attorney General, State of Illinois

By: s/ Joshua D. Ratz
        Joshua D. Ratz, # 6293615
        Assistant Attorney General
        500 South Second Street
        Springfield, IL 62706
        Phone: (217) 782-2077
        Fax: (217) 524-5091
        E-Mail: jratz@atg.state.il.us

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KEVIN W. CULP, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.:  14-3320 |
| | ) | |
| LISA MADIGAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on February 11, 2015, the foregoing Answer was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing(s) to the following:

David G. Sigale                           dsigale@sigalelaw.com

and I hereby certify that on February 11, 2015, I mailed by United States Postal Service, the document to the following non-registered participants:

None.


Respectfully submitted,

s/ Joshua D. Ratz
Joshua D. Ratz, Bar Number 6293615
Assistant Attorney General
500 South Second Street
Springfield, IL 62706
Phone: (217) 782-2077
Fax: (217) 524-5091
E-Mail: jratz@atg.state.il.us

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| KEVIN W. CULP, MARLOW DAVIS,<br>FREDDIE REED-DAVIS,<br>DOUGLAS W. ZYLSTRA,<br>JOHN S. KOLLER, STEVE STEVENSON,<br>PAUL HESLIN, MARLIN MANGELS,<br>GUS C. BROWNE II,<br>JEANELLE WESTROM,<br>SECOND AMENDMENT FOUNDATION,<br>INC., ILLINOIS CARRY and<br>ILLINOIS STATE RIFLE ASSOCIATION,<br><br>　　　　　Plaintiffs,<br>v.<br><br>LISA MADIGAN, in her Official Capacity<br>as Attorney General of the State of Illinois;<br>HIRAM GRAU, in his Official Capacity as<br>Director of the Illinois State Police, and<br>JESSICA TRAME, as Bureau Chief of the<br>Illinois State Police Firearms Services<br>Bureau,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Case No. 3:14-CV-3320-SEM-TSH |

## INITIAL JOINT STATUS REPORT

The parties, by and through respective counsel, hereby submit, pursuant to

F.R.Civ.P. 26(f), CDIL-L.R. 26.2(3) and CDIL-L.R. 16.2(E), the following joint status

report and discovery plan:

1. **Description of Claims and Relief Sought.**

    a. *Plaintiff's Claims:* Plaintiffs, ten individuals residing in six states outside of Illinois, and three advocacy organizations, allege violations of their Second and Fourteenth Amendment rights (both under the [substantive] due process clause and the Equal Protection clause), as a result of a State law that prohibits them from applying for a concealed carry license, based solely on their state of residence, as alleged more fully in Plaintiffs' Complaint.

*Defendants' Defenses:* Defendants assert that the challenged law is constitutional.

b.      Plaintiffs seek declaratory and injunctive relief, as well as attorney's fees under Section 1988.

**2.      Amendment of Pleadings.**

All amendments to the pleadings shall be completed by April 27, 2015.

**3.      Joinder of Parties**

All joinder of additional parties shall be completed by April 27, 2015.

**4.      Discovery Schedule.**

a.      The parties will exchange the information required by Fed. R. Civ. P. 26(a)(1) by April 16, 2015.

b.      All non-expert fact discovery to be completed by (Plaintiff's Version: N/A; Defendant's Version: June 24, 2015)      .

c.      Reports from retained experts under Fed. R. Civ. P. 26(a)(2), if any, are due:

From plaintiff(s) by (Plaintiff's Version: N/A; Defendant's Version: July 24, 2015).

From defendant(s) by (Plaintiff's Version: N/A; Defendant's Version: September 22, 2015).

d.      All retained expert depositions to be completed by   (Plaintiff's Version: N/A; Defendant's Version: October 22, 2015).

**5.      Consideration of Issues Concerning Electronically Stored Information ("ESI").**

a.      No ESI expected.

b.      The parties agree not to destroy any ESI that may be relevant to this case.

c.      No disputes as to ESI exist or are anticipated.

**6.     Agreements For Asserting Claims of Privilege or of Protection as Trial Preparation Material, After Inadvertent Production.**

The parties agree to clawback privileges if given notice immediately upon the disclosing party's discovery of the inadvertent disclosure.

**7.     Settlement.**

a.     No settlement discussions at this time.

b.     No fact discovery will be necessary to engage in meaningful settlement discussions.

**8.     Magistrate Judge Consent.**

The parties do not consent to have all proceedings, including trial and entry of final judgment, take place before a magistrate judge.

**9.     Pending Motions.**

None, although Plaintiffs anticipate soon filing a Motion for injunctive relief.

**10.     Dispositive Motions.**

All dispositive Motions shall be filed by _____November 23_____, 2015.

**11.     Settlement Conference or Mediation.**

Telephonic status hearing to discuss the possibility of setting of settlement conference or mediation scheduled  November 19, 2015  at  11:00 a.m. before U.S. Magistrate Judge Schanzle-Haskins (Court will place call.) Hearing to include both parties and their attorneys.

**12.     Pre-Trial Conference/Jury Instructions.**

Final pre-trial conference is scheduled for   February 15, 2016  at 1:00 p.m. before U.S. District Judge   Myerscough   . All motions in limine to be filed on or before fifteen (15) days prior to final pretrial conference. (See Local Rule 16.1 - Pre-Trial Procedures.) The parties are directed to meet with the assigned law clerk on N/A – No Jury Demand   at   :   .m. to review proposed jury instructions

13.    **Trial.**

The parties do not anticipate there will be a trial in this matter.  However, if there is a trial, it will be by bench and is scheduled for  February 22, 2016    at 9:30AM on the trial calendar of Sue E. Myerscough.


 /s/ David G. Sigale              
For Plaintiffs
David G. Sigale
Law Firm of David G. Sigale, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

 /s/ Joshua D. Ratz (by consent)         
For Defendants
Joshua D. Ratz
Assistant Attorney General
Office of the Illinois Attorney General
500 South Second Street
Springfield, IL 62706
217-557-0261
jratz@atg.state.il.us


Date:  March 24, 2015

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

KEVIN W. CULP, et al.,                         )
                                               )
        Plaintiffs,                 )
                                               )
  -vs-                                         )         No. 14-cv-3320
                                               )
LISA MADIGAN, et al.,                          )
                                               )
        Defendants.                 )

## SCHEDULING ORDER

Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, a scheduling conference was held on March 26, 2015 with Attorneys David Sigale and Joshua Ratz.   TIME LIMITS AND SETTINGS ARE ORDERED AS FOLLOWS:

1.    Initial disclosures under Rule 26 to be made by   April 16, 2015.

2.    No motions to join other parties or to amend the pleadings to be filed after April 27, 2015.

3.    All Plaintiffs are to identify testifying experts and to provide Rule 26 expert reports by July 24, 2015.   All Defendants are to identify testifying experts and to provide Rule 26 expert reports by September 22, 2015.

4.    The parties have until June 24, 2015, to complete fact discovery.   Any written discovery served subsequent to the date of this Order to be served by a date that allows the served party the full 30 days

provided by the Federal Rules of Civil Procedure in which to comply.   The

parties have until October 22, 2015 to complete expert discovery.   All

depositions for discovery or use at trial shall be completed no later than the

close of expert discovery.

5.      Telephonic status hearing to discuss the setting of settlement

conference or mediation scheduled October 26, 2015 at 2:00 p.m. before

U.S. Magistrate Judge Schanzle-Haskins (Court will place call.)   Hearing

to include both parties and their attorneys.

6.      Motions to compel and other motions relating to discovery shall

be pursued in a diligent and timely manner, but in no event filed more than

sixty (60) days following the event (e.g. failure to answer interrogatories,

objections to request for production, etc.) that is the subject of the motion.

The parties are required to meet and confer on the discovery dispute as

required by Rule 37(a) within the 60-day period.     Except for good cause

shown, any discovery motion that is not timely filed and any discovery

motion that is filed after the discovery deadline will not be considered by

the Court.    If a motion to compel discovery is found by the Court to be

time-barred, the moving party is prohibited from making a subsequent

discovery request for the discovery which the Court has found to be

time-barred.   All motions to compel must contain the certification required

by Rule 37 that the parties met and conferred and attempted to resolve the discovery dispute.   If the certification is not included, the motion to compel will be denied.

7.     The parties have until November 23, 2015 to file dispositive motions.   No dispositive motions filed after that date will be considered by the Court.

8.     Final pre-trial conference is scheduled for February 29, 2016 at 2:00 p.m. before U.S. District Judge Sue E. Myerscough.     All motions in limine to be filed on or before fifteen (15) days prior to final pretrial conference.   (See Local Rule 16.1 - Pre-Trial Procedures.)

9.     Bench trial is scheduled for March 15, 2016 at 9:00 a.m. on the trial calendar of U.S. District Judge Sue E. Myerscough.

10.     Mediation will be hosted by U.S. Magistrate Judge Tom Schanzle-Haskins in Springfield at the joint request of the parties. Attached is his memorandum concerning mediation.

11.     Evidence Presentation Equipment: Attached is an information sheet describing the evidence presentation equipment which can be made available to attorneys and *pro se* litigants in the four active District Judges' courtrooms.

NOTE: A CONTINUANCE OF THE TRIAL DATE AND/OR FINAL
PRE-TRIAL DATE, DOES <u>NOT</u> ALTER OR EXTEND ANY OF THE
OTHER ABOVE DATES.

    ENTERED:   March 26, 2015

                          _____*s/ Tom Schanzle-Haskins*_____
                              TOM SCHANZLE-HASKINS
                        UNITED STATES MAGISTRATE JUDGE

43

E-FILED
Friday, 27 March, 2015  01:32:24 PM
Clerk, U.S. District Court, ILCD

FOR MEDIATIONS HELD BEFORE
U.S. MAGISTRATE JUDGE TOM SCHANZLE-HASKINS:


Judge Schanzle-Haskins uses a mediation format, and private caucusing with each party.   He normally does not require or allow any type of opening statement or presentation to be given on behalf of each party.   He may address your client directly during the mediation. Parties with ultimate settlement authority must be personally present, or with leave of Court may be immediately available by telephone.   Whenever an insurance company or carrier is a party or is defending a party, a representative of the insurance carrier with settlement authority must be present.

In all mediations, counsel and *pro se* parties must submit detailed settlement statements ten (10) days prior to the mediation date.   Settlement statements will be treated confidentially and should not be filed with the U.S. District Court and must not be submitted to the other parties or other counsel of record.   The Judge, in his role as mediator, may have *ex parte* contact with counsel prior to the mediation.

Each settlement statement should candidly assess the strengths and weaknesses of both sides of the case, including the issues of liability.   Each side should specify the evidence that supports their theory or defense of the case.   Plaintiff's counsel shall also itemize all damages claimed and the prospect for recovery on each item of damages claimed.   Counsel should attach to their statements any documents that might enhance the productivity of the negotiations.   The parties should also provide the Court with any controlling legal precedent that supports their theory or defense of the case.

The parties are expected to have engaged in good faith settlement discussions before requesting a mediation.   The settlement statement must describe negotiations   detailing demands, offers, and any counter-offers that have been made and rejected.   The settlement statement should also describe any offers that are currently open, and   should identify any particular circumstances which may have impeded settlement efforts.

If a settlement is successfully mediated, the Judge suggests that the parties reduce to writing the essential elements of the settlement agreement to be signed by the parties and counsel.   The parties will then prepare the final settlement agreement.   It is suggested that the parties consider including a provision in the preliminary   agreement of essential elements which gives the Judge the binding authority to settle any specific disputes regarding the language of the final settlement agreement to ensure that the settlement does not fail based upon differences in the language to be included in the final settlement agreement.

When a settlement is successfully mediated, and the parties request the District Court to retain jurisdiction to enforce compliance with the settlement contract pursuant to Kokkonen v. Guardian Life Ins. Co of America, 511 U.S. 375 (1994), the Judge   suggests the parties formally consent to him pursuant to 28 U.S.C. 636(c) prior to a dismissal of the case to enable him to enforce the terms of the settlement agreement.

**E-FILED**
Friday, 27 March, 2015  01:32:24 PM
Clerk, U.S. District Court, ILCD



# United States District Court
# Central District of Illinois
# Courtroom Evidence Presentation Technology

The UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF ILLINOIS offers evidence presentation equipment in each of the District Courtrooms in our Peoria, Rock Island, Springfield and Urbana divisions.  A Technology Matrix is provided on the last page of this document to clarify available technologies in each courtroom.  The following is a brief description of the available technologies.  Please consider scheduling a tour and/or time for testing your evidence presentation needs.



A Document Camera enables counsel to present evidence via video monitors and, when applicable, projection screens.  Documents, pictures and 3-D objects can be placed on the presentation surface.  Now with the recent technology upgrades, large 3-D objects can be placed on the floor or table in front of the Document Camera for display on the courtroom monitors and projection screens.

Inputs for counsel's Computer or Laptop are available at counsel tables and the Presentation Carts.  The Court's video standard resolution is 1024x768.  All evidence is converted by the Court's Evidence Presentation System to this standard.



Prior to creating a presentation, setup the computer / laptop to the 1024x768 standard resolution.  For best viewing results create the presentation in Landscape mode and use when possible a True Type Font such as Times New Roman with a Font Size of 22-point or larger.  Less text will fit on the screen, but the text will be clearer for viewing.

The Court has recently standardized on the DVD video format and is currently phasing out VHS Tape Players from courtroom operations.  Counsel is encouraged to test any evidence DVD that might have been created for the purpose of a hearing or trial prior to the hearing or trial.



Notice:  Some DVD creation processes do not work with all DVD players.  Testing is vital to a successful presentation.

The DVD player may also be used to play standard Audio CDs and MP3 Audio CDs.



In addition to the previously mentioned video monitors and projection screens, the Court provides Annotation Video Monitors.  These touchscreen monitors are located at the Presentation Cart, Witness Stand and Judge's Bench and provide counsel, witnesses and the Judge the opportunity point out and draw on the Annotation Monitors with their fingers, specific information shown on all monitors and screens without any changes being made to the original document.  Any evidence shown from any source (ie. Document Camera, DVD Player or Laptop) may be annotated and shown with markups on the monitors and screens.



Closely associated with the Annotated Evidence is <u>Color Video Printing</u>.  Upon request to and the approval of the Court, counsel may be provided with a color printout of any Annotated Evidence.  Counsel must request the printout at the time the Annotated Evidence is shown on the monitors and projection screens.  This option allows counsel to preserve any evidence annotated or otherwise for the record.



<u>Assistive Listening Devices</u> are currently available in all courtrooms.  The Court is actively upgrading courtrooms to include Hearing Aid Induction Loops in all Jury Boxes and Witness Stands.  If a prospective juror or witness has a Telecoil or T-Coil hearing aid, audio from all microphones and any Audio Evidence source will be automatically provided in these locations to anyone with a hearing aid.  The loops are currently located in Peoria – Courtrooms A & C, Springfield – Courtrooms I & III, and Urbana – Courtroom A.  Plans are in place to upgrade all courtrooms with this technology by January 2012.



All courtrooms have Assistive Listening Headphones that can be provided upon request.  The provided headphones are in ear devices and do not easily work with hearing aids.  Additional measures are being researched to help provide more solutions.

The Court strongly recommends that counsel test their systems and evidence in the courtroom before use in open court. Demonstrations and testing times are available by contacting the Clerk's Office to make an appointment with the appropriate courtroom deputy.

*Note: Past experiences with sound and video have proven that different creation or recording processes produce different results on the Court's system.  Adjustments by counsel might be needed to help insure successful presentation of evidence.*

| Division | Clerk's Office Phone Number |
|---|---|
| Peoria | 309.671.7117 |
| Rock Island | 309.793.5778 |
| Springfield | 217.492.4020 |
| Urbana | 217.373.5830 |

**Courtroom Technology Matrix**

Last Updated: 20 October 2011

| | | Document Camera | Inputs for Counsel Laptop VGA | Inputs for Counsel Laptop HDMI | DVD / BluRay Player | Annotation Video Monitors | Evidence Capture & Printing | Assistive Listening – Hearing Aid Induction Loop Jury | Assistive Listening – Hearing Aid Induction Loop Witness | Assistive Listening – Hearing Aid Induction Loop Neck Lanyard | Assistive Listening – Hearing Aid Over Ear Headphones | Assistive Listening Headphones |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Peoria** | Courtroom A District | X | X | | X | X | X | X | X | | | X |
| | Courtroom B District | X | X | X | X | X | X | X | X | X | X | X |
| | Courtroom C Magistrate | | | | | | | X | X | | | X |
| | Courtroom D District | X | X | | X | X | X | | | | | X |
| **Rock Island** | Courtroom A District | X | X | | X | X | X | X | X | | | X |
| **Springfield** | Courtroom I District | X | X | | X | X | X | X | X | | | X |
| | Courtroom II District | X | X | X* | X | X | X | X | | | | |
| | Courtroom III Magistrate | | | | | | | X | X | | | X |
| **Urbana** | Courtroom A District | X | X | | X | X | X | X | X | | | X |
| | Courtroom B District | X | X* | | X | | X | | | | | X |
| | Courtroom C Magistrate | | | | | | | | | | | X |

\* Indicates specific technology available only at evidence cart.

47

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| KEVIN W. CULP, MARLOW DAVIS,<br>FREDDIE REED-DAVIS,<br>DOUGLAS W. ZYLSTRA,<br>JOHN S. KOLLER, STEVE STEVENSON,<br>PAUL HESLIN, MARLIN MANGELS,<br>GUS C. BROWNE II,<br>JEANELLE WESTROM,<br>SECOND AMENDMENT FOUNDATION,<br>INC., ILLINOIS CARRY and<br>ILLINOIS STATE RIFLE ASSOCIATION,<br><br>        Plaintiffs,<br>v.<br><br>LISA MADIGAN, in her Official Capacity<br>as Attorney General of the State of Illinois;<br>HIRAM GRAU, in his Official Capacity as<br>Director of the Illinois State Police, and<br>JESSICA TRAME, as Bureau Chief of the<br>Illinois State Police Firearms Services<br>Bureau,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 3:14-CV-3320-SEM-TSH<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION</u>

COME NOW the Plaintiffs, KEVIN W. CULP, MARLOW DAVIS, FREDDIE

REED-DAVIS, DOUGLAS W. ZYLSTRA, JOHN S. KOLLER, STEVE

STEVENSON, PAUL HESLIN, MARLIN MANGELS, JEANELLE WESTROM,

SECOND AMENDMENT FOUNDATION, INC., ILLINOIS CARRY and ILLINOIS

STATE RIFLE ASSOCIATION, by and through undersigned counsel, and move for

the entry of an order:

      1.     Preliminarily enjoining Defendants, their officers, agents, servants,

employees, and all persons in active concert or participation with them who receive

actual notice of the injunction, from enforcing from enforcing the non-residency

application ban of  430 ILCS 66/40 against the Plaintiffs and/or their members;

2.     Preliminarily enjoining Defendants, their officers, agents, servants,

employees, and all persons in active concert or participation with them who receive

actual notice of the injunction, from enforcing any other sections of the Illinois

Compiled Statutes which restricts non-residents of Illinois, including Plaintiffs and

their members, firearms rights and privileges based solely on their state of

residence.

3.     A Memorandum in Support of this Motion will be filed at or near the

time of the filing of this Motion.


Dated: August 5, 2015                    Respectfully submitted,


                                         By:  _____/s/ David G. Sigale_____
                                                  David G. Sigale

                                             Attorney for Plaintiffs


David G. Sigale, Esq. (#6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
Tel:  630.452.4547
Fax:  630.596.4445
dsigale@sigalelaw.com

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| KEVIN W. CULP, MARLOW DAVIS, FREDDIE REED-DAVIS, DOUGLAS W. ZYLSTRA, JOHN S. KOLLER, STEVE STEVENSON, PAUL HESLIN, MARLIN MANGELS, GUS C. BROWNE II, JEANELLE WESTROM, SECOND AMENDMENT FOUNDATION, INC., ILLINOIS CARRY and ILLINOIS STATE RIFLE ASSOCIATION, | ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) |
| v. | ) Case No. 3:14-CV-3320-SEM-TSH |
| | ) |
| LISA MADIGAN, in her Official Capacity as Attorney General of the State of Illinois; HIRAM GRAU, in his Official Capacity as Director of the Illinois State Police, and JESSICA TRAME, as Bureau Chief of the Illinois State Police Firearms Services Bureau, | ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COME NOW the Plaintiffs, KEVIN W. CULP, MARLOW DAVIS, FREDDIE REED-DAVIS, DOUGLAS W. ZYLSTRA, JOHN S. KOLLER, STEVE STEVENSON, PAUL HESLIN, MARLIN MANGELS, JEANELLE WESTROM, SECOND AMENDMENT FOUNDATION, INC., ILLINOIS CARRY and ILLINOIS STATE RIFLE ASSOCIATION, by and through undersigned counsel, and submit their Memorandum of Points and Authorities in Support of their Motion for Preliminary Injunction.

Dated: August 5, 2015                    Respectfully submitted,

                              By:  _____ /s/ David G. Sigale _____
                                       David G. Sigale

                                       Attorney for Plaintiffs

David G. Sigale, Esq. (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
Tel:  630.452.4547
Fax:  630.596.4445
dsigale@sigalelaw.com

Attorney for Plaintiffs

*TABLE OF CONTENTS*

Table of Authorities ……………………………………………………..………... iv

Preliminary Statement ................................................................................ 1

Statement of Facts ..................................................................................... 3

    A.    Illinois's Statute Bars Non-Residents from Even Applying for
        Concealable Firearm Licensure.............................................. 3

    B.    The Application Prohibition's Impact on Plaintiffs and Others
        Similarly-Situated …………………………………………….. 6

Summary of Argument .................................................................13

Argument ...................................................................................13

    I.    PLAINTIFFS WILL PREVAIL ON THE MERITS, AS ILLINOIS'S
        VIRTUAL BAN ON NON-RESIDENT CONCEALED CARRY
        LICENSE APPLICATIONS VIOLATES THEIR ARTICLE IV AND
        THEIR SECOND AND FOURTEENTH AMENDMENT RIGHTS .... 15

        1.    The Prohibition Violates Plaintiffs' Second Amendment
            Rights ........................................................................ 15
        2.    The Prohibition Violates Plaintiffs' Fourteenth Amendment
            Equal Protection Rights .................................................. 17
        3.    The Prohibition Infringes on Plaintiffs' Enjoyment of a
            Fundamental Privilege Under Article IV............................ 23
        4.    The Prohibition Violates Plaintiffs' Fourteenth
            Amendment Due Process Rights ...................................... 27

    II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE
        ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF.................... 29

    III.    TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO
        RELIEVE THE HARM  OF THE BAN ON CONCEALABLE
        FIREARM REGISTRATION BY QUALIFIED
        NON-RESIDENTS ................................................................ 31

    IV.    THE BALANCE OF INTERESTS FAVOR IMMEDIATE
        INJUNCTIVE RELIEF......................................................... 33

Conclusion ................................................................................... 34

## *TABLE OF AUTHORITIES*

<u>Cases</u>

*Allied Stores of Ohio, Inc. v. Bowers,*
    358 U.S. 522 (1959) .................................................................... 18

*Att'y Gen. of N.Y. v. Soto-Lopez,*
    476 U.S. 898 (1986) .................................................................... 20

*Baldwin v. Fish and Game Comm'n of Montana,*
    436 U.S. 371 (1978) .................................................................... 25

*Brown v. Entm't Merchs. Ass'n,,*
    131 S. Ct. 2729 (2011) ................................................................. 20

*Buttitta v. City of Chicago,*
    9 F.3d 1198 (7th Cir. 1993) ......................................................... 28

*Christian Legal Soc'y v. Walker,*
    453 F.3d 853 (7th Cir. 2006) ........................................................ 32

*City of Cleburne v. Cleburne Living Center,*
    473 U.S. 432 (1985) .................................................................... 15

*Clark v. Jeter,*
    486 U.S. 456 (1988) .................................................................... 18

*Council of Insurance Agents & Brokers v. Molasky-Arman,*
    522 F.3d 925 (9th Cir. 2008) ........................................... 24, 25, 26, 27

*Corfield v. Coryell,*
    6 F. Cas. 546 (C.C.E.D. Pa. 1823) ................................................ 24

*District of Columbia v. Heller,*
    128 S. Ct. 2783 (2008)......................................................... *passim*

*Duncan v. Louisiana,*
    391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968) ........................ 28

*Elrod v. Burns,*
    427 U.S. 347 (1976) .............................................................. 29, 32

*Ezell v. City of Chicago,*
    651 F.3d 684 (7th Cir. 2011) ..................................... 16, 29, 30, 31, 32

*Gateway E. Ry. Co. v. Term. R.R. Ass'n.*,
    35 F.3d 1134 (7th Cir. 1994) ................................................................ 31

*Gilbert v. Homar*,
    520 U.S. 924 (1997) ........................................................................ 28

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the
United States of Am., Inc.*,
    549 F.3d 1079 (7th Cir. 2008) .................................................... 5, 14, 33

*Grossbaum v. Indianapolis-Marion County Building Authority*,
    63 F.3d 581 (7th Cir. 1995) ................................................................ 15

*Hess v. Pawloski*,
    274 U.S. 352 (1927) ........................................................................ 23

*Hicklin v. Orbeck*,
    437 U.S. 518 (1978) ........................................................................ 25

*Hudson v. City of Chicago*,
    374 F.3d 554 (7th Cir. 2004) ................................................................ 28

*Joelner v. Wash. Park*,
    378 F.3d 613 (7th Cir. 2004) .......................................................... 14, 32

*Kikumura v. Hurley*,
    242 F.3d 950 (10th Cir. 2001) ............................................................. 31

*Lawson Prods., Inc. v. Avnet, Inc.*,
    782 F.2d 1429 (7th Cir. 1986) ............................................................. 14

*Libertarian Party v. Packard*,
    741 F.2d 981 (7th Cir. 1984) .......................................................... 14, 33

*Mance v. Holder*,
    2015 U.S. Dist. LEXIS 16679 (N.D.TX 2015) .................................... 20, 21

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ........................................................................ 28

*McDonald v. City of Chicago*,
    130 S. Ct. 3020 (2010) ................................................ 15, 19, 25, 29

v

*Mem'l Hosp. v. Maricopa Cnty.,*
        415 U.S. 250 (1974) ..................................................................... 20

*Metropolitan Life Insurance Company v. Ward,*
        470 U.S. 869 (U.S. 1985) .......................................................... 18, 21

*Minton v. St. Bernard Parish School Board,*
        803 F.2d 129 (5th Cir. 1986) ..................................................... 22, 23

*Moore v. Detroit School Reform Board,*
        293 F.3d 352 (6th Cir. 2002) ........................................................ 18

*Moore v. Madigan,*
        702 F.3d 933 (7th Cir. 2012) ........................................... 1, 15, 16, 19, 25

*Nuxoll v. Indian Prairie School District No. 204,*
        523 F.3d 668 (7th Cir. 2008) ........................................................ 32

*Obergefell v. Hodges,*
        135 S.Ct. 2584, 192 L. Ed. 2d 609 (2015) ....................................... 22, 28

*Plyler v. Doe,*
        457 U.S. 202 (1982) ................................................................. 17, 19

*Powell v Daily,*
        712 P.2d 356 (Wyo. 1986) ............................................................ 26

*Roland Mach. Co. v. Dresser Indus., Inc.,*
        749 F.2d 380 (7th Cir. 1984) .................................................. 29, 31, 33

*Rum Creek Coal Sales, Inc. v. Caperton,*
        926 F.2d 353 (4th Cir. 1991) ........................................................ 31

*Sklar v. Byrne,*
        727 F.2d 633 (7th Cir. 1984) ................................................. 18, 19, 20

*Sonnleitner v. York,*
        304 F.3d 704 (7th Cir. 2002) ........................................................ 28

*Supreme Court of New Hampshire v. Piper,*
        470 U.S. 274 (1985) .................................................................. 24

*Supreme Court of Virginia v. Friedman,*
        487 U.S. 59 (1988) ............................................................... 23, 24, 25

vi

*Toomer v. Witsell,*
    334 U.S. 385 (1948) ……………………………………………… 24, 25, 26

*Ty, Inc. v. Jones Group Inc.,*
    237 F.3d 891 (7th Cir. 2001)………………………………… 14, 33

*Wallace v. Tilley,*
    41 F.3d 296 (7th Cir. 1994) …………………………………… 28

*Washington v. Glucksberg,*
    521 U.S. 702, 721 (1997) ……………………………………… 18

*Williams v. North Carolina,*
    317 U.S. 287 (1942) …………………………………………… 22

*Williams v. Vermont,*
    472 U.S. 14 (1985) …………………………………………… 21

*Winter v. NRDC, Inc.,*
    555 U.S. 7 (2008) ……………………………………………........ 13

*Zobel v. Williams,*
    457 U.S. 55, 74 (1982) ………………………………………… 24, 25

Constitutional Provisions

U.S. Const. Art. IV § 2 …………………………………………….. *passim*

U.S. Const. amend. II ……………………………………………… *passim*

U.S. Const. amend. XIV……………………………………………… *passim*

Statutes, Rules, and Ordinances

430 ILCS 66/1, *et seq.* ……………………………………………… 1

430 ILCS 66/40 ……………………………………………… *passim*

720 ILCS 5/24-1 ……………………………………………… 4

720 ILCS 5/24-1.6 ……………………………………………… 5, 6

720 ILCS 5/24-2(a-5) ……………………………………………… 6

<u>Other Authorities</u>

11A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 2948.1
    (2d ed. 1995) .................................................................... 31

Howell, Tim. *Privilege and Immunities of State Citizenship* 33-61 (1918) ............ 24


Meyers, *The Privileges and Immunities of Citizens in the Several States* (pt. 2),
    1 Mich. L. Rev. 364 (1903) ................................................................. 24

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### *PRELIMINARY STATEMENT*

In July, 2013, in response to the Seventh Circuit's ruling in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), in which the Court held that the fundamental individual Second Amendment right to keep and bear arms applied outside the home, the Illinois legislature passed the Firearms Concealed Carry Act (430 ILCS 66/1, *et seq*.), making Illinois the last state in the Union to allow the concealed carry of firearms within its borders.  As part of the FCCA, licensing procedures were put in place, and governmental review policies were implemented, some of which have since been revised.

Since its passage, approximately 100,000 concealed licenses have been issued by the State, for the most part without fanfare or incident.  For many, rights have been availed.  For one group, that has not yet come to pass.

The State determined that non-residents of Illinois are ineligible to even apply for a CCL, unless they live in a state pre-approved by the Illinois State Police. *See* 430 ILCS 66/40.  This determination apparently comes from the results of a questionnaire, which was sent to the other states.  If the ISP determines that the other state's CCL laws are not sufficiently similar to Illinois's, then all the residents of that state are barred from applying for an Illinois CCL, no matter how qualified or safe that person may be.  To date, only four states had questionnaire answers that satisfied the ISP – Hawaii, New Mexico, South Carolina, and Virginia.

Residents of the other forty-five states, and presumably Washington D.C. and U.S. territories, are out of luck and are ineligible to apply.

The Plaintiffs to this suit, residents of six of the other forty-five states, seek to correct that injustice.  The statute is not a reciprocity statute.  They are not trying to automatically receive a CCL.  They would still have to meet all requirements and pay all fees before being granted a license.  But the fact they are unable to even apply is such a blatant denial of constitutional rights that Plaintiffs' request for a preliminary injunction must be granted.

The ban flatly violates the Plaintiffs' Second Amendment rights to keep and bear arms, as well as violating their rights under the Privileges and Immunities Clause of Article IV of the Constitution, and their due process rights under the Fourteenth Amendment.  Also, because qualified Illinois residents (and residents of the four "approved" states) are not restricted from applying for a concealed carry license in Illinois, Plaintiffs' right to equal protection of the law under the Fourteenth Amendment is being violated.  The deprivations of constitutional rights subject Plaintiffs to irreparable harm, and is such a clear-cut unconstitutionally-inflicted harm that Plaintiffs are clearly likely to succeed on the merits by the conclusion of this litigation.

The State's law, if not preliminarily enjoined, also poses an immediate threat to public safety, as an entire class of persons who work, travel and visit in Illinois has been and continues to be wrongfully denied the right and ability the full ability to defend their persons from criminal attack.  One need only follow the news to

2

know the danger people can face simply from walking in Chicago at night, and the

danger our men and women in uniform face even when they are home, supposedly

after they have left he war zone behind.   Illinois has no valid interest in completely

banning qualified non-residents from even applying for a CCL for the public

carrying of firearms when Illinois residents and those from a few states are not so

banned.  Therefore, the balance of interests falls heavily on Plaintiffs' side, and

preliminary injunctive relief is warranted and appropriate.

### STATEMENT OF FACTS

A.    *Illinois's Statute Bars Virtually All Non-Residents from Applying for a Concealed Carry License.*

430 ILCS 66/40 provides in pertinent part:

> (a)    For the purposes of this Section, "non-resident" means a person who has not resided within this State for more than 30 days and resides in another state or territory.

> (b)    The Department shall by rule allow for non-resident license applications from any state or territory of the United States with laws related to firearm ownership, possession, and carrying, that are substantially similar to the requirements to obtain a license under this Act.

> (c)    A resident of a state or territory approved by the Department under subsection (b) of this Section may apply for a non-resident license. The applicant shall apply to the Department and must meet all of the qualifications established in Section 25 of this Act, except for the Illinois residency requirement in item (xiv) of paragraph (2) of subsection (a) of Section 4 of the Firearm Owners Identification Card Act….

According to the Illinois State Police website, "substantially similar" as used

in the paragraph above means "the comparable state regulates who may carry

3

firearms, concealed or otherwise, in public; prohibits all who have involuntary

mental health admissions, and those with voluntary admissions within the past 5

years, from carrying firearms, concealed or otherwise, in public; reports denied

persons to NICS; and participates in reporting persons authorized to carry firearms,

concealed or otherwise, in public through Nlets."

The Illinois State Police has deemed Hawaii, New Mexico, South Carolina

and Virginia "substantially similar" for non-resident application purposes.  None of

the individual Plaintiffs reside in these states.

720 ILCS 5/24-1 provides in pertinent part:

Sec. 24-1. Unlawful Use of Weapons

(a)    A person commits the offense of unlawful use of weapons when

he knowingly:

> (4)    Carries or possesses in any vehicle or concealed on or
> about his person except when on his land or in his own abode,
> legal dwelling, or fixed place of business, or on the land or in the
> legal dwelling of another person as an invitee with that person's
> permission, any pistol, revolver, stun gun or taser or other
> firearm. . . ; or...

> (10)   Carries or possesses on or about his person, upon any
> public street, alley, or other public lands within the corporate
> limits of a city, village or incorporated town, except when an
> invitee thereon or therein, for the purpose of the display of such
> weapon or the lawful commerce in weapons, or except when on
> his land or in his own abode, legal dwelling, or fixed place of
> business, or on the land or in the legal dwelling of another
> person as an invitee with that person's permission, any pistol,
> revolver, stun gun or taser or other firearm.

(b)    Sentence. A person convicted of a violation of subsection 24-
1(a)(1) through (5), subsection 24-1(a)(10), subsection 24-1(a)(1 1), or
subsection 24-1(a)(13) commits a Class A misdemeanor.

4

720 ILCS 5/24-1.6 provides in pertinent part:

Sec. 24-1.6. Aggravated unlawful use of a weapon

   (a)   A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

      (1)   Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; or

      (2)   Carries or possesses on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his or her own land or in his or her own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; and

      (3)   One of the following factors is present:

         (A)   the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or

         (B)   the firearm possessed was uncased, unloaded and the ammunition for the weapon was immediately accessible at the time of the offense.

   (d) Sentence.

      (1) Aggravated unlawful use of a weapon is a Class 4 felony; a second or subsequent offense is a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 7 years.

A person who is carrying a concealed handgun in public for self-defense is subject to the above-referenced criminal penalties (with certain exceptions that do

5

not apply to any of the Plaintiffs) unless the person had a valid Illinois concealed carry license per 720 ILCS 5/24-1.6(3)(A-5),(B-5) and 720 ILCS 5/24-2(a-5).

These Code sections prohibit the Plaintiffs, and resident of the "other forty five states" from applying to obtain a concealed carry license, and therefore from the public concealed carry of firearms for self-defense.

It is unclear what Illinois's claimed purpose was for enacting this prohibition, which serves solely to discriminate against most every qualified non-resident in the United States, including the Plaintiffs and members of the organizational Plaintiffs outside of Illinois, though there is no purpose Illinois can offer that passes constitutional muster.

B.      *The Nonresident Prohibition's Impact on the Plaintiffs and Similarly-Situated Non-Residents.*

<u>Individual Plaintiffs</u>

Kevin W. Culp is a natural person and a resident of the City of Blairsville, State of Pennsylvania.  Culp is an Air Force Colonel stationed on orders at Scott Air Force Base near Belleville, IL, but is a legal resident of Pennsylvania who possesses a Pennsylvania driver's license and Pennsylvania license to carry a concealed weapon, as well as a concealed carry license from Florida.  Culp is also a Basic Pistol Instructor and meets the qualifications to be an Illinois concealed carry licensing instructor.

Marlow Davis is a natural person and a resident of the City of Milwaukee, State of Wisconsin.  He possesses a Wisconsin driver's license and a Wisconsin

6

license to carry a concealed weapon.  He is retired and spends approximately half of his time in Chicago.  He is the husband of co-Plaintiff Freddie Reed-Davis.

Freddie Reed-Davis is a natural person and a resident of the City of Milwaukee, State of Wisconsin.  She is the wife of co-Plaintiff Marlow Davis.  She possesses a Wisconsin driver's license and a Wisconsin license to carry a concealed weapon.  She is a nurse working in Chicago.

Douglas W. Zylstra is a natural person and a resident of the City of Munster, State of Indiana.  He possesses an Indiana driver's license and an Indiana license to carry a concealed weapon, as well as a concealed carry license and instructor certification from Utah.  Zylstra is an Illinois State Police certified concealed carry instructor working for a firearm training company in Lansing, Illinois.

John S. Koller is a natural person and a resident of the City of Castle Rock, State of Colorado.  He possesses a Colorado driver's license and a Colorado license to carry a concealed weapon, as well as concealed carry licenses from Utah, Nevada and Arizona.  Koller was born & raised in Chicago, Illinois, and still has family in the Chicago area, who he visits.  He also makes periodic business trips to Illinois.

Steven Stevenson is a natural person and a resident of the City of Aurora, State of Colorado.  He possesses a Colorado driver's license.  Stevenson has a Colorado resident concealed carry license, as well as a concealed carry license from Utah, and must occasionally traverse Illinois on I-80 or I-88 to visit relatives in both Illinois and Michigan.

Paul Heslin is a natural person and a resident of the City of Defiance, State of Missouri.  He is originally from Lake County, Illinois.  He possesses a Missouri driver's license and a Missouri license to carry a concealed weapon, as well as a concealed carry license from Florida, and a Type 03 federal firearms license.  He is also an Illinois certified concealed carry instructor.

Marlin Mangels is a natural person and a resident of the City of Keokuk, State of Iowa.  He possesses an Iowa driver's license and an Iowa license to carry a concealed weapon, as well as concealed carry licenses from Utah and Arizona. Keokuk is just across the Mississippi River from Hamilton, Illinois.  Mangels frequently rides his bicycle up the River Road in Illinois, eats in restaurants in Hamilton, Illinois, travels to see his wife's family in the Chicago area, and travels I-80 through Illinois to visit friends in Massachusetts.

Jeanelle Westrom is a natural person and a resident of the City of Davenport, Iowa.  She possesses an Iowa driver's license and an Iowa license to carry a concealed weapon, as well as one in Georgia.  She has a firearms business in Davenport, Iowa but also a separate firearms business in Geneseo, Illinois, where she spends a considerable amount of her time.  Westrom also possesses three federal firearms licenses, which are required for her businesses.

The individual Plaintiffs are licensed to possess concealed handguns in their states of residence, but are prohibited by 430 ILCS 66/40 from obtaining Illinois concealed carry licenses, and thus carrying a handgun in a concealed manner in

8

Illinois for self-defense.  This is because their states of residence are not approved for applications for concealed carry licensing by the Defendants.

The individual Plaintiffs would apply for and obtain an Illinois concealed carry license, and would carry a loaded and functional concealed handgun in public in a concealed manner for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment as they understand it is unlawful for an unlicensed individual to carry a concealed handgun in Illinois.

Organizational Plaintiffs

Second Amendment Foundation, Inc. is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF's membership includes non-residents of Illinois who wish to obtain an Illinois concealed carry license but do not have a concealed carry license from an "approved state" according to the Illinois State Police.  SAF has over 650,000 members and supporters nationwide. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right privately to own and possess firearms.  SAF brings this action on behalf of itself and its members.

Members of SAF who are not residents of Illinois and do not have concealed carry licenses from an approved state, and thus are prohibited from applying for and obtaining an Illinois concealed carry license, would carry a loaded and functional concealed handgun in public in a concealed manner for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment

9

as they understand it is unlawful for an unlicensed individual to carry a concealed handgun in Illinois.

Illinois Carry is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Shelbyville, Illinois. Illinois Carry has over 10,000 members and supporters in Illinois, and many members outside the State of Illinois.  Illinois Carry is dedicated to the preservation of Second Amendment rights.  Among Illinois Carry's purposes are educating the public about Illinois laws governing the purchase and transportation of firearms, aiding the public in every way in its power, and supporting and defending the people's right to keep and bear arms, including the right of its members and the public to purchase, possess, and carry firearms.

Members of IC who are not residents of Illinois and do not have concealed carry licenses from an approved state, and thus are prohibited from applying for and obtaining an Illinois concealed carry license, would carry a loaded and functional concealed handgun in public in a concealed manner for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment as they understand it is unlawful for an unlicensed individual to carry a concealed handgun in Illinois.

Illinois State Rifle Association is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois.  ISRA has over 17,000 members and supporters in Illinois, and many members outside the State of Illinois.  The purposes of ISRA include securing

the Constitutional right to privately own and possess firearms within Illinois,
through education, outreach, and litigation.  ISRA brings this action on behalf of
itself and its members.

Members of ISRA who are not residents of Illinois and do not have concealed
carry licenses from an approved state, and thus are prohibited from applying for
and obtaining an Illinois concealed carry license, would carry a loaded and
functional concealed handgun in public in a concealed manner for self-defense, but
refrain from doing so because they fear arrest, prosecution, fine, and imprisonment
as they understand it is unlawful for an unlicensed individual to carry a concealed
handgun in Illinois.

The individual Plaintiffs are members of the above-named organizations.

Defendants

Defendant Attorney General Lisa Madigan is sued in her official capacity as
the Attorney General of the State of Illinois, responsible for executing and
administering the laws of the State of Illinois, including 430 ILCS 66/40.  Defendant
Attorney General Madigan has enforced the challenged laws, customs and practices
against Plaintiffs and is in fact presently enforcing the challenged laws, customs
and practices against Plaintiffs.

Defendant Hiram Grau[1] is the Director of the Illinois State Police, and is the
person ultimately responsible for executing and administering the laws of the State
of Illinois, including Section 66/40 of the FCCA.  He is sued in his official capacity.

---

[1]  Since the filing of this suit, Plaintiffs believe that Leo P. Schmitz replaced Hiram Grau as
Director of the Illinois State Police.  Since Grau was sued only in his official capacity,

Defendant Jessica Trame is the Bureau Chief of Firearms Services for the Illinois State Police.  She is the ISP employee directly responsible for the administration of the FCCA, and is the ISP employee directly responsible for the denial of concealed carry licensing to the Plaintiffs.  She is sued in her official capacity.

Every day that passes without relief from Illinois's CCL non-resident application prohibition, all non-residents visiting, working in, or spending time in Illinois who are otherwise qualified to obtain a concealed carry license, including the individual Plaintiffs and the members and supporters of Plaintiffs SAF, IC, and ISRA, are frustrated in their ability to carry handguns in a concealed manner for self-defense in Illinois, and to enjoy their constitutional rights.

But for the criminal enactments challenged in this complaint, and Defendants' enforcement of same, the Plaintiffs and the qualified non-resident organization members would obtain licenses and carry concealable firearms for self-defense, but refrain from doing so for fear of arrest, prosecution, fine and incarceration (*See* Plaintiffs' Declarations, attached hereto and incorporated herein).

---

Plaintiffs would not oppose any Motion to substitute Schmitz as the ISP Director in his official capacity.

### *SUMMARY OF ARGUMENT*

Illinois's prohibition on non-residents obtaining a concealed carry license for self-defense, regardless of said non-resident's qualifications to do so, unquestionably violates the constitutional guarantees of the Second and Fourteenth Amendments, as well as Article IV of the Constitution, as do any other of Illinois's various statutes that, regardless of their facial validity, undeniably frustrate constitutionally-secured equal rights of concealed handgun possession.

Considering the certainty of success on the merits, Plaintiffs are entitled to preliminary injunctive relief.  Plaintiffs are suffering, and will continue to suffer, irreparable harm in the absence of injunctive relief, for which there is no adequate remedy at law.  Granting Plaintiffs relief cannot injure Defendant.  And given the degree to which Illinois's concealed carry license prohibition threatens the safety of Plaintiffs, the public interest - already favoring the exercise of fundamental rights - is clearly satisfied by immediately enjoining Illinois's unconstitutional practices.

### *ARGUMENT*

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

Under the Seventh Circuit's two-part preliminary injunction test, Plaintiffs must first establish: (1) some probability of success on the merits; (2) lack of an adequate legal remedy; and (3) irreparable injury in the absence of an injunction.

*See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008); *Ty, Inc. v. Jones Group Inc.*, 237 F.3d 891, 895 (7th Cir. 2001); *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir. 1986). Once these elements are met, the court conducts a "balancing phase" in which it "weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts*, 549 F.3d at 1086.

In this case, these factors are applied to Plaintiffs' legal claims that the offending statute 430 ILCS 66/40 violates Plaintiffs' Second Amendment right to "keep and bear arms," their Fourteenth Amendment rights to due process and equal protection of the laws, and their Article IV rights to the same privileges and immunities as residents.  The Seventh Circuit has previously observed that when constitutional rights are at stake, "the merits of a dispute often are intertwined with the other three factors to be considered in the decision to issue or deny a preliminary injunction." *Libertarian Party v. Packard*, 741 F.2d 981, 985 (7th Cir. 1984). Indeed, "the likelihood of success on the merits will often be the determinative factor." *Joelner v. Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004). This is certainly the case here: If the Plaintiffs' constitutional rights are being violated by 430 ILCS 66/40, then Plaintiffs are likely to succeed on the merits, money damages are inadequate, the ongoing deprivation is irreparable, and interest-balancing must cede to the explicit constitutional protection. *See generally id.* Thus,

14

analysis should begin by assessing the merits of Plaintiffs' claim. *See*, *e.g.*,

*Grossbaum v. Indianapolis-Marion County Building Authority*, 63 F.3d 581, 586

(7th Cir. 1995).  However, Plaintiffs easily satisfy all these threshold requirements

for obtaining preliminary injunctive relief, and the balance of interests weigh

heavily in their favor.

I.   PLAINTIFFS WILL PREVAIL ON THE MERITS, AS ILLINOIS'S VIRTUAL
     BAN ON NON-RESIDENT CONCEALED CARRY LICENSE
     APPLICATIONS VIOLATES THEIR ARTICLE IV, AND THEIR SECOND
     AND FOURTEENTH AMENDMENT, RIGHTS.

### *The Prohibition Violates Plaintiffs' Second Amendment Rights.*

As is by now well-known, the Supreme Court has held that the enumerated

right to possess a firearm for lawful purposes, most notably for self-defense, is

fundamentally core to the Second Amendment.  *Heller*, 128 S.Ct. at 2818.  *See also*

*McDonald*, 130 S.Ct. 3020, 3043 (2010).  That right extends outside of the home.

*Moore*, 702 F.3d at 937.

In *Moore*, the Seventh Circuit held the ban of the public carrying of firearms

violated the Second Amendment and was unconstitutional, and noted the

importance of the right to self-defense:

> Both *Heller* and *McDonald* do say that "the need for defense of
> self, family, and property is most acute" in the home, *id*. at 3036
> (emphasis added); 554 U.S. at 628, but that doesn't mean it is
> not acute outside the home. *Heller* repeatedly invokes a broader
> Second Amendment right than the right to have a gun in one's
> home, as when it says that the amendment "guarantee[s] the
> individual right to possess and carry weapons in case of
> confrontation." 554 U.S. at 592. Confrontations are not limited
> to the home.

*Id.* at 935-36.

The Court held that the State must make a "strong showing" where the challenged restriction curtails "the gun rights of the entire law-abiding adult population." *Id.* at 940.  Arguably, the prohibition in this case violates the rights of even more law-abiding people than in *Moore*.

The Seventh Circuit has also compared the analysis of infringements of Second Amendment rights to those of infringements of First Amendment rights (*See Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (ban on gun ranges within State limits ruled unconstitutional).  According to *Ezell*, infringements on the core Second Amendment right of possession for self-defense must satisfy a level of scrutiny approaching strict scrutiny.  *Id.* at 708.  This likewise means that Illinois's prohibition, ". . . a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end." *Id.*

When the standards required by *Moore* and *Ezell* are applied to this case, it is evident Illinois cannot defend its arbitrary prohibition.  Further, under any level of scrutiny (rational basis not even being up for consideration under *District of Columbia v. Heller*, 128 S. Ct. 2783, 2818, fn 27 (2008)), 430 ILCS 66/40 fails.

In *Heller*, neither the D.C. Circuit nor the Supreme Court bothered to engage in any balancing test or other extended analysis before striking down Washington, D.C.'s ban on the possession of functional firearms for self-defense, as that law literally contradicted a "core" aspect of Second Amendment rights.  *Heller*, 128 S.Ct. at 2818.

16

It is not within the State's constitutional power to ban otherwise qualified non-residents from possessing concealed firearms, including handguns which have been expressly deemed constitutionally protected by the Supreme Court.  *See Heller*, 128 S.Ct. at 2817-18 ("Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home 'the most preferred firearm in the nation to 'keep' and use for protection of one's home and family,' would fail constitutional muster").  That Illinois has such a ban violates the Second and Fourteenth Amendments.

The State has no interest, let alone an extremely strong or compelling one, in denying virtually all non-residents the fundamental Second and Fourteenth Amendment rights of handgun possession in the same manner available to residents, based solely on than state of residence, especially when doing so by the arbitrary method of simply refusing them the ability to submit an application.  In light of the above, a preliminary injunction against the enforcement of 430 ILCS 66/40 should be immediately entered.

***The Prohibition Violates Plaintiffs' Fourteenth Amendment Equal Protection Rights.***

"The Fourteenth Amendment provides that '[no] State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'"  *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (undocumented alien children being denied public school education violation of Equal Protection Clause).  "The Equal Protection Clause was intended as a restriction on state legislative action inconsistent with elemental

17

constitutional premises." *Id.* at 217.  "[T]his [Supreme] Court always has held that the Equal Protection Clause forbids a State to discriminate in favor of its own residents solely by burdening 'the residents of other state members of our federation.'" *Metropolitan Life Insurance Company v. Ward*, 470 U.S. 869, 878 (U.S. 1985) (quoting *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 533 (1959) (Brennan, J., concurring)).

"Under the Equal Protection Clause of the Fourteenth Amendment, courts apply strict scrutiny to statutes that involve suspect classifications or infringe upon fundamental rights." *Moore v. Detroit School Reform Board*, 293 F.3d 352, 368 (6th Cir. 2002) (citing *Clark v. Jeter*, 486 U.S. 456, 461 (1988) (explaining that under the Equal Protection Clause of the Fourteenth Amendment, 'classifications based on race or national origin, and classifications affecting fundamental rights are given the most exacting scrutiny') (internal citations omitted). "This level of review demands that the statute be 'narrowly tailored to serve a compelling state interest." *Reform Board*, 293 F.3d at 368 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)).

The quintessential example of how the legal landscape has changed, and why Plaintiffs will prevail in this matter is *Sklar v. Byrne*, 727 F.2d 633 (7th Cir. 1984). In *Sklar*, the plaintiff moved to Chicago five days after it passed its now-defunct handgun ban in 1982.  He challenged the ban on equal protection grounds, claiming residents were grandfathered and were allowed to possess their previously-purchased handguns, while new residents suffered discrimination in not having the

18

same opportunity.  *Id.* at 636.  The District Court dismissed for failure to state a claim, and the Seventh Circuit affirmed.

First, the *Sklar* Court determined the standard of review, noting that: "Where the legislative classification works to the disadvantage of a constitutionally suspect class -- based, for example, on race, nationality, alienage or religious affiliation -- then courts may uphold the classification only if it is 'precisely tailored to serve a compelling governmental interest.' *Plyler v. Doe*, 457 U.S. 202, 216-17 & n.14, 72 L. Ed. 2d 786, 102 S. Ct. 2382 (1982). Similarly, **if the legislative classification impinges upon the exercise of a fundamental personal right, the classification must meet the same exacting 'compelling interest' standard**. 457 U.S. at 216-17." *Sklar*, 727 F.2d at 636 (boldface added).

Because *Sklar* predated *Heller* and *McDonald* and *Moore*, the *Sklar* Court held that the grandfather clause and simultaneous handgun ban for all those who did not comply did "not impinge upon any federal constitutional right to bear arms" and said "[n]or is the asserted right to bear arms pivotal in the effective exercise of constitutionally guaranteed rights" and therefore applied rational basis scrutiny. *Id.* at 637.  Predictably, the Court upheld the ordinance.  *Id.* at 642-643.

It is well-known that the analysis of Second Amendment rights has changed since *Sklar* in 1984.  The handgun ban was struck down in *McDonald*, when the Second Amendment right to keep and bear arms was recognized to be fundamental. The ban on public carrying of firearms was struck down in *Moore*, when the Seventh Circuit held the fundamental Second Amendment right to apply outside of the

19

home.  Had the ban in *Sklar* even been attempted today, it would quickly be struck down as a violation of Second and Fourteenth Amendment rights.

The arbitrary and discriminatory law at issue must be analyzed using strict scrutiny.  There is no reason, compelling or otherwise, to ban virtually all Americans from even applying for a CCL.  The requirements of their home state, supposedly the basis for deciding which states meet the ISP's exacting standard, is irrelevant, since all applicants must meet Illinois's requirements in order to be qualified.  Further, the law is not narrowly tailored, since there are ways short of a ban to ensure that only qualified non-residents obtain an Illinois CCL.  "Strict scrutiny is a demanding standard that requires Defendants to show the governmental interest to be compelling and the associated regulation narrowly tailored to serve that interest.  To be narrowly tailored, the curtailment of constitutional rights must be actually necessary to the solution." *Mance v. Holder*, 2015 U.S. Dist. LEXIS 16679 at *29 (N.D.TX 2015) (citing *Brown v. Entm't Merchs. Ass'n,*, 131 S. Ct. 2729, 2738 (2011)).

In *Mance*, the Court struck down the laws that collectively made up a federal interstate handgun transfer ban, which among other things prohibited people from purchasing firearms outside of their state of residence.  In so doing, the Court held:

> The Supreme Court has also held that strict scrutiny is required where the challenged classification impinges on residency. *See Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 254-64 (1974) (holding that a challenge to a state durational-residency requirement to receive free, non-emergency medical care merited strict scrutiny, and the requirement was unconstitutional); *see also Att'y Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898 (1986). The Supreme Court applied strict scrutiny in situations where state laws discriminated against non-residents, and

those cases involved benefits offered by the state, not constitutional rights. *See id.*; *Mem'l Hosp.*, 415 U.S. at 254.

*Mance*, 2015 U.S. Dist. LEXIS 16679 at *43.

State laws have been successfully challenged under the Equal Protection Clause in other contexts as well.  In *Williams v. Vermont*, 472 U.S. 14 (1985), a person bought a car in Illinois and then moved to Vermont.  He was then forced to pay a "use tax" when he registered his car in Vermont, a tax which Vermont residents who purchased their cars out-of-state did not have to pay.  The Vermont Supreme Court upheld the tax and dismissal of plaintiff's complaint, but the U.S. Supreme Court reversed, holding: "Vermont may choose not to penalize old residents who used their cars in other States, but it cannot extend that benefit to old residents and deny it to new ones. The fact that it may be rational or beneficent to spare some the burden of double taxation does not mean that the beneficence can be distributed arbitrarily . . . we can see no relevant difference between motor vehicle registrants who purchased their cars out-of-state while they were Vermont residents and those who only came to Vermont after buying a car elsewhere. To free one group and not the other from the otherwise applicable tax burden violates the Equal Protection Clause." *Id.* at 27.  Discriminatory taxing of out-of-state corporations was also struck down under the Fourteenth Amendment's Equal Protection Clause.  *See Metropolitan Life Insurance Company v. Ward*, 470 U.S. 869 (1985).

In this case, a fundamental right is being denied to most out-of-state residents.  While the tax in *Williams* could not pass rational basis review, here

there is no way the CCL application ban will pass strict scrutiny. *See Obergefell v. Hodges*, 135 S. Ct. 2584; 192 L. Ed. 2d 609, 634 (2015) ("Being married in one State but having that valid marriage denied in another is one of "the most perplexing and distressing complication[s]" in the law of domestic relations." (quoting *Williams v. North Carolina*, 317 U.S. 287, 299 (1942))).  The enumerated Second Amendment right cannot be treated inferior to the right to marry found by the Supreme Court in the Fourteenth Amendment.

In *Minton v. St. Bernard Parish School Board*, 803 F.2d 129 (5th Cir. 1986), the plaintiff, a Mississippi resident, alleged she was owed payment on a tort judgment by the defendant school board in Louisiana, arising from when a school bus operated by the board struck the plaintiff's daughter.  The plaintiff alleged the school board refused to appropriate funds to pay judgments owed to non-residents of the Parish, while paying the similar claims of Parish residents. *Id.* at 131.  She also alleged the Board paid claims of Louisiana residents, while refusing to appropriate funds to pay claims of non-Louisiana residents. *Id.* at 130.  The District Court dismissed plaintiff's complaint for failure to state a claim.  In reversing, the Fifth Circuit ruled: "Assessing her charge of discrimination on its face, as we must, we find that it is sufficient to state a claim for denial of that equality with residents that state agencies must accord non-residents. Even discretion may not be exercised on a discriminatory basis." *Id.*

In ruling that the plaintiff's complaint could proceed on her Fourteenth Amendment equal protection claim, the Court held:

> [E]very person is entitled to equal protection, even with regard to interests that do not constitute life, liberty, or property in the constitutional sense.  If the Mintons can prove their allegation that the School Board illegally discriminates between residents and nonresidents of St. Bernard Parish, as they say in their complaint, or between residents of Louisiana and nonresidents, as they state in their brief, in determining whether to satisfy tort judgments, they are entitled at least to declaratory relief.

*Id.* at 132-133.

In this case, life and liberty are clearly at stake, as is the ability to exercise fundamental constitutional rights.  There is no proof required beyond the plain language of the statute and the Declarations of the Plaintiffs as to their injuries as a result of Illinois's law.  The Plaintiffs are being discriminated against in an arbitrary manner for no reason other than their states of residence.  This discrimination is resulting in the denial of fundamental rights.  This Court must enjoin the enforcement of 430 ILCS 66/40 as unconstitutional.

### The Prohibition Infringes on Plaintiffs' Enjoyment of a Fundamental Privilege Under Article IV.

U.S. Const. Art. IV, § 2, Clause 1 states: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

Article IV "prohibits state legislation discriminating against citizens of other States."  *Hess v. Pawloski*, 274 U.S. 352, 356 (1927).

"While the Privileges and Immunities Clause cites the term 'Citizens,' for analytic purposes citizenship and residency are essentially interchangeable."  *Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 64 (1988).

23

In *Corfield v. Coryell*, 6 F. Cas. 546 (C.C.E.D. Pa. 1823), the federal circuit court held that privileges and immunities in respect of which discrimination is barred include

> protection by the Government; **the enjoyment of life and liberty ... the right of a citizen of one State to pass through, or to reside in any other State, for purposes of trade, agriculture, professional pursuits, or otherwise**; to claim the benefits of the writ of habeas corpus; to institute and maintain actions of any kind in the courts of the State; to take, hold and dispose of property, either real or personal; and an exemption from higher taxes or impositions than are paid by the other citizens of the State. (Emphasis added.)

Laws were unconstitutional that disadvantaged persons who made their homes in other states from exercising "fundamental rights." *See* Howell, Tim. *Privilege and Immunities of State Citizenship* 33-61 (1918); Meyers, *The Privileges and Immunities of Citizens in the Several States* (pt. 2), 1 Mich. L. Rev. 364 (1903).

> The primary purpose of the Privileges and Immunities Clause 'was to help fuse into one Nation a collection of independent, sovereign States.' *Toomer* [*v. Witsell*], 334 U.S. [385] at 395 [(1948)]. The clause 'was intended to create a national economic union,' *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 280, 105 S. Ct. 1272, 84 L. Ed. 2d 205 (1985), and 'was designed to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned.' *Friedman*, 487 U.S. at 64 (internal quotations omitted); *Toomer*, 334 U.S. at 395.

*Council of Insurance Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 933-934 (9th Cir. 2008).

"Our opinions teach that Art. IV's Privileges and Immunities Clause "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy."" *Zobel v. Williams*, 457 U.S. 55, 74

24

(1982) (O'Connor, J., concurring) (quoting *Toomer*, 334 U.S. at 395). The Clause protects a nonresident who enters a State to work." *Zobel*, 457 U.S. at 74 (O'Connor, J., concurring) (citing *Hicklin v. Orbeck*, 437 U.S. 518 (1978)).

First, the Court determines "whether the activity in question is 'sufficiently basic to the livelihood of the nation . . . as to fall within the purview of the Privileges and Immunities Clause.' *Friedman*, 487 U.S. at 64 (citations and internal quotation marks omitted). 'Second, if the challenged restriction deprives nonresidents of a protected privilege, we will invalidate it only if we conclude that the restriction is not closely related to the advancement of a substantial state interest.' *Id*. at 65 (citation omitted)." *Insurance Agents*, 522 F.3d at 934.

"In the first step of [the Court's] inquiry, it is '[o]nly with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally.' *Baldwin v. Fish and Game Comm'n of Montana*, 436 U.S. 371, 383, 98 S. Ct. 1852, 56 L. Ed. 2d 354 (1978)." *Insurance Agents*, 522 F.3d at 934. Certainly the fundamental right to protect one's self and family, wherever one goes, bears upon the vitality of the Nation.

In *Insurance Agents*, the Court found the right to sell insurance in another state to be a fundamental right or privilege covered by Article IV's Privilege and Immunities Clause. *Insurance Agents*, 522 F.3d at 934. The Second Amendment's right to defend one's life and those of one's family has been declared fundamental in *McDonald* (which largely cited to *Heller*) and *Moore*. Put simply, the right to armed

25

self-defense cannot be considered less fundamental than the right to sell insurance. The Privileges and Immunities Clause applies here. *See also Powell v Daily*, 712 P.2d 356 (Wyo. 1986) (statute requiring Wyoming residency to get professional hunting and fishing guide's license violated Privileges and Immunities Clause where alleged justification was not rationally related to exclusion of nonresidents, no evidence supported claim that nonresidents were less likely to obey laws of state, and less discriminatory means of achieving state's goals of safety and compliance with game laws existed in testing procedure).

As for the second prong of the Privileges and Immunities analysis, "[a] 'substantial reason' for discrimination does not exist 'unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed.'" *Insurance Agents*, 522 F.3d at 934 (quoting *Toomer*, 334 U.S. at 398).

There is no "substantial state interest" in refusing to allow people to apply for a CCL. It is unclear what "evil" the ISP is designed to prevent by banning almost all non-residents from applying for a CCL, but whatever it is the Plaintiffs (and all other qualified non-residents) are not the problem. For example, there is no evidence whatsoever that any violence problem in Illinois (assuming, *arguendo*, that such a problem exists) is caused by qualified non-residents.

If the non-resident applicant does not meet the qualifications that every Illinois CCL-holder must meet, then that person will be turned down. It is ludicrous that persons out of state, including Plaintiffs in this case, can be Illinois

CCL instructors and cannot even apply to obtain a CCL themselves.  Plaintiff Culp

is an active member of the military, with more firearms training than most persons,

and cannot apply because he resides (when not being stationed in Illinois) in

Pennsylvania.  The Plaintiffs would all qualify for a CCL if only they were not

arbitrarily banned from applying simply because the ISP does not like their states

of residence.  Just as the *Insurance Agents* Court noted that "[t]here is no evidence

in the record that licensed nonresident agents and brokers are inherently less

trustworthy or less competent insurance professionals than Nevada's resident

agents," 522 F.3d at 936, so too it is that qualified CCL applicants from out-of-state

are no less competent or untrustworthy that similarly-situated Illinois residents.

And if an individual applicant from out-of-state is not qualified, the FCCA has a

solution- the applicant will be turned down for the CCL.  Discriminating against 45

of the 49 non-residents states in America is exactly what the Privileges and

Immunities Clause was designed to prevent.  The restriction must be enjoined.

### The Prohibition Violates Plaintiffs' Fourteenth Amendment Due Process Rights.

Additionally, the virtual ban, which essentially denies concealed carry rights

to virtually all qualified non-residents of Illinois without even the chance to show

their qualifications to the ISP through the application process, is a violation of the

Plaintiff's Fourteenth Amendment due process rights.

"Under the Due Process Clause of the Fourteenth Amendment, no State shall

'deprive any person of life, liberty, or property, without due process of law.' The

fundamental liberties protected by this Clause include most of the rights

enumerated in the Bill of Rights." *Obergefell v. Hodges*, 135 S.Ct. 2584, 192 L. Ed. 2d 609, 623 (2015) (citing *Duncan v. Louisiana*, 391 U.S. 145, 147-149, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968)).

"To demonstrate a procedural due process violation, the plaintiffs must establish that there is '(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process.'" *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004) (quoting *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir. 1993)).

"Due process 'is not a technical conception with a fixed content unrelated to time, place[,] and circumstances[;]' instead, it 'is flexible and calls for such procedural protections as the particular situation demands.' *Mathews v. Eldridge*, 424 U.S. 319, 334, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976) (citations omitted). The process constitutionally required is determined by balancing three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safe-guards; and finally, the Government's interest.

*Gilbert v. Homar*, 520 U.S. 924, 931-32 (1997) (quoting *Mathews*, 424 U.S. at 335); *see also Sonnleitner v. York*, 304 F.3d 704, 712-14 (7th Cir. 2002); *Wallace v. Tilley*, 41 F.3d 296, 300 (7th Cir. 1994)." *Hudson*, 374 F.3d at 559-560.

The private interest affected by the State's virtual ban is great – Plaintiffs are completely deprived of their Second Amendment rights, and their ability to defend their lives on the same footing as Illinois residents.  Further, there is no

process or procedure, pre- or post-deprivation, of which they can avail themselves to rectify the situation – short of Court intervention.  That the Plaintiffs are being denied fundamental rights, without any procedure or process at all, is yet another reason why Plaintiffs are entitled to immediate injunctive relief against 430 ILCS 66/40 and its virtual non-resident ban.

II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF.

Plaintiffs, and the non-resident members of the organizational Plaintiffs, enjoy a fundamental right to keep and bear arms.  *McDonald*, 130 S. Ct. at 3042. "[T]he inherent right of self-defense has been central to the Second Amendment right." *Heller*, 128 S. Ct. at 2817.  The denial of constitutional rights, even if such deprivation were temporary, constitutes irreparable harm for purposes of granting injunctive relief (*See*, *e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Irreparable injury will continue to exist in the absence of an injunction because Plaintiffs "will suffer irreparable harm in the interim – that is, harm that cannot be prevented or fully rectified by the final judgment after trial." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (emphasis added).

As noted above, in *Ezell* the Seventh Circuit favorably compared the fundamental freedoms of the Second Amendment to those fundamental freedoms of the First Amendment and deemed the deprivation of either to be irreparable harm. The *Ezell* Court held that "[t]he loss of a First Amendment right is frequently presumed to cause irreparable harm based on 'the intangible nature of the benefits

29

flowing from the exercise of those rights; and the fear that, if those rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future.' . . .  The Second Amendment protects similarly intangible and unquantifiable interests.  *Heller* held that the Amendment's central component is the right to possess firearms for protection. (cite omitted). Infringements of this right cannot be compensated by damages." *See Ezell*, 651 F.3d at 699.

Put simply, if 430 ILCS 66/40 is not enjoined, virtually all non-residents of Illinois, including the Plaintiffs, will continue to be unconstitutionally frustrated in their ability to exercise their fundamental Second Amendment rights.

Considering that the Second Amendment exists to secure the right of armed self-defense, the inability for non-residents to even apply to be able to defend themselves against violence in a manner allowed only to residents of Illinois and a few select states, also causes a profound loss of a sense of one's security, to say nothing of the irreparable harm resulting from a successful criminal attack.  Thus, the irreparable harm flowing from any delays in obtaining relief is palpable.

Additionally, the deprivation of the right of Plaintiffs and other non-residents to be treated equally under the law, and instead being discriminated due to their state of residence, in violation of the Equal Protection Clause of the Fourteenth Amendment, is an irreparable harm that continues so long as the offending statute is in place.  Equal protection "is essentially a direction that all persons similarly situated shall be treated alike." *City of Cleburne v. Cleburne Living Center*, 473

U.S. 432, 439 (1985). "When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (citing 11A Charles Alan Wright *et al.*, Federal Practice and Procedure § 2948.1 (2d ed. 1995)); *See also Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 362 (4th Cir. 1991); *Ezell*, 651 F.3d at 699.

Under both the Second and Fourteenth Amendments, Plaintiffs are currently suffering the irreparable harm of the deprivation of their constitutional rights, and will continue to suffer said irreparable harm every day 430 ILCS 66/40 is not enjoined.

III.  TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO RELIEVE THE HARM OF THE BAN ON REGISTRATION BY QUALIFIED NON-RESIDENTS.

There is no way to quantify, in terms of money damages, the inability to engage in protected Second Amendment activity such as the concealed carry of a firearm such as a handgun for self-defense, or the discrimination of being classified solely based on state of residence in violation of Fourteenth Amendment Equal Protection rights. The infringement of constitutional rights is frequently considered to be beyond quantification with money damages. This includes infringements of Second Amendment rights. *See Ezell*, 651 F.3d at 699; *See also*, *e.g.*, *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d at 386; *see also Gateway E. Ry. Co. v. Term. R.R. Ass'n.*, 35 F.3d 1134, 1140 (7th Cir. 1994).

Seventh Circuit courts have repeatedly recognized that there is no adequate remedy at law for the deprivation of conduct that the Constitution affirmatively

31

protects, and that these types of constitutional deprivations are accordingly irreparable. The Seventh Circuit considers the deprivation of First Amendment rights to be irreparable *per se*, and it has often quoted Justice Brennan's statement in *Elrod* that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *E.g., Nuxoll v. Indian Prairie School District No. 204*, 523 F.3d 668, 669-70 (7th Cir. 2008) (quoting *Elrod*, 427 U.S. at 373 (*plurality op.*)); *accord Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006); *Joelner*, 378 F.3d at 620.  In *Ezell*, the Seventh Circuit recognized that "[t]he Second Amendment protects similarly intangible and unquantifiable interests" as those secured by the First Amendment. *Id.* at 699.  As such, the Seventh Circuit found that "[i]nfringements of this right cannot be compensated by money damages." *Id.* (emphasis added).

No legal remedies will be available to qualified non-residents who are unable to even apply for a concealed carry licenses because Illinois deprives almost all non-residents of their Second Amendment rights or the equal protection of Illinois's firearms laws.  And quite obviously, no legal remedies will suffice to compensate those killed or injured for the inability to lawfully possess concealed defensive arms, owing to Illinois's virtual ban.

IV.	THE BALANCE OF INTERESTS FAVOR IMMEDIATE INJUNCTIVE RELIEF.

Once the "threshold" factors have been met, the decision to grant or deny an injunction turns on the balance of equities. *See Ty, Inc. v. Jones Group Inc.*, 237 F.3d at 895. The court "weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief" in light of the probable merit of the claim, and also considers the injunction's impact on non-parties (the "public interest"). *See Girl Scouts*, 549 F.3d at 1086. The merits are intrinsic to this analysis because "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Roland Mach.*, 749 F.2d at 387; *accord Girl Scouts*, 549 F.3d at 1086; *see also Packard*, 741 F.2d at 985.

The Plaintiffs are certain to prevail on the merits. Absent relief, they will continue to suffer irreparable injury in the loss of Second and Fourteenth Amendment rights, plus their Article IV privileges, if not actual physical harm. The State has no legitimate interest in the prohibition; and the public interest strongly favors equal protection of the law, and the respecting of fundamental rights, to say nothing of the ability of all qualified law-abiding persons in Illinois to defend themselves equally. The balance of interests could not more completely tilt in favor of immediate injunctive relief.

33

## *CONCLUSION*

Illinois cannot deny constitutional rights to an entire class of qualified

persons within its borders.  Plaintiffs respectfully request that the motion for

preliminary injunctive relief be granted.

Dated: August 5, 2015                            Respectfully submitted,


                                                 By: _____/s/ David G. Sigale_____
                                                         David G. Sigale

                                                 Attorney for Plaintiffs


David G. Sigale, Esq. (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
Tel:  630.452.4547
Fax:  630.596.4445
dsigale@sigalelaw.com

Attorney for Plaintiffs

34

## <u>CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING</u>

The undersigned certifies that:

      1.     On August 5, 2015, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

      2.     Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.


                                     /s/ David G. Sigale            
                                      Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | |
|---|---|
| KEVIN W. CULP, MARLOW DAVIS,<br>FREDDIE REED-DAVIS,<br>DOUGLAS W. ZYLSTRA,<br>JOHN S. KOLLER, STEVE STEVENSON,<br>PAUL HESLIN, MARLIN MANGELS,<br>GUS C. BROWNE II,<br>JEANELLE WESTROM,<br>SECOND AMENDMENT FOUNDATION,<br>INC., ILLINOIS CARRY and<br>ILLINOIS STATE RIFLE ASSOCIATION,<br><br>        Plaintiffs,<br>v.<br><br>LISA MADIGAN, in her Official Capacity<br>as Attorney General of the State of Illinois;<br>HIRAM GRAU, in his Official Capacity as<br>Director of the Illinois State Police, and<br>JESSICA TRAME, as Bureau Chief of the<br>Illinois State Police Firearms Services<br>Bureau,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 3:14-CV-3320-SEM-TSH<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>DECLARATION OF STEVE STEVENSON</u>

I, Steve Stevenson, am competent to state, and declare the following based on my personal knowledge:

1.     I am a resident of the City of Aurora, State of Colorado.  I possess a Colorado driver's license.  I have a Colorado resident concealed carry license, as well as a concealed carry license from Utah, and must occasionally traverse Illinois on I-80 or I-88 to visit relatives in both Illinois and Michigan.

2.     I am allowed to possess a firearm in Illinois only on my premises, or on someone else's premises with permission, but I am prohibited by 430 ILCS 66/40 from obtaining a concealed carry permit, and thus carrying a handgun in a concealed manner for self-defense.

3.     I am otherwise qualified to apply for a concealed carry permit in Illinois, except for 430 ILCS 66/40.

4.     I would carry a loaded and functional concealed handgun in public for self-defense, but I refrain from doing so because I fear arrest, prosecution, fine, and imprisonment as I understand it is unlawful for non-residents from Colorado to carry a concealed handgun in Illinois, or even to apply for a license to do so.

5.     I am a member of the Second Amendment Foundation, Illinois State Rifle Association, and Illinois Carry.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 2nd day of June, 2015.

_____
Steve Stevenson

2

94

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | |
|---|---|
| KEVIN W. CULP, MARLOW DAVIS,<br>FREDDIE REED-DAVIS,<br>DOUGLAS W. ZYLSTRA,<br>JOHN S. KOLLER, STEVE STEVENSON,<br>PAUL HESLIN, MARLIN MANGELS,<br>GUS C. BROWNE II,<br>JEANELLE WESTROM,<br>SECOND AMENDMENT FOUNDATION,<br>INC., ILLINOIS CARRY and<br>ILLINOIS STATE RIFLE ASSOCIATION,<br><br>        Plaintiffs,<br>v.<br><br>LISA MADIGAN, in her Official Capacity<br>as Attorney General of the State of Illinois;<br>HIRAM GRAU, in his Official Capacity as<br>Director of the Illinois State Police, and<br>JESSICA TRAME, as Bureau Chief of the<br>Illinois State Police Firearms Services<br>Bureau,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 3:14-CV-3320-SEM-TSH<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

<u>**DECLARATION OF JULIANNE H. VERSNEL**</u>

I, Julianne H. Versnel, am competent to state, and declare the following based on my personal knowledge:

1.      I am the Director of Operations of the Second Amendment Foundation ("SAF").

2.      SAF is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including thousands in Illinois.  The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control.

3.      SAF has individual members and supporters who are adversely impacted by 430 ILCS 66/40.

4.      But for the criminal enactments challenged in this complaint, SAF members who are non-residents of Illinois, who nonetheless work in, travel to, and spend significant amounts of time within Illinois would apply for concealed carry permits in order to carry concealed firearms for their own defense, but they refrain from carrying concealed firearms for fear of arrest, prosecution, fine and incarceration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 1st day of June, 2015.

_____
             Julianne H. Versnel

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KEVIN W. CULP, MARLOW DAVIS, | ) | |
| FREDDIE REED-DAVIS, | ) | |
| DOUGLAS W. ZYLSTRA, | ) | |
| JOHN S. KOLLER, STEVE STEVENSON, | ) | |
| PAUL HESLIN, MARLIN MANGELS, | ) | |
| GUS C. BROWNE II, | ) | |
| JEANELLE WESTROM, | ) | |
| SECOND AMENDMENT FOUNDATION, | ) | |
| INC., ILLINOIS CARRY and | ) | |
| ILLINOIS STATE RIFLE ASSOCIATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 3:14-CV-3320-SEM-TSH |
| | ) | |
| LISA MADIGAN, in her Official Capacity | ) | |
| as Attorney General of the State of Illinois; | ) | |
| HIRAM GRAU, in his Official Capacity as | ) | |
| Director of the Illinois State Police, and | ) | |
| JESSICA TRAME, as Bureau Chief of the | ) | |
| Illinois State Police Firearms Services | ) | |
| Bureau, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF PAUL HESLIN

I, Paul Heslin, am competent to state, and declare the following based on my personal knowledge:

1.    I am a resident of the City of Defiance, State of Missouri. I am originally from Lake County, Illinois. I possess a Missouri driver's license and a Missouri license to carry a concealed weapon, as well as a concealed carry license from Florida, and a Type 03 federal firearms license.

2.    I am also an Illinois certified concealed carry instructor.

3.     I am allowed to possess a firearm in Illinois only on my premises, or on someone else's premises with permission, but I am prohibited by 430 ILCS 66/40 from obtaining a concealed carry license, and thus carrying a handgun in a concealed manner for self-defense.

4.     I am otherwise qualified to apply for a concealed carry license in Illinois, except for 430 ILCS 66/40.

5.     I would carry a loaded and functional concealed handgun in public for self-defense, but I refrain from doing so because I fear arrest, prosecution, fine, and imprisonment as I understand it is unlawful for non-residents from Missouri to carry a concealed handgun in Illinois, or even to apply for a license to do so.

6.     I am a member of the Second Amendment Foundation, Illinois State Rifle Association, and Illinois Carry.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the ___ day of June, 2015.

_____
Paul Heslin

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

|  |  |  |
|---|---|---|
| KEVIN W. CULP, MARLOW DAVIS, | ) | |
| FREDDIE REED-DAVIS, | ) | |
| DOUGLAS W. ZYLSTRA, | ) | |
| JOHN S. KOLLER, STEVE STEVENSON, | ) | |
| PAUL HESLIN, MARLIN MANGELS, | ) | |
| GUS C. BROWNE II, | ) | |
| JEANELLE WESTROM, | ) | |
| SECOND AMENDMENT FOUNDATION, | ) | |
| INC., ILLINOIS CARRY and | ) | |
| ILLINOIS STATE RIFLE ASSOCIATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 3:14-CV-3320-SEM-TSH |
| | ) | |
| LISA MADIGAN, in her Official Capacity | ) | |
| as Attorney General of the State of Illinois; | ) | |
| HIRAM GRAU, in his Official Capacity as | ) | |
| Director of the Illinois State Police, and | ) | |
| JESSICA TRAME, as Bureau Chief of the | ) | |
| Illinois State Police Firearms Services | ) | |
| Bureau, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF MARLIN MANGELS

I, Marlin Mangels, am competent to state, and declare the following based on my personal knowledge:

1.      I am a resident of the City of Keokuk, State of Iowa.  I possess an Iowa driver's license and an Iowa license to carry a concealed weapon, as well as concealed carry licenses from Utah and Arizona.  Keokuk is just across the Mississippi River from Hamilton, Illinois.  I frequently ride my bicycle up the River Road in Illinois, eats in restaurants in Hamilton, Illinois, travel to see my wife's

family in the Chicago area, and travel I-80 through Illinois to visit friends in Massachusetts.

    2.    I am allowed to possess a firearm in Illinois only on my premises, or on someone else's premises with permission, but I am prohibited by 430 ILCS 66/40 from obtaining a concealed carry permit, and thus carrying a handgun in a concealed manner for self-defense.

    3.    I am otherwise qualified to apply for a concealed carry permit in Illinois, except for 430 ILCS 66/40.

    4.    I would carry a loaded and functional concealed handgun in public for self-defense, but I refrain from doing so because I fear arrest, prosecution, fine, and imprisonment as I understand it is unlawful for non-residents from Iowa to carry a concealed handgun in Illinois, or even to apply for a license to do so.

    5.    I am a member of the Second Amendment Foundation, Illinois State Rifle Association, and Illinois Carry.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the _2_ day of June, 2015.

<div align="right">

_M. Mangels_

Martin Mangels

</div>

<div align="center">2</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KEVIN W. CULP, MARLOW DAVIS,<br>FREDDIE REED-DAVIS,<br>DOUGLAS W. ZYLSTRA,<br>JOHN S. KOLLER, STEVE STEVENSON,<br>PAUL HESLIN, MARLIN MANGELS,<br>GUS C. BROWNE II,<br>JEANELLE WESTROM,<br>SECOND AMENDMENT FOUNDATION,<br>INC., ILLINOIS CARRY and<br>ILLINOIS STATE RIFLE ASSOCIATION,<br><br>        Plaintiffs,<br>v.<br><br>LISA MADIGAN, in her Official Capacity<br>as Attorney General of the State of Illinois;<br>HIRAM GRAU, in his Official Capacity as<br>Director of the Illinois State Police, and<br>JESSICA TRAME, as Bureau Chief of the<br>Illinois State Police Firearms Services<br>Bureau,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:14-CV-3320-SEM-TSH |

**DECLARATION OF TIM BOWYER**

I, Tim Bowyer, am competent to state, and declare the following based on my personal knowledge:

1.     I am the President of Illinois Carry.

2.     Illinois Carry is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Shelbyville, Illinois. Illinois Carry has over 10,000 members and supporters in Illinois, and many members outside the State of Illinois. Illinois Carry is dedicated to the preservation of Second Amendment rights. Among Illinois Carry's purposes are educating the public about Illinois laws governing the purchase and transportation of firearms, aiding the public in every way in its power, and supporting and defending the people's right to keep and bear arms, including the right of its members and the public to purchase, possess, and carry firearms.

3.    Illinois Carry has individual members and supporters who are adversely impacted by 430 ILCS 66/40.

4.    But for the criminal enactments challenged in this complaint, Illinois Carry members who are non-residents of Illinois, who nonetheless work in, travel to, and spend significant amounts of time within Illinois would apply for concealed carry permits in order to carry concealed firearms for their own defense, but they refrain from carrying concealed firearms for fear of arrest, prosecution, fine and incarceration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the __2nd__ day of June, 2015.

Tim Bowyer

2

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KEVIN W. CULP, MARLOW DAVIS, FREDDIE REED-DAVIS, DOUGLAS W. ZYLSTRA, JOHN S. KOLLER, STEVE STEVENSON, PAUL HESLIN, MARLIN MANGELS, GUS C. BROWNE II, JEANELLE WESTROM, SECOND AMENDMENT FOUNDATION, INC., ILLINOIS CARRY and ILLINOIS STATE RIFLE ASSOCIATION, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:14-CV-3320-SEM-TSH |
| v. | ) | |
| LISA MADIGAN, in her Official Capacity as Attorney General of the State of Illinois; HIRAM GRAU, in his Official Capacity as Director of the Illinois State Police, and JESSICA TRAME, as Bureau Chief of the Illinois State Police Firearms Services Bureau, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## DECLARATION OF KEVIN W. CULP

I, Kevin W. Culp, am competent to state, and declare the following based on my personal knowledge:

1.    I am a resident of the City of Blairsville, State of Pennsylvania.

2.    I am an Air Force Colonel stationed on orders at Scott Air Force Base near Belleville, Illinois, but I am a legal resident of Pennsylvania who possesses a Pennsylvania driver's license and Pennsylvania license to carry a concealed weapon, as well as a concealed carry license from Florida.

3.     I possess an Illinois FOID card.  I am also a Basic Pistol Instructor and a certified Illinois Concealed Carry Licensing Instructor.

4.     I am allowed to possess and carry a firearm in Illinois on my premises, or on someone else's premises with permission, but I am prohibited by 430 ILCS 66/40 from obtaining a concealed carry license, and thus carrying a concealed handgun in public for self-defense.

5.     I am otherwise qualified to apply for a concealed carry license in Illinois, except for 430 ILCS 66/40.

6.     I would carry a loaded and functional concealed handgun in public for self-defense, but I refrain from doing so because I fear arrest, prosecution, fine, and imprisonment as I understand it is unlawful for non-residents from Pennsylvania to carry a concealed handgun in Illinois, and I am unable to even apply for a license to do so.

7.     I am a member of the Second Amendment Foundation, Illinois State Rifle Association, and Illinois Carry.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 20th day of ~~June,~~ July, 2015.

_____
Kevin W. Culp

2

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

KEVIN W. CULP, MARLOW DAVIS,      )
FREDDIE REED-DAVIS,               )
DOUGLAS W. ZYLSTRA,               )
JOHN S. KOLLER, STEVE STEVENSON,  )
PAUL HESLIN, MARLIN MANGELS,      )
GUS C. BROWNE II,                 )
JEANELLE WESTROM,                 )
SECOND AMENDMENT FOUNDATION,      )
INC., ILLINOIS CARRY and          )
ILLINOIS STATE RIFLE ASSOCIATION, )
                                  )
          Plaintiffs,             )
                                  )
v.                                )   Case No. 3:14-CV-3320-SEM-TSH
                                  )
LISA MADIGAN, in her Official Capacity )
as Attorney General of the State of Illinois; )
HIRAM GRAU, in his Official Capacity as )
Director of the Illinois State Police, and )
JESSICA TRAME, as Bureau Chief of the )
Illinois State Police Firearms Services )
Bureau,                           )
                                  )
          Defendants.             )

## DECLARATION OF MARLOW DAVIS

I, Marlow Davis, am competent to state, and declare the following based on

my personal knowledge:

1.      I am a resident of the City of Milwaukee, State of Wisconsin. I possess

a Wisconsin driver's license and a Wisconsin license to carry a concealed weapon. I

am retired and spend approximately half of my time in Chicago.

2.      I am allowed to possess a firearm in Illinois only on my premises, or on

someone else's premises with permission, but I am prohibited by 430 ILCS 66/40

from obtaining a concealed carry permit, and thus carrying a handgun in a concealed manner for self-defense.

3.    I am otherwise qualified to apply for a concealed carry permit in Illinois, except for 430 ILCS 66/40.

4.    I would carry a loaded and functional concealed handgun in public for self-defense, but I refrain from doing so because I fear arrest, prosecution, fine, and imprisonment as I understand it is unlawful for non-residents from Wisconsin to carry a concealed handgun in Illinois, or even to apply for a license to do so.

5.    I am a member of the Second Amendment Foundation, Illinois State Rifle Association, and Illinois Carry.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 8 day of June, 2015.

                                    Marlow Davis

2

106

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

KEVIN W. CULP, MARLOW DAVIS,           )
FREDDIE REED-DAVIS,                    )
DOUGLAS W. ZYLSTRA,                    )
JOHN S. KOLLER, STEVE STEVENSON,       )
PAUL HESLIN, MARLIN MANGELS,           )
GUS C. BROWNE II,                      )
JEANELLE WESTROM,                      )
SECOND AMENDMENT FOUNDATION,           )
INC., ILLINOIS CARRY and               )
ILLINOIS STATE RIFLE ASSOCIATION,      )
                                       )
            Plaintiffs,                )
v.                                     )        Case No. 3:14-CV-3320-SEM-TSH
                                       )
LISA MADIGAN, in her Official Capacity )
as Attorney General of the State of Illinois; )
HIRAM GRAU, in his Official Capacity as )
Director of the Illinois State Police, and )
JESSICA TRAME, as Bureau Chief of the  )
Illinois State Police Firearms Services )
Bureau,                                )
                                       )
            Defendants.                )

## DECLARATION OF FREDDIE REED-DAVIS

I, Freddie Reed-Davis, am competent to state, and declare the following

based on my personal knowledge:

1.     I am a resident of the City of Milwaukee, State of Wisconsin. I possess

a Wisconsin driver's license and a Wisconsin license to carry a concealed weapon. I

am a nurse working in Chicago.

2.     I am allowed to possess a firearm in Illinois only on my premises, or on

someone else's premises with permission, but I am prohibited by 430 ILCS 66/40

from obtaining a concealed carry permit, and thus carrying a handgun in a concealed manner for self-defense.

3.     I am otherwise qualified to apply for a concealed carry permit in Illinois, except for 430 ILCS 66/40.

4.     I would carry a loaded and functional concealed handgun in public for self-defense, but I refrain from doing so because I fear arrest, prosecution, fine, and imprisonment as I understand it is unlawful for non-residents from Wisconsin to carry a concealed handgun in Illinois, or even to apply for a license to do so.

5.     I am a member of the Second Amendment Foundation, Illinois State Rifle Association, and Illinois Carry.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 8 day of June, 2015.

_Freddie Reed-Davis_
Freddie Reed-Davis

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

KEVIN W. CULP, MARLOW DAVIS,               )
FREDDIE REED-DAVIS,                        )
DOUGLAS W. ZYLSTRA,                        )
JOHN S. KOLLER, STEVE STEVENSON,           )
PAUL HESLIN, MARLIN MANGELS,               )
GUS C. BROWNE II,                          )
JEANELLE WESTROM,                          )
SECOND AMENDMENT FOUNDATION,               )
INC., ILLINOIS CARRY and                   )
ILLINOIS STATE RIFLE ASSOCIATION,          )
                                           )
            Plaintiffs,                    )
v.                                         )    Case No. 3:14-CV-3320-SEM-TSH
                                           )
LISA MADIGAN, in her Official Capacity     )
as Attorney General of the State of Illinois; )
HIRAM GRAU, in his Official Capacity as    )
Director of the Illinois State Police, and )
JESSICA TRAME, as Bureau Chief of the      )
Illinois State Police Firearms Services    )
Bureau,                                    )
                                           )
            Defendants.                    )

<u>DECLARATION OF DOUGLAS W. ZYLSTRA</u>

I, Douglas W. Zylstra, am competent to state, and declare the following based

on my personal knowledge:

1.      I am a resident of the City of Munster, State of Indiana.  I possess an

Indiana driver's license and an Indiana license to carry a concealed weapon, as well

as a concealed carry license and instructor certification from Utah.  I am an Illinois

State Police certified concealed carry instructor working for a firearm training

company in Lansing, Illinois.

2.     I am allowed to possess a firearm in Illinois only on my premises, or on someone else's premises with permission, but I am prohibited by 430 ILCS 66/40 from obtaining a concealed carry permit, and thus carrying a handgun in a concealed manner for self-defense.

3.     I am otherwise qualified to apply for a concealed carry permit in Illinois, except for 430 ILCS 66/40.

4.     I would carry a loaded and functional concealed handgun in public for self-defense, but I refrain from doing so because I fear arrest, prosecution, fine, and imprisonment as I understand it is unlawful for non-residents from Indiana to carry a concealed handgun in Illinois, or even to apply for a license to do so.

5.     I am a member of the Second Amendment Foundation, Illinois State Rifle Association, and Illinois Carry.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 2nd day of June, 2015.

_____
Douglas W. Zylstra

2

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

KEVIN W. CULP, MARLOW DAVIS,      )
FREDDIE REED-DAVIS,               )
DOUGLAS W. ZYLSTRA,               )
JOHN S. KOLLER, STEVE STEVENSON,  )
PAUL HESLIN, MARLIN MANGELS,      )
GUS C. BROWNE II,                 )
JEANELLE WESTROM,                 )
SECOND AMENDMENT FOUNDATION,      )
INC., ILLINOIS CARRY and          )
ILLINOIS STATE RIFLE ASSOCIATION, )
                                  )
            Plaintiffs,           )
                                  )
v.                                )     Case No. 3:14-CV-3320-SEM-TSH
                                  )
LISA MADIGAN, in her Official Capacity )
as Attorney General of the State of Illinois; )
HIRAM GRAU, in his Official Capacity as )
Director of the Illinois State Police, and )
JESSICA TRAME, as Bureau Chief of the )
Illinois State Police Firearms Services )
Bureau,                           )
                                  )
            Defendants.           )

## DECLARATION OF JOHN S. KOLLER

I, John S. Koller, am competent to state, and declare the following based on
my personal knowledge:

1.     I am a resident of the City of Castle Rock, State of Colorado. I possess
a Colorado driver's license and a Colorado license to carry a concealed weapon, as
well as concealed carry licenses from Utah, Nevada and Arizona. I was born and
raised in Chicago, Illinois, and still have family in the Chicago area, whom I visit. I
also make periodic business trips to Illinois.

2.    I am allowed to possess a firearm in Illinois only on my premises, or on someone else's premises with permission, but I am prohibited by 430 ILCS 66/40 from obtaining a concealed carry permit, and thus carrying a handgun in a concealed manner for self-defense.

3.    I am otherwise qualified to apply for a concealed carry permit in Illinois, except for 430 ILCS 66/40.

4.    I would carry a loaded and functional concealed handgun in public for self-defense, but I refrain from doing so because I fear arrest, prosecution, fine, and imprisonment as I understand it is unlawful for non-residents from Colorado to carry a concealed handgun in Illinois, or even to apply for a license to do so.

5.    I am a member of the Second Amendment Foundation, Illinois State Rifle Association, and Illinois Carry.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the _3rd_ day of June, 2015.

_____
John S. Koller

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| KEVIN W. CULP, MARLOW DAVIS,<br>FREDDIE REED-DAVIS,<br>DOUGLAS W. ZYLSTRA,<br>JOHN S. KOLLER, STEVE STEVENSON,<br>PAUL HESLIN, MARLIN MANGELS,<br>GUS C. BROWNE II,<br>JEANELLE WESTROM,<br>SECOND AMENDMENT FOUNDATION,<br>INC., ILLINOIS CARRY and<br>ILLINOIS STATE RIFLE ASSOCIATION,<br><br>       Plaintiffs,<br>v.<br><br>LISA MADIGAN, in her Official Capacity<br>as Attorney General of the State of Illinois;<br>HIRAM GRAU, in his Official Capacity as<br>Director of the Illinois State Police, and<br>JESSICA TRAME, as Bureau Chief of the<br>Illinois State Police Firearms Services<br>Bureau,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>  Case No. 3:14-CV-3320-SEM-TSH<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COME NOW the Plaintiffs, KEVIN W. CULP, MARLOW DAVIS, FREDDIE REED-DAVIS, DOUGLAS W. ZYLSTRA, JOHN S. KOLLER, STEVE STEVENSON, PAUL HESLIN, MARLIN MANGELS, JEANELLE WESTROM, SECOND AMENDMENT FOUNDATION, INC., ILLINOIS CARRY and ILLINOIS STATE RIFLE ASSOCIATION, by and through undersigned counsel, and submit their Memorandum of Points and Authorities in Support of their Motion for Preliminary Injunction.

Dated: August 5, 2015                              Respectfully submitted,

                                    By:  _____/s/ David G. Sigale_____
                                              David G. Sigale

                                         Attorney for Plaintiffs

David G. Sigale, Esq. (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
Tel:  630.452.4547
Fax:  630.596.4445
dsigale@sigalelaw.com

Attorney for Plaintiffs

ii

*TABLE OF CONTENTS*

Table of Authorities ……………………………………………………..………... iv

Preliminary Statement ..................................................................... 1

Statement of Facts ..................................................................... 3

    A.    Illinois's Statute Bars Non-Residents from Even Applying for
        Concealable Firearm Licensure.................................................. 3

    B.    The Application Prohibition's Impact on Plaintiffs and Others
        Similarly-Situated ……………….…………………………………… 6

Summary of Argument ...................................................................13

Argument ...................................................................13

    I.    PLAINTIFFS WILL PREVAIL ON THE MERITS, AS ILLINOIS'S
        VIRTUAL BAN ON NON-RESIDENT CONCEALED CARRY
        LICENSE APPLICATIONS VIOLATES THEIR ARTICLE IV AND
        THEIR SECOND AND FOURTEENTH AMENDMENT RIGHTS .... 15

        1.    The Prohibition Violates Plaintiffs' Second Amendment
            Rights ..................................................................... 15
        2.    The Prohibition Violates Plaintiffs' Fourteenth Amendment
            Equal Protection Rights ………………………………………… 17
        3.    The Prohibition Infringes on Plaintiffs' Enjoyment of a
            Fundamental Privilege Under Article IV………………………… 23
        4.    The Prohibition Violates Plaintiffs' Fourteenth
            Amendment Due Process Rights ………………………………… 27

    II.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE
        ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF.................... 29

    III.    TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO
        RELIEVE THE HARM  OF THE BAN ON CONCEALABLE
        FIREARM REGISTRATION BY QUALIFIED
        NON-RESIDENTS ................................................................ 31

    IV.    THE BALANCE OF INTERESTS FAVOR IMMEDIATE
        INJUNCTIVE RELIEF........................................................ 33

Conclusion ..................................................................... 34

### TABLE OF AUTHORITIES

<u>Cases</u>

*Allied Stores of Ohio, Inc. v. Bowers,*
    358 U.S. 522 (1959) ................................................................ 18

*Att'y Gen. of N.Y. v. Soto-Lopez,*
    476 U.S. 898 (1986) ................................................................ 20

*Baldwin v. Fish and Game Comm'n of Montana,*
    436 U.S. 371 (1978) ................................................................ 25

*Brown v. Entm't Merchs. Ass'n,,*
    131 S. Ct. 2729 (2011) .......................................................... 20

*Buttitta v. City of Chicago,*
    9 F.3d 1198 (7th Cir. 1993) .................................................... 28

*Christian Legal Soc'y v. Walker,*
    453 F.3d 853 (7th Cir. 2006) .................................................. 32

*City of Cleburne v. Cleburne Living Center,*
    473 U.S. 432 (1985) ................................................................ 15

*Clark v. Jeter,*
    486 U.S. 456 (1988) ................................................................ 18

*Council of Insurance Agents & Brokers v. Molasky-Arman,*
    522 F.3d 925 (9th Cir. 2008) ................................. 24, 25, 26, 27

*Corfield v. Coryell,*
    6 F. Cas. 546 (C.C.E.D. Pa. 1823) ........................................ 24

*District of Columbia v. Heller,*
    128 S. Ct. 2783 (2008).................................................. *passim*

*Duncan v. Louisiana,*
    391 U.S. 145, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968) .............................. 28

*Elrod v. Burns,*
    427 U.S. 347 (1976) ........................................................ 29, 32

*Ezell v. City of Chicago,*
    651 F.3d 684 (7th Cir. 2011) ......................... 16, 29, 30, 31, 32

*Gateway E. Ry. Co. v. Term. R.R. Ass'n.,*
    35 F.3d 1134 (7th Cir. 1994) ................................................................. 31

*Gilbert v. Homar,*
    520 U.S. 924 (1997) ........................................................................... 28

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the
United States of Am., Inc.,*
    549 F.3d 1079 (7th Cir. 2008) ....................................................... 5, 14, 33

*Grossbaum v. Indianapolis-Marion County Building Authority,*
    63 F.3d 581 (7th Cir. 1995) ................................................................. 15

*Hess v. Pawloski,*
    274 U.S. 352 (1927) ........................................................................... 23

*Hicklin v. Orbeck,*
    437 U.S. 518 (1978) ........................................................................... 25

*Hudson v. City of Chicago,*
    374 F.3d 554 (7th Cir. 2004) ............................................................... 28

*Joelner v. Wash. Park,*
    378 F.3d 613 (7th Cir. 2004) ......................................................... 14, 32

*Kikumura v. Hurley,*
    242 F.3d 950 (10th Cir. 2001) ............................................................. 31

*Lawson Prods., Inc. v. Avnet, Inc.,*
    782 F.2d 1429 (7th Cir. 1986) ............................................................. 14

*Libertarian Party v. Packard,*
    741 F.2d 981 (7th Cir. 1984) ......................................................... 14, 33

*Mance v. Holder,*
    2015 U.S. Dist. LEXIS 16679 (N.D.TX 2015) ..................................... 20, 21

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) ........................................................................... 28

*McDonald v. City of Chicago,*
    130 S. Ct. 3020 (2010) .......................................................... 15, 19, 25, 29

v

*Mem'l Hosp. v. Maricopa Cnty.,*
    415 U.S. 250 (1974) ......................................................................  20

*Metropolitan Life Insurance Company v. Ward,*
    470 U.S. 869 (U.S. 1985) ............................................................. 18, 21

*Minton v. St. Bernard Parish School Board,*
    803 F.2d 129 (5th Cir. 1986) ...................................................... 22, 23

*Moore v. Detroit School Reform Board,*
    293 F.3d 352 (6th Cir. 2002) ............................................................. 18

*Moore v. Madigan,*
    702 F.3d 933 (7th Cir. 2012) ............................................. 1, 15, 16, 19, 25

*Nuxoll v. Indian Prairie School District No. 204,*
    523 F.3d 668 (7th Cir. 2008) ............................................................. 32

*Obergefell v. Hodges,*
    135 S.Ct. 2584, 192 L. Ed. 2d 609 (2015) ..................................... 22, 28

*Plyler v. Doe,*
    457 U.S. 202 (1982) .................................................................... 17, 19

*Powell v Daily,*
    712 P.2d 356 (Wyo. 1986) ................................................................  26

*Roland Mach. Co. v. Dresser Indus., Inc.,*
    749 F.2d 380 (7th Cir. 1984) .................................................... 29, 31, 33

*Rum Creek Coal Sales, Inc. v. Caperton,*
    926 F.2d 353 (4th Cir. 1991) ............................................................. 31

*Sklar v. Byrne,*
    727 F.2d 633 (7th Cir. 1984) ...................................................... 18, 19, 20

*Sonnleitner v. York,*
    304 F.3d 704 (7th Cir. 2002) ............................................................. 28

*Supreme Court of New Hampshire v. Piper,*
    470 U.S. 274 (1985) ....................................................................  24

*Supreme Court of Virginia v. Friedman,*
    487 U.S. 59 (1988) .................................................................... 23, 24, 25

vi

*Toomer v. Witsell,*
    334 U.S. 385 (1948) ……………………………………………………… 24, 25, 26

*Ty, Inc. v. Jones Group Inc.,*
    237 F.3d 891 (7th Cir. 2001)……………………………………………… 14, 33

*Wallace v. Tilley,*
    41 F.3d 296 (7th Cir. 1994) …………………………………………………… 28

*Washington v. Glucksberg,*
    521 U.S. 702, 721 (1997) ……………………………………………………… 18

*Williams v. North Carolina,*
    317 U.S. 287 (1942) …………………………………………………………… 22

*Williams v. Vermont,*
    472 U.S. 14 (1985) …………………………………………………………… 21

*Winter v. NRDC, Inc.,*
    555 U.S. 7 (2008) ……………………………………………………............... 13

*Zobel v. Williams,*
    457 U.S. 55, 74 (1982) …………………………………………………… 24, 25

## Constitutional Provisions

U.S. Const. Art. IV § 2 ………………………………………………….. *passim*

U.S. Const. amend. II …………………………………………………… *passim*

U.S. Const. amend. XIV……………………………………………………… *passim*

## Statutes, Rules, and Ordinances

430 ILCS 66/1, *et seq.* …………………………………………………... 1

430 ILCS 66/40 ……………………………………………………… *passim*

720 ILCS 5/24-1 ………………………………………………………… 4

720 ILCS 5/24-1.6 …………………………………………………… 5, 6

720 ILCS 5/24-2(a-5) ……………………………………………………… 6

Other Authorities

11A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 2948.1
    (2d ed. 1995) ................................................................... 31

Howell, Tim. *Privilege and Immunities of State Citizenship* 33-61 (1918) ............ 24

Meyers, *The Privileges and Immunities of Citizens in the Several States* (pt. 2),
    1 Mich. L. Rev. 364 (1903) ................................................................. 24

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### *PRELIMINARY STATEMENT*

In July, 2013, in response to the Seventh Circuit's ruling in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), in which the Court held that the fundamental individual Second Amendment right to keep and bear arms applied outside the home, the Illinois legislature passed the Firearms Concealed Carry Act (430 ILCS 66/1, *et seq*.), making Illinois the last state in the Union to allow the concealed carry of firearms within its borders.  As part of the FCCA, licensing procedures were put in place, and governmental review policies were implemented, some of which have since been revised.

Since its passage, approximately 100,000 concealed licenses have been issued by the State, for the most part without fanfare or incident.  For many, rights have been availed.  For one group, that has not yet come to pass.

The State determined that non-residents of Illinois are ineligible to even apply for a CCL, unless they live in a state pre-approved by the Illinois State Police.  *See* 430 ILCS 66/40.  This determination apparently comes from the results of a questionnaire, which was sent to the other states.  If the ISP determines that the other state's CCL laws are not sufficiently similar to Illinois's, then all the residents of that state are barred from applying for an Illinois CCL, no matter how qualified or safe that person may be.  To date, only four states had questionnaire answers that satisfied the ISP – Hawaii, New Mexico, South Carolina, and Virginia.

Residents of the other forty-five states, and presumably Washington D.C. and U.S. territories, are out of luck and are ineligible to apply.

The Plaintiffs to this suit, residents of six of the other forty-five states, seek to correct that injustice.  The statute is not a reciprocity statute.  They are not trying to automatically receive a CCL.  They would still have to meet all requirements and pay all fees before being granted a license.  But the fact they are unable to even apply is such a blatant denial of constitutional rights that Plaintiffs' request for a preliminary injunction must be granted.

The ban flatly violates the Plaintiffs' Second Amendment rights to keep and bear arms, as well as violating their rights under the Privileges and Immunities Clause of Article IV of the Constitution, and their due process rights under the Fourteenth Amendment.  Also, because qualified Illinois residents (and residents of the four "approved" states) are not restricted from applying for a concealed carry license in Illinois, Plaintiffs' right to equal protection of the law under the Fourteenth Amendment is being violated.  The deprivations of constitutional rights subject Plaintiffs to irreparable harm, and is such a clear-cut unconstitutionally-inflicted harm that Plaintiffs are clearly likely to succeed on the merits by the conclusion of this litigation.

The State's law, if not preliminarily enjoined, also poses an immediate threat to public safety, as an entire class of persons who work, travel and visit in Illinois has been and continues to be wrongfully denied the right and ability the full ability to defend their persons from criminal attack.  One need only follow the news to

2

know the danger people can face simply from walking in Chicago at night, and the

danger our men and women in uniform face even when they are home, supposedly

after they have left the war zone behind.   Illinois has no valid interest in

completely banning qualified non-residents from even applying for a CCL for the

public carrying of firearms when Illinois residents and those from a few states are

not so banned.  Therefore, the balance of interests falls heavily on Plaintiffs' side,

and preliminary injunctive relief is warranted and appropriate.

### STATEMENT OF FACTS

A.   *Illinois's Statute Bars Virtually All Non-Residents from Applying for a Concealed Carry License.*

430 ILCS 66/40 provides in pertinent part:

> (a)     For the purposes of this Section, "non-resident" means a person who has not resided within this State for more than 30 days and resides in another state or territory.

> (b)     The Department shall by rule allow for non-resident license applications from any state or territory of the United States with laws related to firearm ownership, possession, and carrying, that are substantially similar to the requirements to obtain a license under this Act.

> (c)     A resident of a state or territory approved by the Department under subsection (b) of this Section may apply for a non-resident license. The applicant shall apply to the Department and must meet all of the qualifications established in Section 25 of this Act, except for the Illinois residency requirement in item (xiv) of paragraph (2) of subsection (a) of Section 4 of the Firearm Owners Identification Card Act….

According to the Illinois State Police website, "substantially similar" as used

in the paragraph above means "the comparable state regulates who may carry

3

firearms, concealed or otherwise, in public; prohibits all who have involuntary mental health admissions, and those with voluntary admissions within the past 5 years, from carrying firearms, concealed or otherwise, in public; reports denied persons to NICS; and participates in reporting persons authorized to carry firearms, concealed or otherwise, in public through Nlets."

The Illinois State Police has deemed Hawaii, New Mexico, South Carolina and Virginia "substantially similar" for non-resident application purposes. None of the individual Plaintiffs reside in these states.

720 ILCS 5/24-1 provides in pertinent part:

Sec. 24-1. Unlawful Use of Weapons

(a)    A person commits the offense of unlawful use of weapons when

he knowingly:

(4)    Carries or possesses in any vehicle or concealed on or about his person except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm. . . ; or...

(10)    Carries or possesses on or about his person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his land or in his own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm.

(b)    Sentence. A person convicted of a violation of subsection 24-1(a)(1) through (5), subsection 24-1(a)(10), subsection 24-1(a)(1 1), or subsection 24-1(a)(13) commits a Class A misdemeanor.

4

720 ILCS 5/24-1.6 provides in pertinent part:

Sec. 24-1.6. Aggravated unlawful use of a weapon

(a)   A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:

(1)   Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; or

(2)   Carries or possesses on or about his or her person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his or her own land or in his or her own abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; and

(3)   One of the following factors is present:

(A)   the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or

(B)   the firearm possessed was uncased, unloaded and the ammunition for the weapon was immediately accessible at the time of the offense.

(d) Sentence.

(1) Aggravated unlawful use of a weapon is a Class 4 felony; a second or subsequent offense is a Class 2 felony for which the person shall be sentenced to a term of imprisonment of not less than 3 years and not more than 7 years.

A person who is carrying a concealed handgun in public for self-defense is

subject to the above-referenced criminal penalties (with certain exceptions that do

5

not apply to any of the Plaintiffs) unless the person had a valid Illinois concealed carry license per 720 ILCS 5/24-1.6(3)(A-5),(B-5) and 720 ILCS 5/24-2(a-5).

These Code sections prohibit the Plaintiffs, and resident of the "other forty five states" from applying to obtain a concealed carry license, and therefore from the public concealed carry of firearms for self-defense.

It is unclear what Illinois's claimed purpose was for enacting this prohibition, which serves solely to discriminate against most every qualified non-resident in the United States, including the Plaintiffs and members of the organizational Plaintiffs outside of Illinois, though there is no purpose Illinois can offer that passes constitutional muster.

B.   *The Nonresident Prohibition's Impact on the Plaintiffs and Similarly-Situated Non-Residents.*

<u>Individual Plaintiffs</u>

Kevin W. Culp is a natural person and a resident of the City of Blairsville, State of Pennsylvania.  Culp is an Air Force Colonel stationed on orders at Scott Air Force Base near Belleville, IL, but is a legal resident of Pennsylvania who possesses a Pennsylvania driver's license and Pennsylvania license to carry a concealed weapon, as well as a concealed carry license from Florida.  Culp is also a Basic Pistol Instructor and meets the qualifications to be an Illinois concealed carry licensing instructor.

Marlow Davis is a natural person and a resident of the City of Milwaukee, State of Wisconsin.  He possesses a Wisconsin driver's license and a Wisconsin

6

license to carry a concealed weapon.  He is retired and spends approximately half of his time in Chicago.  He is the husband of co-Plaintiff Freddie Reed-Davis.

Freddie Reed-Davis is a natural person and a resident of the City of Milwaukee, State of Wisconsin.  She is the wife of co-Plaintiff Marlow Davis.  She possesses a Wisconsin driver's license and a Wisconsin license to carry a concealed weapon.  She is a nurse working in Chicago.

Douglas W. Zylstra is a natural person and a resident of the City of Munster, State of Indiana.  He possesses an Indiana driver's license and an Indiana license to carry a concealed weapon, as well as a concealed carry license and instructor certification from Utah.  Zylstra is an Illinois State Police certified concealed carry instructor working for a firearm training company in Lansing, Illinois.

John S. Koller is a natural person and a resident of the City of Castle Rock, State of Colorado.  He possesses a Colorado driver's license and a Colorado license to carry a concealed weapon, as well as concealed carry licenses from Utah, Nevada and Arizona.  Koller was born & raised in Chicago, Illinois, and still has family in the Chicago area, who he visits.  He also makes periodic business trips to Illinois.

Steven Stevenson is a natural person and a resident of the City of Aurora, State of Colorado.  He possesses a Colorado driver's license.  Stevenson has a Colorado resident concealed carry license, as well as a concealed carry license from Utah, and must occasionally traverse Illinois on I-80 or I-88 to visit relatives in both Illinois and Michigan.

Paul Heslin is a natural person and a resident of the City of Defiance, State of Missouri.  He is originally from Lake County, Illinois.  He possesses a Missouri driver's license and a Missouri license to carry a concealed weapon, as well as a concealed carry license from Florida, and a Type 03 federal firearms license.  He is also an Illinois certified concealed carry instructor.

Marlin Mangels is a natural person and a resident of the City of Keokuk, State of Iowa.  He possesses an Iowa driver's license and an Iowa license to carry a concealed weapon, as well as concealed carry licenses from Utah and Arizona. Keokuk is just across the Mississippi River from Hamilton, Illinois.  Mangels frequently rides his bicycle up the River Road in Illinois, eats in restaurants in Hamilton, Illinois, travels to see his wife's family in the Chicago area, and travels I-80 through Illinois to visit friends in Massachusetts.

Jeanelle Westrom is a natural person and a resident of the City of Davenport, Iowa.  She possesses an Iowa driver's license and an Iowa license to carry a concealed weapon, as well as one in Georgia.  She has a firearms business in Davenport, Iowa but also a separate firearms business in Geneseo, Illinois, where she spends a considerable amount of her time.  Westrom also possesses three federal firearms licenses, which are required for her businesses.

The individual Plaintiffs are licensed to possess concealed handguns in their states of residence, but are prohibited by 430 ILCS 66/40 from obtaining Illinois concealed carry licenses, and thus carrying a handgun in a concealed manner in

8

Illinois for self-defense.  This is because their states of residence are not approved for applications for concealed carry licensing by the Defendants.

The individual Plaintiffs would apply for and obtain an Illinois concealed carry license, and would carry a loaded and functional concealed handgun in public in a concealed manner for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment as they understand it is unlawful for an unlicensed individual to carry a concealed handgun in Illinois.

Organizational Plaintiffs

Second Amendment Foundation, Inc. is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF's membership includes non-residents of Illinois who wish to obtain an Illinois concealed carry license but do not have a concealed carry license from an "approved state" according to the Illinois State Police.  SAF has over 650,000 members and supporters nationwide. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right privately to own and possess firearms.  SAF brings this action on behalf of itself and its members.

Members of SAF who are not residents of Illinois and do not have concealed carry licenses from an approved state, and thus are prohibited from applying for and obtaining an Illinois concealed carry license, would carry a loaded and functional concealed handgun in public in a concealed manner for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment

9

as they understand it is unlawful for an unlicensed individual to carry a concealed handgun in Illinois.

Illinois Carry is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Shelbyville, Illinois. Illinois Carry has over 10,000 members and supporters in Illinois, and many members outside the State of Illinois.  Illinois Carry is dedicated to the preservation of Second Amendment rights.  Among Illinois Carry's purposes are educating the public about Illinois laws governing the purchase and transportation of firearms, aiding the public in every way in its power, and supporting and defending the people's right to keep and bear arms, including the right of its members and the public to purchase, possess, and carry firearms.

Members of IC who are not residents of Illinois and do not have concealed carry licenses from an approved state, and thus are prohibited from applying for and obtaining an Illinois concealed carry license, would carry a loaded and functional concealed handgun in public in a concealed manner for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment as they understand it is unlawful for an unlicensed individual to carry a concealed handgun in Illinois.

Illinois State Rifle Association is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois.  ISRA has over 17,000 members and supporters in Illinois, and many members outside the State of Illinois.  The purposes of ISRA include securing

the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation.  ISRA brings this action on behalf of itself and its members.

Members of ISRA who are not residents of Illinois and do not have concealed carry licenses from an approved state, and thus are prohibited from applying for and obtaining an Illinois concealed carry license, would carry a loaded and functional concealed handgun in public in a concealed manner for self-defense, but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment as they understand it is unlawful for an unlicensed individual to carry a concealed handgun in Illinois.

The individual Plaintiffs are members of the above-named organizations.

Defendants

Defendant Attorney General Lisa Madigan is sued in her official capacity as the Attorney General of the State of Illinois, responsible for executing and administering the laws of the State of Illinois, including 430 ILCS 66/40.  Defendant Attorney General Madigan has enforced the challenged laws, customs and practices against Plaintiffs and is in fact presently enforcing the challenged laws, customs and practices against Plaintiffs.

Defendant Hiram Grau[1] is the Director of the Illinois State Police, and is the person ultimately responsible for executing and administering the laws of the State of Illinois, including Section 66/40 of the FCCA.  He is sued in his official capacity.

---

[1]  Since the filing of this suit, Plaintiffs believe that Leo P. Schmitz replaced Hiram Grau as Director of the Illinois State Police.  Since Grau was sued only in his official capacity,

Defendant Jessica Trame is the Bureau Chief of Firearms Services for the Illinois State Police.  She is the ISP employee directly responsible for the administration of the FCCA, and is the ISP employee directly responsible for the denial of concealed carry licensing to the Plaintiffs.  She is sued in her official capacity.

Every day that passes without relief from Illinois's CCL non-resident application prohibition, all non-residents visiting, working in, or spending time in Illinois who are otherwise qualified to obtain a concealed carry license, including the individual Plaintiffs and the members and supporters of Plaintiffs SAF, IC, and ISRA, are frustrated in their ability to carry handguns in a concealed manner for self-defense in Illinois, and to enjoy their constitutional rights.

But for the criminal enactments challenged in this complaint, and Defendants' enforcement of same, the Plaintiffs and the qualified non-resident organization members would obtain licenses and carry concealable firearms for self-defense, but refrain from doing so for fear of arrest, prosecution, fine and incarceration (*See* Plaintiffs' Declarations, attached hereto and incorporated herein).

---

Plaintiffs would not oppose any Motion to substitute Schmitz as the ISP Director in his official capacity.

### SUMMARY OF ARGUMENT

Illinois's prohibition on non-residents obtaining a concealed carry license for self-defense, regardless of said non-resident's qualifications to do so, unquestionably violates the constitutional guarantees of the Second and Fourteenth Amendments, as well as Article IV of the Constitution, as do any other of Illinois's various statutes that, regardless of their facial validity, undeniably frustrate constitutionally-secured equal rights of concealed handgun possession.

Considering the certainty of success on the merits, Plaintiffs are entitled to preliminary injunctive relief.  Plaintiffs are suffering, and will continue to suffer, irreparable harm in the absence of injunctive relief, for which there is no adequate remedy at law.  Granting Plaintiffs relief cannot injure Defendant.  And given the degree to which Illinois's concealed carry license prohibition threatens the safety of Plaintiffs, the public interest - already favoring the exercise of fundamental rights - is clearly satisfied by immediately enjoining Illinois's unconstitutional practices.

### ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008).

Under the Seventh Circuit's two-part preliminary injunction test, Plaintiffs must first establish: (1) some probability of success on the merits; (2) lack of an adequate legal remedy; and (3) irreparable injury in the absence of an injunction.

*See Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008); *Ty, Inc. v. Jones Group Inc.*, 237 F.3d 891, 895 (7th Cir. 2001); *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir. 1986). Once these elements are met, the court conducts a "balancing phase" in which it "weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Girl Scouts*, 549 F.3d at 1086.

In this case, these factors are applied to Plaintiffs' legal claims that the offending statute 430 ILCS 66/40 violates Plaintiffs' Second Amendment right to "keep and bear arms," their Fourteenth Amendment rights to due process and equal protection of the laws, and their Article IV rights to the same privileges and immunities as residents. The Seventh Circuit has previously observed that when constitutional rights are at stake, "the merits of a dispute often are intertwined with the other three factors to be considered in the decision to issue or deny a preliminary injunction." *Libertarian Party v. Packard*, 741 F.2d 981, 985 (7th Cir. 1984). Indeed, "the likelihood of success on the merits will often be the determinative factor." *Joelner v. Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004). This is certainly the case here: If the Plaintiffs' constitutional rights are being violated by 430 ILCS 66/40, then Plaintiffs are likely to succeed on the merits, money damages are inadequate, the ongoing deprivation is irreparable, and interest-balancing must cede to the explicit constitutional protection. *See generally id.* Thus,

14

analysis should begin by assessing the merits of Plaintiffs' claim. *See, e.g.,*

*Grossbaum v. Indianapolis-Marion County Building Authority*, 63 F.3d 581, 586

(7th Cir. 1995).  However, Plaintiffs easily satisfy all these threshold requirements

for obtaining preliminary injunctive relief, and the balance of interests weigh

heavily in their favor.

I.     PLAINTIFFS WILL PREVAIL ON THE MERITS, AS ILLINOIS'S VIRTUAL
       BAN ON NON-RESIDENT CONCEALED CARRY LICENSE
       APPLICATIONS VIOLATES THEIR ARTICLE IV, AND THEIR SECOND
       AND FOURTEENTH AMENDMENT, RIGHTS.

*The Prohibition Violates Plaintiffs' Second Amendment Rights.*

As is by now well-known, the Supreme Court has held that the enumerated

right to possess a firearm for lawful purposes, most notably for self-defense, is

fundamentally core to the Second Amendment.  *Heller*, 128 S.Ct. at 2818.  *See also*

*McDonald*, 130 S.Ct. 3020, 3043 (2010).  That right extends outside of the home.

*Moore*, 702 F.3d at 937.

In *Moore*, the Seventh Circuit held the ban of the public carrying of firearms

violated the Second Amendment and was unconstitutional, and noted the

importance of the right to self-defense:

> Both *Heller* and *McDonald* do say that "the need for defense of
> self, family, and property is most acute" in the home, *id*. at 3036
> (emphasis added); 554 U.S. at 628, but that doesn't mean it is
> not acute outside the home. *Heller* repeatedly invokes a broader
> Second Amendment right than the right to have a gun in one's
> home, as when it says that the amendment "guarantee[s] the
> individual right to possess and carry weapons in case of
> confrontation." 554 U.S. at 592. Confrontations are not limited
> to the home.

*Id.* at 935-36.

The Court held that the State must make a "strong showing" where the challenged restriction curtails "the gun rights of the entire law-abiding adult population." *Id.* at 940. Arguably, the prohibition in this case violates the rights of even more law-abiding people than in *Moore*.

The Seventh Circuit has also compared the analysis of infringements of Second Amendment rights to those of infringements of First Amendment rights (*See Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (ban on gun ranges within State limits ruled unconstitutional). According to *Ezell*, infringements on the core Second Amendment right of possession for self-defense must satisfy a level of scrutiny approaching strict scrutiny. *Id.* at 708. This likewise means that Illinois's prohibition, ". . . a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end." *Id.*

When the standards required by *Moore* and *Ezell* are applied to this case, it is evident Illinois cannot defend its arbitrary prohibition. Further, under any level of scrutiny (rational basis not even being up for consideration under *District of Columbia v. Heller*, 128 S. Ct. 2783, 2818, fn 27 (2008)), 430 ILCS 66/40 fails.

In *Heller*, neither the D.C. Circuit nor the Supreme Court bothered to engage in any balancing test or other extended analysis before striking down Washington, D.C.'s ban on the possession of functional firearms for self-defense, as that law literally contradicted a "core" aspect of Second Amendment rights. *Heller*, 128 S.Ct. at 2818.

16

It is not within the State's constitutional power to ban otherwise qualified non-residents from possessing concealed firearms, including handguns which have been expressly deemed constitutionally protected by the Supreme Court. *See Heller*, 128 S.Ct. at 2817-18 ("Under any of the standards of scrutiny that we have applied to enumerated constitutional rights, banning from the home 'the most preferred firearm in the nation to 'keep' and use for protection of one's home and family,' would fail constitutional muster"). That Illinois has such a ban violates the Second and Fourteenth Amendments.

The State has no interest, let alone an extremely strong or compelling one, in denying virtually all non-residents the fundamental Second and Fourteenth Amendment rights of handgun possession in the same manner available to residents, based solely on than state of residence, especially when doing so by the arbitrary method of simply refusing them the ability to submit an application. In light of the above, a preliminary injunction against the enforcement of 430 ILCS 66/40 should be immediately entered.

### *The Prohibition Violates Plaintiffs' Fourteenth Amendment Equal Protection Rights.*

"The Fourteenth Amendment provides that '[no] State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'" *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (undocumented alien children being denied public school education violation of Equal Protection Clause). "The Equal Protection Clause was intended as a restriction on state legislative action inconsistent with elemental

17

constitutional premises." *Id.* at 217.  "[T]his [Supreme] Court always has held that the Equal Protection Clause forbids a State to discriminate in favor of its own residents solely by burdening 'the residents of other state members of our federation.'" *Metropolitan Life Insurance Company v. Ward*, 470 U.S. 869, 878 (U.S. 1985) (quoting *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 533 (1959) (Brennan, J., concurring)).

"Under the Equal Protection Clause of the Fourteenth Amendment, courts apply strict scrutiny to statutes that involve suspect classifications or infringe upon fundamental rights." *Moore v. Detroit School Reform Board*, 293 F.3d 352, 368 (6th Cir. 2002) (citing *Clark v. Jeter*, 486 U.S. 456, 461 (1988) (explaining that under the Equal Protection Clause of the Fourteenth Amendment, 'classifications based on race or national origin, and classifications affecting fundamental rights are given the most exacting scrutiny') (internal citations omitted). "This level of review demands that the statute be 'narrowly tailored to serve a compelling state interest." *Reform Board*, 293 F.3d at 368 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)).

The quintessential example of how the legal landscape has changed, and why Plaintiffs will prevail in this matter is *Sklar v. Byrne*, 727 F.2d 633 (7th Cir. 1984). In *Sklar*, the plaintiff moved to Chicago five days after it passed its now-defunct handgun ban in 1982.  He challenged the ban on equal protection grounds, claiming residents were grandfathered and were allowed to possess their previously-purchased handguns, while new residents suffered discrimination in not having the

18

same opportunity.  *Id.* at 636.  The District Court dismissed for failure to state a claim, and the Seventh Circuit affirmed.

First, the *Sklar* Court determined the standard of review, noting that: "Where the legislative classification works to the disadvantage of a constitutionally suspect class -- based, for example, on race, nationality, alienage or religious affiliation -- then courts may uphold the classification only if it is 'precisely tailored to serve a compelling governmental interest.' *Plyler v. Doe*, 457 U.S. 202, 216-17 & n.14, 72 L. Ed. 2d 786, 102 S. Ct. 2382 (1982). Similarly, **if the legislative classification impinges upon the exercise of a fundamental personal right, the classification must meet the same exacting 'compelling interest' standard**. 457 U.S. at 216-17."  *Sklar*, 727 F.2d at 636 (boldface added).

Because *Sklar* predated *Heller* and *McDonald* and *Moore*, the *Sklar* Court held that the grandfather clause and simultaneous handgun ban for all those who did not comply did "not impinge upon any federal constitutional right to bear arms" and said "[n]or is the asserted right to bear arms pivotal in the effective exercise of constitutionally guaranteed rights" and therefore applied rational basis scrutiny. *Id.* at 637.  Predictably, the Court upheld the ordinance.  *Id.* at 642-643.

It is well-known that the analysis of Second Amendment rights has changed since *Sklar* in 1984.  The handgun ban was struck down in *McDonald*, when the Second Amendment right to keep and bear arms was recognized to be fundamental. The ban on public carrying of firearms was struck down in *Moore*, when the Seventh Circuit held the fundamental Second Amendment right to apply outside of the

<div align="center">19</div>

home.  Had the ban in *Sklar* even been attempted today, it would quickly be struck down as a violation of Second and Fourteenth Amendment rights.

The arbitrary and discriminatory law at issue must be analyzed using strict scrutiny.  There is no reason, compelling or otherwise, to ban virtually all Americans from even applying for a CCL.  The requirements of their home state, supposedly the basis for deciding which states meet the ISP's exacting standard, is irrelevant, since all applicants must meet Illinois's requirements in order to be qualified.  Further, the law is not narrowly tailored, since there are ways short of a ban to ensure that only qualified non-residents obtain an Illinois CCL.  "Strict scrutiny is a demanding standard that requires Defendants to show the governmental interest to be compelling and the associated regulation narrowly tailored to serve that interest.  To be narrowly tailored, the curtailment of constitutional rights must be actually necessary to the solution."  *Mance v. Holder*, 2015 U.S. Dist. LEXIS 16679 at *29 (N.D.TX 2015) (citing *Brown v. Entm't Merchs. Ass'n,*, 131 S. Ct. 2729, 2738 (2011)).

In *Mance*, the Court struck down the laws that collectively made up a federal interstate handgun transfer ban, which among other things prohibited people from purchasing firearms outside of their state of residence.  In so doing, the Court held:

> The Supreme Court has also held that strict scrutiny is required where the challenged classification impinges on residency. *See Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 254-64 (1974) (holding that a challenge to a state durational-residency requirement to receive free, non-emergency medical care merited strict scrutiny, and the requirement was unconstitutional); *see also Att'y Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898 (1986). The Supreme Court applied strict scrutiny in situations where state laws discriminated against non-residents, and

those cases involved benefits offered by the state, not constitutional rights. *See id.*; *Mem'l Hosp.*, 415 U.S. at 254.

*Mance*, 2015 U.S. Dist. LEXIS 16679 at *43.

State laws have been successfully challenged under the Equal Protection Clause in other contexts as well. In *Williams v. Vermont*, 472 U.S. 14 (1985), a person bought a car in Illinois and then moved to Vermont. He was then forced to pay a "use tax" when he registered his car in Vermont, a tax which Vermont residents who purchased their cars out-of-state did not have to pay. The Vermont Supreme Court upheld the tax and dismissal of plaintiff's complaint, but the U.S. Supreme Court reversed, holding: "Vermont may choose not to penalize old residents who used their cars in other States, but it cannot extend that benefit to old residents and deny it to new ones. The fact that it may be rational or beneficent to spare some the burden of double taxation does not mean that the beneficence can be distributed arbitrarily . . . we can see no relevant difference between motor vehicle registrants who purchased their cars out-of-state while they were Vermont residents and those who only came to Vermont after buying a car elsewhere. To free one group and not the other from the otherwise applicable tax burden violates the Equal Protection Clause." *Id.* at 27. Discriminatory taxing of out-of-state corporations was also struck down under the Fourteenth Amendment's Equal Protection Clause. *See Metropolitan Life Insurance Company v. Ward*, 470 U.S. 869 (1985).

In this case, a fundamental right is being denied to most out-of-state residents. While the tax in *Williams* could not pass rational basis review, here

21

there is no way the CCL application ban will pass strict scrutiny.  *See Obergefell v.*
*Hodges*, 135 S. Ct. 2584; 192 L. Ed. 2d 609, 634 (2015) ("Being married in one State
but having that valid marriage denied in another is one of "the most perplexing and
distressing complication[s]" in the law of domestic relations." (quoting *Williams v.*
*North Carolina*, 317 U.S. 287, 299 (1942))).  The enumerated Second Amendment
right cannot be treated inferior to the right to marry found by the Supreme Court in
the Fourteenth Amendment.

In *Minton v. St. Bernard Parish School Board*, 803 F.2d 129 (5th Cir. 1986),
the plaintiff, a Mississippi resident, alleged she was owed payment on a tort
judgment by the defendant school board in Louisiana, arising from when a school
bus operated by the board struck the plaintiff's daughter.  The plaintiff alleged the
school board refused to appropriate funds to pay judgments owed to non-residents of
the Parish, while paying the similar claims of Parish residents.  *Id.* at 131.  She also
alleged the Board paid claims of Louisiana residents, while refusing to appropriate
funds to pay claims of non-Louisiana residents.  *Id.* at 130.  The District Court
dismissed plaintiff's complaint for failure to state a claim.  In reversing, the Fifth
Circuit ruled: "Assessing her charge of discrimination on its face, as we must, we
find that it is sufficient to state a claim for denial of that equality with residents
that state agencies must accord non-residents. Even discretion may not be exercised
on a discriminatory basis."  *Id.*

In ruling that the plaintiff's complaint could proceed on her Fourteenth
Amendment equal protection claim, the Court held:

> [E]very person is entitled to equal protection, even with regard to interests that do not constitute life, liberty, or property in the constitutional sense.  If the Mintons can prove their allegation that the School Board illegally discriminates between residents and nonresidents of St. Bernard Parish, as they say in their complaint, or between residents of Louisiana and nonresidents, as they state in their brief, in determining whether to satisfy tort judgments, they are entitled at least to declaratory relief.

*Id.* at 132-133.

In this case, life and liberty are clearly at stake, as is the ability to exercise fundamental constitutional rights.  There is no proof required beyond the plain language of the statute and the Declarations of the Plaintiffs as to their injuries as a result of Illinois's law.  The Plaintiffs are being discriminated against in an arbitrary manner for no reason other than their states of residence.  This discrimination is resulting in the denial of fundamental rights.  This Court must enjoin the enforcement of 430 ILCS 66/40 as unconstitutional.

### The Prohibition Infringes on Plaintiffs' Enjoyment of a Fundamental Privilege Under Article IV.

U.S. Const. Art. IV, § 2, Clause 1 states: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

Article IV "prohibits state legislation discriminating against citizens of other States."  *Hess v. Pawloski*, 274 U.S. 352, 356 (1927).

"While the Privileges and Immunities Clause cites the term 'Citizens,' for analytic purposes citizenship and residency are essentially interchangeable."  *Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 64 (1988).

23

In *Corfield v. Coryell*, 6 F. Cas. 546 (C.C.E.D. Pa. 1823), the federal circuit court held that privileges and immunities in respect of which discrimination is barred include

> protection by the Government; **the enjoyment of life and liberty ... the right of a citizen of one State to pass through, or to reside in any other State, for purposes of trade, agriculture, professional pursuits, or otherwise**; to claim the benefits of the writ of habeas corpus; to institute and maintain actions of any kind in the courts of the State; to take, hold and dispose of property, either real or personal; and an exemption from higher taxes or impositions than are paid by the other citizens of the State. (Emphasis added.)

Laws were unconstitutional that disadvantaged persons who made their homes in other states from exercising "fundamental rights." *See* Howell, Tim.

*Privilege and Immunities of State Citizenship* 33-61 (1918); Meyers, *The Privileges and Immunities of Citizens in the Several States* (pt. 2), 1 Mich. L. Rev. 364 (1903).

> The primary purpose of the Privileges and Immunities Clause 'was to help fuse into one Nation a collection of independent, sovereign States.' *Toomer* [*v. Witsell*], 334 U.S. [385] at 395 [(1948)]. The clause 'was intended to create a national economic union,' *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 280, 105 S. Ct. 1272, 84 L. Ed. 2d 205 (1985), and 'was designed to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned.' *Friedman*, 487 U.S. at 64 (internal quotations omitted); *Toomer*, 334 U.S. at 395.

*Council of Insurance Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 933-934 (9th Cir. 2008).

"Our opinions teach that Art. IV's Privileges and Immunities Clause "was designed to insure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy."" *Zobel v. Williams*, 457 U.S. 55, 74

24

(1982) (O'Connor, J., concurring) (quoting *Toomer*, 334 U.S. at 395). The Clause protects a nonresident who enters a State to work." *Zobel*, 457 U.S. at 74 (O'Connor, J., concurring) (citing *Hicklin v. Orbeck*, 437 U.S. 518 (1978)).

First, the Court determines "whether the activity in question is 'sufficiently basic to the livelihood of the nation . . . as to fall within the purview of the Privileges and Immunities Clause.' *Friedman*, 487 U.S. at 64 (citations and internal quotation marks omitted). 'Second, if the challenged restriction deprives nonresidents of a protected privilege, we will invalidate it only if we conclude that the restriction is not closely related to the advancement of a substantial state interest.' *Id*. at 65 (citation omitted)." *Insurance Agents*, 522 F.3d at 934.

"In the first step of [the Court's] inquiry, it is '[o]nly with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally.' *Baldwin v. Fish and Game Comm'n of Montana*, 436 U.S. 371, 383, 98 S. Ct. 1852, 56 L. Ed. 2d 354 (1978)." *Insurance Agents*, 522 F.3d at 934.  Certainly the fundamental right to protect one's self and family, wherever one goes, bears upon the vitality of the Nation.

In *Insurance Agents*, the Court found the right to sell insurance in another state to be a fundamental right or privilege covered by Article IV's Privilege and Immunities Clause.  *Insurance Agents*, 522 F.3d at 934.  The Second Amendment's right to defend one's life and those of one's family has been declared fundamental in *McDonald* (which largely cited to *Heller*) and *Moore*.  Put simply, the right to armed

25

self-defense cannot be considered less fundamental than the right to sell insurance. The Privileges and Immunities Clause applies here.  *See also Powell v Daily*, 712 P.2d 356 (Wyo. 1986) (statute requiring Wyoming residency to get professional hunting and fishing guide's license violated Privileges and Immunities Clause where alleged justification was not rationally related to exclusion of nonresidents, no evidence supported claim that nonresidents were less likely to obey laws of state, and less discriminatory means of achieving state's goals of safety and compliance with game laws existed in testing procedure).

As for the second prong of the Privileges and Immunities analysis, "[a] 'substantial reason' for discrimination does not exist 'unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed.'" *Insurance Agents*, 522 F.3d at 934 (quoting *Toomer*, 334 U.S. at 398).

There is no "substantial state interest" in refusing to allow people to apply for a CCL.  It is unclear what "evil" the ISP is designed to prevent by banning almost all non-residents from applying for a CCL, but whatever it is the Plaintiffs (and all other qualified non-residents) are not the problem.  For example, there is no evidence whatsoever that any violence problem in Illinois (assuming, *arguendo*, that such a problem exists) is caused by qualified non-residents.

If the non-resident applicant does not meet the qualifications that every Illinois CCL-holder must meet, then that person will be turned down.  It is ludicrous that persons out of state, including Plaintiffs in this case, can be Illinois

26

CCL instructors and cannot even apply to obtain a CCL themselves.  Plaintiff Culp is an active member of the military, with more firearms training than most persons, and cannot apply because he resides (when not being stationed in Illinois) in Pennsylvania.  The Plaintiffs would all qualify for a CCL if only they were not arbitrarily banned from applying simply because the ISP does not like their states of residence.  Just as the *Insurance Agents* Court noted that "[t]here is no evidence in the record that licensed nonresident agents and brokers are inherently less trustworthy or less competent insurance professionals than Nevada's resident agents," 522 F.3d at 936, so too it is that qualified CCL applicants from out-of-state are no less competent or untrustworthy that similarly-situated Illinois residents.  And if an individual applicant from out-of-state is not qualified, the FCCA has a solution- the applicant will be turned down for the CCL.  Discriminating against 45 of the 49 non-residents states in America is exactly what the Privileges and Immunities Clause was designed to prevent.  The restriction must be enjoined.

### The Prohibition Violates Plaintiffs' Fourteenth Amendment Due Process Rights.

Additionally, the virtual ban, which essentially denies concealed carry rights to virtually all qualified non-residents of Illinois without even the chance to show their qualifications to the ISP through the application process, is a violation of the Plaintiff's Fourteenth Amendment due process rights.

"Under the Due Process Clause of the Fourteenth Amendment, no State shall 'deprive any person of life, liberty, or property, without due process of law.' The fundamental liberties protected by this Clause include most of the rights

enumerated in the Bill of Rights." *Obergefell v. Hodges*, 135 S.Ct. 2584, 192 L. Ed.
2d 609, 623 (2015) (citing *Duncan v. Louisiana*, 391 U.S. 145, 147-149, 88 S. Ct.
1444, 20 L. Ed. 2d 491 (1968)).

"To demonstrate a procedural due process violation, the plaintiffs must
establish that there is '(1) a cognizable property interest; (2) a deprivation of that
property interest; and (3) a denial of due process.'" *Hudson v. City of Chicago*, 374
F.3d 554, 559 (7th Cir. 2004) (quoting *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201
(7th Cir. 1993)).

"Due process 'is not a technical conception with a fixed content unrelated to
time, place[,] and circumstances[;]' instead, it 'is flexible and calls for such
procedural protections as the particular situation demands.' *Mathews v. Eldridge*,
424 U.S. 319, 334, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976) (citations omitted). The
process constitutionally required is determined by balancing three distinct factors:

> First, the private interest that will be affected by the official
> action; second, the risk of an erroneous deprivation of such
> interest through the procedures used, and the probable value, if
> any, of additional or substitute procedural safe-guards; and
> finally, the Government's interest.

*Gilbert v. Homar*, 520 U.S. 924, 931-32 (1997) (quoting *Mathews*, 424 U.S. at 335);
*see also Sonnleitner v. York*, 304 F.3d 704, 712-14 (7th Cir. 2002); *Wallace v. Tilley*,
41 F.3d 296, 300 (7th Cir. 1994)." *Hudson*, 374 F.3d at 559-560.

The private interest affected by the State's virtual ban is great – Plaintiffs
are completely deprived of their Second Amendment rights, and their ability to
defend their lives on the same footing as Illinois residents.  Further, there is no

process or procedure, pre- or post-deprivation, of which they can avail themselves to rectify the situation – short of Court intervention.  That the Plaintiffs are being denied fundamental rights, without any procedure or process at all, is yet another reason why Plaintiffs are entitled to immediate injunctive relief against 430 ILCS 66/40 and its virtual non-resident ban.

II.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF.

Plaintiffs, and the non-resident members of the organizational Plaintiffs, enjoy a fundamental right to keep and bear arms.  *McDonald*, 130 S. Ct. at 3042.  "[T]he inherent right of self-defense has been central to the Second Amendment right." *Heller*, 128 S. Ct. at 2817.  The denial of constitutional rights, even if such deprivation were temporary, constitutes irreparable harm for purposes of granting injunctive relief (*See*, *e.g.*, *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

Irreparable injury will continue to exist in the absence of an injunction because Plaintiffs "will suffer irreparable harm in the interim – that is, harm that cannot be prevented or fully rectified by the final judgment after trial." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984) (emphasis added).

As noted above, in *Ezell* the Seventh Circuit favorably compared the fundamental freedoms of the Second Amendment to those fundamental freedoms of the First Amendment and deemed the deprivation of either to be irreparable harm.  The *Ezell* Court held that "[t]he loss of a First Amendment right is frequently presumed to cause irreparable harm based on 'the intangible nature of the benefits

29

flowing from the exercise of those rights; and the fear that, if those rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future.' . . .   The Second Amendment protects similarly intangible and unquantifiable interests.  *Heller* held that the Amendment's central component is the right to possess firearms for protection. (cite omitted). Infringements of this right cannot be compensated by damages."  *See Ezell*, 651 F.3d at 699.

Put simply, if 430 ILCS 66/40 is not enjoined, virtually all non-residents of Illinois, including the Plaintiffs, will continue to be unconstitutionally frustrated in their ability to exercise their fundamental Second Amendment rights.

Considering that the Second Amendment exists to secure the right of armed self-defense, the inability for non-residents to even apply to be able to defend themselves against violence in a manner allowed only to residents of Illinois and a few select states, also causes a profound loss of a sense of one's security, to say nothing of the irreparable harm resulting from a successful criminal attack.  Thus, the irreparable harm flowing from any delays in obtaining relief is palpable.

Additionally, the deprivation of the right of Plaintiffs and other non-residents to be treated equally under the law, and instead being discriminated due to their state of residence, in violation of the Equal Protection Clause of the Fourteenth Amendment, is an irreparable harm that continues so long as the offending statute is in place.  Equal protection "is essentially a direction that all persons similarly situated shall be treated alike."  *City of Cleburne v. Cleburne Living Center*, 473

U.S. 432, 439 (1985).  "When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (citing 11A Charles Alan Wright *et al.*, Federal Practice and Procedure § 2948.1 (2d ed. 1995)); *See also Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 362 (4th Cir. 1991); *Ezell*, 651 F.3d at 699.

Under both the Second and Fourteenth Amendments, Plaintiffs are currently suffering the irreparable harm of the deprivation of their constitutional rights, and will continue to suffer said irreparable harm every day 430 ILCS 66/40 is not enjoined.

III. TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO RELIEVE THE HARM OF THE BAN ON REGISTRATION BY QUALIFIED NON-RESIDENTS.

There is no way to quantify, in terms of money damages, the inability to engage in protected Second Amendment activity such as the concealed carry of a firearm such as a handgun for self-defense, or the discrimination of being classified solely based on state of residence in violation of Fourteenth Amendment Equal Protection rights.  The infringement of constitutional rights is frequently considered to be beyond quantification with money damages.  This includes infringements of Second Amendment rights.  *See Ezell*, 651 F.3d at 699; *See also, e.g., Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d at 386; *see also Gateway E. Ry. Co. v. Term. R.R. Ass'n.*, 35 F.3d 1134, 1140 (7th Cir. 1994).

Seventh Circuit courts have repeatedly recognized that there is no adequate remedy at law for the deprivation of conduct that the Constitution affirmatively

31

protects, and that these types of constitutional deprivations are accordingly irreparable. The Seventh Circuit considers the deprivation of First Amendment rights to be irreparable *per se*, and it has often quoted Justice Brennan's statement in *Elrod* that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *E.g., Nuxoll v. Indian Prairie School District No. 204*, 523 F.3d 668, 669-70 (7th Cir. 2008) (quoting *Elrod*, 427 U.S. at 373 (*plurality op.*)); *accord Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006); *Joelner*, 378 F.3d at 620.  In *Ezell*, the Seventh Circuit recognized that "[t]he Second Amendment protects similarly intangible and unquantifiable interests" as those secured by the First Amendment. *Id.* at 699.  As such, the Seventh Circuit found that "[i]nfringements of this right cannot be compensated by money damages." *Id.* (emphasis added).

No legal remedies will be available to qualified non-residents who are unable to even apply for a concealed carry licenses because Illinois deprives almost all non-residents of their Second Amendment rights or the equal protection of Illinois's firearms laws.  And quite obviously, no legal remedies will suffice to compensate those killed or injured for the inability to lawfully possess concealed defensive arms, owing to Illinois's virtual ban.

IV.   THE BALANCE OF INTERESTS FAVOR IMMEDIATE INJUNCTIVE
      RELIEF.

Once the "threshold" factors have been met, the decision to grant or deny an injunction turns on the balance of equities.  *See Ty, Inc. v. Jones Group Inc.*, 237 F.3d at 895.  The court "weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief" in light of the probable merit of the claim, and also considers the injunction's impact on non-parties (the "public interest").  *See Girl Scouts*, 549 F.3d at 1086.  The merits are intrinsic to this analysis because "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Roland Mach.*, 749 F.2d at 387; *accord Girl Scouts*, 549 F.3d at 1086; *see also Packard*, 741 F.2d at 985.

The Plaintiffs are certain to prevail on the merits.  Absent relief, they will continue to suffer irreparable injury in the loss of Second and Fourteenth Amendment rights, plus their Article IV privileges, if not actual physical harm.  The State has no legitimate interest in the prohibition; and the public interest strongly favors equal protection of the law, and the respecting of fundamental rights, to say nothing of the ability of all qualified law-abiding persons in Illinois to defend themselves equally.  The balance of interests could not more completely tilt in favor of immediate injunctive relief.

33

### *CONCLUSION*

Illinois cannot deny constitutional rights to an entire class of qualified persons within its borders.  Plaintiffs respectfully request that the motion for preliminary injunctive relief be granted.

Dated: August 5, 2015                              Respectfully submitted,

                                                   By: _____ /s/ David G. Sigale _____
                                                           David G. Sigale

                                                       Attorney for Plaintiffs

David G. Sigale, Esq. (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
Tel:  630.452.4547
Fax:  630.596.4445
dsigale@sigalelaw.com

Attorney for Plaintiffs

## <u>CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING</u>

The undersigned certifies that:

      1.      On August 7, 2015, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system;

      2.      Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

                                /s/ David G. Sigale
                                  Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KEVIN W. CULP, MARLOW DAVIS, FREDDIE REED-DAVIS, DOUGLAS W. ZYLSTRA, JOHN S. KOLLER, STEVE STEVENSON, PAUL HESLIN, MARLIN MANGELS, GUS C. BROWNE II, JEANELLE WESTROM, SECOND AMENDMENT FOUNDATION, INC., ILLINOIS CARRY and ILLINOIS STATE RIFLE ASSOCIATION, | ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:14-CV-3320-SEM-TSH |
| v. | ) | |
| LISA MADIGAN, in her Official Capacity as Attorney General of the State of Illinois; HIRAM GRAU, in his Official Capacity as Director of the Illinois State Police, and JESSICA TRAME, as Bureau Chief of the Illinois State Police Firearms Services Bureau, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## DECLARATION OF RICHARD PEARSON

I, Richard Pearson, am competent to state, and declare the following based on my personal knowledge:

1.      I am the Executive Director of the Illinois State Rifle Association ("ISRA").

2.      ISRA is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois. ISRA has over 26,600 members and supporters in Illinois, and many members outside the State of Illinois. The purposes of ISRA include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation. ISRA has bought and is pursuing this action on behalf of itself and its members.

3.     ISRA has individual members and supporters who are adversely impacted by 430 ILCS 66/40.

4.     But for the criminal enactments challenged in this complaint, ISRA members who are non-residents of Illinois, who nonetheless work in, travel to, and spend significant amounts of time within Illinois would apply for concealed carry licenses in order to carry concealed firearms for their own defense, but they refrain from carrying concealed firearms for fear of arrest, prosecution, fine and incarceration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 2 day of June, 2015.

Richard Pearson

2

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KEVIN W. CULP, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No.: 14-3320 |
| | ) | |
| LISA MADIGAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OBJECTION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

NOW COME Defendants, by and through their attorney, Lisa Madigan, Attorney General

of Illinois, and hereby object to Plaintiffs' motion for preliminary injunction:

## BACKGROUND

Plaintiffs seek a preliminary injunction barring enforcement of the residency requirement

of the Firearm Concealed Carry Act, 430 ILCS 66/40(a), thereby permitting the plaintiffs and

their members to apply for an Illinois concealed carry license. Section 40 of the Carry Act

permits nonresidents to apply, pursuant to rules of the Illinois State Police ("ISP"), for a

concealed carry license if the nonresident is a resident of a state or U.S. territory with laws

related to firearm ownership, possession, and carrying that are substantially similar to Illinois'

requirements. The purpose of this requirement is to ensure public safety and prevent violent

crime. Currently, Hawaii, New Mexico, South Carolina, and Virginia are "substantially similar,"

based on information provided by the jurisdictions in response to ISP's request for information.[1]

(Ex. 1, Affidavit of Trame, at ¶¶ 26–29.)

The individual plaintiffs attest they are residents of Wisconsin, Colorado, Missouri, Iowa,

Pennsylvania, or Indiana; would apply for a concealed carry permit if able; and would carry

concealed firearms in Illinois but fear criminal prosecution. The individuals suggest they

---

[1] ISP has proposed amended rules that may expand the number of states deemed to be
"substantially similar" under the Carry Act. 39 Ill. Reg. 10717, 10740–41.

maintain "premises" in Illinois (*see, e.g.*, Doc. 18-1 at ¶ 2), but whether that is intended is unclear. A few attest they work in Illinois (Docs. 19 (military station), 19-2, 19-3); while others attest they "occasionally traverse" Illinois to visit relatives (Doc. 18-1); "frequently" visit and travel through Illinois to other states (Doc. 18-4); visit family in and make "periodic business trips" to Illinois (Doc. 19-4); or spend half of their time in Chicago (Doc. 19-1). One individual does not attest to any travel to or through Illinois. (Doc. 18-3). The organizational plaintiffs attest they have "many" nonresident members and conclude those unidentified members would apply for a concealed carry permit if able. (Docs. 18-2, 18-5, 21.)

Pursuant to 20 Ill. Admin. Code § 1231.110(c), ISP sent surveys to other jurisdictions requesting information about their firearm laws to determine whether those jurisdictions had "substantially similar" firearm laws. (Ex. 1 at ¶¶ 26–29.) ISP asked whether the jurisdiction regulated who may carry firearms in public, reported via national databases persons authorized to carry and persons denied, and prohibited persons voluntarily (in the last five years) or involuntarily admitted to mental health facilities from possessing or using firearms. Colorado, Maine, Maryland, Massachusetts, Nevada, Pennsylvania, and Rhode Island did not respond to Illinois' requests. Hawaii, New Mexico, South Carolina, and Virginia stated they met all of the criteria. The remaining jurisdictions stated they did not have laws or procedures concerning one or more of the criteria. For example, and relevant to the plaintiffs' states of residence, Indiana, Iowa, Missouri, and Wisconsin stated they did not prohibit use or possession of firearms based on voluntary admissions to mental health facilities in the last five years and did not have a mechanism of tracking that information for their residents. (Ex. 1 at ¶ 29.) Iowa and Missouri also reported they do not participate in reporting licenses via the National Law Enforcement Telecommunications System, one of the systems used by Illinois to assess firearm qualifications and monitor continued qualifications. (Ex. 1 at ¶¶ 6, 10, 13, 14, 28–29.)

Defendants request this Court deny Plaintiffs' motion for preliminary injunction because Plaintiffs have failed to establish the elements necessary for such extraordinary relief and because the balances of the equities weigh strongly in favor of denial.

## STANDARD

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. CentiMark Corp.*, --- F.3d ----, No. 14–2758, 2015 WL 4561195 at *4 (7th Cir. July 29, 2015). The party seeking the injunction must show that "(1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Id.* If this initial threshold is met, the Court then weighs "the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted." *Id.* Particularly important in a case involving the regulation of firearms and public safety, the Court must also consider how an injunction might impact nonparties and the "public interest." *See id.*; *Girls Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.,* 549 F.3d 1079, 1086 (7th Cir. 2008).

## ISSUES AND ARGUMENT

**I.      Plaintiffs Cannot Demonstrate a Likelihood of Success.**

Plaintiffs argue the residency requirement violates the Second Amendment right to keep and bear arms, the Fourteenth Amendment rights to equal protection and due process, and the Privileges and Immunities clause of Article IV of the United States Constitution, relative to certain nonresidents who wish to carry firearms in Illinois. Plaintiffs' various constitutional claims ultimately reduce to a Second Amendment challenge: whether the State may prohibit nonresidents from states without substantially similar firearm laws from obtaining Illinois concealed carry licenses consistent with the right to bear arms. Plaintiffs are not likely to succeed.

Public carriage of firearms in Illinois is conditioned, with some exceptions, on possession of an Illinois concealed carry license. The restriction applicable to nonresidents from states without substantially similar firearm laws does not violate the right to bear arms in public because it is reasonably related to Illinois' substantial interest in disarming those not qualified to carry firearms due to criminal history, mental illness, or other factors. Illinois has limited access to out-of-state information concerning nonresidents' qualifications to carry firearms in public in Illinois; unless a state gathers that information for the purpose of enforcing its own, substantially similar firearm laws, Illinois has no way to confirm that a nonresident from that state is qualified to carry a loaded firearm in public in Illinois, and would have no way to monitor that nonresident's ongoing qualifications were it to issue a license. Because the residency requirement does not violate the right to bear arms, Plaintiffs' various constitutional challenges premised on that right also fail.

**A.     The Carry Act and Related Regulations Do Not Violate the Second Amendment.**

Plaintiffs argue the residency requirement of the Carry Act constitutes a ban in violation of the Second Amendment as applied to them because, as residents from states lacking substantially similar firearm laws, they are prohibited from publicly carrying a firearm in Illinois. However, an examination of the Illinois firearm regulation scheme reveals that Illinois allows qualified individuals to possess firearms and carry them in public for the purpose of self-defense. Because that is all the Second Amendment requires, Plaintiffs' Second Amendment challenge fails.

**1.     The Illinois Firearm Regulation Scheme**

The Second Amendment confers two related individual rights: the right to keep arms and the right to bear arms. *See Dist. of Columbia v. Heller*, 554 U.S 570, 582-85 (2008); *McDonald v. Chicago*, 561 U.S. 742, 791 (2010) (applying Second Amendment to states). The right to keep

arms is merely the right to possess them; the right to bear arms is the right to carry them in public for self-defense. *Heller*, 554 U.S at 582-84. Illinois has instituted separate regulatory schemes for each right. The right to keep arms is governed by the FOID Card Act, which allows qualified individuals to possess firearms. *See* 430 ILCS 65/1, *et seq*. However, a valid FOID card does not permit its holder to carry firearms in public in a condition suitable for self-defense (*i.e.*, loaded and immediately accessible). *See* 720 ILCS 5/24-1(a)(4), (a)(10); 720 ILCS 5/24-1.6(a)(1), (a)(2), (a)(3)(A-5). Rather, that right—the right to bear arms—is governed by the Firearm Concealed Carry Act, 430 ILCS 66/1, *et seq.*, which allows qualified individuals to *carry* arms.

a.      **The FOID Card Act ensures only qualified individuals may possess firearms.**

Because nonresident applicants for a concealed carry license must meet all of the qualifications for a FOID Card except residency, 430 ILCS 66/25, 40(c), the FOID Card Act is examined first. The purpose of the FOID Card Act is "to promote and protect the health, safety, and welfare of the public" by "provid[ing] a system of identifying persons who are not qualified to acquire or possess firearms." 430 ILCS 65/1. To effect this purpose without infringing on the Second Amendment right of "law-abiding, responsible citizens" to keep arms, *Heller*, 554 U.S. at 635, the Act relies upon "longstanding prohibitions on the possession of firearms by felons and the mentally ill," *id.* at 626, which are "presumptively lawful regulatory measures," *id.* at 627 n.26. *See* 430 ILCS 65/4(a)(2)(ii) (felony conviction bar); § 4(a)(2)(xiii) (juvenile adjudicated delinquent if would have been felony had applicant been adult); § 4(a)(2)(iv) (patients in mental health facility within past five years); § 4(a)(2)(xvi) (involuntarily mental health commitment). The Act also prohibits issuance to persons who cannot be entrusted with firearms. *See* 430 ILCS 65/4(a)(2)(vii) (orders of protection); § 4(a)(2)(viii) (conviction involving firearm use or possession within past five years); § 4(a)(2)(ix) (conviction of domestic violence offense that constitutes federal prohibitor); § 4(a)(2)(iii) (narcotics addiction); *see also*

*United States v. Yancy*, 621 F.3d 681, 687 (7th Cir. 2010) ("prohibiting illegal drug users from firearm possession" constitutional under Second Amendment because "it is substantially related to the important governmental interest in preventing violent crime"). FOID Card applicants must submit evidence to ISP that none of these disqualifying conditions apply. 430 ILCS 65/4(a)(2).

Illinois' interest in assessing a person's qualifications to possess a firearm does not cease upon the issuance of a FOID Card. After all, an armed, card bearing person who once was qualified but no longer remains so may well present an even greater threat to the public than an armed person who was never qualified; the former's now-undeserved FOID Card might deceive law enforcement as to the threat posed by its holder. *Cf. Coram v. State*, 2013 IL 113867, ¶ 122 (Freeman, J., specially concurring) (issuing FOID card to person federally barred from possession renders system meaningless and threatens the public interest). Accordingly, any disqualifying condition constituting grounds to deny an applicant is also grounds to revoke a FOID Card if the condition is discovered or arises after issuance. *See* 430 ILCS 65/8.

To ensure prompt identification of later-arising disqualifying conditions, the General Assembly created a comprehensive system of reporting obligations to monitor ongoing qualifications. The Illinois Circuit Court Clerks must notify ISP of every final disposition of a criminal charge, delinquency petition, and involuntary commitment proceeding. 430 ILCS 65/8.1; 20 ILCS 2630/2.1(c); 20 ILCS 2630/2.2. The Illinois Department of Human Services ("DHS") must report information relating to mental illness to ISP. 430 ILCS 65/8.1(c); 740 ILCS 110/12(b). Every physician, clinical psychologist, and qualified examiner who determines that a person poses a clear and present danger to himself, herself, or others must report that determination within twenty-four hours to DHS, which in turn "shall immediately update its records and information relating to mental health and developmental disabilities, and if appropriate, shall notify the [ISP]." 430 ILCS 65/8.1(d)(1), (2); 405 ILCS 5/6-1.3.3; *see* 20 Ill. Admin. Code § 1230.120. Finally, every law enforcement official and school administrator must

report dangerous individuals directly to ISP within twenty-four hours. 430 ILCS 65/8.1(d)(2); 405 ILCS 5/6-1.3.3; 20 Ill. Admin. Code § 1230.120.

Nonresidents employed as law enforcement officers, armed security guards in Illinois, or members of the military permanently assigned in Illinois may apply for a FOID Card. 430 ILCS 65/4(a-10); 20 Ill. Admin Code § 1230.20(e). All nonresidents may possess firearms in Illinois without a FOID Card if their "firearms are unloaded and enclosed in a case," 430 ILCS 65/2(b)(9), or if they "are currently licensed or registered to possess a firearm in their resident state," 430 ILCS 65/2(b)(10). In addition, nonresidents may possess firearms in Illinois without a FOID Card if they are "hunters during hunting season, with valid nonresident hunting licenses and while in an area where hunting is permitted" (430 ILCS 65/2(b)(5)); "on a firing or shooting range recognized by [ISP]" (430 ILCS 65/2(b)(7)); or "at a firearm showing or display recognized by [ISP]" (430 ILCS 65/2(b)(8)).

**b.   The Carry Act ensures only qualified individuals may publicly carry loaded and immediately accessible firearms.**

The purpose of the Firearm Concealed Carry Act is "to allow for a limited right to carry an operable handgun in public," *People v. Henderson*, 2013 IL App (1st) 113294, ¶ 34. In conjunction with the enforcement mechanisms under the Criminal Code, *see, e.g.* the aggravated unlawful use of a weapon ("AUUW") statute (720 ILCS 5/24–1.6), the Act "protect[s] the public and police officers from the inherent dangers and threats to safety posed by any person carrying in public a loaded and immediately accessible firearm on his person or in his vehicle." *People v. Fields*, 2014 IL App (1st) 130209, ¶ 61.

Because "keep[ing] guns out of the hands of those individuals who by their prior conduct ha[ve] demonstrated that they may not possess a firearm without being a threat to society" and "preventing armed mayhem" are important governmental objectives, *U.S. v. Williams*, 616 F.3d 685, 693 (7th Cir. 2010), Illinois' interest in limiting public carriage to qualified individuals is

even greater than its interest in limiting mere possession of inaccessible and unloaded firearms

under the FOID Card Act, and the qualifications required are correspondingly more

comprehensive. *See also People v. Marin*, 342 Ill. App. 3d 716, 727–28, 795 N.E.2d 953, 962

(Ill. App. 1st Dist. 2003) ("Access to a loaded weapon on a public street creates a volatile

situation vulnerable to spontaneous lethal aggression in the event of road rage or any other

disagreement or dispute.") In addition to possessing and meeting the requirements for a currently

valid FOID Card, an Illinois applicant for a concealed carry license cannot have been convicted

within the past five years of a misdemeanor involving the use or threat of physical force or of

two or more violations relating to driving while under the influence of alcohol or drugs. 430

ILCS 66/25(3). Similarly, the applicant cannot be subject to a pending arrest warrant,

prosecution, or proceeding for an offense or action that could lead to disqualification to own or

possess a firearm (430 ILCS 66/25(4)) or have been in residential or court-ordered treatment for

alcoholism or drug use within the past five years (430 ILCS 66/25(5)). To confirm an applicant's

qualifications, ISP conducts extensive background checks using national, state, and local records,

as well as DHS files. 430 ILCS 66/35. In addition, the Carry Act allows state and local law

enforcement agencies to submit objections to a license applicant. 430 ILCS 66/15; 20 Ill. Admin.

Code § 1231.70.

     As under the FOID Card Act, any disqualifying condition that would constitute grounds

to deny a concealed carry license is also grounds to revoke a license if discovered or arising after

its issuance. 430 ILCS 66/70(a). Because applicants for concealed carry licenses must meet the

requirements for a FOID Card, 430 ILCS 66/25(2); § 40(c), all of the reporting obligations under

the FOID Card Act also serve to monitor concealed carry licensees' ongoing qualifications under

the Carry Act. In addition, disqualifying arrests are identified through daily reports to ISP from

"[a]ll agencies making arrests for offenses which are required by statute to be collected,

maintained or disseminated by the [ISP]." 20 ILCS 2630/2.1(a). All State's Attorneys must

notify ISP of all charges and delinquency petitions filed to identify disqualifying prosecutions.

20 ILCS 2630/2.1(b).

Nonresident applicants for concealed carry licenses must meet the same requirements as

resident applicants, except that rather than possessing a FOID Card, they must meet all

qualifications to do so except for the Illinois residency requirement. 430 ILCS 66/40(c). As with

resident license holders, Illinois has a substantial interest in monitoring the ongoing

qualifications of nonresident license holders. Illinois cannot effectively monitor nonresidents'

qualifications itself, however; out-of-state mental health providers and law enforcement agencies

do not share the reporting obligations of their Illinois counterparts, and out-of-state criminal and

mental health databases are not necessarily accessible to ISP or sufficiently comprehensive for

Illinois licensing purposes. (*See generally* Ex. 1.) Rather than flatly banning nonresidents from

obtaining Illinois concealed carry licenses, however, Illinois allows nonresidents from states

"with laws related to firearm ownership, possession, and carrying, that are substantially similar"

to Illinois' own to apply for an Illinois concealed carry license. 430 ILCS 66/40(b). A state has a

firearm law substantially similar to Illinois' if it:

> regulates who may carry firearms, concealed or otherwise, in public; prohibits all
> who have involuntary mental health admissions, and those with voluntary
> admissions within the past 5 years, from carrying firearms, concealed or
> otherwise, in public; reports denied persons to NICS;[2] and participates in
> reporting persons authorized to carry firearms, concealed or otherwise, in public
> through NLETs.[3]

20 Ill. Admin. Code § 1231.10. Because states with substantially similar firearm laws monitor

the criminal and mental health qualifications information relevant under Illinois law to assure

compliance with their own laws and make that information available through national databases,

Illinois can confirm that nonresidents from those states are qualified to hold an Illinois concealed

---

[2] The National Instant Criminal Background Check System maintained by the Federal Bureau of
Investigation.  20 Ill. Admin. Code § 1231.10.
[3] The National Law Enforcement Telecommunications System.  20 Ill. Admin. Code § 1231.10.

carry license. Although nonresidents from states without similar laws may not hold Illinois concealed carry licenses, they may transport a concealed firearm in their vehicle without a license if they are not prohibited by federal law from possessing a firearm or by their own states' laws from carrying a firearm in public, as evidenced by their possession of a concealed carry license or permit by their own states, if applicable. 430 ILCS 66/40(e).

### 2.     The Carry Act Does Not Violate the Second Amendment.

Second Amendment challenges are governed by a two-pronged approach. *Ezell v. Chicago*, 651 F.3d 684, 701–04 (7th Cir. 2011). First, courts consider the threshold question of "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee," *id.* at 704 (7th Cir. 2011) (citing *United States v. Marzzarella,* 614 F.3d 85, 89 (3d Cir. 2010)), because conduct beyond the scope of the Second Amendment is categorically unprotected. *Id.* at 703. Where, as here, the regulated conduct falls within the scope of the Second Amendment, *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012) (carriage of firearms outside the home for purpose of self-defense is within scope of Second Amendment right to bear arms), "there must be a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Ezell*, 651 F.3d at 703.

For this second inquiry, "the rigor of . . . judicial review will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right." *Ezell*, 651 F.3d at 703. Thus, while "a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end, . . . . laws restricting activity lying closer to the margins of the Second Amendment right, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified." *Id.* at 708. So called "means-end" or

intermediate scrutiny is appropriate where, as here, the burden on Second Amendment rights lies outside of the core of the right. *See Yancey*, 621 F.3d at 683, 685 (applying intermediate scrutiny to categorical prohibition on habitual drug users, even though ban "wildly overinclusive"); *Williams*, 616 F.3d at 692 (applying means-end scrutiny to categorical prohibition on felons); *U.S. v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010) (applying means-end scrutiny to categorical prohibition on domestic violence misdemeanants).

> a. **The residency requirement is subject to intermediate scrutiny because it regulates conduct outside the core of the Second Amendment.**

Plaintiffs incorrectly characterize the residency requirement as flatly banning public carriage (or even possession) of firearms by nonresidents (Doc. 20 at 24–25) and argue the requirement impacts a greater class of individuals than the law-abiding Illinois residents at issue in *Moore v. Madigan*, 702 F.3d 933, but review of the Illinois firearm regulation scheme belies this characterization. Illinois allows nonresidents to carry firearms in public with an Illinois concealed carry license where it can confirm, with the assistance of their states of residence, that they are not disqualified from doing so by conduct or mental illness. *See supra*, Section I.A.1.b. Nonresidents may also carry concealed firearms in their vehicles regardless of their home states' regulatory schemes. 430 ILCS 66/40(e); *Holmes*, 241 Ill. 2d at 521. Thus, the regulated conduct is actually much narrower than claimed— the carriage of firearms outside of a vehicle in public by nonresidents whose qualifications to do so as law-abiding, mentally healthy individuals cannot be confirmed. *See Peterson v. Martinez*, 707 F.3d 1197, 1219 (Lucero, J. concurring separately) ("[a]lthough the residency requirement . . . governs the vast majority of individuals . . . , it burdens a relatively small proportion of individuals present in the state at any time.").

This conduct falls outside the core protection of the second amendment—the "right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635. "[O]utside the home, firearms rights have always been more limited, because public safety

interests often outweigh individual interests in self-defense." *United States v. Masciandaro*, 638 F.3d 458, 470 (4th Cir. 2011). Accordingly, courts have applied intermediate scrutiny to regulation of public carriage. *See Drake v. Filko*, 724 F.3d 426, 430, 430 n.5 (3d Cir. 2013); *Kachalsky v. Westchester*, 701 F.3d 81, 96 (2d Cir. 2012); *Masciandaro*, 638 F.3d at 471.

The regulated conduct is also beyond the core of the Second Amendment because it implicates longstanding prohibitions that are presumptively lawful. *See Heller*, 554 U.S. at 626–27 & n.26; *Williams*, 616 F.3d at 692 (applying intermediate scrutiny to presumptively lawful prohibition against possession of firearms by felons). Here, the regulated conduct lies at the intersection of three presumptively lawful regulations: longstanding prohibitions against possession by the criminally dangerous and mentally ill; public carriage of firearms; and possession by nonresidents. Because the right belongs only to "law-abiding, responsible citizens," *Heller*, 554 U.S. at 626, 627 n.26, 635, the prohibition against nonresidents carrying firearms in public when their mental health and law-abiding qualifications to do so cannot be confirmed must also bear a presumption of lawfulness.

Prohibitions[4] against public carriage and carriage by nonresidents are similarly longstanding. The prohibition against public carriage is rooted in the English right codified by the Second Amendment. *See id.* at 599 (Second Amendment "codified a right inherited from our English ancestors") (internal quotation marks omitted); Patrick J. Charles, *The Faces of the Second Amendment Outside the Home: History Versus Ahistorical Standards of Review*, 60 Clev. St. L. Rev. 1, 7-8 (2012) ("[P]ublic regulation of arms is as old as the Norman Conquest or what eighteenth century commentators referred to as the beginning of the English Constitution."). Chief among such regulations was the 1328 Statute of Northampton, stating that "no person shall 'go nor ride armed by Night nor by Day in Fairs, Markets, nor in the Presence of the Justices or

---

[4] As noted, Illinois merely regulates public carriage based on the ability to confirm qualifications.

other Ministers nor in no Part elsewhere.'" Charles, 60 Clev. St. L. Rev. at 7–8 (quoting Statute

of Northampton, 2 Edw. 3, c. 3 (Eng. 1328)). The statute was not only a prohibition on arms in

the public concourse, but "[i]ts tenets also provided the basis of English legal reform for

centuries to come," *id.* at 13, with three states—Massachusetts, North Carolina, and Virginia—

"expressly incorporat[ing]" the Statue of Northampton "immediately after the adoption of the

Constitution," *id.* at 31–32 (citing 2 The Perpetual Laws, of the Commonwealth of

Massachusetts, from the Establishment of its Constitution to the Second Session of the General

Court, in 1798 259 (Worcester, Isaiah Thomas 1799); Francois-Xavier Martin, A Collection of

Statutes of the Parliament of England in Force in the State of North-Carolina 60-61 (Newbern

1792); A Collection of All Such Acts of the General Assembly of Virginia, of a Public and

Permanent Nature, as are Now in Force 33 (Augustine Davis 1794)). The "legal tenets"

underlying the Statute of Northampton persisted beyond the colonial period, and "[t]hroughout

the nineteenth century numerous States enacted different versions." Charles, 60 Clev. St. L. Rev.

at 40–41.

  The prohibition against carriage of firearms by nonresidents dates back nearly a century.

*See Heller v. Dist. of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011) (noting that "*Heller*[, 554

U.S 570, 626, 627 n.26 (2008),] considered 'prohibitions on the possession of firearms by felons'

to be 'longstanding' although courts did not start to enact them until the early 20th century")

(*citing* C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y

695, 708 (2009)). For example, in 1909, West Virginia conditioned carriage of a pistol, revolver,

"or any other dangerous or deadly weapon of like kind and character" on

> obtain[ing] a state license to carry any such weapon *within any county in this state*
> by publishing a notice in some newspaper published *in the county in which he*
> *resides*, setting forth his name, residence and occupation, and that on a certain day
> he will apply *to the circuit court of his county* for such state license . . . .

Act of Feb. 16, 1909, ch 51, 1909 W. Va. Acts 394, 395-96 (emphasis added). Similarly, a 1919

Montana statute allowed Montana judges to grant "permission to carry or bear concealed or

otherwise a pistol or revolver," provided that "[n]o such permission shall be granted any person

who is not a citizen of the United States, and who has not been an *actual bona fide resident of*

*the State of Montana* for six (6) months immediately next preceding the date of such

application." Act of Mar. 3, 1919, ch. 74, § 5, 1919 Mont. Acts 147, 148 (emphasis added). A

1921 Missouri statute prohibited a person from buying, borrowing, or receiving a "pistol,

revolver or other firearm of a size which may be concealed upon the person, unless the buyer,

borrower, or person receiving such weapon shall first obtain . . . a permit authorizing such person

to acquire such weapon," where

> [s]uch permit shall be issued by the circuit clerk *of the county in which the applicant for a permit resides in this state*, if the sheriff be satisfied that the person applying for the same is of good moral character and of lawful age and that the granting of the same will not endanger to public safety.

Act of Apr. 7, 1921, § 2, 1921 Mo. Laws 692 (emphasis added).

      In sum, because public carriage of firearms by nonresidents in public outside of their

vehicles when their mental health qualifications or criminal history cannot be confirmed is not at

the core of the Second Amendment, the challenged statute is subject to intermediate scrutiny, in

which "the government has the burden of demonstrating that its objective is an important one

and that its objective is advanced by means substantially related to that objective." *Williams*, 616

F.3d at 692. The government has demonstrated that mental health status and criminal history

status are critical to the safety of law enforcement and the public. The regulation at issue is

substantially related to that objective. The motion for preliminary injunction should be denied.

> b.  **The Carry Act is reasonably related to Illinois' substantial interest in preventing unqualified people from publicly carrying loaded firearms.**

Plaintiffs' challenge to the Carry Act fails. The prohibition of firearm carriage outside the vehicle by nonresidents whose qualifications cannot be confirmed is reasonably related to the important governmental interest in "suppressing armed violence" by "keep[ing] guns out of the hands of presumptively risky people[,] . . . . including criminals, . . . mental defectives, armed groups who would supplant duly constituted public authorities, and others whose possession of firearms is similarly contrary to the public interest." *Yancey*, 621 F.3d at 683; *see also Fields*, 2014 IL App (1st) 130209, ¶ 57 ("[p]romoting and ensuring the safety of both the general public and police officers by limiting the accessibility of firearms in public to a less responsible or less mature group of people constitutes a substantial or important interest."); *see also Osterweil v. Bartlett*, 819 F.Supp.2d 72, 88 n.14 (collecting residency requirements of various states) (N.D.N.Y. 2011) *vacated on other grounds,* 738 F.3d 520 (2nd Cir. 2013). Limiting the right to carry a firearm in public to people whose qualifications can be confirmed is certainly reasonably related to Illinois' interest in preventing unqualified people from carrying firearms in public. *See Yancey*, 621 F.3d at 684–85 (right to bear arms tied to concept of virtuous citizenry and unvirtuous may be disarmed).

Plaintiffs argue "there are ways short of a ban to ensure that only qualified non-residents obtain an Illinois CCL," but fail to offer a single practicable solution. For example, Plaintiffs assert nonresidents are no less competent or untrustworthy than residents and that if a nonresident is not qualified, the remedy is denial of a license. (Pls.' Br. 27.) However, this statement eludes the issue. The "peculiar evil" at stake is not that an individual nonresident is presumed to be less safe than a resident, but rather that nonresidents from dissimilar states, as a class, are substantially immune from the fundamental inquiries necessary to establish the requisite qualifications in the first place. (*See generally* Ex. 1.)

Nonetheless, even if there were more "narrow" ways to ensure a nonresident's qualifications, regulation of conduct beyond the core of the Second Amendment, as here, need be only substantially related to the government interest. *Williams*, 616 F.3d at 692. This "means-end" inquiry merely requires "a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served." *Ezell*, 651 F.3d at 708.[5] Here, the fit is reasonable, allowing nonresidents whose qualifications can be confirmed with their states of residency to carry firearms in public with a valid Illinois concealed carry license and allowing nonresidents whose qualifications cannot be confirmed to carry concealed firearms in their vehicles without one. 430 ILCS 66/40(e); *cf. Holmes*, 241 Ill. 2d at 521.

Further, restricting public carriage to residents and nonresidents whose qualifications can be confirmed *is* the least restrictive means necessary. There is no way for Illinois to ensure that nonresidents from states without similar firearm laws are qualified to publicly carry firearms without endangering Illinois' citizens. Information on disqualifying out-of-state mental health conditions, arrests, and prosecutions is not reliably available through national databases. (Ex. 1 at ¶¶ 9–25.) Out-of-state mental health providers and law enforcement officials are under no obligation to notify Illinois should they discover a nonresident's disqualifying condition (so that an undeserved license can be revoked) and do they have the knowledge of Illinois law necessary to identify such a condition. (Ex. 1 at ¶¶ 16–25.) Plaintiffs insist they and their members are law-abiding, responsible citizens, but because they are nonresidents from states without similar firearm regulations and reporting methods, Illinois is unable to confirm these assurances of responsibility. Indeed, some of the individual plaintiffs hail from Colorado or Pennsylvania, two states that did not even respond to Illinois' surveys. Illinois cannot effectively evaluate and

---

[5] Thus, the fact that Illinois' current administration has proposed new rules that rebalance the interests of public safety and the individual in favor of a less comprehensive monitoring scheme for nonresidents does not render the current rules unconstitutional.

monitor the qualifications of citizens of states who will not even respond to requests for basic

information.

Plaintiffs' request for a preliminary injunction barring enforcement of the residency

requirement essentially requires Illinois to simply give unknown numbers of nonresidents the

benefit of the doubt, responding only *after* violence is committed. Plaintiffs ask for nonresidents

to be treated *more* favorably than residents, in that nonresidents from dissimilar states are

functionally immune to many of the same regulations and monitoring mechanisms applicable to

residents.[6] The Second Amendment does not require public safety to be sacrificed in favor of a

"wait and see" approach, nor does the Second Amendment require nonresidents to be treated

more favorably than residents. Illinois is entitled to insist on meaningful assurances that residents

and nonresidents alike are qualified to publicly carry loaded firearms.

> **B.      Illinois' restriction on public carriage of firearms by nonresidents whose
> qualifications cannot be confirmed and monitored does not violate the
> Privileges and Immunities Clause of Article IV, Section 2.**

Plaintiffs offer no authority, and Defendants have found none, establishing the right to

bear arms is a "privilege" under the Privileges and Immunities Clause of Article IV. Rather,

"[m]any, if not most [Supreme Court] cases expounding the Privileges and Immunities Clause

have dealt with th[e] basic and essential activity" of pursuing "a common calling." *United Bldg.*

*& Constr. Trades Counsel of Camden County & Vicinity v. Mayor & Counsel of Camden*, 465

U.S. 208, 219 (1984); *see also Conn. ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 95 (2d Cir. 2003)

(collecting cases). Only those activities that are "sufficiently basic to the livelihood of the Nation

. . . fall within the purview of the Privileges and Immunities Clause . . . ." *Supreme Court of*

*Virginia v. Friedman*, 487 U.S. 59, 64 (internal quotation marks omitted). Equal treatment is

required "[o]nly with respect to those "privileges" and "immunities" bearing on the vitality of the

---

[6] Plaintiffs do not challenge the requirements of the FOID Card Act or the Carry Act unrelated to residency, and therefore concede that those requirements may be constitutionally applied.

Nation as a single entity." *Id.* Given the extensive history of regulation of public carriage and public carriage by nonresidents, the right to bear arms cannot be sufficiently basic to the livelihood of the Nation nor can it bear on the vitality of the Nation as a single entity so as to come within the Clause.

Even if the right to bear arms were a "privilege" under Article IV, Illinois' restrictions on public carriage by nonresidents from states without similar firearm laws would not violate Article IV. When a protected privilege or immunity is implicated by a discriminatory law, the State may defend the discrimination by showing that "(i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective." *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 284 (1985)); *Crotty*, 346 F.3d at 94. The availability of less restrictive means is relevant to the consideration of whether the challenged discrimination is adequately related to the State's objective. *Sestric v. Clark*, 765 F.2d 655, 658 (7th Cir. 1985).

The restriction at issue clearly satisfies this burden. The restriction on nonresidents holding Illinois concealed carry licenses is grounded in Illinois' inability to confirm and monitor their qualifications for their licenses—that is, the unavailability of adequate assurances that nonresidents would not endanger the public were they armed. *See supra*, Section I.A.1.b; I.A.2.b. Preventing public carriage by potentially dangerous nonresidents whose qualifications cannot be confirmed is a substantial reason to restrict nonresidents' carriage rights. *Cf. W.C.M. Window Co. v. Bernardi*, 730 F.2d 486, 497 (7th Cir. 1984) (state could "keep out nonresidents who had been exposed to some communicable disease of which the state was still substantially free" on ground that they constitute "a peculiar source of evil").

Illinois' "monitoring interest is, in essence, an interest in continually obtaining relevant behavioral information," and Illinois has "just as much of an interest, for example, in discovering signs of mental instability demonstrated [out of state] as in discovering that instability [in state]."

*Bach v. Pataki*, 408 F.3d 75, 91 (2d Cir. 2005) *overruled on other grounds*, *McDonald*, 561 U.S. at 748. Reporting obligations placed upon Illinois mental health professionals and law enforcement officials ensure that disqualifying conditions which arise in Illinois can be identified and acted upon, but there are no similar mechanisms available outside of Illinois if a nonresident's own state does not monitor such conditions for its own purposes. Accordingly, in considering the constitutionality of New York's restrictions on firearm licenses to nonresidents, the Second Circuit in *Bach* found it "self-evident" that "other States . . . cannot adequately play the part of monitor for the State of New York or provide it with a stream of behavioral information approximating what New York would gather." *Id.*; *see also Peterson v. Martinez*, 707 F.3d 1197, 1220–24 (10th Cir. 2013) (Lucero, J., separately concurring) (concluding residency requirement for concealed carry license did not violate Second Amendment or privileges and immunities clause under intermediate scrutiny because requirement is substantially related to important government interest in assessing qualifications); *Peterson v. LaCabe*, 783 F. Supp. 2d 1167, 1175 (D. Colo. 2011) (residency requirement sufficiently related under Article IV to "substantial interest in restricting permits to those persons whose [qualification] information is more readily available" because State showed that "it is much more difficult and expensive to obtain information pertinent to an applicant's eligibility for a concealed handgun permit from out-of-state sources"). Other states have little incentive to gather and make available to Illinois information that has no independent relevance to those states, *see Bach*, 408 F.3d at 92–93; "Motivation is incentive driven—without these incentives, there is little reason to expect effective monitoring, if any." *Id.* at 93.

For this reason, the restriction on issuing Illinois concealed carry licenses to nonresidents from states that will not monitor those nonresidents' qualifications bears a substantial relationship to Illinois' objective of protecting the public by preventing unqualified people from

holding licenses to carry firearms in public. Therefore, Plaintiffs' Privileges and Immunities
claim fails.

> **C.      The Residency Requirement Does Not Violate the Equal Protection Clause of
> the Fourteenth Amendment Because It Is Rationally Related to Illinois'
> Legitimate Interest in Protecting the Public.**

Plaintiffs argue the Carry Act unconstitutionally discriminates between resident and
nonresident applicants for Illinois concealed carry licenses, thereby restricting the Second
Amendment rights of similarly situated nonresident applicants. Plaintiffs' challenge fails,
however, because restrictions on firearm possession and carriage by nonresidents whose
qualifications cannot be confirmed is rationally related to Illinois' legitimate interest in
protecting the public from the readily apparent dangers of firearms in the hands of the
unqualified.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State
shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is
essentially a direction that all persons similarly situated should be treated alike." *City of
Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiffs' claim fails at this initial
threshold because nonresidents from states without substantially similar firearm laws are not
similarly situated to Illinois residents or to nonresidents from states with substantially similar
firearm laws because their qualifications to possess an Illinois concealed carry license cannot be
confirmed or monitored. *See Bach*, 408 F.3d at 91-94; *Peterson v. LaCabe*, 783 F. Supp. 2d at
1175. Indeed, it is precisely because Plaintiffs are not "within [Illinois'] jurisdiction" for
purposes of the background checks and monitoring functions vital to ensuring safe, responsible
gun use that Plaintiffs are not similarly situated. *See Plyler v. Doe*, 457 U.S. 202, 210 (1982)
("Use of the phrase 'within its jurisdiction' . . . confirms[] the understanding that the protection
of the Fourteenth Amendment extends to anyone, citizen or stranger, who *is* subject to the laws
of a State . . . . *[U]ntil he leaves the jurisdiction* . . . he is entitled to the equal protection of the

laws that a State may choose to establish." (second emphasis added). When nonresidents depart Illinois for their home states, they leave Illinois' jurisdiction and thereby immunize themselves from the reach of Illinois' monitoring interests unless those states monitor similar information and make that information available to Illinois. Thus, Plaintiffs are *not* "subject to the laws of [Illinois]" in the crucial reference frame—Illinois' monitoring and reporting requirements—and therefore are not similarly situated.

But even if Plaintiffs' claim survived this initial inquiry, it would fail to clear the next hurdle, because the challenged statutes readily pass scrutiny under the rational basis test. If a statutory classification does not impermissibly interfere with a fundamental constitutional right and is not based on a "suspect" class, courts apply the rational basis test. *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 313 (1976); *Sweeney v. Pence*,767 F.3d 654, 668 (7th Cir. 2014).[7] Here, the restrictions on nonresidents from dissimilar states do not violate their Second Amendment rights, *see supra* Section I.A.2.b, nor do Plaintiffs constitute a suspect class. *See Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 211–12 (5th Cir. 2012) (applying rational basis to equal protection challenge to age-based firearm restriction where persons under 21 had no fundamental right under second amendment and age was not a suspect classification); *Mosley*, 2015 IL 115872, ¶ 41 (equal protection challenge to firearm regulation subject to rational basis test where regulation did not burden core of Second Amendment right or discriminate against suspect class). Therefore, defendant's claim

---

[7] Plaintiffs' reliance on the dicta in *Sklar v. Byrne*, 727 F.2d 633 (7th Cir. 1984) is misplaced. There, the court merely restated the general rule, but did not find a fundamental right at issue or apply strict scrutiny. Plaintiffs must demonstrate *impermissible* interference with a fundamental constitutional right to trigger heightened scrutiny of the classification. *Murgia*, 427 U.S. at 313. Plaintiffs are not entitled to a greater level of scrutiny under an equal protection claim than is applicable to their asserted fundamental right. *See NRA*, 700 F.3d at 211–12. Because their Second Amendment claim fails, their equal protection claim is subject to rational basis scrutiny.

is subject to rational basis review, under which the statute is upheld if it "bears a reasonable

relation to any proper legislative purpose." *Sweeney*, 767 F.3d at 670.[8]

Illinois' residency requirement withstands this highly deferential scrutiny. *See Mathews

v. De Castro*, 429 U.S. 181, 185 (1976) (under rational basis test, challenged statutes warrant "a

strong presumption of constitutionality"). Prohibiting nonresidents from holding Illinois

concealed carry licenses when their qualifications to do so cannot be confirmed is a reasonable

way to promote the legitimate interest in preventing violence and injury from firearms possessed

by those unqualified to carry them. *See supra* Section I.A.2.b. That some nonresidents otherwise

qualified to possess an Illinois concealed carry license cannot obtain one because their

qualifications cannot be confirmed or monitored does not render the prohibition unreasonable.

The Equal Protection Clause "must coexist with the practical necessity that most legislation

classifies for one purpose or another, with resulting disadvantage to various groups or persons."

*Romer v. Evans,* 517 U.S. 620, 631 (1996). Here, the classifications are reasonably drawn to

coincide with Illinois' inability to confirm and monitor the qualifications of nonresidents from

certain states to carry a firearm without endangering the public. Therefore, Plaintiffs' equal

protection claim fails.

### D.    The Residency Requirement Does Not Violate the Due Process Clause.

Plaintiffs' Due Process Claim fails for the same reasons their claim under the Second

Amendment fails. Indeed, the Due Process analysis is subsumed in the Second Amendment

analysis. *See Williams v. Ind. State Police Dep't*, --- F.3d ----, 2015 WL 4772639 at *1 (7th Cir.

---

[8] Plaintiffs' cases offer no support for heightened scrutiny. In *Williams v. Vermont*, 472 U.S. 14, 23–24 (1985), the challenger was a resident and the Court invalidated the statute under rational basis. In *Metro. Life Ins. Co. v. Ward*, 470 U.S. 869 (1985), the Court found no legitimate state interest. In *Minton v. St. Bernard Parish Sch. Bd*., 803 F.2d 129, 133 (5th Cir. 1986), the state offered no rationale for its classification. In *Obergefell v. Hodges*, 135 S. Ct. 2584, 2606–07 (2015), the Court did not specify the level of scrutiny applied, but found the state failed to establish any foundation for the harm claimed and described the state's arguments as counterintuitive and illogical.

2015) (where constitutional amendment addresses conduct at issue, "that amendment rather than generalized notions of substantive due process guides such claims."); *McCann v. Mangialardi,* 337 F.3d 787 (7th Cir. 2003). Plaintiffs' claim of procedural due process fails because Plaintiffs cannot establish a Second Amendment right to public carriage by nonresidents whose qualifications to do so cannot be confirmed. Thus, Plaintiffs cannot establish a deprivation of life, liberty, or property to ground their Due Process claim.

## II.   Plaintiffs Have Failed to Establish Irreparable Harm in the Absence of Injunctive Relief.

Although the Seventh Circuit has suggested that violations of Second Amendment rights, like First Amendment rights, are presumed to cause irreparable harm, it did so in the context of Chicago's firing-range ban, which, coupled with Chicago's training requirement, implicated a ban on the core right to possess firearms in the home for self-protection. *Ezell*, 651 F.3d at 699. Thus, if the plaintiffs in that case were correct, the ban "violate[d] their Second Amendment rights every day it remain[ed] on the books." *Id.* at 698. But here, Plaintiffs cannot demonstrate any infringement of their right to defend the "hearth and home" (because Plaintiffs live in other states and because the Carry Act concerns only public carriage) and have failed to demonstrate any continuing violation that would constitute irreparable harm. This is because although Plaintiffs generally state that they travel or visit Illinois anywhere from "occasionally" (Doc. 18-1) to "half of [their] time" (Doc 19-1), no facts are presented indicating that any plaintiff intends to exercise his or her alleged constitutional right to carriage in Illinois at any time prior to this Court's final adjudication on the merits. Similarly, no facts are presented demonstrating that Plaintiffs would not be able to exercise that alleged right, but for the residency requirement, during any hypothetical presence in Illinois. To illustrate, a few Plaintiffs state that they work in Illinois, but do not indicate whether firearms are permitted at their places of work. A few Plaintiffs also state they traverse Illinois on various highways, but carriage inside the vehicle is

permitted under the Carry Act. Further, no showing of injury is made as to any plaintiff organization or any unidentified member thereof. Without any specific information as to where, when, and how Plaintiffs expect to carry in Illinois, Plaintiffs have failed to establish that they will suffer irreparable harm in the absence of preliminary injunctive relief.

Additionally, Plaintiffs seek by their motion the mere ability to apply for a license. Whether Plaintiffs will, in fact, be found qualified to possess a license is entirely speculative. If Plaintiffs are not qualified, there is no harm, irreparable or not. Plaintiffs have therefore not met their burden of demonstrating irreparable harm.

## III.    The Balance of the Equities Weighs in Favor of Denying Injunctive Relief

In considering a motion for preliminary injunction, the Court should pay particular attention to "the public consequences in employing the extraordinary remedy of injunction." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). The Court's "aim is to minimize the costs of a wrong decision." *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "A preliminary injunction is an extraordinary remedy intended to preserve the status quo until the merits of a case may be resolved." *Ind. Civil Liberties Union v. O'Bannon,* 259 F.3d 766, 770 (7th Cir. 2001); *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 783 (7th Cir. 2011); *but see Chicago United Industries, Ltd. v. City of Chicago*, 445 F.3d 940, 943–44 (7th Cir. 2006) (status quo not always dispositive).

In *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012), the Seventh Circuit declared unconstitutional Illinois' previous restrictions on most forms of public carriage, but stayed its mandate for 180 days to permit the General Assembly time to craft new firearm regulations. The General Assembly enacted the current regulatory scheme the same day that the mandate issued in *Moore*. The new laws permitted 270 additional days for implementation, during which the former restrictions remained in effect. *Shepard v. Madigan*, 734 F.3d 748, 750 (7th Cir. 2013). Upon remand from *Moore*, the plaintiffs in one of the cases objected to this additional 270-day

delay. In upholding dismissal of the case as moot, the Seventh Circuit recognized the

complexities of firearm regulation and cautioned against granting instantaneous relief,

characterizing the plaintiffs' request for an injunction as "unreasonable." *Id.* at 750–51.

> It should have been obvious that transition to a new regime of gun rights would
> require considered, complex state action, and therefore could not be
> instantaneous. The plaintiffs don't argue that a new law *could* be implemented
> within 270 days. In their reply brief they say that "Illinois can take as long as it
> wants to implement its new concealed carry law; it just cannot continue to enforce
> its unconstitutional carry ban in the meantime" . . . . That is an untenable
> insistence on "first day" relief.

*Id.* (dicta).

Here, Plaintiffs seek instantaneous relief in the form of a broad injunction barring

enforcement of the residency requirements, thereby permitting any and all nonresidents to apply

for concealed carry licenses while leaving Illinois without the means to effectively assess the

qualifications of nonresidents. However, the goal of preserving the status quo warrants denial of

Plaintiffs' motion in favor of preserving the current firearm scheme pending a full adjudication

on the merits. The risk to the public of an erroneous decision involving firearms is self-evident

and greatly outweighs the speculative harm to Plaintiffs while this case proceeds. *Moore* and

*Shepard* suggest that because of the strong interest in public safety peculiar to Second

Amendment cases, the better course, even following a *final* adjudication of unconstitutionality, is

to preserve the status quo of enforcement while allowing the State time to craft new regulations

correcting the unconstitutional infirmity while preserving the public safety interest. Plaintiffs'

insistence on "first day," final and complete relief at this preliminary stage is "unreasonable" and

should be denied.

Even if Plaintiffs are entitled to injunctive relief at this stage, their request for relief is

overly broad. As noted above, the individual Plaintiffs have not made a convincing showing that

irreparable harm is likely to occur prior to this Court's final adjudication on the merits. Further,

there is *no* showing of harm whatsoever regarding the unnamed members of the plaintiff

organizations. "An injunction should be narrowly tailored to serve equity's interest." *Burlington*

*N. R.R. v. United Transp. Union*, 862 F.2d 1266, 1280 (7th Cir. 1988). Even if a preliminary

injunction were warranted, the Court should order no more than that ISP permit the named

plaintiffs who have expressed a desire to apply to do so notwithstanding the residency

requirements.

## CONCLUSION

In *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010), the Court noted that although

the Second Amendment applies to the states, "[s]tate and local experimentation with reasonable

firearms regulations will continue under the Second Amendment." (alteration in original). Such

experimentation can only work, however, if the states are permitted to insist that their regulations

be satisfied by residents and nonresidents alike. Plaintiffs would foreclose experimentation,

however, in favor of a race to the bottom, whereby each state would be constitutionally required

to permit public carriage of firearms according to the customs of the states with the least

restrictive laws, to the disadvantage of that state's own citizens. The Constitution does not

require adherence to a uniform scheme of least regulation.

Plaintiffs' motion should be denied for failure to establish a likelihood of success or

irreparable harm in the absence of relief and because the balance of the equities strongly favors

denial.

WHEREFORE, Defendants request this honorable Court deny Plaintiffs' motion.

Respectfully submitted,

THE DEFENDANTS,

Joshua D. Ratz, # 6293615
Assistant Attorney General          LISA MADIGAN, Attorney General, State of
500 South Second Street             Illinois
Springfield, IL 62706
Phone: (217) 557-0261               By: s/ Joshua D. Ratz
Fax: (217) 524-5091                      Joshua D. Ratz, # 6293615
E-Mail: jratz@atg.state.il.us            Assistant Attorney General

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KEVIN W. CULP, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.: 14-3320 |
| | ) | |
| LISA MADIGAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2015 the foregoing Objection to Plaintiffs' Motion for Preliminary Injunction was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing(s) to the following:

David G. Sigale          dsigale@sigalelaw.com

Respectfully submitted,

s/ Joshua D. Ratz
Joshua D. Ratz, Bar Number 6293615
Assistant Attorney General
500 South Second Street
Springfield, IL 62706
Phone: (217) 557-0261
Fax: (217) 524-5091
E-Mail: jratz@atg.state.il.us

| STATE OF ILLINOIS | ) | Culp v. Madigan, 14-3320 |
| | ) | |
| COUNTY OF SANGAMON | ) | USDC-CDIL |

## **AFFIDAVIT**

I, JESSICA TRAME, upon oath, depose and state that I have personal knowledge of the statements contained in this Affidavit; I understand the contents of this affidavit to be true and correct; I am competent to testify; and if called to testify, I would testify as follows:

1.      I am employed as the Bureau Chief of the Firearms Services Bureau (FSB or Bureau) of the Illinois State Police (ISP) and have served in that capacity since February 2012.

2.      In my capacity as Bureau Chief, I am responsible for administering the Firearm Owner's Identification (FOID) Program, the Firearms Transfer Inquiry Program, and the Concealed Carry Licensing (CCL) Program, and I am familiar with the protocols and procedures of each program.

3.      To qualify for a CCL, an Illinois resident must be eligible for and currently have a valid FOID Card.  A non-resident does not need a valid FOID card to qualify for a CCL, but the Bureau is responsible for ensuring that a non-resident CCL applicant would meet the eligibility criteria to obtain a FOID card if he or she was an Illinois resident.  The goal is to ensure that residents and non-residents are subject to the same substantive requirements to qualify for a CCL.

## **CCL Application Processing**

4.      In processing CCL applications, the Bureau performs an extensive background check on each applicant, as required by the FOID Card Act and Firearm Concealed Carry Act.

5.      The first phase of the process is a quality check of the application to ensure the application is complete and not missing any required information. This step also includes verification of identity.

6.      If there are no errors and the name, address, and other personal identifying information is validated, the application is moved to the eligibility determination phase. A background check is performed, including queries of national systems such as the National Crime Information Center (NCIC), National Instant Criminal Background Check System (NICS), Interstate Identification Index (III), Immigration and Customs Enforcement (ICE), the National Law Enforcement Telecommunications System (NLETS), and Illinois systems, including the Criminal History Record Information (CHRI) System, driver's license or identification systems maintained by the Secretary of State (SOS) and the Computerized Hot Files system, a central online repository for numerous officer and public safety information repositories, maintained by ISP.

Exhibit 1   185

7.      In addition to the processes described above, the applicant's information is made available to Illinois law enforcement agencies, which may submit an objection to a CCL applicant based upon a reasonable suspicion that the applicant is a danger to himself, herself, or others, or is a threat to public safety. If a law enforcement objection is received, the CCL application is referred to the Concealed Carry Licensing Review Board, which reviews information submitted by the objecting law enforcement agency and the applicant.  If the Board determines by a preponderance of the evidence that the applicant poses a danger to himself , herself, or others, or is a threat to public safety, then the Board affirms the objection of the law enforcement agency and notifies the Bureau that the applicant is ineligible for a license.

8.      These various background check processes are intended to ensure public safety by identifying persons who are unqualified to carry firearms as responsible citizens.

**Difficulties Verifying Non-Resident Applicants' Identities**

9.      As discussed above, the Bureau must verify a CCL applicant's identity while processing the application. For Illinois residents, an applicant's identity is verified through use of the Illinois Secretary of State's (SOS) driver's license or state ID systems to cross-reference the applicant's name, address, photo, and signature.

10.      ISP does not have direct access to other states' driver's license, state ID or similar databases.  To verify a non-resident's identity, the Bureau must rely on NLETS to check the validity of an out of state driver's license, including personal identifiers of the individual and address. Currently, ISP is not able to receive identifying photographs or signatures from NLETS, but has contracted for development of a system that will allow ISP to access this information from NLETS. Arizona, California, Colorado, Kansas, New York, New Hampshire, Oklahoma, South Carolina, and the District of Columbia do not currently make images available to NLETS, however.

**Difficulties Verifying Non-Resident Criminal History**

11.      The Bureau must verify that a CCL applicant's criminal history does not render the applicant ineligible for a CCL.  For Illinois residents, the Bureau is able to locate criminal history through Illinois' Criminal History Record Inquiry, a system maintained by ISP, from the Computerized Hot Files, and from federal systems.

12.      The Firearm Services Bureau does not have direct access to other states' local or state criminal history databases, so the Bureau relies on federal databases to obtain criminal history information.  Many states provide the federal databases with only a summary of an arrest, which will often be inadequate to assess the applicant's eligibility for a CCL. If a criminal record from the federal database is incomplete, ISP may request a record from the States' Identification Bureau or from the local jurisdiction, but many jurisdictions, including Los Angeles County, California; Milwaukee County, Wisconsin; and, Jackson County, Mississippi, charge for records,

Exhibit 1   186

and ISP does not have funds appropriated to pay for the record. As an example, attached hereto as Affidavit Exhibit A is a printout from the III dated August 17, 2015, redacted for identifying information, of an individual arrested in Mississippi in 2005 and charged with looting, a felony. The information does not disclose the disposition of the charge, however. After requesting criminal history information from Mississippi, ISP received a facsimile transmission, attached hereto as Affidavit Exhibit B, refusing ISP's request for lack of fees. Per the Jackson County Circuit Clerk, Pascagoula, MS, a search of the two criminal courts in Jackson County for the ten-year period (the applicant was arrested in 2005) requires a fee of $20.00. To obtain information from the two civil courts, an additional $20.00 is required. If ISP needed to search information for a twenty-year period in all four courts, a fee of $80.00 is required. This also assumes, of course, that the only relevant information regarding the applicant exists in Jackson County, MS and not other jurisdictions in the state.

13.     ISP uses NLETS to determine if the nonresident applicant's state-issued CCL is valid and to check the continued validity of the home-state-issued CCL every 90 days. NCIC is the mechanism criminal justice agencies use to access over 13 million active records. The NCIC database consists of 21 files, including 14 "persons" files including the National Sex Offender Registry, Foreign Fugitives, Immigration Violations, Mission Persons, Orders of Protection, and Wanted Persons.  ISP accesses the NICS Index and the III through the NCIC network. The III is the national criminal history record system. When someone purchases a firearm, NICS verifies the validity of the Federal Firearms Licensed dealer and checks the NICS Index or "denied persons" files for persons prohibited from possessing firearms. All CCL applicants are also checked against the NICS Index.

14.     The criminal history information available in federal databases may also be insufficient to determine a non-resident's criminal history because states are not uniform in their reporting of different levels and types of offenses. ISP is unable to obtain accurate and updated information via NLETS and NCIC for those states that do not fully participate in the systems.

15.     The information available from the III, a federal criminal history database, also can be very limited. States are not uniform in their reporting of different levels and types of offenses. Only the National Fingerprint File (NFF) provides detailed extracts directly from states' local databases, and as of August 2015, only nineteen states participate as in the NFF. Those states are: Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Maryland, Minnesota, Missouri, Montana, North Carolina, New Jersey, Ohio, Oklahoma, Oregon, Tennessee, West Virginia, and Wyoming.

## Difficulties Verifying Non-Resident Mental Health Information

16.     Pursuant to the FOID Act and Firearm Concealed Carry Act, an applicant is not eligible for an Illinois CCL if the applicant has been involuntarily admitted into a mental health facility, adjudicated mentally disabled or has been a patient in a mental health facility within the

past five years, regardless of the applicant's state of residence. If an applicant has been a patient in a mental health facility more than 5 years ago, a Mental Health Certification must be provided at the time of the application.

17.     Through the Illinois Department of Human Services ("DHS") FOID Mental Health System, the Bureau can readily access information on Illinois mental health facility admissions and determine whether an individual has been involuntarily admitted into a mental health facility in Illinois or has been a patient in a mental health facility in Illinois within the past five years or more.

18.     The DHS FOID Mental Health System contains no records of out-of-state mental health facility admissions. Further, ISP does not have access to other states' mental health facility admissions databases, if any exist.

19.     In my experience as the Bureau Chief of the FSB, I am aware that the federal databases do not contain the voluntary mental health admission information necessary to determine whether an applicant was a patient in a mental health facility. Also, information concerning involuntary mental health admissions or mental disability adjudications is limited.

20.     To search for mental health prohibitors for nonresidents, ISP is limited to information available through the NICS Index, but not all states participate. NICS contains information from participating states regarding individuals prohibited from firearm possession for mental health reasons under 18 U.S.C. § 922(g)(4), but does not provide any information on voluntary mental health admissions.

**Difficulties Obtaining Updated Non-Resident Information to Revoke a CCL**

21.     On a daily basis, all resident CCL holders are checked against the Illinois CHRI and DHS Mental Health Systems (by virtue of their FOID Card) for any new prohibitors (conditions that would disqualify a person from holding a FOID Card or CCL). All CCL holders, resident and nonresident, are checked against the federal databases on a quarterly basis.

22.     Illinois Physicians or qualified examiners, Illinois Law Enforcement Officials, and Illinois School Administrators are required by law to report persons that may be a clear and present danger to themselves or others. Even if out-of-state personnel have reporting requirements in their own states, the ISP does not receive reports from out-of-state physicians, qualified examiners, law enforcement officials, or school administrators concerning out-of-state persons presenting a clear and present danger. Similarly, daily checks of the DHS Mental Health Systems do not reveal information concerning persons treated in other states.

23.     Illinois Circuit Clerks are required by statute to report to ISP persons who have been adjudicated as mentally disabled or persons who have had a finding for an involuntary

Exhibit 1   188

admittance to a mental health facility. I am aware of no other state that is required to, or does, report such cases to the ISP.

24.     DHS must report to the ISP all information collected pertaining to mental health treatment admissions, either voluntary or involuntary, as well as reports of patients deemed to be a clear and present danger. The purpose of this reporting is to determine if the patient is disqualified under state or federal law from possessing firearms. Out-of-state mental health facilities are not required by their states to report admissions or persons presenting a clear and present danger to DHS or to the ISP, and do not do so unless ISP makes a request for that information. Many out-of-state mental health entities do not provide this information even after an ISP request.

25.     Access to the types of information described in the Illinois databases allows the Bureau to thoroughly screen for and actively monitor various issues that may be a basis to deny or revoke a FOID or CCL card. ISP's lack of access to this type of data held by other states would make it virtually impossible to effectively conduct this same level of screening and monitoring for nonresident CCL applicants.

**Substantially Similar Surveys**

26.     In 2013, ISP sent surveys to each of the 49 other states and to the District of Columbia requesting information regarding their regulation of firearms use and reporting and tracking mechanisms relative to criminal activity and mental health issues.  In 2014, ISP sent a second survey to those states that did not respond to the first survey.

27.     True and correct copies of the various states' responses and the response of the District of Columbia received by the ISP are attached hereto as Affidavit Exhibit C. Based on the states' responses to the survey, ISP created a summary, a true and correct copy of which is attached hereto as Affidavit Exhibit D. As noted in the summary, Colorado, Maine, Maryland, Massachusetts, Nevada, Pennsylvania, and Rhode Island did not respond to the ISP's request for information.

28.     Of those states responding, only Hawaii, New Mexico, South Carolina, and Virginia had laws, similar to Illinois, regulating who may carry firearms in public, reported persons authorized to carry through the NLETS, reported denied persons through the NICS, prohibited persons voluntarily admitted to a mental health facility in the last five years from possessing or using firearms, AND prohibited persons involuntarily admitted to mental health facilities from possessing or using firearms.

29.     For example, Indiana, Iowa, Missouri, and Wisconsin responded that they did not prohibit use or possession of firearms based on voluntary admissions to mental health facilities in the last five years and did not have a mechanism of tracking that information for its residents.

Exhibit 1   189

*See* Affidavit Exhibit C. Iowa and Missouri also reported that they do not participate in reporting concealed carry licenses via NLETS. *See id.*

30.     The Bureau would not have the time or resources to properly research the necessary information for nonresident applicants if all such applicants could apply for a CCL. The Firearm Concealed Carry Act requires ISP to either approve or deny an application within as few as 90 days from the date received, subject to certain exceptions. To process the applications to this standard, it is likely the out-of-state applicants would not be held to the same standards set forth in the FOID Card Act or Firearm Concealed Carry Act as Illinois residents are held. Applications would have to be approved without a complete and thorough background check. Further, applicants residing in states that lack reporting and eligibility requirements similar to Illinois and who are issued licenses under the Firearm Concealed Carry Act cannot be held to the same monitoring standards necessary to ensure continued eligibility due to the lack of, and inability to obtain—either at all or in a timely manner—, information concerning those nonresidents.

**FURTHER AFFIANT SAYETH NOT.**

Subscribed and sworn to before me                              s/Jessica Trame

this ___3¹ˢᵗ___ day of August, 2015.      JESSICA TRAME

                    s/Tammy L. Miner

Notary Public

OFFICIAL SEAL
TAMMY L. MINER
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXPIRES 07-30-2016

6 of 6

Exhibit 1   190

```
AM.ILLEADS00.CCW5.*0001403511...CQR.
SRC/CQR
IDX/1015228557

EL01FA9  MRI0066384
IL08486G8
THIS INTERSTATE IDENTIFICATION INDEX RESPONSE IS THE RESULT OF YOUR
RECORD REQUEST FOR FBI/772445KC2. THE FOLLOWING WILL RESPOND TO YOUR
AGENCY:
 MISSISSIPPI    - STATE ID/MS0475395X
END

AM.ILLEADS00.CCW5.*0001403511...CQR.
SRC/CQR
IDX/1015228557
FA9  10.13.27 08/17/15 MSIII0000
IL08486G8
HDR/2L01FA9  MRI0066384
ATN/IL,CCW
********************* CRIMINAL HISTORY RECORD  ***********************
Data As Of                 2015-08-17
***************************  Introduction  **************************
This rap sheet was produced in response to the following request:
State Id Number            MS0475395X (MS)
Request Id                 MRI0010833
Purpose Code               C
Attention                  IL,CCW
The information in this rap sheet is subject to the following caveats:
This record contains information contained in the criminal history file
of Mississippi Department of Public Safety on the date it was prepared;
if information is needed later, a new inquiry should be made. This
information is based on fingerprint identification. (MS)
If the request for this information did not include fingerprints, this
record may not describe the subject of the inquiry. (MS)
There may be further information concerning this subject in local
files. (MS)
Use of this information is subject to state and federal law and is
limited to the purpose stated in the inquiry. Misuse is subject to
criminal and civil penalty. (MS)
Offenses are marked as felonies, misdemeanors or violations in
accordance with Mississippi law. (MS)
Mississippi reports any data related to its Mississippi Sex Offender
Registry in the  Notice  field. (MS)
************************  IDENTIFICATION  ***************************
Subject Name(s)
███████████████
Subject Description
FBI Number                 State Id Number
772445KC2                  MS0475395X (MS)
Social Security Number
████████
Sex                        Race
Female                     White
Height                     Weight                Date of Birth
5`04                       137                   1981-████
Hair Color                 Eye Color             Fingerprint Pattern
Brown                      Brown                 UCUCUCUCUCWUUCWUWULS (IAFIS)
```

AFFIDAVIT EXHIBIT A                                              191

```
Place of Birth          Citizenship
Mississippi             United States
Residence
Residence as of         2005-12-04
                        ████████, PASCAGOULA MS
Palmprint Images
(No Palmprint Image Transmitted  )
Photo Images
Available Image         Mugshot
Capture Date                2005-12-04
(No Photo Image Transmitted  )
Caution Information
Notice                  No Sex Offender data.
************************  CRIMINAL HISTORY  ************************
============================== Cycle 001 ==============================
Tracking Number         9035039793
Earliest Event Date     2005-12-04 Incident Date          2005-12-04
----------------------------------------------------------------------
Arrest Date             2005-12-04
Arrest Case Number      2005120032
Arresting Agency        MS0300300 PASCAGOULA PD
Arrest Type             Adult
Charge                  1
        Charge Literal  Looting
     Charge Description  Offense date 2005-12-04
               Statute  Looting (97-17-65 MS)
                Counts  1
              Severity  Felony
************************  INDEX OF AGENCIES  ************************
Agency                  PASCAGOULA PD; MS0300300;
Agency Telephone        228-762-2211
Address                 POST OFFICE DRAWER 1385, PASCAGOULA, MS 39568
```

AUG-17-2015 MON 09:56 AM JA. CO. CIRCUIT CLERK     FAX NO. 2287693180     P. 04 

JOE W. MARTIN, JR.
CIRCUIT CLERK - JACKSON COUNTY
P.O. BOX 998
PASCAGOULA, MS 39568-0998
Telephone # 1-228-769-3040

Date 8-17-15

Re: ████████████████████████

We have received your request regarding a criminal/civil search   However, at this time we are unable to process your request, because you did not include the fee for a search . Furthermore, we charge a fee for each defendant in each court.  For example: If you want a search done in all four courts for a ten year period the cost would be $40.00, for a twenty year period the cost would be $80.00.

    __Circuit Court - Criminal Records for 10 years $10.00
    __Circuit Court - Civil Records for 10 years $10.00
    __County Court - Criminal Records for 10 years $10.00
    __County Court - Civil Records for 10 years $10.00

 Please note this information is public record and is accessible to the public without costs through docket books or a computer for public use during regular business hours.

Once you have provided our office with the correct search fee, we will process your search. Furthermore, there is also a fee for any copies that you may request. The cost is $1.00 per page for regular copies and a $1.00 fee to certify it.

Sincerely,

Joe W. Martin, Jr.
Circuit Clerk

By: MARY HALL
Deputy Clerk

228-769-3175

AFFIDAVIT EXHIBIT B                                           193



## ILLINOIS STATE POLICE
*Office of the Director*

Pat Quinn
*Governor*

October 30, 2013

Hiram Grau
*Director*

Attorney General Luther Strange
Office of the Attorney General
Post Office Box 300152
Montgomery, Alabama 36130-0152

Dear Honorable Strange:

Effective July 9, 2013, Public Act 98-63, the Illinois Firearm Concealed Carry Act, became state law (430 ILCS 66) requiring an Illinois Concealed Carry License in order to carry a concealed firearm in Illinois. Within this Act, non-residents from substantially similar states are allowed to apply for a non-resident Concealed Carry License if they are eligible to carry a firearm in public under the laws of his or her state or territory of residence and are not prohibited from owning or possessing a firearm under federal law.

As such, the Illinois State Police (ISP) is not able to consider applications from individuals in other states for an Illinois Concealed Carry License until reviews of applicable states' laws are completed. In order to accomplish this, by November 22, 2013, we request your agency complete and return our survey in the enclosed self-addressed envelope. Your response will help the ISP to determine whether your state's laws regarding concealed carry are substantially similar to Illinois' laws.

Your staff may contact Bureau Chief Jessica Trame at 217-782-5047 or at Jessica.Trame@isp.state.il.us with any questions. Thank you for taking the time to respond to this survey.

Respectfully,

s/Hiram Grau

Hiram Grau
Director

Enclosure

801 South Seventh Street • Suite 1100-S
Springfield, IL 62703-2487
(217) 782-7263 (voice)  •  1 (800) 255-3323 (TDD)
www.illinois.gov • www.isp.state.il.us

AFFIDAVIT EXHIBIT C   194



## ILLINOIS STATE POLICE
*Office of the Director*

<div style="float:left">Pat Quinn<br>*Governor*</div>

December 2, 2013

<div style="float:right">Hiram Grau<br>*Director*</div>

Superintendent Joseph A. D'Amico
New York State Police
1220 Washington Avenue
Building 22
Albany, NY 12226-2252

Dear Superintendent D'Amico:

Effective July 9, 2013, Public Act 98-63, the Illinois Firearm Concealed Carry Act, became state law (430 ILCS 66) requiring an Illinois Concealed Carry License in order to carry a concealed firearm in Illinois. Within this Act, non-residents from substantially similar states are allowed to apply for a non-resident Concealed Carry License if they are eligible to carry a firearm in public under the laws of his or her state or territory of residence and are not prohibited from owning or possessing a firearm under federal law.

As such, the Illinois State Police (ISP) is not able to consider applications from individuals in other states for an Illinois Concealed Carry License until reviews of applicable states' laws are completed. In order to accomplish this, we request your agency complete and return our survey in the enclosed self-addressed envelope at your earliest convenience. Your response will help the ISP to determine whether your state's laws regarding concealed carry are substantially similar to Illinois' laws.

Your staff may contact Bureau Chief Jessica Trame at 217-782-5047 or at Jessica.Trame@isp.state.il.us with any questions. Thank you for taking the time to respond to this survey.

Respectfully,

s/Hiram Grau

Hiram Grau
Director

Enclosure

801 South Seventh Street • Suite 1100-S
Springfield, IL 62703-2487
(217) 782-7263 (voice) • 1 (800) 255-3323 (TDD)
www.illinois.gov • www.isp.state.il.us

AFFIDAVIT EXHIBIT C   195



## ILLINOIS STATE POLICE
*Division of Administration*

May 15, 2014

Pat Quinn
*Governor*

Hiram Grau
*Director*

Mr. Gary Lee
Criminal Justice Planner
Alaska Department of Public Safety
5700 East Tudor Road
Anchorage, Alaska 99507

Dear Mr. Lee:

Effective July 9, 2013, Public Act 98-63, the Illinois Firearm Concealed Carry Act, became state law (430 ILCS 66) requiring an Illinois Concealed Carry License in order to carry a concealed firearm in Illinois. Within this Act, non-residents from substantially similar states are allowed to apply for a non-resident Concealed Carry License if they are eligible to carry a firearm in public under the laws of his or her state or territory of residence and are not prohibited from owning or possessing a firearm under federal law.

In November 2013, the Illinois State Police (ISP) sent a survey to your state to determine if the laws in your state are substantially similar to Illinois laws. To date, the ISP has not received a response. As such, the ISP is not able to consider applications from your state for an Illinois Concealed Carry License until a review of applicable laws is completed. In order to accomplish this, we request your agency complete and return our survey in the enclosed self-addressed envelope. Each state's response is available on the ISP website (www.isp.state.il.us) under the Concealed Carry Frequently Asked Questions.

Please feel free to contact me at (217)782-5047 or at Jessica.Trame@isp.state.il.us if you have any questions.

Respectfully,

s/Jessica L. Trame

Jessica L. Trame
Bureau Chief

Enclosure

Firearms Services Bureau
801 South Seventh Street • Suite 400-M
P.O. Box 19461
Springfield, IL 62794-9461
(217) 782-7980 (voice) • 1 (800) 255-3323 (TDD) • Fax: FOID (217) 782-9139 • FTIP (217) 782-9257
www.illinois.gov • www.isp.state.il.us

Please return by November 22, 2013



RECEIVED

NOV 1 2 2013

Firearms Services Bu...
Illinois State P...

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |

*License are issued by individual county sheriffs but are state license*

| | | | |
|-----|-----|-----|-----|
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Monica Sheeler

**Name**

*Assistant Attorney General*

**Title**

*Nov 4, 2013*

**Date**

*334-242-7458*

**Telephone**

*Alabama AGO*

**State Agency Department**

*P. O. Box 300152*

**Address**

*Montgomery, AL 36130-0152*

**City, State, Zip**

*m.sheeler@ago.state.al.us*

**Email**



| Yes | No | | |
|-----|-----|-----|-----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

*Beginning 2014 w/ legislative action to allow.*

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Gary Lee

Name

CRIMINAL JUSTICE PLANNER
Title

MAY 29, 2014
Date

907-269-5092
Telephone

ALASKA DEPARTMENT OF PUBLIC SAFETY
State Agency Department

5700 E TUDOR RD
Address

ANCHORAGE AK 99507
City, State, Zip

gary.lee@alaska.gov
Email

Please return by November 22, 2013



RECEIVED

NOV 12 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☑ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☑ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Greg Downs
_____
Name

General Counsel
_____
Title

11/5/13
_____
Date

(501) 618-8350
_____
Telephone

Arkansas State Police
_____
State Agency Department

1 State Police Plaza Dr.
_____
Address

Little Rock, AR, 72207
_____
City, State, Zip

Greg.Downs@asp.arkansas.gov
_____
Email

RECEIVED

NOV 1 3 2013

Firearms Services Bureau
Illinois State Police

<u>Please</u> return by November 22, 2013



| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Donna J. Street
_____
Name

**ARIZONA**
**DEPARTMENT OF PUBLIC SAFETY**
**DONNA J. STREET**
ADMINISTRATIVE SUPERVISOR
CONCEALED WEAPON PERMIT UNIT
OFFICE PHONE: (602) 223-2704
FAX: (602) 223-2928
EMAIL: DSTREET@AZDPS.GOV

P.O. BOX 6488, PHOENIX, ARIZONA 85005

*Courteous Vigilance*

*Az Dept of Public Safe*
State Agency Department

*P O Box 6488*
Address

*Phoenix, AZ 85005*
City, State, Zip

*DSTREET @ AZDPS.Go*
Email

AFFIDAVIT EXHIBIT C   200

Please return by November 22, 2013



| Yes | No | | |
|---|---|---|---|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☑ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? *ONLY "5250"* |
| ☑ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☑ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/John Marsh
_____
Name

*ASSISTANT CHIEF*
_____
Title

*11/14/2013*
_____
Date

*516 - 227 - 4002*
_____
Telephone

*DEPARTMENT OF JUSTICE*
_____
State Agency Department

*4949 BROADWAY*
_____
Address

*SACRAMENTO CA 95816*
_____
City, State, Zip

*JOHN.MARSH@DOJ.CA.GOV*
_____
Email



# STATE OF CONNECTICUT

## DEPARTMENT OF EMERGENCY SERVICES
## AND PUBLIC PROTECTION
### DIVISION OF STATE POLICE
#### Special Licensing & Firearms Unit



November 14th, 2013

Bureau Chief Trame
Illinois State Police
Firearms Survey Bureau
801 S. 7th St, Suite 400-M
Springfield, IL 62703-2487

Dear Chief Trame,

In response to your letter dated October 30th, 2013, I will address to your questionnaire in sequence:

Connecticut issues a pistol permit which allows for the purchase of a pistol and the carry of said pistol. There is no statutory language that covers concealment.

Connecticut does not participate in reporting to NLETS. Our database is available in state to all law enforcement officers via COLLECT.

Connecticut does report all involuntary mental health admissions to NICS.

Connecticut prohibits the use or possession of firearms based on a voluntary admission (for any matter other than alcohol or drugs) for 6 months.

Connecticut does track voluntary admissions through the Department of Mental Health and Addiction Services.

There is no pending legislation that I am aware of regarding mental health as it relates to the possession of firearms.

Thank you for inquiry.  Should you need any further assistance, you may contact the Special Licensing and Firearms Unit at (860) 685-8329.

Sincerely,

Lieutenant Eric Cooke
Commanding Officer
Special Licensing and Firearms Unit

Phone:  (860)-685-8290 Firearms/Permits  (860)-685-8160 Licensing  Fax: (860)-685-8496
1111 Country Club Road
Middletown, CT  06457-2389
*An Affirmative Action/Equal Opportunity Employer*
www.ct.gov/despp



RECEIVED

JUL 1 7 2014

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Capt. Ralph Davis
_____
Name

Director  State Bureau of Identification
_____
Title

June 6, 2014
_____
Date

(302) 672-5300
_____
Telephone

Delaware State Police
_____
State Agency Department

655 S Bay Road
_____
Address

Dover, DE 19901
_____
City, State, Zip

ralph.davis@state.de.us
_____
Email



| Yes | No | | |
|-----|-----|-----|-----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☑ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐<br>*see note below | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms?<br>If yes, what is the effective date? __July 1, 2013*__ Please provide a copy of the legislative language. |

*Effective July 1, 2013, mental health facilities are required to report those individuals who would have been involuntarily committed but were allowed under statute to transfer to a voluntary admission following an involuntary assessment where the treating physician found the individual to be imminently dangerous and notice was served that the individual's firearm rights would be revoked.

s/Robin Sparkman
_____
Name

Supervisor, Firearm Purchase Program
_____
Title

May 15, 2014
_____
Date

850-410-8940
_____
Telephone

Florida Department of Law Enforcement
_____
State Agency Department

P. O. Box 1489
_____
Address

Tallahassee, FL 32801
_____
City, State, Zip

robinsparkman@fdle.state.fl.us
_____
Email

**790.065(2)(a) 4.** Has been adjudicated mentally defective or has been committed to a mental institution by a court or as provided in sub-sub-subparagraph b.(II), and as a result is prohibited by state or federal law from purchasing a firearm.

a.   As used in this subparagraph, "adjudicated mentally defective" means a determination by a court that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease, is a danger to himself or herself or to others or lacks the mental capacity to contract or manage his or her own affairs. The phrase includes a judicial finding of incapacity under s. 744.331(6)(a), an acquittal by reason of insanity of a person charged with a criminal offense, and a judicial finding that a criminal defendant is not competent to stand trial.

b.   As used in this subparagraph, "committed to a mental institution" means:

(I)   Involuntary commitment, commitment for mental defectiveness or mental illness, and commitment for substance abuse. The phrase includes involuntary inpatient placement as defined in s. 394.467, involuntary outpatient placement as defined in s. 394.4655, involuntary assessment and stabilization under s. 397.6818, and involuntary substance abuse treatment under s. 397.6957, but does not include a person in a mental institution for observation or discharged from a mental institution based upon the initial review by the physician or a voluntary admission to a mental institution; or

(II)   Notwithstanding sub-sub-subparagraph (I), voluntary admission to a mental institution for outpatient or inpatient treatment of a person who had an involuntary examination under s. 394.463, where each of the following conditions have been met:

(A)   An examining physician found that the person is an imminent danger to himself or herself or others.

(B)   The examining physician certified that if the person did not agree to voluntary treatment, a petition for involuntary outpatient or inpatient treatment would have been filed under s. 394.463(2)(i)4., or the examining physician certified that a petition was filed and the person subsequently agreed to voluntary treatment prior to a court hearing on the petition.

(C)   Before agreeing to voluntary treatment, the person received written notice of that finding and certification, and written notice that as a result of such finding, he or she may be prohibited from purchasing a firearm, and may not be eligible to apply for or retain a concealed weapon or firearms license under s. 790.06 and the person acknowledged such notice in writing, in substantially the following form: "I understand that the doctor who examined me believes I am a danger to myself or to others. I understand that if I do not agree to voluntary treatment, a petition will be filed in court to require me to receive involuntary treatment. I understand that if that petition is filed, I have the right to contest it. In the event a petition has been filed, I understand that I can subsequently agree to voluntary treatment prior to a court hearing. I understand that by agreeing to voluntary treatment in either of these situations, I may be prohibited from buying firearms and from applying for or retaining a concealed weapons or firearms license until I apply for and receive relief from that restriction under Florida law."

(D)   A judge or a magistrate has, pursuant to sub-sub-subparagraph c.(II), reviewed the record of the finding, certification, notice, and written acknowledgment classifying the person as an imminent danger to himself or herself or others, and ordered that such record be submitted to the department.

this



| Yes | No | | |
|-----|----|--|--|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? *TN. Issues A Handgun Carry Permit. Permit holders CAN CARRY Open OR Concealed* |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

*s/Lisa Knight*
Name

*DIRECTOR Handgun Program*
Title

*5/12/14*
Date

*615-251-5330*
Telephone

*SAfety of Homeland Security*
State Agency/Department

*1148 Foster Ave.*
Address

*NAShville TN. 37243*
City, State, Zip

*LISA.Knight@TN.GOV*
Email



| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☒ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☒ | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Regina Chacon

**Name**
Bureau Chief
**Title**
May 14, 2014
**Date**
505 827-9297
**Telephone**

NM Dept of Public Safety
**State Agency Department**
Po Box 6821
**Address**
Santa Fe, NM 87504
**City, State, Zip**
Regina. Chacon @state.nm.us
**Email**



**ILLINOIS STATE POLICE**
*Division of Administration*

Pat Quinn
*Governor*

Hiram Grau
*Director*

| Yes | No | | |
|-----|----|----|----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☑ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ *see note below* | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms?<br><br>If yes, what is the effective date? __July 1, 2013*__   Please provide a copy of the legislative language. |

*Effective July 1, 2013, mental health facilities are required to report those individuals who would have been involuntarily committed but were allowed under statute to transfer to a voluntary admission following an involuntary assessment where the treating physician found the individual to be imminently dangerous and notice was served that the individual's firearm rights would be revoked.

s/Robin Sparkman
_____
Name

Supervisor, Firearm Purchase Program
_____
Title

May 15, 2014
_____
Date

850-410-8940
_____
Telephone

Florida Department of Law Enforcement
_____
State Agency Department

P. O. Box 1489
_____
Address

Tallahassee, FL 32801
_____
City, State, Zip

robinsparkman@fdle.state.fl.us
_____
Email

Firearms Services Bureau
801 South Seventh Street • Suite 400-M
P.O. Box 19461
Springfield, IL 62794-9461
(217) 782-7980 (voice) • 1 (800) 255-3323 (TDD) • Fax: FOID (217) 782-9139 • AFFIDAVIT EXHIBIT C   208
www.illinois.gov • www.isp.state.il.us

Please return by November 22, 2013



RECEIVED

NOV 2 2 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|----|----|----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☑ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑* | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

*Georgia law only prohibits the issuance of a license based on voluntary mental health admission. See attached statute.

s/Rebecca Dobras

Name

Assistant Attorney General

Title

11/15/2013

Date

404-656-0749

Telephone

Office of the Attorney General - Public Safety Section

State Agency Department

40 Capitol Square, SW

Address

Atlanta GA 30334

City, State, Zip

rdobras@law.ga.gov

Email

Please return by November 22, 2013



RECEIVED
NOV 12 2013
Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|---|---|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License?<br>But only at the discretion of the Chief of Police, none have been issued since the early 1990's |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☒ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms?<br><br>If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Daniel Paperd
_____
Name

Sergeant/Firearms Unit
_____
Title

11-6-2013
_____
Date

808-723-3190
_____
Telephone

Honolulu Police Department
_____
State Agency Department

801 S. Beretania St
_____
Address

Honolulu  HI  96813
_____
City, State, Zip

dpaperd@honolulu.gov
_____
Email



RECEIVED

NOV 19 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|---|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

Name   s/Stephanie Altig

Title   Deputy Attorney General

Date   11/12/2013

Telephone   208-5551-1031

State Agency Department   Idaho State Police

Address   700 S. Stratford Dr.

City, State, Zip   Meridian, ID 83642

Email   Stephanie.altig@isp.idaho.gov

Please return by November 22, 2013



RECEIVED

NOV 2 2 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Capt. Michael White

Name

_Assistant Chief of Staff Communication & Information Systems_

Title

_11/19/2013_

Date

_(317) 232-0029_

Telephone

_Indiana State Police_

State Agency Department

_100 North Senate Rm 340_

Address

_Indianapolis, In. 46204_

City, State, Zip

_MWhite@isp.IN.gov_

Email

AFFIDAVIT EXHIBIT C   212

*Iowa*

Please return by November 22, 2013





RECEIVED
NOV 1 2 2013
Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|---|---|---|---|
| ☒ * | ☐ | 1. | Does your state issue a Concealed Carry License? |

\* The Iowa equivalent is the "Permit to Carry Weapons," which is valid for concealed or open carry.

| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
|---|---|---|---|
| ☒ * | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |

\* Reporting commenced Jan. 1, 2011. Older committals have not been reported.

| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
|---|---|---|---|
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Ross Loder
**Name**

Bureau Chief
**Title**

11/07/2013
**Date**

515-725-6233
**Telephone**

Dept. of Public Safety, Program Services Bureau
**State Agency Department**

215 E. 7th St
**Address**

Des Moines, IA 50312
**City, State, Zip**

Ross.LODER@IOWA.GOV
**Email**

Please return by November 22, 2013



RECEIVED

NOV 2 2 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Charles Klebe

Name

KANSAS ATTORNEY GENERAL DEREK SCHMIDT
State Agency Department

ASSISTANT ATT GENERAL
Title

120 SW 10th Ave, 2nd Fl
Address

11/19//13
Date

Topeka KS 66612
City, State, Zip

785 - 368 - 6363
Telephone

charles.klebe@ksag.org
Email

AFFIDAVIT EXHIBIT C   214

Please return by November 22, 2013





| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☐ | ☒ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Michelle King

**Name**

**SERGEANT**

**Title**

**NOVEMBER 12, 2013**

**Date**

**225-925-4867**

**Telephone**

**LOUISIANA STATE POLICE**

**State Agency Department**

**7919 INDEPENDENCE BOULEVARD**

**Address**

**BATON ROUGE, LA  70806**

**City, State, Zip**

**MICHELLE.KING@LA.GOV**

**Email**

Please return by November 22, 2013



RECEIVED

NOV 19 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|----|--|--|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____  Please provide a copy of the legislative language.

s/Smith
_____
**Name**

_Manager, Firearms Records_
_____
**Title**

_11/12/2013_
_____
**Date**

_989 241-2075_
_____
**Telephone**

_Michigan State Police_
_____
**State Agency Department**

_PO Box 30634_
_____
**Address**

_Lansing, MI  48909_
_____
**City, State, Zip**

_Smithd85 @michigan.gov_
_____
**Email**

Please return by November 22, 2013



NOV 1 9 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|----|---|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |

*We issue a permit to carry a pistol without a conceal requirement.*

| | | | |
|-----|-----|----|---|
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☐ | ☒ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Wade Setter
_____
Name

*Superintendent*
Title

_____
Date

*(651) 793-1000*
Telephone

← *Bureau of Criminal Apprehension*
State Agency Department

*1430 Maryland Ave. E.*
Address

*St. Paul, MN 55106*
City, State, Zip

*wade.setter@state.mn.us*
Email

Please return by November 22, 2013



RECEIVED

FEB 3 2014

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|---|---|---|---|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☒ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☒ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? 07/01/2013  Please provide a copy of the legislative language. SB. 2647  9-149

s/Lt. Eugene Williams, Jr.
**Name**

DIRECTOR OF FPU (MHSP)
**Title**

11-01-2013
**Date**

601-987-1586
**Telephone**

MS HWY SAFETY PATROL - FPU
**State Agency Department**

PO BOX 958
**Address**

JACKSON, MS 39205
**City, State, Zip**

e.williams@dps.ms.gov
**Email**

AFFIDAVIT EXHIBIT C  218

Please return by November 22, 2013



RECEIVED

DEC 2 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|---|---|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |

*Responsibility of the sheriffs*

| | | | |
|-----|-----|---|---|
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms?<br><br>If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/s/John Marsh
_____
Name

_____MSHP_____
State Agency Department

_____Major_____
Title

_____1510 E. Elm St._____
Address

_____11/25/13_____
Date

_____Jefferson City, MO_____
City, State, Zip

_____573-526-6110_____
Telephone

_____tim.mcgrail.mstp.dps..gov___
Email

The NJSP reports both voluntary and involuntary admission to mental health facilities to NCIS. Please feel free to reach out to Detective Sergeant First Class, Glenn Ross, Assistant Unit Head of the NJSP's Firearms Investigation Unit by phone at (609) 882-2000 ext. 2060 or by e-mail at lpp5092@gw.njsp.org for additional, more specific information.

The Missouri Office of State Courts Administrator's office handles entriesinto the NICS. The points of contact at OSCA who may be able to answer your questions are Trenton Dial (573-522-6311) and Jeremy Johnson (573-751-4377).

Q: The ISP needs to know if your state reports involuntary mental health admissions to NICS.
A: Some orders and judgments that are disqualifying or potentially disqualifying under 18 USC 922(g)(4) are reported to NICS, and some are not.

Prohibiting orders/judgments reported to NICS:
*Commitment under 222.31 (intellectual disability)
*Commitment under 229.14 (serious mental impairment)
*Not guilty by reason of insanity
*Incompetent to stand trial

Prohibiting orders/judgments not reported to NICS:
*Commitment under 125.84 (substance abuse)
*Appointment of a guardian or conservator under 231E.6 (substitute decision-maker)
*Order for conveyance of property under 597.6 (incompetent spouse)

Q: Does your state track voluntary admissions to mental health facilities?
A: No, not in most cases.

Point of Contact information :

Ross Loder, Bureau Chief
Program Services Bureau, Administrative Services Division
Iowa Department of Public Safety
215 East 7th Street
Des Moines, IA 50319



RECEIVED

MAY 2 7 2014

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☐ | ☑ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Butch Huseby

Name          / CRIME
                Information
BUREAU CHIEF-   BUREAU
Title

MAY 23, 2014
Date

406 - 444 - 9759
Telephone

MONTANA DEPT. OF JUSTICE
State Agency Department

2225 11TH AVE
Address

HELENA, MT 59620
City, State, Zip

bhuseby @ mt.gov
Email

<u>Please return by November 22, 2013</u>



RECEIVED

NOV 19 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |

✳ Not through the CWQ, but via the driver's abstract.

| | | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Wendy Wussow
_____
**Name**

Agency Legal Counsel
_____
**Title**

11-5-13
_____
**Date**

402-479-4062
_____
**Telephone**

Nebraska State Patrol
_____
**State Agency Department**

P.O. Box 94907
_____
**Address**

Lincoln, NE 68509
_____
**City, State, Zip**

wendy.wussow@nebraska.gov
_____
**Email**

RECEIVED



NOV 25 2013

Firearms Services Bureau
Illinois State Police

| **Yes** | **No** | | |
|---|---|---|---|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? *WE WOULD NOT OBTAIN THIS INFORMATION ONCE PERMIT IS ISSUED.* |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Glenn Ross
_____
Name

DSFC /ASSISTANT UNIT HEAD
_____
Title

11-18-2013
_____
Date

609-882-2000 ExT. 2060
_____
Telephone

NEW JERSEY STATE POLICE
FIREARMS INVESTIGATION Unit
_____
State Agency Department

P.O. Box 7068, WTES
_____
Address

WEST TRENTON, N.J. 08628
_____
City, State, Zip

lpp5092@gw.njsp.org
_____
Email

Please return by November 22, 2013



RECEIVED

NOV 1 2 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☐ | ☒ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Sean Haggerty

_____
**Name**

Sergeant
_____
**Title**

11-7-13
_____
**Date**

603 223-8574
_____
**Telephone**

NH State Police - Permits + Licensing
**State Agency Department**

33 Hazen Drive
**Address**

Concord, NH 03305
**City, State, Zip**

sean.haggerty@dos.nh.gov
**Email**

AFFIDAVIT EXHIBIT C   224



| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☒ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☒ | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Regina Chacon
_____
Name

Bureau Chief
_____
Title

May 14, 2014
_____
Date

505 827-9297
_____
Telephone

NM Dept of Public Safety
_____
State Agency Department

Po Box 6821
_____
Address

Santa Fc, NM 87504
_____
City, State, Zip

Regina.Chacon@state.nm.ns
_____
Email

AFFIDAVIT EXHIBIT C   225



| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ * | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☐ * | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____   Please provide a copy of the legislative language.

\* Determined by Mental Health provided assessment. If subject determined to be at a minimum, a potential danger to self or others then the answer to 4 and 5 would be "yes".

| | |
|---|---|
| s/James Sherman | New York State Police |
| **Name** | **State Agency Department** |
| T/Lieutenant | 1220 Washington Avenue |
| **Title** | **Address** |
| 01/30/2014 | Albany, NY 12226-2252 |
| **Date** | **City, State, Zip** |
| (518) 464-7150 | James.Sherman@troopers.gov NY |
| **Telephone** | **Email** |

Please return by November 22, 2013



| Yes | No | | |
|-----|-----|-----|-----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☑ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Hal Askins
_____
Name

*Special Deputy A.G.*
_____
Title

*11/18/13*
_____
Date

*(919) 716-6560*
_____
Telephone

*N.C. Dept. of Justice*
_____
State Agency Department

*114 W. Edenton St.*
_____
Address

*Raleigh, N.C. 27629*
_____
City, State, Zip

*haskins@ncdoj.gov*
_____
Email

Please return by November 22, 2013



| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☒ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

*3*

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

---

s/Liz Brocker

Name _____

EXECUTIVE ASSISTANT
Title

12-18-13
Date

701-328-2213
Telephone

OFFICE OF ATTORNEY GENERAL
State Agency Department

600 E BOULEVARD AVE #125
Address

BISMARCK ND 58505
City, State, Zip

lbrocker@nd.gov
Email

| NORTH DAKOTA CONCEALED WEAPON LICENSE — APPLICANT REQUIREMENTS | Class 1 | Class 2 |
|---|---|---|
| Applicant must be eligible to possess a firearm under both federal and state laws (see N.D.C.C. § 62.1-02-01). State and federal fingerprint-based record check including III and NICS check conducted on applicant for initial application and renewal. | Yes | Yes |
| Minimum age | 21 | 18 |
| Applicant must provide a copy of a valid state-issued driver's license with application form. If the driver's license is from another state, applicant must provide a copy of a valid concealed carry permit/license from the home state (and that home state must have reciprocity/recognition with ND). | Yes | Yes |
| License good for five years, initial and renewal | Yes | Yes |
| Applicant eligible, even if applicant has been convicted (in any jurisdiction) of any of the following: | | |
| • An offense involving the use of alcohol within 10 years prior to date of initial application or renewal; | No | Yes |
| • A misdemeanor drug-related offense within 10 years prior to date of initial or renewal application; | No | Yes |
| • A felony offense at any time during life (Note: In ND, convicted felons are prohibited from possessing a firearm for up to 10 years, depending on the seriousness of the offense); | No | Yes |
| • An offense involving moral turpitude, during lifetime; | No | Yes |
| • An offense involving domestic violence during lifetime (if rights have been restored) | No | Yes |
| Applicant who has been adjudicated by a state or federal court as mentally incompetent but such adjudication subsequently has been withdrawn or reversed is eligible. | No | Yes |
| Authorization for release of Mental Health/Substance Abuse treatment records is required before application processed | Yes | No |
| TESTING REQUIREMENTS. All testing must be completed within the state of North Dakota. | | |
| • Applicant must achieve at least 70% on open book multiple-choice test of weapons and concealed weapons laws and 100% on the multiple choice test of deadly force laws. | Yes | Yes |
| • Applicant must complete classroom instruction, demonstrate familiarity with firearm, and successfully complete a live-fire proficiency course. | Yes | No |
| • Testing required before each renewal | Yes | No |

The ND concealed weapon license displays applicant's photograph, full legal name, residential address, height, weight, hair and eye color, DOB, NTN number, license expiration date and Class type.

ND CLASS 1 (FRONT)

NORTH DAKOTA CONCEALED WEAPON LICENSE
NUMBER: 2     NTN 1XZL-V4P     ISSUED 11-23-2011
TYPE: FIREARM & DANG. WEAPON     EXPIRES 11-23-2016
DOB: · · · · · ·                     CLASS 1
STENEHJEM, WAYNE KEVIN
123 69 ST NE
BISMARCK ND 5····
SEX   HGT   WGT   HAIR   EYES
M     200   604   BRO    BRO
APPROVED BY
Dallas L Carlson, Director NDBCI

ND CLASS 2 (FRONT)

NORTH DAKOTA CONCEALED WEAPON LICENSE
NUMBER: 2     NTN 1XZL-V4P     ISSUED 11-23-2011
TYPE: FIREARM & DANG. WEAPON     EXPIRES 11-23-2016
DOB: · · · · · ·                     CLASS 2
STENEHJEM, WAYNE KEVIN
123 69 ST NE
BISMARCK ND 5····
SEX   HGT   WGT   HAIR   EYES
M     200   604   BRO    BRO
APPROVED BY
Dallas L Carlson, Director NDBCI

BACK (ALL LICENSES)



NORTH DAKOTA CONCEALED WEAPON LICENSE

Issued by
BUREAU OF CRIMINAL INVESTIGATION
Office of Attorney General
P.O. Box 1054
Bismarck, ND 58502-1054
(701) 328-5500

Please return by November 22, 2013



NOV 19 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Jonathon Fulkerson
**Name**

DEPUTY CHIEF COUNSEL
**Title**

NOV. 12, 2013
**Date**

614-644-8701
**Telephone**

OHIO ATTORNEY GENERALS OFFICE
**State Agency Department**

30 E. BROAD ST, 17TH FLOOR
**Address**

COLUMBUS, OHIO 43215
**City, State, Zip**

JONATHAN.FULKERSON @ OHIOATTORNEYGENERAL.GOV
**Email**

Please return by November 22, 2013

| Yes | No | | |
|-----|-----|-----|-----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| | | | OK Gun License allows for open or concealed carry. |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☐ | ☑ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

*No, however, OSBI checks all applicants against the Oklahoma Dept. of Mental Health to ensure we do not Issue to those w/ involuntary commitments in oklahoma*

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Felicia Jackson

Name _____

Title Administrative Programs Officer

Date 11/7/2013

Telephone (405) 879-2534

State Agency Department Oklahoma State Bureau of Investigat.

Address 6600 N. Harvey PL

City, State, Zip Oklahoma City, OK 73116

Email felicia.jackson@osbi.ok.gov



**Fw: CCW survey**
Jessica Trame   to: Peggy Thompson                    11/13/2013 03:54 PM

From:      Jessica Trame/IlStPolice
To:        "Peggy Thompson"

    1 attachment


Please print this email and attachment.
--------------------------
Jessica Trame
Bureau Chief, Firearm Services Bureau
Illinois State Police
217.782.5015


----- Original Message -----
From: Felicia Jackson
Sent: 11/13/2013 09:37 PM GMT
To: "jessica.trame@isp.state.il.us" <
Cc: Bryan Rizzi
Subject: CCW survey


Dear  Jessica Trame,

Attached is the completed survey sent to the Oklahoma State Bureau of
Investigation for purposes of validating reciprocity for Concealed Carry
Licensing.  The state of Oklahoma, pursuant to Oklahoma Title 21 § 1290.26,
recognizes any valid concealed or unconcealed carry weapons permit or license
issued by another state, therefore residents of Illinois with a valid carry
permit issued by the state of Illinois will be able to carry in Oklahoma.

If you need the hard copy form mailed to you, please let me know.  Also, if
you have any further questions or concerns, feel free to contact me anytime.

Thank you.


Respectfully,
Felicia Jackson
Administrative Programs Officer
Licensing and Special Services
Oklahoma State Bureau of Investigation
(405) 879-2534
(405) 879-2966 FAX


The information contained in this e-mail message, and any files transmitted
with it, is confidential and may be legally privileged. It is intended only
for the use of the individuals or entities named above. If the reader of this
message is not the intended recipient, or the employee or agent responsible to
deliver it to the intended recipient, you are hereby notified that any
dissemination, distribution or forwarding of this e-mail message is strictly
prohibited. If you have received this e-mail message in error, please notify
the sender and delete the material from any computer. Thank you for your
cooperation.

Please return by November 22, 2013



| Yes | No | | |
|---|---|---|---|
| ☐ | ☐ | 1. | Does your state issue a Concealed Carry License? *This function is handled through Oregon's 36 county Sheriff's Offices* |
| ☐ | ☐ | (2.) | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? *Unknown* |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ *unknown* | ☒ | (6.) | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

*Oregon Sheriffs Association can assist with Statewide questions*
*503-364-4204   www.oregonsheriffs.org*

s/Patricia Whitfield
**Name**

**Oregon State Police**
**State Agency Department**

CJIS Division Director
**Title**

3772 Portland Rd NE Bldg C
**Address**

11/18/13
**Date**

Salem, OR 97301
**City, State, Zip**

503-934-2305
**Telephone**

Patricia.Whitfield@state.or.us
**Email**

Please return by November 22, 2013

*NOTE: SCARY, VERY LATENOTE*

C. Weir



| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☒ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms?<br><br>If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Clifton Weir
_____
Name

MAJOR
_____
Title

MARCH 7, 2014
_____
Date

( 803 ) 737-9000
_____
Telephone

S.C. LAW ENFORCEMENT DIVISION
_____
State Agency Department

P.O. BOX 21398
_____
Address

COLUMBIA SC 29221
_____
City, State, Zip

CWEIR@SLED.SC.GOV
_____
Email

AFFIDAVIT EXHIBIT C  234

Please return by November 22, 2013



RECEIVED
NOV 12 2013
Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ YES | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☐ | ☒ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms?<br><br>If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Richard Williams
_____
Name

*Assistant Attorney General*
Title

*11-6-13*
Date

*605-773-3215*
Telephone

*Attorney General*
State Agency Department

*1302 East Hwy 14 Sta. 1*
Address

*Pierre, SD, 57501*
City, State, Zip

*Rich.Williams@State.SD.US*
Email



Firearm Section Illinois
Illinois State Police

| Yes | No | | |
|-----|----|----|----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? TN. ISSUES A Handgun Carry Permit. Permit holders CAN CARRY Open or Concealed |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Lisa Knight
Name

DIRECTOR HANDGUN PROGRAM
Title

5/12/14
Date

615-251-5330
Telephone

SAfety of Homeland Security
State Agency/Department

1148 Foster Ave.
Address

NAshville TN. 37243
City, State, Zip

LISA. Knight@TN.GOV
Email



RECEIVED

[illegible]

[illegible] State Police
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? *TN. Issues A Handgun Carry Permit Permit holders can carry open or concealed* |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Lisa Knight
**Name**

DIRECTOR Handgun PROGRAM
**Title**

5/12/14
**Date**

615-251-5330
**Telephone**

SAfety of HomelAnd Security
**State Agency/Department**

1148 Foster Ave.
**Address**

NAshville TN. 37243
**City, State, Zip**

LISA. Knight@TN.GOV
**Email**



| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? *TN. Issues A Handgun Carry Permit. Permit holders can carry open or concealed* |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms?<br><br>If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Lisa Knight
_____
Name

DIRECTOR HANDGUN PROGRAM
_____
Title

5/12/14
_____
Date

615-251-5330
_____
Telephone

Safety of Homeland Security
_____
State Agency/Department

1148 Foster Ave.
_____
Address

Nashville  TN. 37243
_____
City, State, Zip

LISA.Knight@TN.GOV
_____
Email

Please return by November 22, 2013



RECEIVED

NOV 2 2 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? *Attached* |
| ☐ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? *Attached* |
| ☐ | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Renearl Bowie

Name

*Assistant Director*

Title

*11-18-13*

Date

*512-424-7731*

Telephone

*TEXAS Department of Public Safety*

State Agency Department

*5806 Guadalupe Bld I*

Address

*Austin, TX 78752*

City, State, Zip

*renearl. Bowie @dps.texas.gov*

Email

AFFIDAVIT EXHIBIT C  239

1. Does your state issue a Concealed Carry License?   *Yes.*

2. Does your state participate in reporting Concealed Carry License via the National Law Enforcement Teletype System (NLETS)?        *Yes.*

3. Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)?   *Yes.*

4. Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years?   *The use or possession of a firearm is not prohibited on this basis, but it is an eligibility criterion for a concealed handgun license.*

5. Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license?      *Only involuntary admissions are reported by the courts.  Applicants for a concealed handgun license are required to disclose any admissions to the department at the time of application.*

6. If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms?      *There is no legislation pending.*

AFFIDAVIT EXHIBIT C   240

Please return by November 22, 2013

NOV 19 2013





Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Jason Chapman
_____
Name

Supervisor
_____
Title

11-7-13
_____
Date

801-965-3810
_____
Telephone

DPS/BCI
_____
State Agency Department

3888 W. 5400 S.
_____
Address

Taylorsville, UT 84129
_____
City, State, Zip

Jchapman@utah.gov
_____
Email

State of Utah
Department of Public Safety
## APPLICATION FOR CONCEALED FIREARM PERMIT
## INSTRUCTIONS
### NEW APPLICANT

**Anyone, at least 21 years of age, may apply for the Utah Concealed Firearm Permit. Please answer all questions by** typing or clearly printing in ink.

**Applications may be submitted in person or by mail to:**
Bureau of Criminal Identification
3888 West 5400 South
Taylorsville UT 84129
Office Hours: M-F, 8:00 a.m. until 5:00 p.m.

**Applications must be accompanied by all required documentation (see below).** Every application must be signed by the applicant prior to submission.

**If applying by mail, please send application and everything that must accompany it in a 9 x 12 envelope, if possible.**

### COST TO APPLY
The following **non-refundable** fee must be included with your application:
**Utah Residents: $46.00**
**Non-Residents: $51.00**

### PAYMENT OPTIONS
The Bureau accepts cash, check, money order, VISA and MASTERCARD. **Credit card payment must include the 3-digit control number on the back of the card.**

Name and address must be imprinted on checks (no "counter checks" please). Please make check or money order payable to: **Utah Bureau of Criminal Identification.** There will be a $20 service charge for returned checks. **PLEASE DO NOT SEND CASH IN THE MAIL.**

### CONCEALED FIREARM COURSE SURVEY
Please complete the course survey available at:
http://www.publicsafety.utah.gov/bci/CFPsurvey.html
You may return the survey by email to:
DPSFIREARMS@Utah.gov

### WHAT MUST ACCOMPANY THE APPLICATION
☐ PHOTOCOPY OF YOUR DRIVER LICENSE OR STATE ISSUED IDENTIFICATION CARD

☐ **1 (BLUE & WHITE) APPLICANT FINGERPRINT CARD BCI does offer fingerprint services. The fee is $15.00**

☐ PHOTOGRAPH:
One recent **color** photograph of passport quality (2x2, no hats or sunglasses please). **NAME MUST BE ON BACK OF PHOTO!!** BCI does offer photo services for our permits. The fee is $15.00

☐ Application must include permanent physical residence and mailing address (if applicable).

### ☐ NON-RESIDENT PROOF OF PERMIT
If you reside in a state that recognizes the validity of the Utah CFP or has reciprocity with Utah, you must obtain a CFP or CCW from your home state and submit a copy of it with your application for a Utah permit. For a list of reciprocal states visit: http://www.publicsafety.utah.gov/bci/FAQother.html Residency will be determined by your state-issued identification. If your state does not recognize the Utah permit this does not apply.

### ☐ FINGERPRINT CARDS:
Blue and white (FD-258) Applicant fingerprint cards can be obtained from BCI or your local police department. Fingerprint card must be filled out completely, including signatures of both the applicant and official. **USE BLACK INK ONLY.** Writing and prints must be legible. Fingerprint cards that are not legible will be returned to the applicant and will cause a delay in processing the application. Private businesses and many local law enforcement agencies provide this service, check your local listings.

### ☐ APPLICANTS BORN OUTSIDE OF U.S.:
**If you were born outside of the U.S. you must include your Alien Registration Number or INS Registration Number on your application and fingerprint card, or include a copy of your U.S. issued born abroad birth certificate.** A copy of a valid U.S passport will also be accepted for proof of citizenship if born outside the US.

### ☐ WEAPON FAMILIARITY CERTIFICATION:
Applicants must complete a firearms familiarity course, certified by the Bureau, before applying for a permit. Please have your instructor complete the certification information on the application. Holders of a valid Concealed Firearm Permit from another state other than Utah are <u>not</u> exempt from taking the weapon familiarity course from an approved Utah instructor. BCI must receive your application within one year from the date the course was completed.

### ☐ APPLICATION PROCESSING
Upon receipt of your completed application packet, we will process your payment, then applications will be reviewed in the order they were received. Upon completion of the background investigation, if it is determined that the criteria established by law has been met, the permit will be mailed to you. Please do not call to check the status of your permit; the review process may take up to 60 days.

### WARNING
*Falsification of any information in the application may result in denial or revocation of a permit and possible criminal prosecution.*

### VISIT OUR WEBSITE AT:
http://publicsafety.utah.gov/bci/
Any questions please contact BCI at 801-965-4445 or DPSFIREARMS@utah.gov.

Revised 3/2013

AFFIDAVIT EXHIBIT C   242



State of Utah
Department of Public Safety
**APPLICATION FOR CONCEALED FIREARM PERMIT**

Please read all instructions prior to completing this form. TYPE OR PRINT IN INK.
Your application will *not* be processed unless this form is completely filled out and all applicable questions answered. Be sure to provide all supporting documents: one complete fingerprint card, one photo (with name on back), photocopy of resident state's permit (if applicable) and photocopy of drivers' license.
Enclose the appropriate fee, **$46.00 for Utah residents or $51.00 for non-residents** in the form of check, money order or credit card made payable to "Utah Bureau of Criminal Identification". Name and address must be imprinted on check.

Bureau Use Only

**FEES ARE NON-REFUNDABLE**

Name_____ Date of Birth_____ State/Country of Birth_____
(Last)            (First)            (Middle)                                      (If born outside of US provide documentation)
(Please print full name as it appears on your driver license or state issued ID card)

Previously used Name(s)(Maiden, etc.)_____ Social Security Number_____

Physical Address_____
(Street)
Mailing Address (if different from street address)_____ (City)_____ (County)_____ (State)_____ (Zip)_____

Home Phone#_____Alt Phone #_____ Driver Lic #_____ St._____

Height_____Weight_____Eye Color_____Hair Color_____Sex_____Race_____

What is your Citizenship?_____ If born outside of US, include Alien Registration # or INS Registration #_____

**ALL APPLICANTS:** Please answer "Yes" or "No" to all questions below. A complete criminal background check will be conducted including expunged and juvenile court records. If you answer "Yes" to any question, attach documentation explaining your answer.

☐ Yes  ☐ No  Have you ever been convicted of a felony?
☐ Yes  ☐ No  Have you ever been convicted of a crime of violence?
☐ Yes  ☐ No  Have you ever been convicted of an offense involving the use of alcohol? (i.e. DUI/DWI, alcohol related reckless, unlawful use of alcohol, etc.)
☐ Yes  ☐ No  Have you ever been convicted of the unlawful use of narcotics or other controlled substances?
☐ Yes  ☐ No  Have you ever been convicted of any offense involving moral turpitude? (i.e., theft, criminal mischief, sex crimes, etc.)
☐ Yes  ☐ No  Have you ever been convicted of offense involving domestic violence?
☐ Yes  ☐ No  Have you ever been adjudicated as mentally incompetent?
☐ Yes  ☐ No  Are you currently subject to a court sanctioned protective order?
☐ Yes  ☐ No  Have you ever been dishonorably discharged from the armed forces?

**NEW APPLICANTS:** A department approved firearms instructor must complete the following certification information:

The applicant,_____ has met the criteria        The instructor's stamp goes in this box
established by the Utah Department of Public Safety and Utah Code Ann. § 53-5-
704(8). I certify this to be true and correct to the best of my knowledge and belief.

Instructor
Signature_____

Training Date_____
           Month        Day        Year

**ALL APPLICANTS: Please read and sign the statement below:**

I understand that it is a class B misdemeanor to knowingly and willfully provide false information on a concealed firearm permit application and may result in the denial of a permit pursuant to Utah Code Ann. § 53-5-704(15). I hereby declare under criminal penalty of the State of Utah that the information contained on this application is true and correct.

Executed on: _____ at _____
                        (Date)                    (Time)

_____
(Signature)

**METHOD OF PAYMENT** (CHECK APPROPRIATE BOX)     Payment enclosed (check or money order only) ☐        Credit Card ☐
Credit Card payment must include 3 digit control number found on back of the credit card. There is a $20.00 service charge for any returned check.

Credit Card Signature_____ Zip Code Associated with Credit Card_____

Credit Card Orders:   *Visa ☐      *MasterCard ☐
Card Number
[ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]    3 Digit Control # [ ][ ][ ]    Expiration Date (MMYY) [ ][ ][ ][ ]

Utah Bureau of Criminal Identification 3888 W 5400 S Taylorsville Utah 84129 801-965-4445 - - - - - BCI-1523A-1007

Revised 3/2013



**Fw: Utah's Response to Survey Request**
Gary W Clark    to: Jessica Trame                              05/09/2014 08:57 AM

From:       Gary W Clark/IlStPolice
To:         Jessica Trame/IlStPolice@IlStPolice,

FYI

Sergeant Gary Clark
Staff Officer
Division of Administration
Telephone: 217-557-1732
Fax: 217-558-1882
----- Forwarded by Gary W Clark/IlStPolice on 05/09/2014 08:56 AM -----

From:       Marc Maton/IlStPolice
To:         Gary W Clark/IlStPolice@ilstpolice,
Cc:         Matthew Davis/IlStPolice@ilstpolice
Date:       05/08/2014 06:01 PM
Subject:    FW: Utah's Response to Survey Request


Sent from my Windows Phone

From: Alice Moffat
Sent: 5/8/2014 12:38 PM
To: Marc_Maton@isp.state.il.us
Cc: Jeff Carr
Subject: Utah's Response to Survey Request
Marc,

Please find attached our response to your survey request.

Alice Moffat

--
Division Director
Utah Bureau of Criminal Identification
(801) 965-4939 office
(801) 209-8926 cell

(801) 965-4944 fax ⬜ - Illinois.pdf



| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

---

s/Jason Chapman

**Name**

Supervisor

**Title**

5/8/2014

**Date**

801-965-3810

**Telephone**

DPS / BCI

**State Agency Department**

3888 W. 5400 S.

**Address**

Taylorsville, UT 84129

**City, State, Zip**

JChapman @ utah.gov

**Email**

801 - 965 - 3810



**ILLINOIS STATE POLICE**
*Office of the Director*

Pat Quinn
*Governor*

October 30, 2013

Hiram Grau
*Director*

~~Commissioner Keith D. Squires~~   MR. JASON CHAPMAN
Utah Department of Public Safety
Bureau of Criminal Identification
3888 West 5400 South         → CONCEALED FIREARM UNIT
Taylorsville, Utah 84129

Dear Commissioner Squires:

Effective July 9, 2013, Public Act 98-63, the Illinois Firearm Concealed Carry Act, became state law (430 ILCS 66) requiring an Illinois Concealed Carry License in order to carry a concealed firearm in Illinois. Within this Act, non-residents from substantially similar states are allowed to apply for a non-resident Concealed Carry License if they are eligible to carry a firearm in public under the laws of his or her state or territory of residence and are not prohibited from owning or possessing a firearm under federal law.

As such, the Illinois State Police (ISP) is not able to consider applications from individuals in other states for an Illinois Concealed Carry License until reviews of applicable states' laws are completed. In order to accomplish this, by November 22, 2013, we request your agency complete and return our survey in the enclosed self-addressed envelope. Your response will help the ISP to determine whether your state's laws regarding concealed carry are substantially similar to Illinois' laws.

Your staff may contact Bureau Chief Jessica Trame at 217-782-5047 or at Jessica.Trame@isp.state.il.us with any questions. Thank you for taking the time to respond to this survey.

Respectfully,

s/Hiram Grau

Hiram Grau
Director

Enclosure

801 South Seventh Street • Suite 1100-S
P.O. Box 19461
Springfield, IL 62794-9461
(217) 782-7263 (voice) • 1 (800) 255-3323 (TDD)
www.illinois.gov • www.isp.state.il.us

AFFIDAVIT EXHIBIT C   246

Please return by November 22, 2013



RECEIVED

NOV 18 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|----|----|----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☑ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Thomas Lambert
_____
Name

HEARING & LEGAL SERVICES OFFICER
Title

Nov 6, 2013
Date

804-674-2212
Telephone

Department of State Police
State Agency Department

P.O. Box 27472
Address

Richmond, VA 23261
City, State, Zip

Tom.Lambert @ vsp.Virginia.gov
Email

Please return by November 22, 2013



RECEIVED

NOV 2 2 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|---|---|---|---|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Rachel G.
**Name**

Legal Assistant
**Title**

11-15-2013
**Date**

360-586-6236
**Telephone**

Licensing and Administrative Law,
Office of the Attorney General
**State Agency Department**

1125 Washington St SE
**Address**

Olympia, WA 98504
**City, State, Zip**

rachelg@atg.wa.gov
**Email**

Please return by November 22, 2013



| Yes | No | | |
|---|---|---|---|
| ☐ | ☒ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☒ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Colin Hall
Name

Sergeant
Title

1/22/14
Date

202-727-9889
Telephone

Wash. DC Metropolitan Police Dep
State Agency Department

300 Indiana Ave. NW #3058
Address

Washington, DC 20001
City, State, Zip

colin.hall@dc.gov
Email

AFFIDAVIT EXHIBIT C   249

Please return by November 22, 2013





| Yes | No | | |
|---|---|---|---|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☑ * | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| | | | *See other side* |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Ritchie Hall
_____
Name

Deputy Attorney General
_____
Title

11/1/13
_____
Date

304-558-2021 ext 2204
_____
Telephone

WV Attorney General's Office
_____
State Agency Department

State Capitol Bldg. 1 Room E-26
_____
Address

Charleston, WV 25305
_____
City, State, Zip

rrh@wvago.gov
_____
Email

## CHAPTER 61. CRIMES AND THEIR PUNISHMENT.
### ARTICLE 7. DANGEROUS WEAPONS. §61-7-1. Legislative findings.

The Legislature finds that the overwhelming support of the citizens of West Virginia for article three, section twenty-two of the constitution of this state, commonly known as the "Right to Keep and Bear Arms Amendment", combined with the obligation of the state to reasonably regulate the right of persons to keep and bear arms for self-defense requires the reenactment of this article.

### §61-7-2. Definitions.

As used in this article, unless the context otherwise requires:

(1) "Blackjack" means a short bludgeon consisting, at the striking end, of an encased piece of lead or some other heavy substance and, at the handle end, a strap or springy shaft which increases the force of impact when a person or object is struck. The term "blackjack" shall include, but not be limited to, a billy, billy club, sand club, sandbag or slapjack.

(2) "Gravity knife" means any knife that has a blade released from the handle by the force of gravity or the application of centrifugal force and when so released is locked in place by means of a button, spring, lever or other locking or catching device.

(3) "Knife" means an instrument, intended to be used or readily adaptable to be used as a weapon, consisting of a sharp-edged or sharp-pointed blade, usually made of steel, attached to a handle which is capable of inflicting cutting, stabbing or tearing wounds. The term "knife" shall include, but not be limited to, any dagger, dirk, poniard or stiletto, with a blade over three and one- half inches in length, any switchblade knife or gravity knife and any other instrument capable of inflicting cutting, stabbing or tearing wounds. A pocket knife with a blade three and one-half inches or less in length, a hunting or fishing knife carried for hunting, fishing, sports or other recreational uses or a knife designed for use as a tool or household implement shall not be included within the term "knife" as defined herein unless such knife is knowingly used or intended to be used to produce serious bodily injury or death.

(4) "Switchblade knife" means any knife having a spring- operated blade which opens automatically upon pressure being applied to a button, catch or other releasing device in its handle.

(5) "Nunchuka" means a flailing instrument consisting of two or more rigid parts, connected by a chain, cable, rope or other nonrigid, flexible or springy material, constructed in such a manner as to allow the rigid parts to swing freely so that one rigid part may be used as a handle and the other rigid part may be used as the striking end.

(6) "Metallic or false knuckles" means a set of finger rings attached to a transverse piece to be worn over the front of the hand for use as a weapon and constructed in such a manner that, when striking another person with the fist or closed hand, considerable physical damage may be inflicted upon the person struck. The terms "metallic or false knuckles" shall include any such instrument without reference to the metal or other substance or substances from which the metallic or false knuckles are made.

(7) "Pistol" means a short firearm having a chamber which is integral with the barrel, designed to be aimed and fired by the use of a single hand.

(8) "Revolver" means a short firearm having a cylinder of several chambers that are brought successively into line with the barrel to be discharged, designed to be aimed and fired by the use of a single hand.

(9) "Deadly weapon" means an instrument which is designed to be used to produce serious bodily injury or death or is readily adaptable to such use. The term "deadly weapon" shall include, but not be limited to, the instruments defined in subdivisions (1) through (8), inclusive, of this section or other deadly weapons of like kind or character which may be easily concealed on or about the person. For the purposes of section one-a, article five, chapter eighteen-a of this code and

AFFIDAVIT EXHIBIT C   251

section eleven-a, article seven of this chapter, in addition to the definition of "knife" set forth in subdivision (3) of this section, the term "deadly weapon" also includes any instrument included within the definition of "knife" with a blade of three and one-half inches or less in length. Additionally, for the purposes of section one-a, article five, chapter eighteen-a of this code and section eleven-a, article seven of this chapter, the term "deadly weapon" includes explosive, chemical, biological and radiological materials. Notwithstanding any other provision of this section, the term "deadly weapon" does not include any item or material owned by the school or county board, intended for curricular use, and used by the student at the time of the alleged offense solely for curricular purposes.

(10) "Concealed" means hidden from ordinary observation so as to prevent disclosure or recognition. A deadly weapon is concealed when it is carried on or about the person in such a manner that another person in the ordinary course of events would not be placed on notice that the deadly weapon was being carried. For purposes of concealed handgun licensees, a licensee shall be deemed to be carrying on or about his or her person while in or on a motor vehicle if the firearm is located in a storage area in or on the motor vehicle.

(11) "Firearm" means any weapon which will expel a projectile by action of an explosion.

(12) "Controlled substance" has the same meaning as is ascribed to that term in subsection (d), section one hundred one, article one, chapter sixty-a of this code.

(13) "Drug" has the same meaning as is ascribed to that term in subsection (1), section one hundred one, article one, chapter sixty-a of this code. §61-7-3. Carrying deadly weapon without license or other authorization; penalties.
(a) Any person who carries a concealed deadly weapon, without a state license or other lawful authorization established under the provisions of this code, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than one hundred dollars nor more than one thousand dollars and may be imprisoned in the county jail for not more than twelve months for the first offense; but upon conviction of a second or subsequent offense, he or she shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one nor more than five years and fined not less than one thousand dollars nor more than five thousand dollars.

(b) It shall be the duty of the prosecuting attorney in all cases to ascertain whether or not the charge made by the grand jury is a first offense or is a second or subsequent offense and, if it shall be a second or subsequent offense, it shall be so stated in the indictment returned, and the prosecuting attorney shall introduce the record evidence before the trial court of such second or subsequent offense and shall not be permitted to use discretion in introducing evidence to prove the same on the trial.

## §61-7-4. License to carry deadly weapons; how obtained.

(a) Except as provided in subsection (h) of this section, any person desiring to obtain a state license to carry a concealed deadly weapon shall apply to the sheriff of his or her county for the license, and shall pay to the sheriff, at the time of application, a fee of $75, of which $15 of that amount shall be deposited in the Courthouse Facilities Improvement Fund created by section six, article twenty-six, chapter twenty-nine of this code. Concealed weapons permits may only be issued for pistols or revolvers. Each applicant shall file with the sheriff a complete application, as prepared by the Superintendent of the West Virginia State Police, in writing, duly verified, which sets forth only the following licensing requirements:

(1) The applicant's full name, date of birth, Social Security number, a description of the applicant's physical features, the applicant's place of birth, the applicant's country of citizenship and, if the applicant is not a United States citizen, any alien or admission number issued by the United States Bureau of Immigration and Customs enforcement, and any basis, if applicable, for an exception to the prohibitions of 18 U. S. C. §922(g)(5)(B);

(2) That, on the date the application is made, the applicant is a bona fide resident of this state and of the county in which the application is made and has a valid driver's license or other state-issued photo identification showing the residence;

(3) That the applicant is twenty-one years of age or older: *Provided,* That any individual who is less than twenty-one years of age and possesses a properly issued concealed weapons license as of the effective date of this article shall be licensed to maintain his or her concealed weapons license notwithstanding the provisions of this section requiring new applicants to be at least twenty-one years of age: *Provided, however,* That upon a showing of any applicant who is eighteen years of age or older that he or she is required to carry a concealed weapon as a condition for employment, and presents satisfactory proof to the sheriff thereof, then he or she shall be issued a license upon meeting all other conditions of this section. Upon discontinuance of employment that requires the concealed weapons license, if the individual issued the license is not yet twenty-one years of age, then the individual issued the license is no longer eligible and must return his or her license to the issuing sheriff;

(4) That the applicant is not addicted to alcohol, a controlled substance or a drug and is not an unlawful user thereof as evidenced by either of the following within the three years immediately prior to the application:

(A) Residential or court-ordered treatment for alcoholism or alcohol detoxification or drug treatment; or

(B) Two or more convictions for driving while under the influence or driving while impaired;

(5) That the applicant has not been convicted of a felony unless the conviction has been expunged or set aside or the applicant's civil rights have been restored or the applicant has been unconditionally pardoned for the offense;

(6) That the applicant has not been convicted of a misdemeanor crime of violence other than an offense set forth in subsection (7) of this section in the five years immediately preceding the application.

(7) That the applicant has not been convicted of a misdemeanor crime of domestic violence as defined in 18 U. S. C. §921(a)(33), or a misdemeanor offense of assault or battery either under the provisions of section twenty-eight, article two of this chapter or the provisions of subsection (b) or (c), section nine, article two of this chapter in which the victim was a current or former spouse, current or former sexual or intimate partner, person with whom the defendant cohabits or has cohabited, a parent or guardian, the defendant's child or ward or a member of the defendant's household at the time of the offense, or a misdemeanor offense with similar essential elements in a jurisdiction other than this state;

(8) That the applicant is not under indictment for a felony offense or is not currently serving a sentence of confinement, parole, probation or other court-ordered supervision imposed by a court of any jurisdiction or is the subject of an emergency or temporary domestic violence protective order or is the subject of a final domestic violence protective order entered by a court of any jurisdiction;

(9) That the applicant has not been adjudicated to be mentally incompetent or involuntarily committed to a mental institution. If the applicant has been adjudicated mentally incompetent or involuntarily committed the applicant must provide a court order reflecting that the applicant is no longer under such disability and the applicant's right to possess or receive a firearm has been restored.

(10) That the applicant has qualified under the minimum requirements set forth in subsection (d) of this section for handling and firing the weapon: *Provided,* That this requirement shall be waived in the case of a renewal applicant who has previously qualified; and

(11) That the applicant authorizes the sheriff of the county, or his or her designee, to conduct an investigation relative to the information contained in the application.

(b) For both initial and renewal applications, the sheriff shall conduct an investigation including a nationwide criminal background check consisting of inquiries of the National Instant Criminal Background Check System, the West Virginia criminal history record responses and the National Interstate Identification Index and shall review the information received in order to verify that the information required in subsection (a) of this section is true and correct.

AFFIDAVIT EXHIBIT C   253

(c) Sixty dollars of the application fee and any fees for replacement of lost or stolen licenses received by the sheriff shall be deposited by the sheriff into a Concealed Weapons License Administration Fund. The fund shall be administered by the sheriff and shall take the form of an interest-bearing account with any interest earned to be compounded to the fund. Any funds deposited in this Concealed Weapon License Administration Fund are to be expended by the sheriff to pay for the costs associated with issuing concealed weapons licenses. Any surplus in the fund on hand at the end of each fiscal year may be expended for other law-enforcement purposes or operating needs of the sheriff's office, as the sheriff may consider appropriate.

(d) All persons applying for a license must complete a training course in handling and firing a handgun. The successful completion of any of the following courses fulfills this training requirement:

(1) Any official National Rifle Association handgun safety or training course;

(2) Any handgun safety or training course or class available to the general public offered by an official law-enforcement organization, community college, junior college, college or private or public institution or organization or handgun training school utilizing instructors duly certified by the institution;

(3) Any handgun training or safety course or class conducted by a handgun instructor certified as such by the state or by the National Rifle Association;

(4) Any handgun training or safety course or class conducted by any branch of the United States Military, Reserve or National Guard or proof of other handgun qualification received while serving in any branch of the United States Military, Reserve or National Guard.

A photocopy of a certificate of completion of any of the courses or classes or an affidavit from the instructor, school, club, organization or group that conducted or taught said course or class attesting to the successful completion of the course or class by the applicant or a copy of any document which shows successful completion of the course or class shall constitute evidence of qualification under this section.

(e) All concealed weapons license applications must be notarized by a notary public duly licensed under article four, chapter twenty-nine of this code. Falsification of any portion of the application constitutes false swearing and is punishable under the provisions of section two, article five, chapter sixty-one of this code.

(f) The sheriff shall issue a license unless he or she determines that the application is incomplete, that it contains statements that are materially false or incorrect or that applicant otherwise does not meet the requirements set forth in this section. The sheriff shall issue, reissue or deny the license within forty-five days after the application is filed if all required background checks authorized by this section are completed.

(g) Before any approved license shall be issued or become effective, the applicant shall pay to the sheriff a fee in the amount of $25 which the sheriff shall forward to the Superintendent of the West Virginia State Police within thirty days of receipt. The license shall be valid for five years throughout the state, unless sooner revoked.

(h) Each license shall contain the full name and address of the licensee and a space upon which the signature of the licensee shall be signed with pen and ink. The issuing sheriff shall sign and attach his or her seal to all license cards. The sheriff shall provide to each new licensee a duplicate license card, in size similar to other state identification cards and licenses, suitable for carrying in a wallet, and the license card is considered a license for the purposes of this section.

(i) The Superintendent of the West Virginia State Police shall prepare uniform applications for licenses and license cards showing that the license has been granted and shall do any other act required to be done to protect the state and see to the enforcement of this section.

(j) If an application is denied, the specific reasons for the denial shall be stated by the sheriff denying the application. Any person denied a license may file, in the circuit court of the county in which the application was made, a petition seeking review of the denial. The petition shall be filed within thirty days of the denial. The court shall then determine whether the applicant is entitled to the issuance of a license under the criteria set forth in this section. The applicant may be represented by counsel, but in no case may the court be required to appoint counsel for an applicant. The final order of the court shall include the court's findings of fact and conclusions of law. If the final order upholds the denial, the applicant may file an appeal in accordance with the Rules of Appellate Procedure of the Supreme Court of Appeals.

(k) If a license is lost or destroyed, the person to whom the license was issued may obtain a duplicate or substitute license for a fee of $5 by filing a notarized statement with the sheriff indicating that the license has been lost or destroyed.

(l) Whenever any person after applying for and receiving a concealed handgun license moves from the address named in the application to another county within the state, the license remains valid for the remainder of the five years: *Provided,* That the licensee within twenty days thereafter notifies the sheriff in the new county of residence in writing of the old and new addresses.

(m) The sheriff shall, immediately after the license is granted as aforesaid, furnish the Superintendent of the West Virginia State Police a certified copy of the approved application. The sheriff shall furnish to the Superintendent of the West Virginia State Police at any time so requested a certified list of all licenses issued in the county. The Superintendent of the West Virginia State Police shall maintain a registry of all persons who have been issued concealed weapons licenses.

(n) Except when subject to an exception under section six, article seven of this chapter, all licensees must carry with them a state-issued photo identification card with the concealed weapons license whenever the licensee is carrying a concealed weapon. Any licensee who, in violation of this subsection, fails to have in his or her possession a state-issued photo identification card and a current concealed weapons license while carrying a concealed weapon is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $50 or more than $200 for each offense.

(o) The sheriff shall deny any application or revoke any existing license upon determination that any of the licensing application requirements established in this section have been violated by the licensee.

(p) A person who is engaged in the receipt, review or in the issuance or revocation of a concealed weapon license does not incur any civil liability as the result of the lawful performance of his or her duties under this article.

(q) Notwithstanding the provisions of subsection (a) of this section, with respect to application by a former law-enforcement officer honorably retired from agencies governed by article fourteen, chapter seven of this code; article fourteen, chapter eight of this code; article two, chapter fifteen of this code; and article seven, chapter twenty of this code, an honorably retired officer is exempt from payment of fees and costs as otherwise required by this section. All other application and background check requirements set forth in this shall be applicable to these applicants.

(r) Except as restricted or prohibited by the provisions of this article or as otherwise prohibited by law, the issuance of a concealed weapon permit issued in accordance with the provisions of this section authorizes the holder of the permit to carry a concealed pistol or revolver on the lands or waters of this state. **§61-7-5. Revocation of license.**
A license to carry a deadly weapon shall be deemed revoked at such time as the person licensed becomes unable to meet the criteria for initial licensure set forth in section four of this article. Any person licensed under the provisions of this article shall immediately surrender his or her license to the issuing sheriff upon becoming ineligible for continued licensure.

**§61-7-6. Exceptions as to prohibitions against carrying concealed handguns; exemptions from licensing fees.**

(a) The licensure provisions set forth in this article do not apply to:

(1) Any person:

AFFIDAVIT EXHIBIT C   255

(A) Carrying a deadly weapon upon his or her own premises;

(B) Carrying a firearm, unloaded, from the place of purchase to his or her home, residence or place of business or to a place of repair and back to his or her home, residence or place of business; or

(C) Possessing a firearm while hunting in a lawful manner or while traveling from his or her home, residence or place of business to a hunting site and returning to his or her home, residence or place of business;

(2) Any person who is a member of a properly organized target-shooting club authorized by law to obtain firearms by purchase or requisition from this state or from the United States for the purpose of target practice from carrying any pistol, as defined in this article, unloaded, from his or her home, residence or place of business to a place of target practice and from any place of target practice back to his or her home, residence or place of business, for using any such weapon at a place of target practice in training and improving his or her skill in the use of the weapons;

(3) Any law-enforcement officer or law-enforcement official as defined in section one, article twenty-nine, chapter thirty of this code;

(4) Any employee of the West Virginia Division of Corrections duly appointed pursuant to the provisions of section eleven-c, article one, chapter twenty-five of this code while the employee is on duty;

(5) Any member of the armed forces of the United States or the militia of this state while the member is on duty;

(6) Any resident of another state who holds a valid permit or license to possess or carry a handgun issued by a state or a political subdivision subject to the provisions and limitations set forth in section six-a of this article;

(7) Any federal law-enforcement officer or federal police officer authorized to carry a weapon in the performance of the officer's duty;

(8) Any Hatfield-McCoy Regional Recreation Authority Ranger while the ranger is on duty; and

(9) Any parole officer appointed pursuant to section fourteen, article twelve, chapter sixty-two of this code in the performance of their duties.

(b) On and after July 1, 2013, the following judicial officers and prosecutors and staff shall be exempted from paying any application fees or licensure fees required under this article. However, on and after that same date, they shall be required to make application and satisfy all licensure and handgun safety and training requirements set forth in section four of this article before carrying a concealed handgun in this state:

(1) Any justice of the Supreme Court of Appeals of West Virginia;

(2) Any circuit judge;

(3) Any retired justice or retired circuit judge designated senior status by the Supreme Court of Appeals of West Virginia;

(4) Any family court judge;

(5) Any magistrate;

(6) Any prosecuting attorney;

(7) Any assistant prosecuting attorney; or

(8) Any duly appointed investigator employed by a prosecuting attorney. §61-7-6a. Reciprocity and recognition; out-

AFFIDAVIT EXHIBIT C   256

of-state concealed handgun permits.

(a) A valid out-of-state permit or license to possess or carry a handgun is valid in this state for the carrying of a concealed handgun, if the following conditions are met:

(1) The permit or license holder is twenty-one years of age or older;

(2) The permit or license is in his or her immediate possession;

(3) The permit or license holder is not a resident of the State of West Virginia; and

(4) The Attorney General has been notified by the Governor of the other state that the other state allows residents of West Virginia who are licensed in West Virginia to carry a concealed handgun to carry a concealed handgun in that state or the Attorney General has entered into a written reciprocity agreement with the appropriate official of the other state whereby the state agrees to honor West Virginia concealed handgun licenses in return for same treatment in this state.

(b) A holder of a valid permit or license from another state who is authorized to carry a concealed handgun in this state pursuant to provisions of this section is subject to the same laws and restrictions with respect to carrying a concealed handgun as a resident of West Virginia who is so permitted and must carry the concealed handgun in compliance with the laws of this state.

(c) A license or permit from another state is not valid in this state if the holder is or becomes prohibited by law from possessing a firearm.

(d) The West Virginia Attorney General shall seek to obtain recognition of West Virginia concealed handgun licenses and enter into and execute reciprocity agreements on behalf of the State of West Virginia with states for the recognition of concealed handgun permits issued pursuant to this article.

(e) The West Virginia State Police shall maintain a registry of states with which the State of West Virginia has entered into reciprocity agreements or which recognize West Virginia concealed handgun licenses on the criminal information network and make the registry available to law-enforcement officers for investigative purposes.

(f) Every twelve months after the effective date of this section, the West Virginia Attorney General shall make written inquiry of the concealed handgun licensing or permitting authorities in each other state as to: (i) Whether a West Virginia resident may carry a concealed handgun in their state based upon having a valid West Virginia concealed handgun permit; and (ii) whether a West Virginia resident may carry a concealed handgun in that state based upon having a valid West Virginia concealed handgun permit, pursuant to the laws of that state or by the execution of a valid reciprocity agreement between the states.

(g) The West Virginia State Police shall make available to the public a list of states which have entered into reciprocity agreements with the State of West Virginia or that allow residents of West Virginia who are licensed in West Virginia to carry a concealed handgun to carry a concealed handgun in that state. **§61-7-7. Persons prohibited from possessing firearms; classifications; reinstatement of rights to possess; offenses; penalties.**

(a) Except as provided in this section, no person shall possess a firearm, as such is defined in section two of this article, who:

(1) Has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;

(2) Is habitually addicted to alcohol;

(3) Is an unlawful user of or habitually addicted to any controlled substance;

AFFIDAVIT EXHIBIT C    257

(4) Has been adjudicated to be mentally incompetent or who has been involuntarily committed to a mental institution pursuant to the provisions of chapter twenty-seven of this code or in similar law of another jurisdiction: *Provided*, That once an individual has been adjudicated as a mental defective or involuntarily committed to a mental institution, he or she shall be duly notified that they are to immediately surrender any firearms in their ownership or possession: *Provided, however*, That the mental hygiene commissioner or circuit judge shall first make a determination of the appropriate public or private individual or entity to act as conservator for the surrendered property;

(5) Is an alien illegally or unlawfully in the United States;

(6) Has been discharged from the armed forces under dishonorable conditions;

(7) Is subject to a domestic violence protective order that:

(A) Was issued after a hearing of which such person received actual notice and at which such person had an opportunity to participate;

(B) Restrains such person from harassing, stalking or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C)(i) Includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) By its terms explicitly prohibits the use, attempted use or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; or

(8) Has been convicted of a misdemeanor offense of assault or battery either under the provisions of section twenty-eight, article two of this chapter or the provisions of subsection (b) or (c), section nine of said article or a federal or state statute with the same essential elements in which the victim was a current or former spouse, current or former sexual or intimate partner, person with whom the defendant has a child in common, person with whom the defendant cohabits or has cohabited, a parent or guardian, the defendant's child or ward or a member of the defendant's household at the time of the offense or has been convicted in any court of any jurisdiction of a comparable misdemeanor crime of domestic violence.

Any person who violates the provisions of this subsection shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $100 nor more than $1,000 or confined in the county jail for not less than ninety days nor more than one year, or both.

(b) Notwithstanding the provisions of subsection (a) of this section, any person:

(1) Who has been convicted in this state or any other jurisdiction of a felony crime of violence against the person of another or of a felony sexual offense; or

(2) Who has been convicted in this state or any other jurisdiction of a felony controlled substance offense involving a Schedule I controlled substance other than marijuana, a Schedule II or a Schedule III controlled substance as such are defined in sections two hundred four, two hundred five and two hundred six, article two, chapter sixty-a of this code and who possesses a firearm as such is defined in section two of this article shall be guilty of a felony and, upon conviction thereof, shall be confined in a state correctional facility for not more than five years or fined not more than $5,000, or both. The provisions of subsection (c) of this section shall not apply to persons convicted of offenses referred to in this subsection or to persons convicted of a violation of this subsection.

(c) Any person prohibited from possessing a firearm by the provisions of subsection (a) of this section may petition the

circuit court of the county in which he or she resides to regain the ability to possess a firearm and if the court finds by clear and convincing evidence that the person is competent and capable of exercising the responsibility concomitant with the possession of a firearm, the court may enter an order allowing the person to possess a firearm if such possession would not violate any federal law: *Provided,* That a person prohibited from possessing a firearm by the provisions of subdivision (4), subsection (a) of this section may petition to regain the ability to possess a firearm in accordance with the provisions of section five, article seven-a of this chapter.

(d) Any person who has been convicted of an offense which disqualifies him or her from possessing a firearm by virtue of a criminal conviction whose conviction was expunged or set aside or who subsequent thereto receives an unconditional pardon for said offense shall not be prohibited from possessing a firearm by the provisions of the section. §61-7-8. **Possession of deadly weapons by minors; prohibitions.**
Notwithstanding any other provision of this article to the contrary, a person under the age of eighteen years who is not married or otherwise emancipated shall not possess or carry concealed or openly any deadly weapon: *Provided,* That a minor may possess a firearm upon premises owned by said minor or his family or on the premises of another with the permission of his or her parent or guardian and in the case of property other than his or her own or that of his family, with the permission of the owner or lessee of such property: *Provided, however,* That nothing in this section shall prohibit a minor from possessing a firearm while hunting in a lawful manner or while traveling from a place where he or she may lawfully possess a deadly weapon, to a hunting site, and returning to a place where he or she may lawfully possess such weapon.

A violation of this section by a person under the age of eighteen years shall subject the child to the jurisdiction of the circuit court under the provisions of article five, chapter forty-nine of this code, and such minor may be proceeded against in the same manner as if he or she had committed an act which if committed by an adult would be a crime, and may be adjudicated delinquent.

### §61-7-9. Possession of machine guns, penalties.
It shall be unlawful for any person to carry, transport, or have in his possession, any machine gun, submachine gun, or any other fully automatic weapon unless he or she has fully complied with applicable federal statutes and all applicable rules and regulations of the secretary of the treasury of the United States relating to such firearms.

Any person who violates the provision of this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than one thousand dollars nor more than five thousand dollars, or shall be confined in the county jail for not less than ninety days, or more than one year, or both.

### §61-7-10. Display of deadly weapons for sale or hire; sale to prohibited persons; penalties.
(a) A person may not publicly display and offer for rent or sale, or, where the person is other than a natural person, knowingly permit an employee thereof to publicly display and offer for rent or sale, to any passersby on any street, road or alley, any deadly weapon, machine gun, submachine gun or other fully automatic weapon, any rifle, shotgun or ammunition for same.

(b) Any person who violates the provisions of subsections (a) or (c) of this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than $5,000 or shall be confined in the county jail for not more than one year, or both fined and confined, except that where the person violating the provisions of said subsections is other than a natural person, such person shall be fined not more than $10,000.

(c) A person may not knowingly sell, rent, give or lend, or, where the person is other than a natural person, knowingly permit an employee thereof to knowingly sell, rent, give or lend, any deadly weapon other than a firearm to a person prohibited from possessing a deadly weapon other than a firearm by any provision of this article.

(d) a person may not knowingly sell, rent, give or lend, or where the person is other than a natural person, knowingly permit an employee thereof to knowingly sell, rent give or lend a firearm or ammunition to a person prohibited by any provision of

AFFIDAVIT EXHIBIT C   259

this article or the provisions of 18 U.S.C. §922.

(e) Any person who violates any of the provisions of subsection (d) of this section is guilty of a felony, and, upon conviction thereof, shall be fined not more than $100,000 imprisoned in a state correctional facility for a definite term of years of not less than three years nor more than ten years, or both fined and imprisoned, except that where the person committing an offense punishable under this subsection is other than a natural person, such person shall be fined not more than $250,000.

(f) Any person who knowingly solicits, persuades, encourages or entices a licensed dealer or private seller of firearms or ammunition to transfer a firearm or ammunition under circumstances which the person knows would violate the laws of this state or the United States is guilty of a felony. Any person who willfully procures another to engage in conduct prohibited by this subsection shall be punished as a principal. This subsection does not apply to a law-enforcement officer acting in his or her official capacity. Any person who violates the provisions of this subsection is guilty of a felony, and upon conviction thereof, shall be fined not more than $5,000, imprisoned in a state correctional facility for a definite term or not less than one year nor more than five years, or both fined and imprisoned.

### §61-7-11. Brandishing deadly weapons; threatening or causing breach of the peace; criminal penalties.
It shall be unlawful for any person armed with a firearm or other deadly weapon, whether licensed to carry the same or not, to carry, brandish or use such weapon in a way or manner to cause, or threaten, a breach of the peace. Any person violating this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than fifty nor more than one thousand dollars, or shall be confined in the county jail not less than ninety days nor more than one year, or both.

### §61-7-11a. Possessing deadly weapons on premises of educational facilities; reports by school principals; suspension of driver's license; possessing deadly weapons on premises housing courts of law and in offices of family law master.

(a) The Legislature hereby finds that the safety and welfare of the citizens of this state are inextricably dependent upon assurances of safety for children attending and persons employed by schools in this state and for persons employed by the judicial department of this state. It is for the purpose of providing assurances of safety that subsections (b), (g) and (h) of this section are enacted as a reasonable regulation of the manner in which citizens may exercise the rights accorded to them pursuant to section twenty-two, article three of the Constitution of the State of West Virginia.

(b) (1) It is unlawful for a person to possess a firearm or other deadly weapon on a school bus as defined in section one, article one, chapter seventeen-a of this code, or in or on a public or private primary or secondary education building, structure, facility or grounds including a vocational education building, structure, facility or grounds where secondary vocational education programs are conducted or at a school-sponsored function.

(2) This subsection does not apply to:

(A) A law-enforcement officer acting in his or her official capacity;

(B) A person specifically authorized by the board of education of the county or principal of the school where the property is located to conduct programs with valid educational purposes;

(C) A person who, as otherwise permitted by the provisions of this article, possesses an unloaded firearm or deadly weapon in a motor vehicle or leaves an unloaded firearm or deadly weapon in a locked motor vehicle;

(D) Programs or raffles conducted with the approval of the county board of education or school which include the display of unloaded firearms;

(E) The official mascot of West Virginia University, commonly known as the Mountaineer, acting in his or her official capacity; or

AFFIDAVIT EXHIBIT C   260

(F) The official mascot of Parkersburg South High School, commonly known as the Patriot, acting in his or her official capacity.

(3) A person violating this subsection is guilty of a felony and, upon conviction thereof, shall be imprisoned in a state correctional facility for a definite term of years of not less than two years nor more than ten years, or fined not more than $5,000, or both.

(c) It is the duty of the principal of each school subject to the authority of the State Board of Education to report a violation of subsection (b) of this section discovered by the principal to the State Superintendent of Schools within seventy-two hours after the violation occurs. The State Board of Education shall keep and maintain these reports and may prescribe rules establishing policy and procedures for the making and delivery of the reports as required by this subsection. In addition, it is the duty of the principal of each school subject to the authority of the State Board of Education to report a violation of subsection (b) of this section discovered by the principal to the appropriate local office of the Division of Public Safety within seventy-two hours after the violation occurs.

(d) In addition to the methods of disposition provided by article five, chapter forty-nine of this code, a court which adjudicates a person who is fourteen years of age or older as delinquent for a violation of subsection (b) of this section may, in its discretion, order the Division of Motor Vehicles to suspend a driver's license or instruction permit issued to the person for a period of time as the court considers appropriate, not to extend beyond the person's nineteenth birthday. Where the person has not been issued a driver's license or instruction permit by this state, a court may order the Division of Motor Vehicles to deny the person's application for a license or permit for a period of time as the court considers appropriate, not to extend beyond the person's nineteenth birthday. A suspension ordered by the court pursuant to this subsection is effective upon the date of entry of the order. Where the court orders the suspension of a driver's license or instruction permit pursuant to this subsection, the court shall confiscate any driver's license or instruction permit in the adjudicated person's possession and forward to the Division of Motor Vehicles.

(e) (1) If a person eighteen years of age or older is convicted of violating subsection (b) of this section, and if the person does not act to appeal the conviction within the time periods described in subdivision (2) of this subsection, the person's license or privilege to operate a motor vehicle in this state shall be revoked in accordance with the provisions of this section.

(2) The clerk of the court in which the person is convicted as described in subdivision (1) of this subsection shall forward to the commissioner a transcript of the judgment of conviction. If the conviction is the judgment of a magistrate court, the magistrate court clerk shall forward the transcript when the person convicted has not requested an appeal within twenty days of the sentencing for the conviction. If the conviction is the judgment of a circuit court, the circuit clerk shall forward a transcript of the judgment of conviction when the person convicted has not filed a notice of intent to file a petition for appeal or writ of error within thirty days after the judgment was entered.

(3) If, upon examination of the transcript of the judgment of conviction, the commissioner determines that the person was convicted as described in subdivision (1) of this subsection, the commissioner shall make and enter an order revoking the person's license or privilege to operate a motor vehicle in this state for a period of one year or, in the event the person is a student enrolled in a secondary school, for a period of one year or until the person's twentieth birthday, whichever is the greater period. The order shall contain the reasons for the revocation and the revocation period. The order of suspension shall advise the person that because of the receipt of the court's transcript, a presumption exists that the person named in the order of suspension is the same person named in the transcript. The commissioner may grant an administrative hearing which substantially complies with the requirements of the provisions of section two, article five-a, chapter seventeen-c of this code upon a preliminary showing that a possibility exists that the person named in the notice of conviction is not the same person whose license is being suspended. The request for hearing shall be made within ten days after receipt of a copy of the order of suspension. The sole purpose of this hearing is for the person requesting the hearing to present evidence that he or she is not the person named in the notice. If the commissioner grants an administrative hearing, the commissioner

shall stay the license suspension pending the commissioner's order resulting from the hearing.

(4) For the purposes of this subsection, a person is convicted when such person enters a plea of guilty or is found guilty by a court or jury.

(f) (1) It is unlawful for a parent, guardian or custodian of a person less than eighteen years of age who knows that the person is in violation of subsection (b) of this section or has reasonable cause to believe that the person's violation of subsection (b) is imminent, to fail to immediately report his or her knowledge or belief to the appropriate school or law-enforcement officials.

(2) A person violating this subsection is guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $1,000, or shall be confined in jail not more than one year, or both.

(g) (1) It is unlawful for a person to possess a firearm or other deadly weapon on the premises of a court of law, including family courts.

(2) This subsection does not apply to:

(A) A law-enforcement officer acting in his or her official capacity; and

(B) A person exempted from the provisions of this subsection by order of record entered by a court with jurisdiction over the premises or offices.

(3) A person violating this subsection is guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $1,000, or shall be confined in jail not more than one year, or both.

(h) (1) It is unlawful for a person to possess a firearm or other deadly weapon on the premises of a court of law, including family courts, with the intent to commit a crime.

(2) A person violating this subsection is guilty of a felony and, upon conviction thereof, shall be imprisoned in a state correctional facility for a definite term of years of not less than two years nor more than ten years, or fined not more than $5,000, or both.

(i) Nothing in this section may be construed to be in conflict with the provisions of federal law. **§61-7-12. Wanton endangerment involving a firearm.**
Any person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary for a definite term of years of not less than one year nor more than five years, or, in the discretion of the court, confined in the county jail for not more than one year, or fined not less than two hundred fifty dollars nor more than two thousand five hundred dollars, or both.

For purposes of this section, the term "firearm" shall have the same meaning ascribed to such term as set forth in section two of this article.

**§61-7-13.**
Repealed.

Acts, 1990 Reg. Sess., Ch. 148.

**§61-7-14. Right of certain persons to limit possession of firearms on premises.**
Notwithstanding the provisions of this article, any owner, lessee or other person charged with the care, custody and control of real property may prohibit the carrying openly or concealed of any firearm or deadly weapon on property under his or her

domain: *Provided,* That for purposes of this section "person" means an individual or any entity which may acquire title to real property.

Any person carrying or possessing a firearm or other deadly weapon on the property of another who refuses to temporarily relinquish possession of such firearm or other deadly weapon, upon being requested to do so, or to leave such premises, while in possession of such firearm or other deadly weapon, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than one thousand dollars or confined in the county jail not more than six months, or both: *Provided,* That the provisions of this section shall not apply to those persons set forth in subsections (3) through (6) of section six of this code while such persons are acting in an official capacity: *Provided, however,* That under no circumstances may any person possess or carry or cause the possession or carrying of any firearm or other deadly weapon on the premises of any primary or secondary educational facility in this state unless such person is a law-enforcement officer or he or she has the express written permission of the county school superintendent.

### §61-7-15. Persons prohibited from committing violent crime while wearing body armor; penalties.

(a) A person who wears or is otherwise equipped with body armor while committing a felony offense, an element of which is force, the threat of force, physical harm to another or the use or presentment of a firearm or other deadly weapon, is guilty of a felony and, upon conviction thereof, shall be confined in a correctional facility for not less than two nor more than ten years or fined not more than ten thousand dollars, or both.

(b) As used in this section, "body armor" means a jacket, vest, or other similar apparel or device constructed to provide ballistic resistance to penetration and deformation and intended to protect the human torso against gunfire. The term may include, but is not limited to, apparel that incorporates inserts, or variations in construction of the ballistic panel over small areas of the torso, for the purpose of increasing the basic level of protection of the armor (whether ballistic or blunt trauma) on localized areas. Body armor may be constructed of Kevlar or other similar fabric and may be reinforced with other materials. Body armor may incorporate "threat" or "trauma" plates (which are inserts that fit into the vest that will stop more powerful rounds) or may, as "threat armor", incorporate hard panels.

*Note: WV Code updated with legislation passed through the 2013 1st Special Session*
*The WV Code Online is an unofficial copy of the annotated WV Code, provided as a convenience. It has NOT been edited for publication, and is not in any way official or authoritative.*

Please return by November 22, 2013



| Yes | No | | |
|---|---|---|---|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Thomas Bellavia

**Name**

Assistant Attorney General
**Title**

11/22/2013
**Date**

608-266-8690
**Telephone**

Wisconsin Department of Justice
**State Agency Department**

P.O. Box 7857
**Address**

Madison, WI 53707-7857
**City, State, Zip**

bellaviatc@doj.state.wi.us
**Email**



Fw: Concealed carry reciprocity questionnaire
Jessica Trame
to:
Peggy Thompson
11/24/2013 06:13 PM
Hide Details
From: Jessica Trame/IlStPolice
To: "Peggy Thompson" <

1 Attachment



2013 11-22 Completed Form.pdf

Please print.
---------------------------
Jessica Trame
Bureau Chief, Firearm Services Bureau
Illinois State Police
217.782.5015

---

**From:** "Bellavia, Thomas C." |
**Sent:** 11/24/2013 04:09 PM CST
**To:** "'Jessica.Trame@isp.state.il.us'"
**Subject:** Concealed carry reciprocity questionnaire

Dear Ms. Trame:

On October 30, 2013, Illinois State Police ("ISP") Director Hiram Grau sent to Wisconsin Attorney General J.B. Van Hollen a letter requesting information related to potential concealed carry reciprocity between Illinois and Wisconsin. Accompanying the letter was a response form, which I have been asked to complete and return to the ISP. Your name and email address were provided as ISP contact regarding this matter.

Please find attached to this email a scanned version of the completed response form. The original hard copy of the completed form will be sent out via regular mail early this coming week.

Thank you for your attention to this matter.

Thomas C. Bellavia
Assistant Attorney General
Wisconsin Department of Justice
608/266-8690

FAX 608/267-2223

**IMPORTANT NOTICE:** This communication, along with any attachments, may contain confidential attorney work product and/or confidential information protected by the attorney-client privilege. This material is not intended for transmission to, or receipt by, any unauthorized persons. If you are not the intended recipient, please reply to the sender that have you have received this message in error and then delete it.



**STATE OF WISCONSIN
DEPARTMENT OF JUSTICE**

RECEIVED

DEC  4 2013

Firearms Services Bureau
Illinois State Police

J.B. VAN HOLLEN
ATTORNEY GENERAL

Kevin M. St. John
Deputy Attorney General

17 W. Main Street
P.O. Box 7857
Madison, WI 53707-7857
www.doj.state.wi.us

Thomas C. Bellavia
Assistant Attorney General
608/266-8690
bellaviatc@doj.state.wi.us
FAX 608/267-2223

December 2, 2013

Mr. Hiram Grau
Director
Illinois State Police
Post Office Box 19461
Springfield, IL  62794-9461

Dear Mr. Grau:

     On October 30, 2013, you sent to Wisconsin Attorney General J.B. Van Hollen a letter and questionnaire seeking information related to potential concealed carry reciprocity between Illinois and Wisconsin. You will please find enclosed a completed copy of the questionnaire. A copy of the completed questionnaire has also been sent via email to Bureau Chief Jessica Trame.

     Please feel free to contact me if I may be of further assistance. Thank you for your attention to this matter.

Sincerely,

s/Thomas C. Bellavia

Thomas C. Bellavia
Assistant Attorney General

TCB:khc

Enclosure

c:    Jessica Trame (via email)

bellaviatc\ag correspondence\grau - Isis 131101006\2013 12-02 grau resp ltr.docx

<u>Please return by November 22, 2013</u>



RECEIVED

DEC  4 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms?<br><br>If yes, what is the effective date? (          ) Please provide a copy of the legislative language. |

7 .

s/Thomas C. Bellavia
Name

Assistant Attorney General
Title

11/22/2013
Date

608 - 266 - 8690
Telephone

Wisconsin Department of Justice
State Agency Department

P.O. Box 7857
Address

Madison, WI 53707-7857
City, State, Zip

bellaviatc@doj.state.wi.us
Email

AFFIDAVIT EXHIBIT C   267

Please return by November 22, 2013



RECEIVED

NOV 2 6 2013

Firearms Services Bureau
ILLINOIS STATE POLICE

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____   Please provide a copy of the legislative language.

s/Thomas C. Bellavia

Name

Assistant Attorney General
Title

11/22/2013
Date

608-266-8690
Telephone

Wisconsin Department of Justice
State Agency Department

P.O. Box 7857
Address

Madison, WI 53707-7857
City, State, Zip

bellaviatc@doj.state.wi.us
Email

Please return by November 22, 2013



RECEIVED

NOV 19 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☐ | ☑ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Christoper Lynch
_____
Name

Criminal Records Analyst
_____
Title

11/12/2013
_____
Date

(307) 777-5369
_____
Telephone

Wyoming Division Criminal Inv.
_____
State Agency Department

208 South College Dr.
_____
Address

Cheyenne WY 82002-0150
_____
City, State, Zip

Christopher.lynch@wyo.gov
_____
Email

AFFIDAVIT EXHIBIT C   269

| State | Substantially Similar | Regulates Who May Carry Firearms In Public | Reports Persons Authorized to Carry Firearms through Nlets- National Law Enforcement Telecommunications System | Reports Denied Persons to NICS- National Instant Criminal Background Check System | Prohibits Voluntary Mental Health Admissions Last 5 Years | Prohibits All Involuntary Mental Health Admissions |
|---|---|---|---|---|---|---|
| ALABAMA | | ✓ | | ✓ | | ✓ |
| ALASKA | | ✓ | ✓ | ✓ | | |
| ARIZONA | | ✓ | ✓ | ✓ | | ✓ |
| ARKANSAS | | ✓ | | ✓ | ✓ | ✓ |
| CALIFORNIA | | ✓ | | ✓ | ✓ | ✓ |
| COLORADO | *no response* | | | | | |
| CONNECTICUT | | ✓ | | ✓ | | ✓ |
| DELAWARE | | ✓ | | ✓ | | |
| FLORIDA | | ✓ | ✓ | ✓ | | ✓ |
| GEORGIA | | ✓ | | ✓ | | ✓ |
| **HAWAII** | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| IDAHO | | ✓ | ✓ | ✓ | | ✓ |
| INDIANA | | ✓ | ✓ | ✓ | | ✓ |
| IOWA | | ✓ | | ✓ | | ✓ |
| KANSAS | | ✓ | ✓ | ✓ | | ✓ |
| KENTUCKY | | ✓ | ✓ | | | |
| LOUISIANA | | ✓ | ✓ | | | |
| MAINE | *no response* | | | | | |
| MARYLAND | *no response* | | | | | |
| MASSACHUSETTS | *no response* | | | | | |
| MICHIGAN | | ✓ | ✓ | ✓ | | ✓ |
| MINNESOTA | | ✓ | | | | |
| MISSISSIPPI | | ✓ | | ✓ | ✓ | ✓ |
| MISSOURI | | ✓ | | ✓ | | ✓ |
| MONTANA | | ✓ | ✓ | | | |
| NEBRASKA | | ✓ | ✓ | ✓ | | ✓ |
| NEVADA | *no response* | | | | | |
| NEW HAMPSHIRE | | ✓ | | | | |
| NEW JERSEY | | ✓ | | ✓ | | ✓ |
| **NEW MEXICO** | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| NEW YORK | | ✓ | | ✓ | | ✓ |
| NORTH CAROLINA | | ✓ | | ✓ | | ✓ |
| NORTH DAKOTA | | ✓ | ✓ | ✓ | | ✓ |
| OHIO | | ✓ | ✓ | ✓ | | ✓ |
| OKLAHOMA | | ✓ | ✓ | | | |
| OREGON | | ✓ | | ✓ | | ✓ |
| PENNSYLAVNIA | *no response* | | | | | |
| RHODE ISLAND | *no response* | | | | | |
| **SOUTH CAROLINA** | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| SOUTH DAKOTA | | ✓ | ✓ | | | |

AFFIDAVIT EXHIBIT D

| State | Substantially Similar | Regulates Who May Carry Firearms In Public | Reports Persons Authorized to Carry Firearms through Nlets- National Law Enforcement Telecommunications System | Reports Denied Persons to NICS- National Instant Criminal Background Check System | Prohibits Voluntary Mental Health Admission Last 5 Years | Prohibits All Involuntary Mental Health Admissions |
|---|---|---|---|---|---|---|
| TENNESEE | | ✓ | ✓ | | | ✓ |
| TEXAS | | ✓ | ✓ | ✓ | | ✓ |
| UTAH | | ✓ | | ✓ | | ✓ |
| VERMONT | | ✓ | | ✓ | | ✓ |
| VIRGINIA | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| WASHINGTON | | ✓ | ✓ | ✓ | | ✓ |
| WASHINGTON D.C. | | | | ✓ | ✓ | ✓ |
| WEST VIRGINIA | | ✓ | | ✓ | | ✓ |
| WISCONSIN | | ✓ | ✓ | ✓ | | ✓ |
| WYOMING | | ✓ | ✓ | | | |

*Revised: August 28, 2014*

AFFIDAVIT EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| KEVIN W. CULP, MARLOW DAVIS, ) | |
| FREDDIE REED-DAVIS, ) | |
| DOUGLAS W. ZYLSTRA, ) | |
| JOHN S. KOLLER, STEVE STEVENSON, ) | |
| PAUL HESLIN, MARLIN MANGELS, ) | |
| GUS C. BROWNE II, ) | |
| JEANELLE WESTROM, ) | |
| SECOND AMENDMENT FOUNDATION, ) | |
| INC., ILLINOIS CARRY and ) | |
| ILLINOIS STATE RIFLE ASSOCIATION, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | Case No. 3:14-CV-3320-SEM-TSH |
| ) | |
| LISA MADIGAN, in her Official Capacity ) | |
| as Attorney General of the State of Illinois; ) | |
| HIRAM GRAU, in his Official Capacity as ) | |
| Director of the Illinois State Police, and ) | |
| JESSICA TRAME, as Bureau Chief of the ) | |
| Illinois State Police Firearms Services ) | |
| Bureau, ) | |
| ) | |
| Defendants. ) | |

### PLAINTIFF GUS C. BROWNE, II'S F.R.CIV. P. 41(a)(1)(A)
### AGREED MOTION TO VOLUNTARILY DISMISS

COMES NOW the Plaintiff, GUS C. BROWNE II only, by and through

undersigned counsel, and moves for the entry of an order, pursuant to F.R.Civ.P.

41(a)(1)(A), voluntarily dismissing him from this lawsuit, with the remainder of the

Plaintiffs and their claims in this suit to proceed unaffected.

A Stipulation to this dismissal, pursuant to F.R.Civ.P. 41(a)(1)(A)(ii) is

attached hereto.

Dated: September 11, 2015                    Respectfully submitted,

                                    By: _____ /s/ David G. Sigale _____
                                              David G. Sigale

                                    Attorney for Plaintiffs


David G. Sigale, Esq. (#6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
Tel:  630.452.4547
Fax:  630.596.4445
dsigale@sigalelaw.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | |
|---|---|
| KEVIN W. CULP, MARLOW DAVIS, )<br>FREDDIE REED-DAVIS, )<br>DOUGLAS W. ZYLSTRA, )<br>JOHN S. KOLLER, STEVE STEVENSON, )<br>PAUL HESLIN, MARLIN MANGELS, )<br>GUS C. BROWNE II, )<br>JEANELLE WESTROM, )<br>SECOND AMENDMENT FOUNDATION, )<br>INC., ILLINOIS CARRY and )<br>ILLINOIS STATE RIFLE ASSOCIATION, )<br>)<br>Plaintiffs, )<br>v. )<br>)<br>LISA MADIGAN, in her Official Capacity )<br>as Attorney General of the State of Illinois; )<br>HIRAM GRAU, in his Official Capacity as )<br>Director of the Illinois State Police, and )<br>JESSICA TRAME, as Bureau Chief of the )<br>Illinois State Police Firearms Services )<br>Bureau, )<br>)<br>Defendants. ) | Case No. 3:14-CV-3320-SEM-TSH |

## F.R.CIV. P. 41(a)(1)(A)(ii) STIPULATION TO DISMISS
## PLAINTIFF GUS C. BROWNE, II

Plaintiffs and Defendants, through their undersigned attorneys, hereby stipulate pursuant to F.R.Civ.P. 41(a)(1)(A) that Plaintiff Gus C. Browne, II, shall be voluntarily dismissed from this matter.  The remainder of the parties and claims shall proceed unaffected.
.
Respectfully submitted this 11th day of September, 2015.


/s/ David G. Sigale                          /s/ Joshua D. Ratz
Law Firm of David G. Sigale, P.C.            Office of the Illinois Attorney General
Attorney for Plaintiffs                      Attorney for Defendants

## <u>CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING</u>

The undersigned certifies that:

     1.    On September 11, 2015, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system; and

     2.    Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.


By:   /s/ David G. Sigale         
                  Attorney for Plaintiffs


David G. Sigale, Esq. (#6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
Tel:  630.452.4547
Fax:  630.596.4445
dsigale@sigalelaw.com

*Attorney for Plaintiffs*

2

275

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

KEVIN W. CULP, et al.,          )
                                )
          Plaintiff,            )
vs.                             )          No.: 14-3320
                                )
LISA MADIGAN, et al.,           )
                                )
          Defendants.           )

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME Defendants, LISA MADIGAN, in her Official Capacity as Attorney

General of the State of Illinois, LEO SCHMITZ,[1] in his Official Capacity as Director of the

Illinois State Police, and JESSICA TRAME, in her Official Capacity as Bureau Chief of the

Illinois State Police Firearms Services Bureau, by and through their attorney, Lisa Madigan,

Attorney General of Illinois, and pursuant to Fed R. Civ. P. 56, move for summary judgment,

stating as follows:

## INTRODUCTION

Plaintiffs seek a permanent injunction barring enforcement of the residency requirement

of the Firearm Concealed Carry Act (430 ILCS 66/1 *et seq.*), thereby permitting the plaintiffs

and their members to apply for an Illinois concealed carry license. The Carry Act permits

nonresidents to apply, pursuant to rules of the Illinois State Police ("ISP"), for a concealed carry

license if the nonresident is a resident of a state or U.S. territory with laws related to firearm

ownership, possession, and carrying that are substantially similar to Illinois' requirements.

Currently, Hawaii, New Mexico, South Carolina, and Virginia are "substantially similar," based

---

[1] Leo Schmitz is automatically substituted in pursuant Rule 25(d) of the Federal Rules of Civil
Procedure as the current Director of the Illinois State Police, replacing former Director Hiram
Grau.

on information provided by the jurisdictions in response to ISP's request for information and review of their laws. Plaintiffs maintain Illinois' regulations constitute an unconstitutional ban on the carrying or possession of firearms as applied to nonresidents from states that are not deemed substantially similar. The challenged regulations are reasonably related to Illinois' important and substantial interest in protecting the public by ensuring initial and continued eligibility for concealed carry licenses and Illinois' related interest in obtaining information necessary to make those determinations. The challenged regulations are, therefore, constitutional. Accordingly, Defendants request judgment in their favor.

## UNDISPUTED MATERIAL FACTS

1.      The individual plaintiffs are residents of Wisconsin, Colorado, Missouri, Iowa, Pennsylvania, or Indiana. (Docs. 18-1, 18-3, 18-4, 19, 19-1, 19-2, 19-3.)

2.      Pursuant to 20 Ill. Admin. Code § 1231.110(c), ISP sent surveys to other jurisdictions requesting information about their firearm laws to determine whether those jurisdictions had "substantially similar" firearm laws. (Ex. 1, Affidavit of Trame at ¶¶ 26–29.)

3.      ISP asked whether the jurisdiction regulated who may carry firearms in public, reported via national databases persons authorized to carry and persons denied, and prohibited persons voluntarily (in the last five years) or involuntarily admitted to mental health facilities from possessing or using firearms. (Ex. 1 at ¶ 27 & Aff. Exs. C–D.)

4.      ISP has determined that Hawaii, New Mexico, South Carolina, and Virginia are "substantially similar," based on information provided by the jurisdictions in response to ISP's request for information and review of those states' laws. (Ex. 1 at ¶¶ 26–28.)[2]

---

[2] Although New Mexico and Virginia each indicated in response to ISP's request that they did not have a mechanism to track voluntary mental health admissions for the purpose of revoking or approving concealed carry licenses, they each acknowledged that they prohibit firearm use or

5.      Colorado, Maine, Maryland, Massachusetts, Nevada, Pennsylvania, and Rhode Island did not respond to Illinois' requests. (Ex. 1 at ¶ 27 & Aff. Exs. C–D.)

6.      The remaining jurisdictions stated they did not have laws or procedures concerning one or more of the criteria. (Ex. 1 at ¶¶ 28–29 & Aff. Exs. C–D.)

7.      Relevant to the Plaintiffs' states of residence, Indiana, Iowa, Missouri, and Wisconsin stated they did not prohibit use or possession of firearms based on voluntary admissions to mental health facilities in the last five years and did not have a mechanism of tracking that information for their residents. (Ex. 1 at ¶ 29.)

8.      Iowa and Missouri also reported they do not participate in reporting licenses via the National Law Enforcement Telecommunications System, one of the systems used by Illinois to assess firearm qualifications and monitor continued qualifications. (Ex. 1 at ¶¶ 6, 10, 13, 14, 28–29.)

9.       ISP verifies eligibility for FOID cards and concealed carry licenses and monitors continued eligibility for those licenses via federal electronic systems, Illinois electronic systems, Department of Human Services' FOID Mental Health System and other systems, Illinois Secretary of State files, ISP's Computerized Hot Files system, and local sources. (Ex. 1 at ¶¶ 6–7, 9, 11, 17, 21.)

---

possession based on voluntary mental health admission within the last five years. This, coupled with each State's acknowledgement that it issues concealed carry licenses, participates in reporting those licenses via NLETS, and reports all involuntary or adjudicated mental health admissions to NICS is sufficient to qualify as "substantially similar" under 20 Ill. Admin. Code § 1231.10 (state substantially similar if it "regulates who may carry firearms, concealed or otherwise, in public; prohibits all who have involuntary mental health admissions, and those with voluntary admissions within the past 5 years, from carrying firearms, concealed or otherwise, in public; reports denied persons to NICS; and participates in reporting persons authorized to carry firearms, concealed or otherwise, in public through NLETS").

10.     All Illinois concealed carry license holders are checked daily for new prohibitors that would disqualify the licensee from having a concealed carry license or FOID card. (Ex. 1 at ¶ 21.)

11.     Illinois Circuit Clerks, physicians, mental health providers, law enforcement personnel, school administrators, and DHS are required to report to ISP or applicable state or federal systems information concerning voluntary or involuntary mental health commitments and information that would indicate an individual presents a danger to herself or others or that would otherwise warrant denial or revocation of a license. (Ex. 1 at ¶¶ 22–24.)

12.     ISP does not have access, however, to state and local criminal history, identification, and mental health files of other jurisdictions outside Illinois, unless those jurisdictions make such information available through federal systems, such as the National Instant Criminal Background Check System (NICS) or the National Law Enforcement Telecommunications System (NLETS). (Ex. 1 at ¶¶ 10, 12, 14–15, 18–20, 22–25.)

13.     Although Illinois may request records from other jurisdictions, responses often require substantial fees for which ISP lacks funding and further require significant additional time to process. (Ex. 1 at ¶¶ 12, 30 & Aff. Ex. B.)

14.     Some jurisdictions fail to even respond to requests for information. (Ex. 1 at ¶ 27 & Aff. Exs. C–D.)

15.     Illinois cannot effectively monitor nonresidents' qualifications unless the nonresidents' home states monitor those individuals via firearm laws substantially similar to Illinois and report that information to federal databases. (*See generally* Ex. 1.)

16.     Out-of-state mental health providers and law enforcement agencies do not share the reporting obligations of their Illinois counterparts, and out-of-state criminal and

mental health databases are not necessarily accessible to ISP or sufficiently comprehensive for Illinois licensing purposes. (*See generally* Ex. 1.)

17.     Further, information on disqualifying out-of-state mental health conditions, arrests, and prosecutions is not reliably available through national databases. (Ex. 1 at ¶¶ 9–25.)

18.     Out-of-state mental health providers and law enforcement officials are under no obligation to notify Illinois should they discover a nonresident's disqualifying condition (so that an undeserved license can be revoked) and do not have the knowledge of Illinois law necessary to identify such a condition. (Ex. 1 at ¶¶ 16–25.)

19.     Relevant to the individual Plaintiffs, Indiana, Iowa, Missouri, and Wisconsin report they do not track voluntary admissions to mental health facilities. (Ex. 1 at Aff. Ex. C.)

20.     Iowa and Missouri report they do not participate in reporting through NLETS. (Ex. 1 at Aff. Ex. C.)

21.     Due to significant increases in time and resources necessary to properly research nonresident applicants from states lacking firearm laws and reporting requirements substantially similar to Illinois, and due to an inability to obtain essential information concerning those nonresident applicants in a timely fashion, or even at all, ISP is unable to hold those nonresident applicants to the same background and monitoring standards necessary to ensure continued eligibility for concealed carry licenses in order to protect the public. (Ex. 1 at ¶ 30; *id.*, *generally.*)

## ARGUMENT

A memorandum of law in support of this motion is submitted herewith and incorporated herein.

WHEREFORE, Defendants request this honorable Court enter judgment in favor of

Defendants and against Plaintiffs.

Respectfully submitted,

Joshua D. Ratz, # 6293615
Assistant Attorney General
500 South Second Street
Springfield, IL 62706
Phone: (217) 557-0261
Fax: (217) 524-5091
E-Mail: jratz@atg.state.il.us

LISA MADIGAN, in her Official Capacity as
Attorney General of the State of Illinois, LEO
SCHMITZ,  in his Official Capacity as
Director of the Illinois State Police, and
JESSICA TRAME, in her Official Capacity as
Bureau Chief of the Illinois State Police
Firearms Services Bureau,

Defendants,

LISA MADIGAN, Attorney General, State of
Illinois,

Attorney for Defendants.

By: s/ Joshua D. Ratz_____
          Joshua D. Ratz, # 6293615
          Assistant Attorney General

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

KEVIN W. CULP, et al.,                )
                                      )
          Plaintiff,                  )
                                      )
vs.                                   )          Civil Action No.: 14-3320
                                      )
LISA MADIGAN, et al.,                 )
                                      )
          Defendants.                 )

### CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2015 the foregoing Defendants' Motion for Summary Judgment was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing(s) to the following:

> David G. Sigale
> dsigale@sigalelaw.com

                              Respectfully submitted,

                              s/ Joshua D. Ratz
                              Joshua D. Ratz, Bar Number 6293615
                              Assistant Attorney General
                              500 South Second Street
                              Springfield, IL 62706
                              Phone: (217) 557-0261
                              Fax: (217) 524-5091
                              E-Mail: jratz@atg.state.il.us

| | | |
|---|---|---|
| STATE OF ILLINOIS | ) | Culp v. Madigan, 14-3320 |
| | ) | |
| COUNTY OF SANGAMON | ) | USDC-CDIL |

## <u>AFFIDAVIT</u>

I, JESSICA TRAME, upon oath, depose and state that I have personal knowledge of the statements contained in this Affidavit; I understand the contents of this affidavit to be true and correct; I am competent to testify; and if called to testify, I would testify as follows:

1.      I am employed as the Bureau Chief of the Firearms Services Bureau (FSB or Bureau) of the Illinois State Police (ISP) and have served in that capacity since February 2012.

2.      In my capacity as Bureau Chief, I am responsible for administering the Firearm Owner's Identification (FOID) Program, the Firearms Transfer Inquiry Program, and the Concealed Carry Licensing (CCL) Program, and I am familiar with the protocols and procedures of each program.

3.      To qualify for a CCL, an Illinois resident must be eligible for and currently have a valid FOID Card.  A non-resident does not need a valid FOID card to qualify for a CCL, but the Bureau is responsible for ensuring that a non-resident CCL applicant would meet the eligibility criteria to obtain a FOID card if he or she was an Illinois resident.  The goal is to ensure that residents and non-residents are subject to the same substantive requirements to qualify for a CCL.

**<u>CCL Application Processing</u>**

4.      In processing CCL applications, the Bureau performs an extensive background check on each applicant, as required by the FOID Card Act and Firearm Concealed Carry Act.

5.      The first phase of the process is a quality check of the application to ensure the application is complete and not missing any required information. This step also includes verification of identity.

6.      If there are no errors and the name, address, and other personal identifying information is validated, the application is moved to the eligibility determination phase. A background check is performed, including queries of national systems such as the National Crime Information Center (NCIC), National Instant Criminal Background Check System (NICS), Interstate Identification Index (III), Immigration and Customs Enforcement (ICE), the National Law Enforcement Telecommunications System (NLETS), and Illinois systems, including the Criminal History Record Information (CHRI) System, driver's license or identification systems maintained by the Secretary of State (SOS) and the Computerized Hot Files system, a central online repository for numerous officer and public safety information repositories, maintained by ISP.

Exhibit 1   283

7.      In addition to the processes described above, the applicant's information is made available to Illinois law enforcement agencies, which may submit an objection to a CCL applicant based upon a reasonable suspicion that the applicant is a danger to himself, herself, or others, or is a threat to public safety. If a law enforcement objection is received, the CCL application is referred to the Concealed Carry Licensing Review Board, which reviews information submitted by the objecting law enforcement agency and the applicant.  If the Board determines by a preponderance of the evidence that the applicant poses a danger to himself , herself, or others, or is a threat to public safety, then the Board affirms the objection of the law enforcement agency and notifies the Bureau that the applicant is ineligible for a license.

8.      These various background check processes are intended to ensure public safety by identifying persons who are unqualified to carry firearms as responsible citizens.

**Difficulties Verifying Non-Resident Applicants' Identities**

9.      As discussed above, the Bureau must verify a CCL applicant's identity while processing the application. For Illinois residents, an applicant's identity is verified through use of the Illinois Secretary of State's (SOS) driver's license or state ID systems to cross-reference the applicant's name, address, photo, and signature.

10.      ISP does not have direct access to other states' driver's license, state ID or similar databases.  To verify a non-resident's identity, the Bureau must rely on NLETS to check the validity of an out of state driver's license, including personal identifiers of the individual and address. Currently, ISP is not able to receive identifying photographs or signatures from NLETS, but has contracted for development of a system that will allow ISP to access this information from NLETS. Arizona, California, Colorado, Kansas, New York, New Hampshire, Oklahoma, South Carolina, and the District of Columbia do not currently make images available to NLETS, however.

**Difficulties Verifying Non-Resident Criminal History**

11.      The Bureau must verify that a CCL applicant's criminal history does not render the applicant ineligible for a CCL.  For Illinois residents, the Bureau is able to locate criminal history through Illinois' Criminal History Record Inquiry, a system maintained by ISP, from the Computerized Hot Files, and from federal systems.

12.      The Firearm Services Bureau does not have direct access to other states' local or state criminal history databases, so the Bureau relies on federal databases to obtain criminal history information.  Many states provide the federal databases with only a summary of an arrest, which will often be inadequate to assess the applicant's eligibility for a CCL. If a criminal record from the federal database is incomplete, ISP may request a record from the States' Identification Bureau or from the local jurisdiction, but many jurisdictions, including Los Angeles County, California; Milwaukee County, Wisconsin; and, Jackson County, Mississippi, charge for records,

Exhibit 1   284

and ISP does not have funds appropriated to pay for the record. As an example, attached hereto as Affidavit Exhibit A is a printout from the III dated August 17, 2015, redacted for identifying information, of an individual arrested in Mississippi in 2005 and charged with looting, a felony. The information does not disclose the disposition of the charge, however. After requesting criminal history information from Mississippi, ISP received a facsimile transmission, attached hereto as Affidavit Exhibit B, refusing ISP's request for lack of fees. Per the Jackson County Circuit Clerk, Pascagoula, MS, a search of the two criminal courts in Jackson County for the ten-year period (the applicant was arrested in 2005) requires a fee of $20.00. To obtain information from the two civil courts, an additional $20.00 is required. If ISP needed to search information for a twenty-year period in all four courts, a fee of $80.00 is required. This also assumes, of course, that the only relevant information regarding the applicant exists in Jackson County, MS and not other jurisdictions in the state.

13.     ISP uses NLETS to determine if the nonresident applicant's state-issued CCL is valid and to check the continued validity of the home-state-issued CCL every 90 days. NCIC is the mechanism criminal justice agencies use to access over 13 million active records. The NCIC database consists of 21 files, including 14 "persons" files including the National Sex Offender Registry, Foreign Fugitives, Immigration Violations, Mission Persons, Orders of Protection, and Wanted Persons.  ISP accesses the NICS Index and the III through the NCIC network. The III is the national criminal history record system. When someone purchases a firearm, NICS verifies the validity of the Federal Firearms Licensed dealer and checks the NICS Index or "denied persons" files for persons prohibited from possessing firearms. All CCL applicants are also checked against the NICS Index.

14.     The criminal history information available in federal databases may also be insufficient to determine a non-resident's criminal history because states are not uniform in their reporting of different levels and types of offenses. ISP is unable to obtain accurate and updated information via NLETS and NCIC for those states that do not fully participate in the systems.

15.     The information available from the III, a federal criminal history database, also can be very limited. States are not uniform in their reporting of different levels and types of offenses. Only the National Fingerprint File (NFF) provides detailed extracts directly from states' local databases, and as of August 2015, only nineteen states participate as in the NFF. Those states are: Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Maryland, Minnesota, Missouri, Montana, North Carolina, New Jersey, Ohio, Oklahoma, Oregon, Tennessee, West Virginia, and Wyoming.

**Difficulties Verifying Non-Resident Mental Health Information**

16.     Pursuant to the FOID Act and Firearm Concealed Carry Act, an applicant is not eligible for an Illinois CCL if the applicant has been involuntarily admitted into a mental health facility, adjudicated mentally disabled or has been a patient in a mental health facility within the

Exhibit 1   285

past five years, regardless of the applicant's state of residence. If an applicant has been a patient in a mental health facility more than 5 years ago, a Mental Health Certification must be provided at the time of the application.

17.     Through the Illinois Department of Human Services ("DHS") FOID Mental Health System**,** the Bureau can readily access information on Illinois mental health facility admissions and determine whether an individual has been involuntarily admitted into a mental health facility in Illinois or has been a patient in a mental health facility in Illinois within the past five years or more.

18.     The DHS FOID Mental Health System contains no records of out-of-state mental health facility admissions. Further, ISP does not have access to other states' mental health facility admissions databases, if any exist.

19.     In my experience as the Bureau Chief of the FSB, I am aware that the federal databases do not contain the voluntary mental health admission information necessary to determine whether an applicant was a patient in a mental health facility. Also, information concerning involuntary mental health admissions or mental disability adjudications is limited.

20.     To search for mental health prohibitors for nonresidents, ISP is limited to information available through the NICS Index, but not all states participate. NICS contains information from participating states regarding individuals prohibited from firearm possession for mental health reasons under 18 U.S.C. § 922(g)(4), but does not provide any information on voluntary mental health admissions.

**Difficulties Obtaining Updated Non-Resident Information to Revoke a CCL**

21.     On a daily basis, all resident CCL holders are checked against the Illinois CHRI and DHS Mental Health Systems (by virtue of their FOID Card) for any new prohibitors (conditions that would disqualify a person from holding a FOID Card or CCL). All CCL holders, resident and nonresident, are checked against the federal databases on a quarterly basis.

22.     Illinois Physicians or qualified examiners, Illinois Law Enforcement Officials, and Illinois School Administrators are required by law to report persons that may be a clear and present danger to themselves or others. Even if out-of-state personnel have reporting requirements in their own states, the ISP does not receive reports from out-of-state physicians, qualified examiners, law enforcement officials, or school administrators concerning out-of-state persons presenting a clear and present danger. Similarly, daily checks of the DHS Mental Health Systems do not reveal information concerning persons treated in other states.

23.     Illinois Circuit Clerks are required by statute to report to ISP persons who have been adjudicated as mentally disabled or persons who have had a finding for an involuntary

Exhibit 1   286

admittance to a mental health facility. I am aware of no other state that is required to, or does, report such cases to the ISP.

24.    DHS must report to the ISP all information collected pertaining to mental health treatment admissions, either voluntary or involuntary, as well as reports of patients deemed to be a clear and present danger. The purpose of this reporting is to determine if the patient is disqualified under state or federal law from possessing firearms. Out-of-state mental health facilities are not required by their states to report admissions or persons presenting a clear and present danger to DHS or to the ISP, and do not do so unless ISP makes a request for that information. Many out-of-state mental health entities do not provide this information even after an ISP request.

25.    Access to the types of information described in the Illinois databases allows the Bureau to thoroughly screen for and actively monitor various issues that may be a basis to deny or revoke a FOID or CCL card. ISP's lack of access to this type of data held by other states would make it virtually impossible to effectively conduct this same level of screening and monitoring for nonresident CCL applicants.

## Substantially Similar Surveys

26.    In 2013, ISP sent surveys to each of the 49 other states and to the District of Columbia requesting information regarding their regulation of firearms use and reporting and tracking mechanisms relative to criminal activity and mental health issues.  In 2014, ISP sent a second survey to those states that did not respond to the first survey.

27.    True and correct copies of the various states' responses and the response of the District of Columbia received by the ISP are attached hereto as Affidavit Exhibit C. Based on the states' responses to the survey, ISP created a summary, a true and correct copy of which is attached hereto as Affidavit Exhibit D. As noted in the summary, Colorado, Maine, Maryland, Massachusetts, Nevada, Pennsylvania, and Rhode Island did not respond to the ISP's request for information.

28.    Of those states responding, only Hawaii, New Mexico, South Carolina, and Virginia had laws, similar to Illinois, regulating who may carry firearms in public, reported persons authorized to carry through the NLETS, reported denied persons through the NICS, prohibited persons voluntarily admitted to a mental health facility in the last five years from possessing or using firearms, AND prohibited persons involuntarily admitted to mental health facilities from possessing or using firearms.

29.    For example, Indiana, Iowa, Missouri, and Wisconsin responded that they did not prohibit use or possession of firearms based on voluntary admissions to mental health facilities in the last five years and did not have a mechanism of tracking that information for its residents.

*See* Affidavit Exhibit C. Iowa and Missouri also reported that they do not participate in reporting concealed carry licenses via NLETS. *See id.*

     30.    The Bureau would not have the time or resources to properly research the necessary information for nonresident applicants if all such applicants could apply for a CCL. The Firearm Concealed Carry Act requires ISP to either approve or deny an application within as few as 90 days from the date received, subject to certain exceptions. To process the applications to this standard, it is likely the out-of-state applicants would not be held to the same standards set forth in the FOID Card Act or Firearm Concealed Carry Act as Illinois residents are held. Applications would have to be approved without a complete and thorough background check. Further, applicants residing in states that lack reporting and eligibility requirements similar to Illinois and who are issued licenses under the Firearm Concealed Carry Act cannot be held to the same monitoring standards necessary to ensure continued eligibility due to the lack of, and inability to obtain—either at all or in a timely manner—, information concerning those nonresidents.

**FURTHER AFFIANT SAYETH NOT.**

Subscribed and sworn to before me

this __31st__ day of August, 2015.

s/Tammy L. Miner

Notary Public

s/Jessica Trame

JESSICA TRAME

OFFICIAL SEAL
TAMMY L. MINER
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXPIRES 07-30-2019

```
AM.ILLEADS00.CCW5.*0001403511...CQR.
SRC/CQR
IDX/1015228557

EL01FA9  MRI0066384
IL08486G8
THIS INTERSTATE IDENTIFICATION INDEX RESPONSE IS THE RESULT OF YOUR
RECORD REQUEST FOR FBI/772445KC2. THE FOLLOWING WILL RESPOND TO YOUR
AGENCY:
 MISSISSIPPI    - STATE ID/MS0475395X
END

AM.ILLEADS00.CCW5.*0001403511...CQR.
SRC/CQR
IDX/1015228557
FA9  10.13.27 08/17/15 MSIII0000
IL08486G8
HDR/2L01FA9  MRI0066384
ATN/IL,CCW
********************  CRIMINAL HISTORY RECORD  **********************
Data As Of               2015-08-17
**************************  Introduction  **************************
This rap sheet was produced in response to the following request:
State Id Number          MS0475395X (MS)
Request Id               MRI0010833
Purpose Code             C
Attention                IL,CCW
The information in this rap sheet is subject to the following caveats:
This record contains information contained in the criminal history file
of Mississippi Department of Public Safety on the date it was prepared;
if information is needed later, a new inquiry should be made. This
information is based on fingerprint identification. (MS)
If the request for this information did not include fingerprints, this
record may not describe the subject of the inquiry. (MS)
There may be further information concerning this subject in local
files. (MS)
Use of this information is subject to state and federal law and is
limited to the purpose stated in the inquiry. Misuse is subject to
criminal and civil penalty. (MS)
Offenses are marked as felonies, misdemeanors or violations in
accordance with Mississippi law. (MS)
Mississippi reports any data related to its Mississippi Sex Offender
Registry in the  Notice  field. (MS)
**************************  IDENTIFICATION  **********************
Subject Name(s)

Subject Description
FBI Number               State Id Number
772445KC2                MS0475395X (MS)
Social Security Number

Sex                      Race
Female                   White
Height                   Weight              Date of Birth
5`04                     137                 1981-
Hair Color               Eye Color           Fingerprint Pattern
Brown                    Brown               UCUCUCUCUCWUUCWUWULS (IAFIS)
```

```
Place of Birth          Citizenship
Mississippi             United States
Residence
Residence as of         2005-12-04
                        ████████████, PASCAGOULA MS
Palmprint Images
(No Palmprint Image Transmitted  )
Photo Images
Available Image         Mugshot
Capture Date                      2005-12-04
(No Photo Image Transmitted  )
Caution Information
Notice                  No Sex Offender data.
************************  CRIMINAL HISTORY  ************************
============================== Cycle 001 ==============================
Tracking Number         9035039793
Earliest Event Date     2005-12-04 Incident Date          2005-12-04
----------------------------------------------------------------------
Arrest Date             2005-12-04
Arrest Case Number      2005120032
Arresting Agency        MS0300300 PASCAGOULA PD
Arrest Type             Adult
Charge                  1
        Charge Literal  Looting
     Charge Description  Offense date 2005-12-04
              Statute   Looting (97-17-65 MS)
               Counts   1
             Severity   Felony
************************   INDEX OF AGENCIES   ************************
Agency                  PASCAGOULA PD; MS0300300;
Agency Telephone        228-762-2211
Address                 POST OFFICE DRAWER 1385, PASCAGOULA, MS 39568
```

AFFIDAVIT EXHIBIT A

AUG-17-2015 MON 09:56 AM JA. CO. CIRCUIT CLERK    FAX NO. 2287693180    P. 01 

*JOE W. MARTIN, JR.*
*CIRCUIT CLERK - JACKSON COUNTY*
*P.O. BOX 998*
*PASCAGOULA, MS 39568-0998*
*Telephone # 1-228-769-3040*

Date 8-17-15

Re: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

We have received your request regarding a criminal/civil search  However, at this time we are unable to process your request, because you did not include the fee for a search . Furthermore, we charge a fee for each defendant in each court. For example: If you want a search done in all four courts for a ten year period the cost would be $40.00, for a twenty year period the cost would be $80.00.

    __Circuit Court - Criminal Records for 10 years $10.00
    __Circuit Court - Civil Records for 10 years $10.00
    __County Court - Criminal Records for 10 years $10.00
    __County Court - Civil Records for 10 years $10.00

 Please note this information is public record and is accessible to the public without costs through docket books or a computer for public use during regular business hours.

Once you have provided our office with the correct search fee, we will process your search. Furthermore, there is also a fee for any copies that you may request. The cost is $1.00 per page for regular copies and a $1.00 fee to certify it.

Sincerely,

Joe W. Martin, Jr.
Circuit Clerk

By: MARY HALL
Deputy Clerk

228-769-3175

AFFIDAVIT EXHIBIT B                    291



## ILLINOIS STATE POLICE
*Office of the Director*

Pat Quinn
*Governor*

October 30, 2013

Hiram Grau
*Director*

Attorney General Luther Strange
Office of the Attorney General
Post Office Box 300152
Montgomery, Alabama 36130-0152

Dear Honorable Strange:

Effective July 9, 2013, Public Act 98-63, the Illinois Firearm Concealed Carry Act, became state law (430 ILCS 66) requiring an Illinois Concealed Carry License in order to carry a concealed firearm in Illinois. Within this Act, non-residents from substantially similar states are allowed to apply for a non-resident Concealed Carry License if they are eligible to carry a firearm in public under the laws of his or her state or territory of residence and are not prohibited from owning or possessing a firearm under federal law.

As such, the Illinois State Police (ISP) is not able to consider applications from individuals in other states for an Illinois Concealed Carry License until reviews of applicable states' laws are completed. In order to accomplish this, by November 22, 2013, we request your agency complete and return our survey in the enclosed self-addressed envelope. Your response will help the ISP to determine whether your state's laws regarding concealed carry are substantially similar to Illinois' laws.

Your staff may contact Bureau Chief Jessica Trame at 217-782-5047 or at Jessica.Trame@isp.state.il.us with any questions. Thank you for taking the time to respond to this survey.

Respectfully,

s/Hiram Grau

Hiram Grau
Director

Enclosure

AFFIDAVIT EXHIBIT C   292



## ILLINOIS STATE POLICE
*Office of the Director*

Pat Quinn
*Governor*

December 2, 2013

Hiram Grau
*Director*

Superintendent Joseph A. D'Amico
New York State Police
1220 Washington Avenue
Building 22
Albany, NY 12226-2252

Dear Superintendent D'Amico:

Effective July 9, 2013, Public Act 98-63, the Illinois Firearm Concealed Carry Act, became state law (430 ILCS 66) requiring an Illinois Concealed Carry License in order to carry a concealed firearm in Illinois. Within this Act, non-residents from substantially similar states are allowed to apply for a non-resident Concealed Carry License if they are eligible to carry a firearm in public under the laws of his or her state or territory of residence and are not prohibited from owning or possessing a firearm under federal law.

As such, the Illinois State Police (ISP) is not able to consider applications from individuals in other states for an Illinois Concealed Carry License until reviews of applicable states' laws are completed. In order to accomplish this, we request your agency complete and return our survey in the enclosed self-addressed envelope at your earliest convenience. Your response will help the ISP to determine whether your state's laws regarding concealed carry are substantially similar to Illinois' laws.

Your staff may contact Bureau Chief Jessica Trame at 217-782-5047 or at Jessica.Trame@isp.state.il.us with any questions. Thank you for taking the time to respond to this survey.

Respectfully,

s/Hiram Grau

Hiram Grau
Director

Enclosure

AFFIDAVIT EXHIBIT C   293



# ILLINOIS STATE POLICE
*Division of Administration*

May 15, 2014

Pat Quinn
*Governor*

Hiram Grau
*Director*

Mr. Gary Lee
Criminal Justice Planner
Alaska Department of Public Safety
5700 East Tudor Road
Anchorage, Alaska 99507

Dear Mr. Lee:

Effective July 9, 2013, Public Act 98-63, the Illinois Firearm Concealed Carry Act, became state law (430 ILCS 66) requiring an Illinois Concealed Carry License in order to carry a concealed firearm in Illinois. Within this Act, non-residents from substantially similar states are allowed to apply for a non-resident Concealed Carry License if they are eligible to carry a firearm in public under the laws of his or her state or territory of residence and are not prohibited from owning or possessing a firearm under federal law.

In November 2013, the Illinois State Police (ISP) sent a survey to your state to determine if the laws in your state are substantially similar to Illinois laws. To date, the ISP has not received a response. As such, the ISP is not able to consider applications from your state for an Illinois Concealed Carry License until a review of applicable laws is completed. In order to accomplish this, we request your agency complete and return our survey in the enclosed self-addressed envelope. Each state's response is available on the ISP website (www.isp.state.il.us) under the Concealed Carry Frequently Asked Questions.

Please feel free to contact me at (217)782-5047 or at Jessica.Trame@isp.state.il.us if you have any questions.

Respectfully,

s/Jessica L. Trame

Jessica L. Trame
Bureau Chief

Enclosure

Firearms Services Bureau
801 South Seventh Street • Suite 400-M
P.O. Box 19461
Springfield, IL 62794-9461
(217) 782-7980 (voice) • 1 (800) 255-3323 (TDD) • Fax: FOID (217) 782-9139 • FTIP (217) 782-9257
www.illinois.gov • www.isp.state.il.us

Please return by November 22, 2013



RECEIVED

NOV 1 2 2013

Firearms Services Bu...
Illinois State P...

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |

*License are issued by individual county sheriffs but are State License*

| | | | |
|-----|-----|-----|-----|
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Monica Sheeler
_____
Name

*Assistant Attorney General*
_____
Title

*Nov 4, 2013*
_____
Date

*334-242-7488*
_____
Telephone

*Alabama AGO*
_____
State Agency Department

*P. O. Box 300152*
_____
Address

*Montgomery, AL 36130-0152*
_____
City, State, Zip

*msheeler@ago.state.al.us*
_____
Email



| Yes | No | | |
|-----|-----|-----|-----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

*Beginning 2014 w/ legislative action to allow.*

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

---

Name    *s/Gary Lee*

Title    *CRIMINAL JUSTICE PLANNER*

Date    *MAY 29, 2014*

Telephone    *907-269-5092*

State Agency Department    *ALASKA DEPARTMENT OF PUBLIC SAFETY*

Address    *5700 E TUDOR RD*

City, State, Zip    *ANCHORAGE AK 99507*

Email    *gary.lee@alaska.gov*

Please return by November 22, 2013



RECEIVED
NOV 12 2013
Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|---|---|---|---|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☑ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☑ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Greg Downs
**Name**

General Counsel
**Title**

11/5/13
**Date**

(501) 618-8350
**Telephone**

Arkansas State Police
**State Agency Department**

1 State Police Plaza Dr.
**Address**

Little Rock, AR, 72207
**City, State, Zip**

Greg.Downs@asp.arkansas.gov
**Email**

AFFIDAVIT EXHIBIT C  297

RECEIVED

**Please** return by November 22, 2013



NOV 1 3 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Donna J. Street
_____
Name

**ARIZONA**
**DEPARTMENT OF PUBLIC SAFETY**
DONNA J. STREET
ADMINISTRATIVE SUPERVISOR
CONCEALED WEAPON PERMIT UNIT
OFFICE PHONE: (602) 223-2704
FAX: (602) 223-2928
EMAIL: DSTREET@AZ.DPS.GOV

P.O. BOX 6488, PHOENIX, ARIZONA 85005

*Courteous Vigilance*

Az DEPT of Public SAFE
State Agency Department

PO Box 6488
Address

PHOENIX, AZ 85005
City, State, Zip

DSTREET @ AZDPS. GO
Email

AFFIDAVIT EXHIBIT C   298

Please return by November 22, 2013



| Yes | No | | |
|-----|-----|-----|-----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☑ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? *ONLY "5250"* |
| ☑ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☑ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

---

s/John Marsh
_____
Name

*ASSISTANT CHIEF*
_____
Title

*11/14/2013*
_____
Date

*516-227-4002*
_____
Telephone

*DEPARTMENT OF JUSTICE*
_____
State Agency Department

*4949 BROADWAY*
_____
Address

*SACRAMENTO CA 95816*
_____
City, State, Zip

*JOHN.MARSH@DOJ.CA.GOV*
_____
Email

AFFIDAVIT EXHIBIT C   299



# STATE OF CONNECTICUT

## DEPARTMENT OF EMERGENCY SERVICES
## AND PUBLIC PROTECTION
### DIVISION OF STATE POLICE
#### Special Licensing & Firearms Unit



November 14th, 2013

Bureau Chief Trame
Illinois State Police
Firearms Survey Bureau
801 S. 7th St, Suite 400-M
Springfield, IL 62703-2487

Dear Chief Trame,

In response to your letter dated October 30th, 2013, I will address to your questionnaire in sequence:

Connecticut issues a pistol permit which allows for the purchase of a pistol and the carry of said pistol. There is no statutory language that covers concealment.

Connecticut does not participate in reporting to NLETS. Our database is available in state to all law enforcement officers via COLLECT.

Connecticut does report all involuntary mental health admissions to NICS.

Connecticut prohibits the use or possession of firearms based on a voluntary admission (for any matter other than alcohol or drugs) for 6 months.

Connecticut does track voluntary admissions through the Department of Mental Health and Addiction Services.

There is no pending legislation that I am aware of regarding mental health as it relates to the possession of firearms.

Thank you for inquiry.  Should you need any further assistance, you may contact the Special Licensing and Firearms Unit at (860) 685-8329.

Sincerely,

Lieutenant Eric Cooke
Commanding Officer
Special Licensing and Firearms Unit

AFFIDAVIT EXHIBIT C   300



RECEIVED

JUL 1 7 2014

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Capt. Ralph Davis

Name

Director State Bureau of Identification

Title

June 6, 2014

Date

(302) 672-5300

Telephone

Delaware State Police

State Agency Department

655 S Bay Road

Address

Dover, DE 19901

City, State, Zip

ralph.davis@state.de.us

Email



| Yes | No | | |
|-----|-----|-----|-----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☑ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ *see note below | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? __July 1, 2013*__   Please provide a copy of the legislative language.

*Effective July 1, 2013, mental health facilities are required to report those individuals who would have been involuntarily committed but were allowed under statute to transfer to a voluntary admission following an involuntary assessment where the treating physician found the individual to be imminently dangerous and notice was served that the individual's firearm rights would be revoked.

| s/Robin Sparkman | Florida Department of Law Enforcement |
|---|---|
| **Name** | **State Agency Department** |
| Supervisor, Firearm Purchase Program | P. O. Box 1489 |
| **Title** | **Address** |
| May 15, 2014 | Tallahassee, FL 32801 |
| **Date** | **City, State, Zip** |
| 850-410-8940 | robinsparkman@fdle.state.fl.us |
| **Telephone** | **Email** |

**790.065(2)(a) 4.** Has been adjudicated mentally defective or has been committed to a mental institution by a court or as provided in sub-sub-subparagraph b.(II), and as a result is prohibited by state or federal law from purchasing a firearm.

a.   As used in this subparagraph, "adjudicated mentally defective" means a determination by a court that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease, is a danger to himself or herself or to others or lacks the mental capacity to contract or manage his or her own affairs. The phrase includes a judicial finding of incapacity under s. 744.331(6)(a), an acquittal by reason of insanity of a person charged with a criminal offense, and a judicial finding that a criminal defendant is not competent to stand trial.

b.   As used in this subparagraph, "committed to a mental institution" means:

(I)   Involuntary commitment, commitment for mental defectiveness or mental illness, and commitment for substance abuse. The phrase includes involuntary inpatient placement as defined in s. 394.467, involuntary outpatient placement as defined in s. 394.4655, involuntary assessment and stabilization under s. 397.6818, and involuntary substance abuse treatment under s. 397.6957, but does not include a person in a mental institution for observation or discharged from a mental institution based upon the initial review by the physician or a voluntary admission to a mental institution; or

(II)   Notwithstanding sub-sub-subparagraph (I), voluntary admission to a mental institution for outpatient or inpatient treatment of a person who had an involuntary examination under s. 394.463, where each of the following conditions have been met:

(A)   An examining physician found that the person is an imminent danger to himself or herself or others.

(B)   The examining physician certified that if the person did not agree to voluntary treatment, a petition for involuntary outpatient or inpatient treatment would have been filed under s. 394.463(2)(i)4., or the examining physician certified that a petition was filed and the person subsequently agreed to voluntary treatment prior to a court hearing on the petition.

(C)   Before agreeing to voluntary treatment, the person received written notice of that finding and certification, and written notice that as a result of such finding, he or she may be prohibited from purchasing a firearm, and may not be eligible to apply for or retain a concealed weapon or firearms license under s. 790.06 and the person acknowledged such notice in writing, in substantially the following form: "I understand that the doctor who examined me believes I am a danger to myself or to others. I understand that if I do not agree to voluntary treatment, a petition will be filed in court to require me to receive involuntary treatment. I understand that if that petition is filed, I have the right to contest it. In the event a petition has been filed, I understand that I can subsequently agree to voluntary treatment prior to a court hearing. I understand that by agreeing to voluntary treatment in either of these situations, I may be prohibited from buying firearms and from applying for or retaining a concealed weapons or firearms license until I apply for and receive relief from that restriction under Florida law."

(D)   A judge or a magistrate has, pursuant to sub-sub-subparagraph c.(II), reviewed the record of the finding, certification, notice, and written acknowledgment classifying the person as an imminent danger to himself or herself or others, and ordered that such record be submitted to the department.



| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? *TN. Issues a Handgun Carry Permit. Permit holders can carry open or concealed* |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Lisa Knight

Name

DIRECTOR HANDGUN PROGRAM
Title

5/12/14
Date

615-251-5330
Telephone

SAfety of Homeland Security
State Agency Department

1148 Foster Ave.
Address

NAShville TN. 37243
City, State, Zip

LISA.Knight@TN.GOV
Email



| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☒ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☒ | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Regina Chacon

Name

Bureau Chief
Title

May 14, 2014
Date

505 827-9297
Telephone

NM Dept of Public Safety
State Agency Department

Po Box 6821
Address

Santa Fe, NM 87504
City, State, Zip

Regina.Chacon@state.nm.us
Email



**ILLINOIS STATE POLICE**
*Division of Administration*

Pat Quinn
*Governor*

Hiram Grau
*Director*

| Yes | No | | |
|-----|-----|---|---|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☑ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ *see note below | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

July 1, 2013*

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

*Effective July 1, 2013, mental health facilities are required to report those individuals who would have been involuntarily committed but were allowed under statute to transfer to a voluntary admission following an involuntary assessment where the treating physician found the individual to be imminently dangerous and notice was served that the individual's firearm rights would be revoked.

| | |
|---|---|
| s/Robin Sparkman | Florida Department of Law Enforcement |
| Name | State Agency Department |
| Supervisor, Firearm Purchase Program | P. O. Box 1489 |
| Title | Address |
| May 15, 2014 | Tallahassee, FL 32801 |
| Date | City, State, Zip |
| 850-410-8940 | robinsparkman@fdle.state.fl.us |
| Telephone | Email |

Firearms Services Bureau
801 South Seventh Street • Suite 400-M
P.O. Box 19461
Springfield, IL 62794-9461
(217) 782-7980 (voice) • 1 (800) 255-3323 (TDD) • Fax: FOID (217) 782-9139 • AFFIDAVIT EXHIBIT C   306
www.illinois.gov • www.isp.state.il.us

Please return by November 22, 2013



RECEIVED

NOV 2 2 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|---|---|---|---|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☑ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑* | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

*Georgia law only prohibits the issuance of a license based on voluntary mental health admission. See attached statute.

s/Rebecca Dobras
_____
Name

Assistant Attorney General
_____
Title

11/15/2013
_____
Date

404-656-0749
_____
Telephone

Office of the Attorney General - Public Safety Section
_____
State Agency Department

40 Capitol Square, SW
_____
Address

Atlanta GA 30334
_____
City, State, Zip

rdobras@law.ga.gov
_____
Email

Please return by November 22, 2013



RECEIVED
NOV 12 2013
Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|---|---|---|---|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? **But only at the discretion of the Chief of Police, none have been issued since the early 1990's** |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☒ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Daniel Paperd
_____
Name

Sergeant/Firearms Unit
_____
Title

11-6-2013
_____
Date

808-723-3190
_____
Telephone

Honolulu Police Department
_____
State Agency Department

801 S. Beretania St
_____
Address

Honolulu  HI  96813
_____
City, State, Zip

dpaperd@honolulu.gov
_____
Email

AFFIDAVIT EXHIBIT C   308

Please return by November 22, 2013



RECEIVED

NOV 19 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Stephanie Altig

Name _____

Title _De_puty Attorney General_

Date _11/12/2013_

Telephone _208-_____-_____

State Agency Department _Idaho State Police_

Address _700 S. Stratford Dr._

City, State, Zip _Meridian, ID 83642_

Email _Stephanie.altig@isp.idaho.gov_

Please return by November 22, 2013



RECEIVED

NOV 2 2 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|---|---|---|---|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Capt. Michael White

Name

Assistant Chief of Staff Communication & Information Systems
Title

11/19/2013
Date

(317) 232-0029
Telephone

Indiana State Police
State Agency Department

100 North Senate Rm 340
Address

Indianapolis, In. 46204
City, State, Zip

MWhite@isp.IN.gov
Email

*Iowa*

Please return by November 22, 2013





RECEIVED

NOV 12 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|---|---|
| ☒* | ☐ | 1. | Does your state issue a Concealed Carry License? |

*The Iowa equivalent is the "Permit to Carry Weapons," which is valid for concealed or open carry.

| Yes | No | | |
|-----|-----|---|---|
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒* | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |

*Reporting commenced Jan. 1, 2011. Older committals have not been reported.

| Yes | No | | |
|-----|-----|---|---|
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Ross Loder

Name

Title: Bureau Chief

Date: 11/07/2013

Telephone: 515-725-6233

State Agency Department: Dept. of Public Safety, Program Services Bureau

Address: 215 E. 7th St

City, State, Zip: Des Moines, IA 50312

Email: Ross.LODER@IOWA.GOV

Please return by November 22, 2013



RECEIVED

NOV 22 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|---|---|---|---|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Charles Klebe

Name _____

Title _Assistant Att General_

Date _11/19/113_

Telephone _785 - 368 - 6363_

State Agency Department _Kansas Attorney General_ Derek Schmidt

Address _120 Sw 10th Ave, 2nd Fl_

City, State, Zip _Topeka Ks 66612_

Email _charles.klebe@ksag.org_

Please return by November 22, 2013





| Yes | No | | |
|-----|----|---|---|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☐ | ☒ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms?<br><br>If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Michelle King

**Name**

**SERGEANT**

**Title**

**NOVEMBER 12, 2013**

**Date**

**225-925-4867**

**Telephone**

**LOUISIANA STATE POLICE**

State Agency Department

**7919 INDEPENDENCE BOULEVARD**

Address

**BATON ROUGE, LA   70806**

City, State, Zip

**MICHELLE.KING@LA.GOV**

Email

AFFIDAVIT EXHIBIT C   313

Please return by November 22, 2013



RECEIVED

NOV 19 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____   Please provide a copy of the legislative language.

s/Smith
**Name**

Manager, Firearms Records
**Title**

11/12/2013
**Date**

789 241-2075
**Telephone**

Michigan State Police
**State Agency Department**

PO Box 30634
**Address**

Lansing, MI 48909
**City, State, Zip**

Smithd85 @michigan.gov
**Email**

AFFIDAVIT EXHIBIT C   314

Please return by November 22, 2013



NOV 1 9 2013

Firearms Services Bureau
Illinois State Police

| | Yes | No | | |
|---|---|---|---|---|
| | ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |

*We issue a permit to carry a pistol without a conceal requirement.*

| | Yes | No | | |
|---|---|---|---|---|
| | ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| | ☐ | ☒ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| | ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| | ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| | ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Wade Setter
**Name**

*Superintendent*
**Title**

**Date**

(651) 793-1000
**Telephone**

Bureau of Criminal Apprehension
**State Agency Department**

1430 Maryland Ave. E.
**Address**

St. Paul, MN 55106
**City, State, Zip**

wade.setter@state.mn.us
**Email**

AFFIDAVIT EXHIBIT C   315

Please return by November 22, 2013



RECEIVED

FEB  3 2014

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☒ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| (☒) | (☒) e w jr. | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| (☒) | (☒) e w jr. | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _07/01/2013_ Please provide a
copy of the legislative language. _SB. 2647  9 - 149_

s/Lt. Eugene Williams, Jr.
**Name**

_DIRECTOR OF FPU (MHSP)_
**Title**

_11-01-2013_
**Date**

_601-987-1586_
**Telephone**

_MS HWY SAFETY PATROL - FPU_
**State Agency Department**

_PO BOX 958_
**Address**

_JACKSON, MS 39205_
**City, State, Zip**

_e.williams @ dps.ms.gov_
**Email**

AFFIDAVIT EXHIBIT C   316

Please return by November 22, 2013



RECEIVED

DEC  2 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|----|----|----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| | | | *Responsibility of the sheriffs* |
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/s/John Marsh
Name

Title   *Major*

Date   *11/25/13*

Telephone   *573-526-6110*

State Agency Department   *MSHP*

Address   *1510 E. Elm St.*

City, State, Zip   *Jefferson City, MO*

Email   *tim.mcgrail@mshp.dps.mo.gov*

The NJSP reports both voluntary and involuntary admission to mental health facilities to NCIS. Please feel free to reach out to Detective Sergeant First Class, Glenn Ross, Assistant Unit Head of the NJSP's Firearms Investigation Unit by phone at (609) 882-2000 ext. 2060 or by e-mail at lpp5092@gw.njsp.org for additional, more specific information.

The Missouri Office of State Courts Administrator's office handles entriesinto the NICS.  The points of contact at OSCA who may be able to answer your questions are Trenton Dial (573-522-6311) and Jeremy Johnson (573-751-4377).

Q: The ISP needs to know if your state reports involuntary mental health admissions to NICS. A: Some orders and judgments that are disqualifying or potentially disqualifying under 18 USC 922(g)(4) are reported to NICS, and some are not.

Prohibiting orders/judgments reported to NICS:
*Commitment under 222.31 (intellectual disability)
*Commitment under 229.14 (serious mental impairment)
*Not guilty by reason of insanity
*Incompetent to stand trial

Prohibiting orders/judgments not reported to NICS:
*Commitment under 125.84 (substance abuse)
*Appointment of a guardian or conservator under 231E.6 (substitute decision-maker)
*Order for conveyance of property under 597.6 (incompetent spouse)

Q: Does your state track voluntary admissions to mental health facilities?
A: No, not in most cases.

Point of Contact information :

Ross Loder, Bureau Chief
Program Services Bureau, Administrative Services Division
Iowa Department of Public Safety
215 East 7th Street
Des Moines, IA 50319



RECEIVED

MAY 2 7 2014

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|---|---|---|---|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☐ | ☑ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Butch Huseby

**Name** BUREAU CHIEF - /CRIME Information BUREAU

**Title**

**Date** MAY 23, 2014

**Telephone** 406 - 444 - 9759

MONTANA DEPT. OF JUSTICE

**State Agency Department**

2225 11TH AVE

**Address**

HELENA, MT 59620

**City, State, Zip**

bhuseby @ mt.gov

**Email**

<u>Please return by November 22, 2013</u>



RECEIVED

NOV 19 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|---|---|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |

*＊ Not through the CWQ, but via the driver's abstract.*

| | | | |
|-----|-----|---|---|
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Wendy Wussow

**Name**

Agency Legal Counsel
**Title**

11-5-13
**Date**

402-479-4062
**Telephone**

Nebraska State Patrol
**State Agency Department**

P.O. Box 94907
**Address**

Lincoln, NE 68509
**City, State, Zip**

Wendy.wussow@nebraska.gov
**Email**

AFFIDAVIT EXHIBIT C   320

RECEIVED

Please return by November 22, 2013



NOV 2 5 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|------|------|------|------|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? _WE WOULD NOT OBTAIN THIS INFORMATION ONCE PERMIT IS ISSUED._ |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Glenn Ross
_____
Name

DSFC / ASSISTANT UNIT HEAD
_____
Title

11-18-2013
_____
Date

609-882-2000 EXT. 2060
_____
Telephone

NEW JERSEY STATE POLICE
FIREARMS INVESTIGATION UNIT
_____
State Agency Department

P.O. Box 7068, WTES
_____
Address

WEST TRENTON, N.J. 08628
_____
City, State, Zip

lpp5092@gw.njsp.org
_____
Email

Please return by November 22, 2013



RECEIVED

NOV 1 2 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|---|---|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☐ | ☒ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Sean Haggerty
_____
Name

Sergeant
_____
Title

11-7-13
_____
Date

603 223-8574
_____
Telephone

NH State Police - Permits + Licensing
_____
State Agency Department

33 Hazen Drive
_____
Address

Concord, NH 03305
_____
City, State, Zip

sean.haggerty@dos.nh.gov
_____
Email

AFFIDAVIT EXHIBIT C   322



| Yes | No | | |
|-----|-----|---|---|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☒ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☒ | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Regina Chacon

**Name**

Bureau Chief

**Title**

May 14, 2014

**Date**

505 827-9297

**Telephone**

NM Dept of Public Safety

**State Agency Department**

PO Box 6821

**Address**

Santa Fe, NM 87504

**City, State, Zip**

Regina.Chacon@state.nm.us

**Email**



| Yes | No | | |
|-----|-----|---|---|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ * | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☐ * | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____   Please provide a copy of the legislative language.

\* Determined by Mental Health Provided assessment. If subject determined to be at a minimum, a potential danger to self or others then the answer to 4 and 5 would be "yes".

| | |
|---|---|
| s/James Sherman | New York State Police |
| **Name** | **State Agency Department** |
| T/Lieutenant | 1220 Washington Avenue |
| **Title** | **Address** |
| 01/30/2014 | Albany, NY 12226-2252 |
| **Date** | **City, State, Zip** |
| (518) 464-7130 | James.Sherman@troopers.Gov NY |
| **Telephone** | **Email** |

Please return by November 22, 2013



| Yes | No | | |
|---|---|---|---|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☑ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Hal Askins
_____
Name

Special Deputy A.G.
_____
Title

11/18/13
_____
Date

(919) 716-6560
_____
Telephone

N.C. Dept. of Justice
_____
State Agency Department

114 W. Edenton St.
_____
Address

Raleigh, N.C. 27629
_____
City, State, Zip

haskins@ncdoj.gov
_____
Email

AFFIDAVIT EXHIBIT C   325

Please return by November 22, 2013



| Yes | No | | |
|-----|----|--|--|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☒ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

*3*

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Liz Brocker
_____
Name

EXECUTIVE ASSISTANT
_____
Title

12-18-13
_____
Date

701-328-2213
_____
Telephone

OFFICE OF ATTORNEY GENERAL
_____
State Agency Department

600 E BOULEVARD AVE #125
_____
Address

BISMARCK ND 58505
_____
City, State, Zip

lbrocker@nd.gov
_____
Email

| NORTH DAKOTA CONCEALED WEAPON LICENSE — APPLICANT REQUIREMENTS | Class 1 | Class 2 |
|---|---|---|
| Applicant must be eligible to possess a firearm under both federal and state laws (see N.D.C.C. § 62.1-02-01). State and federal fingerprint-based record check including III and NICS check conducted on applicant for initial application and renewal. | Yes | Yes |
| Minimum age | 21 | 18 |
| Applicant must provide a copy of a valid state-issued driver's license with application form. If the driver's license is from another state, applicant must provide a copy of a valid concealed carry permit/license from the home state (and that home state must have reciprocity/recognition with ND). | Yes | Yes |
| License good for five years, initial and renewal | Yes | Yes |
| Applicant eligible, even if applicant has been convicted (in any jurisdiction) of any of the following: | | |
| • An offense involving the use of alcohol within 10 years prior to date of initial application or renewal; | No | Yes |
| • A misdemeanor drug-related offense within 10 years prior to date of initial or renewal application; | No | Yes |
| • A felony offense at any time during life (Note: In ND, convicted felons are prohibited from possessing a firearm for up to 10 years, depending on the seriousness of the offense); | No | Yes |
| • An offense involving moral turpitude, during lifetime; | No | Yes |
| • An offense involving domestic violence during lifetime (if rights have been restored) | No | Yes |
| Applicant who has been adjudicated by a state or federal court as mentally incompetent but such adjudication subsequently has been withdrawn or reversed is eligible. | No | Yes |
| Authorization for release of Mental Health/Substance Abuse treatment records is required before application processed | Yes | No |
| TESTING REQUIREMENTS. All testing must be completed within the state of North Dakota. | | |
| • Applicant must achieve at least 70% on open book multiple-choice test of weapons and concealed weapons laws and 100% on the multiple choice test of deadly force laws. | Yes | Yes |
| • Applicant must complete classroom instruction, demonstrate familiarity with firearm, and successfully complete a live-fire proficiency course. | Yes | No |
| • Testing required before each renewal | Yes | No |

The ND concealed weapon license displays applicant's photograph, full legal name, residential address, height, weight, hair and eye color, DOB, NTN number, license expiration date and Class type.

## ND CLASS 1 (FRONT)



NORTH DAKOTA CONCEALED WEAPON LICENSE
NUMBER: 2    NTN  1XZL-V4P   ISSUED  11-23-2011
TYPE: FIREARM & DANG. WEAPON   EXPIRES  11-23-2016
DOB:
CLASS 1

STEINEUBAL WAYNE DEVIN
123 66 ST NE
BISMARCK ND 58501
SEX   HGT   WGT   HAIR   EYES
M    200   604   BRO    BRO
APPROVED BY
Dallas L Carlson, Director NDBCI

## ND CLASS 2 (FRONT)



NORTH DAKOTA CONCEALED WEAPON LICENSE
NUMBER: 2    NTN  1XZL-V4P   ISSUED  11-23-2011
TYPE: FIREARM & DANG. WEAPON   EXPIRES  11-23-2016
DOB:
CLASS 2

STEINEUBAL WAYNE DEVIN
123 66 ST NE
BISMARCK ND 58501
SEX   HGT   WGT   HAIR   EYES
M    200   604   BRO    BRO
APPROVED BY
Dallas L Carlson, Director NDBCI

## BACK (ALL LICENSES)



NORTH DAKOTA CONCEALED WEAPON LICENSE

Issued by
BUREAU OF CRIMINAL INVESTIGATION
Office of Attorney General
P.O. Box 1054
Bismarck, ND 58502-1054
(701) 328-5500

Please return by November 22, 2013



NOV 19 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|----|----|----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Jonathon Fulkerson
_____
Name

DEPUTY CHIEF COUNSEL
_____
Title

NOV 12, 2013
_____
Date

614 - 644 - 8701
_____
Telephone

Ohio Attorney Generals Office
_____
State Agency Department

30 E. BROAD ST, 17TH FLOOR
_____
Address

Columbus, Ohio 43215
_____
City, State, Zip

JONATHON.FULKERSON @ OHIOATTORNEYGENERAL
_____
Email

AFFIDAVIT EXHIBIT C   328

Please return by November 22, 2013

| Yes | No | | |
|-----|----|----|--|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |

*OK Gun License allows for open or concealed carry.*

| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☐ | ☑ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |

*No, however, OSBI checks all applicants against the Oklahoma Dept. of Mental Health to ensure we do not issue to those w/ involuntary commitments in oklahoma*

| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms?<br>If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Felicia Jackson

Name

Administrative Programs Officer
Title

11/7/2013
Date

(405) 879-2534
Telephone

Oklahoma State Bureau of Investigation
State Agency Department

6600 N. Harvey PL
Address

Oklahoma City, OK 73116
City, State, Zip

felicia.jackson@osbi.ok.gov
Email

AFFIDAVIT EXHIBIT C   329



**Fw: CCW survey**
Jessica Trame   to: Peggy Thompson                                    11/13/2013 03:54 PM

From:        Jessica Trame/IlStPolice
To:          "Peggy Thompson" ·

    1 attachment


Please print this email and attachment.
--------------------------
Jessica Trame
Bureau Chief, Firearm Services Bureau
Illinois State Police
217.782.5015


----- Original Message -----
From: Felicia Jackson
Sent: 11/13/2013 09:37 PM GMT
To: "jessica.trame@isp.state.il.us" <
Cc: Bryan Rizzi
Subject: CCW survey


Dear  Jessica Trame,

Attached is the completed survey sent to the Oklahoma State Bureau of
Investigation for purposes of validating reciprocity for Concealed Carry
Licensing.  The state of Oklahoma, pursuant to Oklahoma Title 21 § 1290.26,
recognizes any valid concealed or unconcealed carry weapons permit or license
issued by another state, therefore residents of Illinois with a valid carry
permit issued by the state of Illinois will be able to carry in Oklahoma.

If you need the hard copy form mailed to you, please let me know.  Also, if
you have any further questions or concerns, feel free to contact me anytime.

Thank you.


Respectfully,
Felicia Jackson
Administrative Programs Officer
Licensing and Special Services
Oklahoma State Bureau of Investigation
(405) 879-2534
(405) 879-2966 FAX


The information contained in this e-mail message, and any files transmitted
with it, is confidential and may be legally privileged. It is intended only
for the use of the individuals or entities named above. If the reader of this
message is not the intended recipient, or the employee or agent responsible to
deliver it to the intended recipient, you are hereby notified that any
dissemination, distribution or forwarding of this e-mail message is strictly
prohibited. If you have received this e-mail message in error, please notify
the sender and delete the material from any computer. Thank you for your
cooperation.

Please return by November 22, 2013



| Yes | No | | |
|-----|-----|-----|-----|
| ☐ | ☐ | 1. | Does your state issue a Concealed Carry License? *This function is handled through Oregon's 36 county Sheriff's Offices* |
| ☐ | ☐ | (2.) | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? *unknown* |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | (6.) | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? *unknown* |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

*Oregon Sheriffs Association Can assist with Statewide questions*
*503-364-4204   www. oregonsheriffs.org*

s/Patricia Whitfield
**Name**

CJTS Division Director
**Title**

11/18/13
**Date**

503-934-2305
**Telephone**

Oregon State Police
**State Agency Department**

3772 Portland Rd NE Bldg C
**Address**

Salem, OR 97301
**City, State, Zip**

Patricia. Whitfield@state.or.us
**Email**

Please return by November 22, 2013

*NOTE: SCARY, VERY LATE NOTE*
*C. WEIR*



| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☒ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Clifton Weir
_____
Name

MAJOR
_____
Title

MARCH 7, 2014
_____
Date

( 803 ) 737-9600
_____
Telephone

S.C. LAW ENFORCEMENT DIVISION
_____
State Agency Department

P.O. BOX 21398
_____
Address

COLUMBIA SC 29221
_____
City, State, Zip

CWEIR@SLED.SC.GOV
_____
Email

Please return by November 22, 2013



RECEIVED

NOV 12 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ YES | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☐ | ☒ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Richard Williams

_____
Name

*Assistant Attorney General*
Title

*11-6-13*
Date

*605-773-3215*
Telephone

*Attorney General*
State Agency Department

*1302 East Hwy 14 Sta. 1*
Address

*Pierre, SD, 57501*
City, State, Zip

*Rich.Williams@State.SD.US*
Email



Firearm Services Bureau
Illinois State Police

| Yes | No | | |
|---|---|---|---|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? *TN. Issues A Handgun Carry Permit. Permit holders can carry open or Concealed* |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Lisa Knight
_____
Name

DIRECTOR HANDGUN PROGRAM
_____
Title

5/12/14
_____
Date

615-251-5330
_____
Telephone

SAfety of Homeland Security
_____
State Agency/Department

1148 Foster Ave.
_____
Address

NAshville TN. 37243
_____
City, State, Zip

LISA.Knight@TN.GOV
_____
Email



RECEIVED

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|---|---|---|---|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? *TN. Issues A Handgun Carry Permit Permit holders can carry open or concealed* |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Lisa Knight
**Name**

DIRECTOR Handgun Program
**Title**

5/12/14
**Date**

615-251-5330
**Telephone**

Safety & Homeland Security
**State Agency/Department**

1148 Foster Ave.
**Address**

Nashville TN. 37243
**City, State, Zip**

Lisa.Knight@TN.GOV
**Email**



| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? *TN. Issues A Handgun Carry Permit. Permit holders can carry open or concealed* |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

*s/Lisa Knight*
Name

*Director Handgun Program*
Title

*5/12/14*
Date

*615-251-5330*
Telephone

*Safety of Homeland Security*
State Agency/Department

*1148 Foster Ave.*
Address

*Nashville   TN. 37243*
City, State, Zip

*Lisa.Knight@TN.Gov*
Email

Please return by November 22, 2013



RECEIVED

NOV 2 2 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? *Attached* |
| ☐ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? *Attached* |
| ☐ | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Renearl Bowie
**Name**

*Assistant Director*
**Title**

*11-18-13*
**Date**

*512-424-7731*
**Telephone**

*TEXAS Department of Public Safety*
**State Agency Department**

*5806 Guadalupe Bld I*
**Address**

*Austin, TX 78752*
**City, State, Zip**

*renearl.Bowie@dps.texas.gov*
**Email**

AFFIDAVIT EXHIBIT C   337

1. Does your state issue a Concealed Carry License?   *Yes.*

2. Does your state participate in reporting Concealed Carry License via the National Law Enforcement Teletype System (NLETS)?          *Yes.*

3. Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)?   *Yes.*

4. Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years?   *The use or possession of a firearm is not prohibited on this basis, but it is an eligibility criterion for a concealed handgun license.*

5. Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license?      *Only involuntary admissions are reported by the courts.  Applicants for a concealed handgun license are required to disclose any admissions to the department at the time of application.*

6. If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms?      *There is no legislation pending.*

Please return by November 22, 2013

NOV 19 2013



Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|----|----|----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Jason Chapman
_____
Name

Supervisor
_____
Title

11-7-13
_____
Date

801-965-3810
_____
Telephone

DPS / BCI
_____
State Agency Department

3888 W. 5400 S.
_____
Address

Taylorsville, UT 84129
_____
City, State, Zip

Jchapman@utah.gov
_____
Email

AFFIDAVIT EXHIBIT C   339

State of Utah
Department of Public Safety

# APPLICATION FOR CONCEALED FIREARM PERMIT

## INSTRUCTIONS
## NEW APPLICANT

Anyone, at least 21 years of age, may apply for the Utah Concealed Firearm Permit. Please answer all questions by typing or clearly printing in ink.

Applications may be submitted in person or by mail to:
Bureau of Criminal Identification
3888 West 5400 South
Taylorsville UT 84129
Office Hours: M-F, 8:00 a.m. until 5:00 p.m.

Applications must be accompanied by all required documentation (see below). Every application must be signed by the applicant prior to submission.

If applying by mail, please send application and everything that must accompany it in a 9 x 12 envelope, if possible.

### COST TO APPLY
The following non-refundable fee must be included with your application:
**Utah Residents: $46.00**
**Non-Residents: $51.00**

### PAYMENT OPTIONS
The Bureau accepts cash, check, money order, VISA and MASTERCARD. **Credit card payment must include the 3-digit control number on the back of the card.**

Name and address must be imprinted on checks (no "counter checks" please). Please make check or money order payable to: Utah Bureau of Criminal Identification. There will be a $20 service charge for returned checks. **PLEASE DO NOT SEND CASH IN THE MAIL.**

### CONCEALED FIREARM COURSE SURVEY
Please complete the course survey available at:
http://www.publicsafety.utah.gov/bci/CFPsurvey.html
You may return the survey by email to:
DPSFIREARMS@Utah.gov

### WHAT MUST ACCOMPANY THE APPLICATION
☐PHOTOCOPY OF YOUR DRIVER LICENSE OR STATE ISSUED IDENTIFICATION CARD

☐1 (BLUE & WHITE) APPLICANT FINGERPRINT CARD **BCI does offer fingerprint services. The fee is $15.00**

☐ PHOTOGRAPH:
One recent color photograph of passport quality (2x2, no hats or sunglasses please). NAME MUST BE ON BACK OF PHOTO!! BCI does offer photo services for our permits. The fee for a photo is $15.00

☐ Application must include permanent physical residence and mailing address (if applicable).

### ☐ NON-RESIDENT PROOF OF PERMIT
If you reside in a state that recognizes the validity of the Utah CFP or has reciprocity with Utah, you must obtain a CFP or CCW from your home state and submit a copy of it with your application for a Utah permit. For a list of reciprocal states visit: http://www.publicsafety.utah.gov/bci/FAQother.html Residency will be determined by your state-issued identification. If your state does not recognize the Utah permit this does not apply.

### ☐ FINGERPRINT CARDS:
Blue and white (FD-258) Applicant fingerprint cards can be obtained from BCI or your local police department. Fingerprint card must be filled out completely, including signatures of both the applicant and official. **USE BLACK INK ONLY.** Writing and prints must be legible. Fingerprint cards that are not legible will be returned to the applicant and will cause a delay in processing the application. Private businesses and many local law enforcement agencies provide this service, check your local listings.

### ☐ APPLICANTS BORN OUTSIDE OF U.S.:
**If you were born outside of the U.S. you must include your Alien Registration Number or INS Registration Number on your application and fingerprint card, or include a copy of your U.S. issued born abroad birth certificate.** A copy of a valid U.S passport will also be accepted for proof of citizenship if born outside the US.

### ☐ WEAPON FAMILIARITY CERTIFICATION:
Applicants must complete a firearms familiarity course, certified by the Bureau, before applying for a permit. Please have your instructor complete the certification information on the application. Holders of a valid Concealed Firearm Permit from another state other than Utah are <u>not</u> exempt from taking the weapon familiarity course from an approved Utah instructor. BCI must receive your application within one year from the date the course was completed.

### ☐ APPLICATION PROCESSING
Upon receipt of your completed application packet, we will process your payment, then applications will be reviewed in the order they were received. Upon completion of the background investigation, if it is determined that the criteria established by law has been met, the permit will be mailed to you. Please do not call to check the status of your permit; the review process may take up to 60 days.

### WARNING
*Falsification of any information in the application may result in denial or revocation of a permit and possible criminal prosecution.*

### VISIT OUR WEBSITE AT:
http://publicsafety.utah.gov/bci/
Any questions please contact BCI at 801-965-4445 or DPSFIREARMS@utah.gov.



### State of Utah
### Department of Public Safety
## APPLICATION FOR CONCEALED FIREARM PERMIT

**Please read all instructions prior to completing this form. TYPE OR PRINT IN INK.**
Your application will *not* be processed unless this form is completely filled out and all applicable questions answered. Be sure to provide all supporting documents: one complete fingerprint card, one photo (with name on back), photocopy of resident state's permit (if applicable) and photocopy of drivers' license.
Enclose the appropriate fee, **$46.00 for Utah residents or $51.00 for non-residents** in the form of check, money order or credit card made payable to "Utah Bureau of Criminal Identification". Name and address must be imprinted on check.

Bureau Use Only

**FEES ARE NON-REFUNDABLE**

Name_____ Date of Birth _____ State/Country of Birth_____
       (Last)                  (First)                  (Middle)                                                    (If born outside of US provide documentation)
(Please print full name as it appears on your driver license or state issued ID card)

Previously used Name(s)(Maiden, etc.)_____ Social Security Number_____

Physical Address_____
                                              (Street)                          (City)           (County)        (State)          (Zip)
Mailing Address  (if different from street address)_____

Home Phone#_____Alt Phone #_____ Driver Lic #_____ St._____

Height_____Weight_____Eye Color_____Hair Color_____Sex_____Race_____

What is your Citizenship?_____If born outside of US, include Alien Registration # or INS Registration #_____

**ALL APPLICANTS: Please answer "Yes" or "No" to all questions below. A complete criminal background check will be conducted including expunged and juvenile court records. If you answer "Yes" to any question, attach documentation explaining your answer.**

☐ Yes  ☐ No  Have you ever been convicted of a felony?
☐ Yes  ☐ No  Have you ever been convicted of a crime of violence?
☐ Yes  ☐ No  Have you ever been convicted of an offense involving the use of alcohol? (i.e. DUI/DWI, alcohol related reckless, unlawful use of alcohol, etc.)
☐ Yes  ☐ No  Have you ever been convicted of the unlawful use of narcotics or other controlled substances?
☐ Yes  ☐ No  Have you ever been convicted of any offense involving moral turpitude? (i.e., theft, criminal mischief, sex crimes, etc.)
☐ Yes  ☐ No  Have you ever been convicted of offense involving domestic violence?
☐ Yes  ☐ No  Have you ever been adjudicated as mentally incompetent?
☐ Yes  ☐ No  Are you currently subject to a court sanctioned protective order?
☐ Yes  ☐ No  Have you ever been dishonorably discharged from the armed forces?

**NEW APPLICANTS:** A department approved firearms instructor must complete the following certification information:

The applicant, _____ has met the criteria
established by the Utah Department of Public Safety and Utah Code Ann. § 53-5-704(8). I certify this to be true and correct to the best of my knowledge and belief.

| The instructor's stamp goes in this box |
|---|

Instructor
Signature_____

Training Date_____
                        Month        Day        Year

**ALL APPLICANTS: Please read and sign the statement below:**

I understand that it is a class B misdemeanor to knowingly and willfully provide false information on a concealed firearm permit application and may result in the denial of a permit pursuant to Utah Code Ann. § 53-5-704(15). I hereby declare under criminal penalty of the State of Utah that the information contained on this application is true and correct.

Executed on: _____ at _____
                            (Date)                         (Time)

_____
          (Signature)

**METHOD OF PAYMENT** (CHECK APPROPRIATE BOX)    Payment enclosed (check or money order only) ☐    Credit Card ☐
Credit Card payment must include 3 digit control number found on back of the credit card. There is a $20.00 service charge for any returned check.

Credit Card Signature_____    Zip Code Associated with Credit Card_____

Credit Card Orders:   *Visa ☐    *MasterCard ☐

| Card Number | | | | | | | | | | | | 3 Digit Control # | | Expiration Date (MMYY) | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Utah Bureau of Criminal Identification 3888 W 5400 S Taylorsville Utah 84129 801-965-4445 - - - - - BCI-1523A-1007

Revised 3/2013



**Fw: Utah's Response to Survey Request**
Gary W Clark   to: Jessica Trame                                            05/09/2014 08:57 AM

From:       Gary W Clark/IlStPolice
To:         Jessica Trame/IlStPolice@IlStPolice,

FYI

**Sergeant Gary Clark**
**Staff Officer**
**Division of Administration**
**Telephone: 217-557-1732**
**Fax: 217-558-1882**
----- Forwarded by Gary W Clark/IlStPolice on 05/09/2014 08:56 AM -----

From:       Marc Maton/IlStPolice
To:         Gary W Clark/IlStPolice@ilstpolice,
Cc:         Matthew Davis/IlStPolice@ilstpolice
Date:       05/08/2014 06:01 PM
Subject:    FW: Utah's Response to Survey Request

Sent from my Windows Phone

From: Alice Moffat
Sent: 5/8/2014 12:38 PM
To: Marc_Maton@isp.state.il.us
Cc: Jeff Carr
Subject: Utah's Response to Survey Request
Marc,

Please find attached our response to your survey request.

Alice Moffat

--
Division Director
Utah Bureau of Criminal Identification
(801) 965-4939 office
(801) 209-8926 cell
(801) 965-4944 fax ⬜ - Illinois.pdf

AFFIDAVIT EXHIBIT C   342



| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

---

s/Jason Chapman
**Name**

*Supervisor*
**Title**

5/8/2014
**Date**

801-965-3810
**Telephone**

DPS / BCI
**State Agency Department**

3888 W. 5400 S.
**Address**

Taylorsville, UT  84129
**City, State, Zip**

JChapman @ Utah.gov
**Email**

801 - 965 - 3810



## ILLINOIS STATE POLICE
*Office of the Director*

Pat Quinn
*Governor*

October 30, 2013

Hiram Grau
*Director*

~~Commissioner Keith D. Squires~~   MR JASON CHAPMAN
Utah Department of Public Safety
Bureau of Criminal Identification ⟶ CONCEALED FIREARM UNIT
3888 West 5400 South
Taylorsville, Utah 84129

Dear Commissioner Squires:

Effective July 9, 2013, Public Act 98-63, the Illinois Firearm Concealed Carry Act, became state law (430 ILCS 66) requiring an Illinois Concealed Carry License in order to carry a concealed firearm in Illinois. Within this Act, non-residents from substantially similar states are allowed to apply for a non-resident Concealed Carry License if they are eligible to carry a firearm in public under the laws of his or her state or territory of residence and are not prohibited from owning or possessing a firearm under federal law.

As such, the Illinois State Police (ISP) is not able to consider applications from individuals in other states for an Illinois Concealed Carry License until reviews of applicable states' laws are completed. In order to accomplish this, by November 22, 2013, we request your agency complete and return our survey in the enclosed self-addressed envelope. Your response will help the ISP to determine whether your state's laws regarding concealed carry are substantially similar to Illinois' laws.

Your staff may contact Bureau Chief Jessica Trame at 217-782-5047 or at Jessica.Trame@isp.state.il.us with any questions. Thank you for taking the time to respond to this survey.

Respectfully,

s/Hiram Grau

Hiram Grau
Director

Enclosure

801 South Seventh Street • Suite 1100-S
PO Box 19461
Springfield, IL 62794-9461
(217) 782-7263 (voice) • 1 (800) 255-3323 (TDD)
www.illinois.gov • www.isp.state.il.us

RECEIVED

Please return by November 22, 2013



NOV 1 2 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☑ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Thomas Lambert
**Name**

HEARING & LEGAL SERVICES OFFICER
**Title**

Nov 6, 2013
**Date**

804-674-2212
**Telephone**

Department of State Police
**State Agency Department**

P.O. Box 27472
**Address**

Richmond, VA 23261
**City, State, Zip**

Tom.Lambert @ VSP.Virginia.gov
**Email**

AFFIDAVIT EXHIBIT C   345

Please return by November 22, 2013



RECEIVED

NOV 2 2 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☒ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Rachel G.

Name

Legal Assistant

Title

11-15-2013

Date

360-586-6236

Telephone

Licensing and Administrative Law,
Office of the Attorney General

State Agency Department

1125 Washington St SE

Address

Olympia, WA 98504

City, State, Zip

rachelg@atg.wa.gov

Email

Please return by November 22, 2013



| Yes | No | | |
|---|---|---|---|
| ☐ | ☒ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☒ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☒ | ☐ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☒ | ☐ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☐ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |
| | | | If yes, what is the effective date? _____ Please provide a copy of the legislative language. |

s/Colin Hall
**Name**

*Sergeant*
**Title**

*1/22/14*
**Date**

*202-727-9889*
**Telephone**

*Wash. DC Metropolitan Police Dep*
**State Agency Department**

*300 Indiana Ave. NW #3058*
**Address**

*Washington, DC  20001*
**City, State, Zip**

*colin.hall@dc.gov*
**Email**

Please return by November 22, 2013





| Yes | No | | |
|-----|-----|-----|-----|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☐ | ☑ * | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| | See other side | | |
| ☑ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Ritchie Hall
**Name**

Deputy Attorney General
**Title**

11/1/13
**Date**

304-558-2021 ext 2204
**Telephone**

WV Attorney General's Office
**State Agency Department**

State Capitol Bldg. 1 Room E-26
**Address**

Charleston, WV 25305
**City, State, Zip**

rrh@wvago.gov
**Email**

## CHAPTER 61. CRIMES AND THEIR PUNISHMENT.
## ARTICLE 7. DANGEROUS WEAPONS. §61-7-1. Legislative findings.

The Legislature finds that the overwhelming support of the citizens of West Virginia for article three, section twenty-two of the constitution of this state, commonly known as the "Right to Keep and Bear Arms Amendment", combined with the obligation of the state to reasonably regulate the right of persons to keep and bear arms for self-defense requires the reenactment of this article.

### §61-7-2. Definitions.

As used in this article, unless the context otherwise requires:

(1) "Blackjack" means a short bludgeon consisting, at the striking end, of an encased piece of lead or some other heavy substance and, at the handle end, a strap or springy shaft which increases the force of impact when a person or object is struck. The term "blackjack" shall include, but not be limited to, a billy, billy club, sand club, sandbag or slapjack.

(2) "Gravity knife" means any knife that has a blade released from the handle by the force of gravity or the application of centrifugal force and when so released is locked in place by means of a button, spring, lever or other locking or catching device.

(3) "Knife" means an instrument, intended to be used or readily adaptable to be used as a weapon, consisting of a sharp-edged or sharp-pointed blade, usually made of steel, attached to a handle which is capable of inflicting cutting, stabbing or tearing wounds. The term "knife" shall include, but not be limited to, any dagger, dirk, poniard or stiletto, with a blade over three and one- half inches in length, any switchblade knife or gravity knife and any other instrument capable of inflicting cutting, stabbing or tearing wounds. A pocket knife with a blade three and one-half inches or less in length, a hunting or fishing knife carried for hunting, fishing, sports or other recreational uses or a knife designed for use as a tool or household implement shall not be included within the term "knife" as defined herein unless such knife is knowingly used or intended to be used to produce serious bodily injury or death.

(4) "Switchblade knife" means any knife having a spring- operated blade which opens automatically upon pressure being applied to a button, catch or other releasing device in its handle.

(5) "Nunchuka" means a flailing instrument consisting of two or more rigid parts, connected by a chain, cable, rope or other nonrigid, flexible or springy material, constructed in such a manner as to allow the rigid parts to swing freely so that one rigid part may be used as a handle and the other rigid part may be used as the striking end.

(6) "Metallic or false knuckles" means a set of finger rings attached to a transverse piece to be worn over the front of the hand for use as a weapon and constructed in such a manner that, when striking another person with the fist or closed hand, considerable physical damage may be inflicted upon the person struck. The terms "metallic or false knuckles" shall include any such instrument without reference to the metal or other substance or substances from which the metallic or false knuckles are made.

(7) "Pistol" means a short firearm having a chamber which is integral with the barrel, designed to be aimed and fired by the use of a single hand.

(8) "Revolver" means a short firearm having a cylinder of several chambers that are brought successively into line with the barrel to be discharged, designed to be aimed and fired by the use of a single hand.

(9) "Deadly weapon" means an instrument which is designed to be used to produce serious bodily injury or death or is readily adaptable to such use. The term "deadly weapon" shall include, but not be limited to, the instruments defined in subdivisions (1) through (8), inclusive, of this section or other deadly weapons of like kind or character which may be easily concealed on or about the person. For the purposes of section one-a, article five, chapter eighteen-a of this code and

section eleven-a, article seven of this chapter, in addition to the definition of "knife" set forth in subdivision (3) of this section, the term "deadly weapon" also includes any instrument included within the definition of "knife" with a blade of three and one-half inches or less in length. Additionally, for the purposes of section one-a, article five, chapter eighteen-a of this code and section eleven-a, article seven of this chapter, the term "deadly weapon" includes explosive, chemical, biological and radiological materials. Notwithstanding any other provision of this section, the term "deadly weapon" does not include any item or material owned by the school or county board, intended for curricular use, and used by the student at the time of the alleged offense solely for curricular purposes.

(10) "Concealed" means hidden from ordinary observation so as to prevent disclosure or recognition. A deadly weapon is concealed when it is carried on or about the person in such a manner that another person in the ordinary course of events would not be placed on notice that the deadly weapon was being carried. For purposes of concealed handgun licensees, a licensee shall be deemed to be carrying on or about his or her person while in or on a motor vehicle if the firearm is located in a storage area in or on the motor vehicle.

(11) "Firearm" means any weapon which will expel a projectile by action of an explosion.

(12) "Controlled substance" has the same meaning as is ascribed to that term in subsection (d), section one hundred one, article one, chapter sixty-a of this code.

(13) "Drug" has the same meaning as is ascribed to that term in subsection (1), section one hundred one, article one, chapter sixty-a of this code. §61-7-3. Carrying deadly weapon without license or other authorization; penalties.
(a) Any person who carries a concealed deadly weapon, without a state license or other lawful authorization established under the provisions of this code, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than one hundred dollars nor more than one thousand dollars and may be imprisoned in the county jail for not more than twelve months for the first offense; but upon conviction of a second or subsequent offense, he or she shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one nor more than five years and fined not less than one thousand dollars nor more than five thousand dollars.

(b) It shall be the duty of the prosecuting attorney in all cases to ascertain whether or not the charge made by the grand jury is a first offense or is a second or subsequent offense and, if it shall be a second or subsequent offense, it shall be so stated in the indictment returned, and the prosecuting attorney shall introduce the record evidence before the trial court of such second or subsequent offense and shall not be permitted to use discretion in introducing evidence to prove the same on the trial.

§61-7-4. License to carry deadly weapons; how obtained.

(a) Except as provided in subsection (h) of this section, any person desiring to obtain a state license to carry a concealed deadly weapon shall apply to the sheriff of his or her county for the license, and shall pay to the sheriff, at the time of application, a fee of $75, of which $15 of that amount shall be deposited in the Courthouse Facilities Improvement Fund created by section six, article twenty-six, chapter twenty-nine of this code. Concealed weapons permits may only be issued for pistols or revolvers. Each applicant shall file with the sheriff a complete application, as prepared by the Superintendent of the West Virginia State Police, in writing, duly verified, which sets forth only the following licensing requirements:

(1) The applicant's full name, date of birth, Social Security number, a description of the applicant's physical features, the applicant's place of birth, the applicant's country of citizenship and, if the applicant is not a United States citizen, any alien or admission number issued by the United States Bureau of Immigration and Customs enforcement, and any basis, if applicable, for an exception to the prohibitions of 18 U. S. C. §922(g)(5)(B);

(2) That, on the date the application is made, the applicant is a bona fide resident of this state and of the county in which the application is made and has a valid driver's license or other state-issued photo identification showing the residence;

AFFIDAVIT EXHIBIT C   350

(3) That the applicant is twenty-one years of age or older: *Provided,* That any individual who is less than twenty-one years of age and possesses a properly issued concealed weapons license as of the effective date of this article shall be licensed to maintain his or her concealed weapons license notwithstanding the provisions of this section requiring new applicants to be at least twenty-one years of age: *Provided, however,* That upon a showing of any applicant who is eighteen years of age or older that he or she is required to carry a concealed weapon as a condition for employment, and presents satisfactory proof to the sheriff thereof, then he or she shall be issued a license upon meeting all other conditions of this section. Upon discontinuance of employment that requires the concealed weapons license, if the individual issued the license is not yet twenty-one years of age, then the individual issued the license is no longer eligible and must return his or her license to the issuing sheriff;

(4) That the applicant is not addicted to alcohol, a controlled substance or a drug and is not an unlawful user thereof as evidenced by either of the following within the three years immediately prior to the application:

(A) Residential or court-ordered treatment for alcoholism or alcohol detoxification or drug treatment; or

(B) Two or more convictions for driving while under the influence or driving while impaired;

(5) That the applicant has not been convicted of a felony unless the conviction has been expunged or set aside or the applicant's civil rights have been restored or the applicant has been unconditionally pardoned for the offense;

(6) That the applicant has not been convicted of a misdemeanor crime of violence other than an offense set forth in subsection (7) of this section in the five years immediately preceding the application.

(7) That the applicant has not been convicted of a misdemeanor crime of domestic violence as defined in 18 U. S. C. §921(a)(33), or a misdemeanor offense of assault or battery either under the provisions of section twenty-eight, article two of this chapter or the provisions of subsection (b) or (c), section nine, article two of this chapter in which the victim was a current or former spouse, current or former sexual or intimate partner, person with whom the defendant cohabits or has cohabited, a parent or guardian, the defendant's child or ward or a member of the defendant's household at the time of the offense, or a misdemeanor offense with similar essential elements in a jurisdiction other than this state;

(8) That the applicant is not under indictment for a felony offense or is not currently serving a sentence of confinement, parole, probation or other court-ordered supervision imposed by a court of any jurisdiction or is the subject of an emergency or temporary domestic violence protective order or is the subject of a final domestic violence protective order entered by a court of any jurisdiction;

(9) That the applicant has not been adjudicated to be mentally incompetent or involuntarily committed to a mental institution. If the applicant has been adjudicated mentally incompetent or involuntarily committed the applicant must provide a court order reflecting that the applicant is no longer under such disability and the applicant's right to possess or receive a firearm has been restored.

(10) That the applicant has qualified under the minimum requirements set forth in subsection (d) of this section for handling and firing the weapon: *Provided,* That this requirement shall be waived in the case of a renewal applicant who has previously qualified; and

(11) That the applicant authorizes the sheriff of the county, or his or her designee, to conduct an investigation relative to the information contained in the application.

(b) For both initial and renewal applications, the sheriff shall conduct an investigation including a nationwide criminal background check consisting of inquiries of the National Instant Criminal Background Check System, the West Virginia criminal history record responses and the National Interstate Identification Index and shall review the information received in order to verify that the information required in subsection (a) of this section is true and correct.

AFFIDAVIT EXHIBIT C   351

(c) Sixty dollars of the application fee and any fees for replacement of lost or stolen licenses received by the sheriff shall be deposited by the sheriff into a Concealed Weapons License Administration Fund. The fund shall be administered by the sheriff and shall take the form of an interest-bearing account with any interest earned to be compounded to the fund. Any funds deposited in this Concealed Weapon License Administration Fund are to be expended by the sheriff to pay for the costs associated with issuing concealed weapons licenses. Any surplus in the fund on hand at the end of each fiscal year may be expended for other law-enforcement purposes or operating needs of the sheriff's office, as the sheriff may consider appropriate.

(d) All persons applying for a license must complete a training course in handling and firing a handgun. The successful completion of any of the following courses fulfills this training requirement:

(1) Any official National Rifle Association handgun safety or training course;

(2) Any handgun safety or training course or class available to the general public offered by an official law-enforcement organization, community college, junior college, college or private or public institution or organization or handgun training school utilizing instructors duly certified by the institution;

(3) Any handgun training or safety course or class conducted by a handgun instructor certified as such by the state or by the National Rifle Association;

(4) Any handgun training or safety course or class conducted by any branch of the United States Military, Reserve or National Guard or proof of other handgun qualification received while serving in any branch of the United States Military, Reserve or National Guard.

A photocopy of a certificate of completion of any of the courses or classes or an affidavit from the instructor, school, club, organization or group that conducted or taught said course or class attesting to the successful completion of the course or class by the applicant or a copy of any document which shows successful completion of the course or class shall constitute evidence of qualification under this section.

(e) All concealed weapons license applications must be notarized by a notary public duly licensed under article four, chapter twenty-nine of this code. Falsification of any portion of the application constitutes false swearing and is punishable under the provisions of section two, article five, chapter sixty-one of this code.

(f) The sheriff shall issue a license unless he or she determines that the application is incomplete, that it contains statements that are materially false or incorrect or that applicant otherwise does not meet the requirements set forth in this section. The sheriff shall issue, reissue or deny the license within forty-five days after the application is filed if all required background checks authorized by this section are completed.

(g) Before any approved license shall be issued or become effective, the applicant shall pay to the sheriff a fee in the amount of $25 which the sheriff shall forward to the Superintendent of the West Virginia State Police within thirty days of receipt. The license shall be valid for five years throughout the state, unless sooner revoked.

(h) Each license shall contain the full name and address of the licensee and a space upon which the signature of the licensee shall be signed with pen and ink. The issuing sheriff shall sign and attach his or her seal to all license cards. The sheriff shall provide to each new licensee a duplicate license card, in size similar to other state identification cards and licenses, suitable for carrying in a wallet, and the license card is considered a license for the purposes of this section.

(i) The Superintendent of the West Virginia State Police shall prepare uniform applications for licenses and license cards showing that the license has been granted and shall do any other act required to be done to protect the state and see to the enforcement of this section.

AFFIDAVIT EXHIBIT C   352

(j) If an application is denied, the specific reasons for the denial shall be stated by the sheriff denying the application. Any person denied a license may file, in the circuit court of the county in which the application was made, a petition seeking review of the denial. The petition shall be filed within thirty days of the denial. The court shall then determine whether the applicant is entitled to the issuance of a license under the criteria set forth in this section. The applicant may be represented by counsel, but in no case may the court be required to appoint counsel for an applicant. The final order of the court shall include the court's findings of fact and conclusions of law. If the final order upholds the denial, the applicant may file an appeal in accordance with the Rules of Appellate Procedure of the Supreme Court of Appeals.

(k) If a license is lost or destroyed, the person to whom the license was issued may obtain a duplicate or substitute license for a fee of $5 by filing a notarized statement with the sheriff indicating that the license has been lost or destroyed.

(l) Whenever any person after applying for and receiving a concealed handgun license moves from the address named in the application to another county within the state, the license remains valid for the remainder of the five years: *Provided,* That the licensee within twenty days thereafter notifies the sheriff in the new county of residence in writing of the old and new addresses.

(m) The sheriff shall, immediately after the license is granted as aforesaid, furnish the Superintendent of the West Virginia State Police a certified copy of the approved application. The sheriff shall furnish to the Superintendent of the West Virginia State Police at any time so requested a certified list of all licenses issued in the county. The Superintendent of the West Virginia State Police shall maintain a registry of all persons who have been issued concealed weapons licenses.

(n) Except when subject to an exception under section six, article seven of this chapter, all licensees must carry with them a state-issued photo identification card with the concealed weapons license whenever the licensee is carrying a concealed weapon. Any licensee who, in violation of this subsection, fails to have in his or her possession a state-issued photo identification card and a current concealed weapons license while carrying a concealed weapon is guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $50 or more than $200 for each offense.

(o) The sheriff shall deny any application or revoke any existing license upon determination that any of the licensing application requirements established in this section have been violated by the licensee.

(p) A person who is engaged in the receipt, review or in the issuance or revocation of a concealed weapon license does not incur any civil liability as the result of the lawful performance of his or her duties under this article.

(q) Notwithstanding the provisions of subsection (a) of this section, with respect to application by a former law-enforcement officer honorably retired from agencies governed by article fourteen, chapter seven of this code; article fourteen, chapter eight of this code; article two, chapter fifteen of this code; and article seven, chapter twenty of this code, an honorably retired officer is exempt from payment of fees and costs as otherwise required by this section. All other application and background check requirements set forth in this shall be applicable to these applicants.

(r) Except as restricted or prohibited by the provisions of this article or as otherwise prohibited by law, the issuance of a concealed weapon permit issued in accordance with the provisions of this section authorizes the holder of the permit to carry a concealed pistol or revolver on the lands or waters of this state. **§61-7-5. Revocation of license.**
A license to carry a deadly weapon shall be deemed revoked at such time as the person licensed becomes unable to meet the criteria for initial licensure set forth in section four of this article. Any person licensed under the provisions of this article shall immediately surrender his or her license to the issuing sheriff upon becoming ineligible for continued licensure.

**§61-7-6. Exceptions as to prohibitions against carrying concealed handguns; exemptions from licensing fees.**

(a) The licensure provisions set forth in this article do not apply to:

(1) Any person:

AFFIDAVIT EXHIBIT C   353

(A) Carrying a deadly weapon upon his or her own premises;

(B) Carrying a firearm, unloaded, from the place of purchase to his or her home, residence or place of business or to a place of repair and back to his or her home, residence or place of business; or

(C) Possessing a firearm while hunting in a lawful manner or while traveling from his or her home, residence or place of business to a hunting site and returning to his or her home, residence or place of business;

(2) Any person who is a member of a properly organized target-shooting club authorized by law to obtain firearms by purchase or requisition from this state or from the United States for the purpose of target practice from carrying any pistol, as defined in this article, unloaded, from his or her home, residence or place of business to a place of target practice and from any place of target practice back to his or her home, residence or place of business, for using any such weapon at a place of target practice in training and improving his or her skill in the use of the weapons;

(3) Any law-enforcement officer or law-enforcement official as defined in section one, article twenty-nine, chapter thirty of this code;

(4) Any employee of the West Virginia Division of Corrections duly appointed pursuant to the provisions of section eleven-c, article one, chapter twenty-five of this code while the employee is on duty;

(5) Any member of the armed forces of the United States or the militia of this state while the member is on duty;

(6) Any resident of another state who holds a valid permit or license to possess or carry a handgun issued by a state or a political subdivision subject to the provisions and limitations set forth in section six-a of this article;

(7) Any federal law-enforcement officer or federal police officer authorized to carry a weapon in the performance of the officer's duty;

(8) Any Hatfield-McCoy Regional Recreation Authority Ranger while the ranger is on duty; and

(9) Any parole officer appointed pursuant to section fourteen, article twelve, chapter sixty-two of this code in the performance of their duties.

(b) On and after July 1, 2013, the following judicial officers and prosecutors and staff shall be exempted from paying any application fees or licensure fees required under this article. However, on and after that same date, they shall be required to make application and satisfy all licensure and handgun safety and training requirements set forth in section four of this article before carrying a concealed handgun in this state:

(1) Any justice of the Supreme Court of Appeals of West Virginia;

(2) Any circuit judge;

(3) Any retired justice or retired circuit judge designated senior status by the Supreme Court of Appeals of West Virginia;

(4) Any family court judge;

(5) Any magistrate;

(6) Any prosecuting attorney;

(7) Any assistant prosecuting attorney; or

(8) Any duly appointed investigator employed by a prosecuting attorney. **§61-7-6a. Reciprocity and recognition; out-**

of-state concealed handgun permits.

(a) A valid out-of-state permit or license to possess or carry a handgun is valid in this state for the carrying of a concealed handgun, if the following conditions are met:

(1) The permit or license holder is twenty-one years of age or older;

(2) The permit or license is in his or her immediate possession;

(3) The permit or license holder is not a resident of the State of West Virginia; and

(4) The Attorney General has been notified by the Governor of the other state that the other state allows residents of West Virginia who are licensed in West Virginia to carry a concealed handgun to carry a concealed handgun in that state or the Attorney General has entered into a written reciprocity agreement with the appropriate official of the other state whereby the state agrees to honor West Virginia concealed handgun licenses in return for same treatment in this state.

(b) A holder of a valid permit or license from another state who is authorized to carry a concealed handgun in this state pursuant to provisions of this section is subject to the same laws and restrictions with respect to carrying a concealed handgun as a resident of West Virginia who is so permitted and must carry the concealed handgun in compliance with the laws of this state.

(c) A license or permit from another state is not valid in this state if the holder is or becomes prohibited by law from possessing a firearm.

(d) The West Virginia Attorney General shall seek to obtain recognition of West Virginia concealed handgun licenses and enter into and execute reciprocity agreements on behalf of the State of West Virginia with states for the recognition of concealed handgun permits issued pursuant to this article.

(e) The West Virginia State Police shall maintain a registry of states with which the State of West Virginia has entered into reciprocity agreements or which recognize West Virginia concealed handgun licenses on the criminal information network and make the registry available to law-enforcement officers for investigative purposes.

(f) Every twelve months after the effective date of this section, the West Virginia Attorney General shall make written inquiry of the concealed handgun licensing or permitting authorities in each other state as to: (i) Whether a West Virginia resident may carry a concealed handgun in their state based upon having a valid West Virginia concealed handgun permit; and (ii) whether a West Virginia resident may carry a concealed handgun in that state based upon having a valid West Virginia concealed handgun permit, pursuant to the laws of that state or by the execution of a valid reciprocity agreement between the states.

(g) The West Virginia State Police shall make available to the public a list of states which have entered into reciprocity agreements with the State of West Virginia or that allow residents of West Virginia who are licensed in West Virginia to carry a concealed handgun to carry a concealed handgun in that state. **§61-7-7. Persons prohibited from possessing firearms; classifications; reinstatement of rights to possess; offenses; penalties.**

(a) Except as provided in this section, no person shall possess a firearm, as such is defined in section two of this article, who:

(1) Has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;

(2) Is habitually addicted to alcohol;

(3) Is an unlawful user of or habitually addicted to any controlled substance;

AFFIDAVIT EXHIBIT C    355

(4) Has been adjudicated to be mentally incompetent or who has been involuntarily committed to a mental institution pursuant to the provisions of chapter twenty-seven of this code or in similar law of another jurisdiction: *Provided*, That once an individual has been adjudicated as a mental defective or involuntarily committed to a mental institution, he or she shall be duly notified that they are to immediately surrender any firearms in their ownership or possession: *Provided, however*, That the mental hygiene commissioner or circuit judge shall first make a determination of the appropriate public or private individual or entity to act as conservator for the surrendered property;

(5) Is an alien illegally or unlawfully in the United States;

(6) Has been discharged from the armed forces under dishonorable conditions;

(7) Is subject to a domestic violence protective order that:

(A) Was issued after a hearing of which such person received actual notice and at which such person had an opportunity to participate;

(B) Restrains such person from harassing, stalking or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C)(i) Includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) By its terms explicitly prohibits the use, attempted use or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury; or

(8) Has been convicted of a misdemeanor offense of assault or battery either under the provisions of section twenty-eight, article two of this chapter or the provisions of subsection (b) or (c), section nine of said article or a federal or state statute with the same essential elements in which the victim was a current or former spouse, current or former sexual or intimate partner, person with whom the defendant has a child in common, person with whom the defendant cohabits or has cohabited, a parent or guardian, the defendant's child or ward or a member of the defendant's household at the time of the offense or has been convicted in any court of any jurisdiction of a comparable misdemeanor crime of domestic violence.

Any person who violates the provisions of this subsection shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not less than $100 nor more than $1,000 or confined in the county jail for not less than ninety days nor more than one year, or both.

(b) Notwithstanding the provisions of subsection (a) of this section, any person:

(1) Who has been convicted in this state or any other jurisdiction of a felony crime of violence against the person of another or of a felony sexual offense; or

(2) Who has been convicted in this state or any other jurisdiction of a felony controlled substance offense involving a Schedule I controlled substance other than marijuana, a Schedule II or a Schedule III controlled substance as such are defined in sections two hundred four, two hundred five and two hundred six, article two, chapter sixty-a of this code and who possesses a firearm as such is defined in section two of this article shall be guilty of a felony and, upon conviction thereof, shall be confined in a state correctional facility for not more than five years or fined not more than $5,000, or both. The provisions of subsection (c) of this section shall not apply to persons convicted of offenses referred to in this subsection or to persons convicted of a violation of this subsection.

(c) Any person prohibited from possessing a firearm by the provisions of subsection (a) of this section may petition the

circuit court of the county in which he or she resides to regain the ability to possess a firearm and if the court finds by clear and convincing evidence that the person is competent and capable of exercising the responsibility concomitant with the possession of a firearm, the court may enter an order allowing the person to possess a firearm if such possession would not violate any federal law: *Provided*, That a person prohibited from possessing a firearm by the provisions of subdivision (4), subsection (a) of this section may petition to regain the ability to possess a firearm in accordance with the provisions of section five, article seven-a of this chapter.

(d) Any person who has been convicted of an offense which disqualifies him or her from possessing a firearm by virtue of a criminal conviction whose conviction was expunged or set aside or who subsequent thereto receives an unconditional pardon for said offense shall not be prohibited from possessing a firearm by the provisions of the section. **§61-7-8. Possession of deadly weapons by minors; prohibitions.**
Notwithstanding any other provision of this article to the contrary, a person under the age of eighteen years who is not married or otherwise emancipated shall not possess or carry concealed or openly any deadly weapon: *Provided,* That a minor may possess a firearm upon premises owned by said minor or his family or on the premises of another with the permission of his or her parent or guardian and in the case of property other than his or her own or that of his family, with the permission of the owner or lessee of such property: *Provided, however,* That nothing in this section shall prohibit a minor from possessing a firearm while hunting in a lawful manner or while traveling from a place where he or she may lawfully possess a deadly weapon, to a hunting site, and returning to a place where he or she may lawfully possess such weapon.

A violation of this section by a person under the age of eighteen years shall subject the child to the jurisdiction of the circuit court under the provisions of article five, chapter forty-nine of this code, and such minor may be proceeded against in the same manner as if he or she had committed an act which if committed by an adult would be a crime, and may be adjudicated delinquent.

### §61-7-9. Possession of machine guns, penalties.
It shall be unlawful for any person to carry, transport, or have in his possession, any machine gun, submachine gun, or any other fully automatic weapon unless he or she has fully complied with applicable federal statutes and all applicable rules and regulations of the secretary of the treasury of the United States relating to such firearms.

Any person who violates the provision of this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than one thousand dollars nor more than five thousand dollars, or shall be confined in the county jail for not less than ninety days, or more than one year, or both.

### §61-7-10. Display of deadly weapons for sale or hire; sale to prohibited persons; penalties.
(a) A person may not publicly display and offer for rent or sale, or, where the person is other than a natural person, knowingly permit an employee thereof to publicly display and offer for rent or sale, to any passersby on any street, road or alley, any deadly weapon, machine gun, submachine gun or other fully automatic weapon, any rifle, shotgun or ammunition for same.

(b) Any person who violates the provisions of subsections (a) or (c) of this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than $5,000 or shall be confined in the county jail for not more than one year, or both fined and confined, except that where the person violating the provisions of said subsections is other than a natural person, such person shall be fined not more than $10,000.

(c) A person may not knowingly sell, rent, give or lend, or, where the person is other than a natural person, knowingly permit an employee thereof to knowingly sell, rent, give or lend, any deadly weapon other than a firearm to a person prohibited from possessing a deadly weapon other than a firearm by any provision of this article.

(d) a person may not knowingly sell, rent, give or lend, or where the person is other than a natural person, knowingly permit an employee thereof to knowingly sell, rent give or lend a firearm or ammunition to a person prohibited by any provision of

AFFIDAVIT EXHIBIT C   357

this article or the provisions of 18 U.S.C. §922.

(e) Any person who violates any of the provisions of subsection (d) of this section is guilty of a felony, and, upon conviction thereof, shall be fined not more than $100,000 imprisoned in a state correctional facility for a definite term of years of not less than three years nor more than ten years, or both fined and imprisoned, except that where the person committing an offense punishable under this subsection is other than a natural person, such person shall be fined not more than $250,000.

(f) Any person who knowingly solicits, persuades, encourages or entices a licensed dealer or private seller of firearms or ammunition to transfer a firearm or ammunition under circumstances which the person knows would violate the laws of this state or the United States is guilty of a felony. Any person who willfully procures another to engage in conduct prohibited by this subsection shall be punished as a principal. This subsection does not apply to a law-enforcement officer acting in his or her official capacity. Any person who violates the provisions of this subsection is guilty of a felony, and upon conviction thereof, shall be fined not more than $5,000, imprisoned in a state correctional facility for a definite term or not less than one year nor more than five years, or both fined and imprisoned.

§61-7-11. Brandishing deadly weapons; threatening or causing breach of the peace; criminal penalties.
It shall be unlawful for any person armed with a firearm or other deadly weapon, whether licensed to carry the same or not, to carry, brandish or use such weapon in a way or manner to cause, or threaten, a breach of the peace. Any person violating this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than fifty nor more than one thousand dollars, or shall be confined in the county jail not less than ninety days nor more than one year, or both.

§61-7-11a. Possessing deadly weapons on premises of educational facilities; reports by school principals; suspension of driver's license; possessing deadly weapons on premises housing courts of law and in offices of family law master.

(a) The Legislature hereby finds that the safety and welfare of the citizens of this state are inextricably dependent upon assurances of safety for children attending and persons employed by schools in this state and for persons employed by the judicial department of this state. It is for the purpose of providing assurances of safety that subsections (b), (g) and (h) of this section are enacted as a reasonable regulation of the manner in which citizens may exercise the rights accorded to them pursuant to section twenty-two, article three of the Constitution of the State of West Virginia.

(b) (1) It is unlawful for a person to possess a firearm or other deadly weapon on a school bus as defined in section one, article one, chapter seventeen-a of this code, or in or on a public or private primary or secondary education building, structure, facility or grounds including a vocational education building, structure, facility or grounds where secondary vocational education programs are conducted or at a school-sponsored function.

(2) This subsection does not apply to:

(A) A law-enforcement officer acting in his or her official capacity;

(B) A person specifically authorized by the board of education of the county or principal of the school where the property is located to conduct programs with valid educational purposes;

(C) A person who, as otherwise permitted by the provisions of this article, possesses an unloaded firearm or deadly weapon in a motor vehicle or leaves an unloaded firearm or deadly weapon in a locked motor vehicle;

(D) Programs or raffles conducted with the approval of the county board of education or school which include the display of unloaded firearms;

(E) The official mascot of West Virginia University, commonly known as the Mountaineer, acting in his or her official capacity; or

AFFIDAVIT EXHIBIT C   358

(F) The official mascot of Parkersburg South High School, commonly known as the Patriot, acting in his or her official capacity.

(3) A person violating this subsection is guilty of a felony and, upon conviction thereof, shall be imprisoned in a state correctional facility for a definite term of years of not less than two years nor more than ten years, or fined not more than $5,000, or both.

(c) It is the duty of the principal of each school subject to the authority of the State Board of Education to report a violation of subsection (b) of this section discovered by the principal to the State Superintendent of Schools within seventy-two hours after the violation occurs. The State Board of Education shall keep and maintain these reports and may prescribe rules establishing policy and procedures for the making and delivery of the reports as required by this subsection. In addition, it is the duty of the principal of each school subject to the authority of the State Board of Education to report a violation of subsection (b) of this section discovered by the principal to the appropriate local office of the Division of Public Safety within seventy-two hours after the violation occurs.

(d) In addition to the methods of disposition provided by article five, chapter forty-nine of this code, a court which adjudicates a person who is fourteen years of age or older as delinquent for a violation of subsection (b) of this section may, in its discretion, order the Division of Motor Vehicles to suspend a driver's license or instruction permit issued to the person for a period of time as the court considers appropriate, not to extend beyond the person's nineteenth birthday. Where the person has not been issued a driver's license or instruction permit by this state, a court may order the Division of Motor Vehicles to deny the person's application for a license or permit for a period of time as the court considers appropriate, not to extend beyond the person's nineteenth birthday. A suspension ordered by the court pursuant to this subsection is effective upon the date of entry of the order. Where the court orders the suspension of a driver's license or instruction permit pursuant to this subsection, the court shall confiscate any driver's license or instruction permit in the adjudicated person's possession and forward to the Division of Motor Vehicles.

(e) (1) If a person eighteen years of age or older is convicted of violating subsection (b) of this section, and if the person does not act to appeal the conviction within the time periods described in subdivision (2) of this subsection, the person's license or privilege to operate a motor vehicle in this state shall be revoked in accordance with the provisions of this section.

(2) The clerk of the court in which the person is convicted as described in subdivision (1) of this subsection shall forward to the commissioner a transcript of the judgment of conviction. If the conviction is the judgment of a magistrate court, the magistrate court clerk shall forward the transcript when the person convicted has not requested an appeal within twenty days of the sentencing for the conviction. If the conviction is the judgment of a circuit court, the circuit clerk shall forward a transcript of the judgment of conviction when the person convicted has not filed a notice of intent to file a petition for appeal or writ of error within thirty days after the judgment was entered.

(3) If, upon examination of the transcript of the judgment of conviction, the commissioner determines that the person was convicted as described in subdivision (1) of this subsection, the commissioner shall make and enter an order revoking the person's license or privilege to operate a motor vehicle in this state for a period of one year or, in the event the person is a student enrolled in a secondary school, for a period of one year or until the person's twentieth birthday, whichever is the greater period. The order shall contain the reasons for the revocation and the revocation period. The order of suspension shall advise the person that because of the receipt of the court's transcript, a presumption exists that the person named in the order of suspension is the same person named in the transcript. The commissioner may grant an administrative hearing which substantially complies with the requirements of the provisions of section two, article five-a, chapter seventeen-c of this code upon a preliminary showing that a possibility exists that the person named in the notice of conviction is not the same person whose license is being suspended. The request for hearing shall be made within ten days after receipt of a copy of the order of suspension. The sole purpose of this hearing is for the person requesting the hearing to present evidence that he or she is not the person named in the notice. If the commissioner grants an administrative hearing, the commissioner

AFFIDAVIT EXHIBIT C    359

shall stay the license suspension pending the commissioner's order resulting from the hearing.

(4) For the purposes of this subsection, a person is convicted when such person enters a plea of guilty or is found guilty by a court or jury.

(f) (1) It is unlawful for a parent, guardian or custodian of a person less than eighteen years of age who knows that the person is in violation of subsection (b) of this section or has reasonable cause to believe that the person's violation of subsection (b) is imminent, to fail to immediately report his or her knowledge or belief to the appropriate school or law-enforcement officials.

(2) A person violating this subsection is guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $1,000, or shall be confined in jail not more than one year, or both.

(g) (1) It is unlawful for a person to possess a firearm or other deadly weapon on the premises of a court of law, including family courts.

(2) This subsection does not apply to:

(A) A law-enforcement officer acting in his or her official capacity; and

(B) A person exempted from the provisions of this subsection by order of record entered by a court with jurisdiction over the premises or offices.

(3) A person violating this subsection is guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $1,000, or shall be confined in jail not more than one year, or both.

(h) (1) It is unlawful for a person to possess a firearm or other deadly weapon on the premises of a court of law, including family courts, with the intent to commit a crime.

(2) A person violating this subsection is guilty of a felony and, upon conviction thereof, shall be imprisoned in a state correctional facility for a definite term of years of not less than two years nor more than ten years, or fined not more than $5,000, or both.

(i) Nothing in this section may be construed to be in conflict with the provisions of federal law. **§61-7-12. Wanton endangerment involving a firearm.**
Any person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony, and, upon conviction thereof, shall be confined in the penitentiary for a definite term of years of not less than one year nor more than five years, or, in the discretion of the court, confined in the county jail for not more than one year, or fined not less than two hundred fifty dollars nor more than two thousand five hundred dollars, or both.

For purposes of this section, the term "firearm" shall have the same meaning ascribed to such term as set forth in section two of this article.

**§61-7-13.**
Repealed.

Acts, 1990 Reg. Sess., Ch. 148.

**§61-7-14. Right of certain persons to limit possession of firearms on premises.**
Notwithstanding the provisions of this article, any owner, lessee or other person charged with the care, custody and control of real property may prohibit the carrying openly or concealed of any firearm or deadly weapon on property under his or her

AFFIDAVIT EXHIBIT C    360

domain: *Provided,* That for purposes of this section "person" means an individual or any entity which may acquire title to real property.

Any person carrying or possessing a firearm or other deadly weapon on the property of another who refuses to temporarily relinquish possession of such firearm or other deadly weapon, upon being requested to do so, or to leave such premises, while in possession of such firearm or other deadly weapon, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than one thousand dollars or confined in the county jail not more than six months, or both: *Provided,* That the provisions of this section shall not apply to those persons set forth in subsections (3) through (6) of section six of this code while such persons are acting in an official capacity: *Provided, however,* That under no circumstances may any person possess or carry or cause the possession or carrying of any firearm or other deadly weapon on the premises of any primary or secondary educational facility in this state unless such person is a law-enforcement officer or he or she has the express written permission of the county school superintendent.

### §61-7-15. Persons prohibited from committing violent crime while wearing body armor; penalties.
(a) A person who wears or is otherwise equipped with body armor while committing a felony offense, an element of which is force, the threat of force, physical harm to another or the use or presentment of a firearm or other deadly weapon, is guilty of a felony and, upon conviction thereof, shall be confined in a correctional facility for not less than two nor more than ten years or fined not more than ten thousand dollars, or both.

(b) As used in this section, "body armor" means a jacket, vest, or other similar apparel or device constructed to provide ballistic resistance to penetration and deformation and intended to protect the human torso against gunfire. The term may include, but is not limited to, apparel that incorporates inserts, or variations in construction of the ballistic panel over small areas of the torso, for the purpose of increasing the basic level of protection of the armor (whether ballistic or blunt trauma) on localized areas. Body armor may be constructed of Kevlar or other similar fabric and may be reinforced with other materials. Body armor may incorporate "threat" or "trauma" plates (which are inserts that fit into the vest that will stop more powerful rounds) or may, as "threat armor", incorporate hard panels.

*Note: WV Code updated with legislation passed through the 2013 1st Special Session*
*The WV Code Online is an unofficial copy of the annotated WV Code, provided as a convenience. It has NOT been edited for publication, and is not in any way official or authoritative.*

Please return by November 22, 2013



| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Thomas Bellavia

Name

Assistant Attorney General
Title

11/22/2013
Date

608-266-8690
Telephone

Wisconsin Department of Justice
State Agency Department

P.O. Box 7857
Address

Madison, WI 53707-7857
City, State, Zip

bellaviatc@doj.state.wi.us
Email



**Fw: Concealed carry reciprocity questionnaire**
Jessica Trame
to:
Peggy Thompson
11/24/2013 06:13 PM
Hide Details
From: Jessica Trame/IlStPolice
To: "Peggy Thompson" <

1 Attachment



2013 11-22 Completed Form.pdf

Please print.
---------------------------
Jessica Trame
Bureau Chief, Firearm Services Bureau
Illinois State Police
217.782.5015

---

**From:** "Bellavia, Thomas C." |
**Sent:** 11/24/2013 04:09 PM CST
**To:** "'Jessica.Trame@isp.state.il.us'"
**Subject:** Concealed carry reciprocity questionnaire

Dear Ms. Trame:

On October 30, 2013, Illinois State Police ("ISP") Director Hiram Grau sent to Wisconsin Attorney General J.B. Van Hollen a letter requesting information related to potential concealed carry reciprocity between Illinois and Wisconsin. Accompanying the letter was a response form, which I have been asked to complete and return to the ISP. Your name and email address were provided as ISP contact regarding this matter.

Please find attached to this email a scanned version of the completed response form. The original hard copy of the completed form will be sent out via regular mail early this coming week.

Thank you for your attention to this matter.

Thomas C. Bellavia
Assistant Attorney General
Wisconsin Department of Justice
608/266-8690

FAX 608/267-2223

**IMPORTANT NOTICE:** This communication, along with any attachments, may contain confidential attorney work product and/or confidential information protected by the attorney-client privilege. This material is not intended for transmission to, or receipt by, any unauthorized persons. If you are not the intended recipient, please reply to the sender that have you have received this message in error and then delete it.



**STATE OF WISCONSIN**
**DEPARTMENT OF JUSTICE**

RECEIVED

DEC  4 2013

Firearms Services Bureau
Illinois State Police

J.B. VAN HOLLEN
ATTORNEY GENERAL

Kevin M. St. John
Deputy Attorney General

17 W. Main Street
P.O. Box 7857
Madison, WI 53707-7857
www.doj.state.wi.us

Thomas C. Bellavia
Assistant Attorney General
608/266-8690
bellaviatc@doj.state.wi.us
FAX 608/267-2223

December 2, 2013

Mr. Hiram Grau
Director
Illinois State Police
Post Office Box 19461
Springfield, IL  62794-9461

Dear Mr. Grau:

On October 30, 2013, you sent to Wisconsin Attorney General J.B. Van Hollen a letter and questionnaire seeking information related to potential concealed carry reciprocity between Illinois and Wisconsin. You will please find enclosed a completed copy of the questionnaire. A copy of the completed questionnaire has also been sent via email to Bureau Chief Jessica Trame.

Please feel free to contact me if I may be of further assistance. Thank you for your attention to this matter.

Sincerely,

s/Thomas C. Bellavia

Thomas C. Bellavia
Assistant Attorney General

TCB:khc

Enclosure

c:     Jessica Trame (via email)

bellaviatc\ag correspondence\grau - lsis 131101006\2013 12-02 grau resp ltr.docx

Please return by November 22, 2013



RECEIVED

DEC   4 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____  Please provide a copy of the legislative language.

7.

s/Thomas C. Bellavia
Name

Assistant Attorney General
Title

11/22/2013
Date

608 - 266 - 8690
Telephone

Wisconsin Department of Justice
State Agency Department

P.O. Box 7857
Address

Madison, WI 53707-7857
City, State, Zip

bellaviatc@doj.state.wi.us
Email

AFFIDAVIT EXHIBIT C   365

Please return by November 22, 2013



RECEIVED

NOV 2 6 2013

Firearms Services Bureau
ILLINOIS STATE POLICE

| Yes | No | | |
|-----|-----|-----|-----|
| ☒ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☒ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☒ | ☐ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☒ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☒ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☒ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____   Please provide a copy of the legislative language.

s/Thomas C. Bellavia

**Name**

Assistant Attorney General

**Title**

11/22/2013

**Date**

608-266-8690

**Telephone**

Wisconsin Department of Justice

**State Agency Department**

P.O. Box 7857

**Address**

Madison, WI 53707-7857

**City, State, Zip**

bellaviatc@doj.state.wi.us

**Email**

Please return by November 22, 2013



RECEIVED

NOV 19 2013

Firearms Services Bureau
Illinois State Police

| Yes | No | | |
|---|---|---|---|
| ☑ | ☐ | 1. | Does your state issue a Concealed Carry License? |
| ☑ | ☐ | 2. | Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)? |
| ☐ | ☑ | 3. | Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)? |
| ☐ | ☑ | 4. | Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years? |
| ☐ | ☑ | 5. | Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license? |
| ☐ | ☑ | 6. | If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms? |

If yes, what is the effective date? _____ Please provide a copy of the legislative language.

s/Christoper Lynch
Name

Criminal Records Analyst
Title

11/12/2013
Date

(307) 777-5369
Telephone

Wyoming Division Criminal Inv.
State Agency Department

208 South College Dr.
Address

Cheyenne WY 82002-0150
City, State, Zip

Christopher.lynch@wyo.gov
Email

| State | Substantially Similar | Regulates Who May Carry Firearms In Public | Reports Persons Authorized to Carry Firearms through Nlets-National Law Enforcement Telecommunications System | Reports Denied Persons to NICS- National Instant Criminal Background Check System | Prohibits Voluntary Mental Health Admission Last 5 Years | Prohibits All Involuntary Mental Health Admissions |
|---|---|---|---|---|---|---|
| ALABAMA | | ✓ | | ✓ | | ✓ |
| ALASKA | | ✓ | ✓ | ✓ | | |
| ARIZONA | | ✓ | ✓ | ✓ | | ✓ |
| ARKANSAS | | ✓ | | ✓ | ✓ | ✓ |
| CALIFORNIA | | ✓ | | ✓ | ✓ | ✓ |
| COLORADO | *no response* | | | | | |
| CONNECTICUT | | ✓ | | ✓ | | ✓ |
| DELAWARE | | ✓ | | ✓ | | |
| FLORIDA | | ✓ | ✓ | ✓ | | ✓ |
| GEORGIA | | ✓ | | ✓ | | ✓ |
| HAWAII | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| IDAHO | | ✓ | ✓ | ✓ | | ✓ |
| INDIANA | | ✓ | ✓ | ✓ | | ✓ |
| IOWA | | ✓ | | ✓ | | |
| KANSAS | | ✓ | ✓ | ✓ | | ✓ |
| KENTUCKY | | ✓ | ✓ | | | |
| LOUISIANA | | ✓ | ✓ | | | |
| MAINE | *no response* | | | | | |
| MARYLAND | *no response* | | | | | |
| MASSACHUSETTS | *no response* | | | | | |
| MICHIGAN | | ✓ | ✓ | ✓ | | ✓ |
| MINNESOTA | | ✓ | | | | |
| MISSISSIPPI | | ✓ | | ✓ | ✓ | ✓ |
| MISSOURI | | ✓ | | ✓ | | ✓ |
| MONTANA | | ✓ | ✓ | | | |
| NEBRASKA | | ✓ | ✓ | ✓ | | ✓ |
| NEVADA | *no response* | | | | | |
| NEW HAMPSHIRE | | ✓ | | | | |
| NEW JERSEY | | ✓ | | ✓ | | ✓ |
| NEW MEXICO | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| NEW YORK | | ✓ | | ✓ | | ✓ |
| NORTH CAROLINA | | ✓ | | ✓ | | ✓ |
| NORTH DAKOTA | | ✓ | ✓ | ✓ | | ✓ |
| OHIO | | ✓ | ✓ | ✓ | | ✓ |
| OKLAHOMA | | ✓ | ✓ | | | |
| OREGON | | ✓ | | ✓ | | ✓ |
| PENNSYLAVNIA | *no response* | | | | | |
| RHODE ISLAND | *no response* | | | | | |
| SOUTH CAROLINA | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| SOUTH DAKOTA | | ✓ | ✓ | | | |

| State | Substantially Similar | Regulates Who May Carry Firearms In Public | Reports Persons Authorized to Carry Firearms through Nlets-National Law Enforcement Telecommunications System | Reports Denied Persons to NICS- National Instant Criminal Background Check System | Prohibits Voluntary Mental Health Admission Last 5 Years | Prohibits All Involuntary Mental Health Admissions |
|---|---|---|---|---|---|---|
| TENNESEE | | ✓ | ✓ | | | ✓ |
| TEXAS | | ✓ | ✓ | ✓ | | ✓ |
| UTAH | | ✓ | | ✓ | | ✓ |
| VERMONT | | ✓ | | ✓ | | ✓ |
| **VIRGINIA** | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| WASHINGTON | | ✓ | ✓ | ✓ | | ✓ |
| WASHINGTON D.C. | | | | ✓ | ✓ | ✓ |
| WEST VIRGINIA | | ✓ | | ✓ | | ✓ |
| WISCONSIN | | ✓ | ✓ | ✓ | | ✓ |
| WYOMING | | ✓ | ✓ | | | |

*Revised: August 28, 2014*

E-FILED
Monday, 23 November, 2015  04:52:43 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

KEVIN W. CULP, et al.,                    )
                                          )
            Plaintiff,                    )
vs.                                       )          No.: 14-3320
                                          )
LISA MADIGAN, et al.,                     )
                                          )
            Defendants.                   )

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME Defendants, LISA MADIGAN, in her Official Capacity as Attorney General of the State of Illinois, LEO SCHMITZ,[1] in his Official Capacity as Director of the Illinois State Police, and JESSICA TRAME, in her Official Capacity as Bureau Chief of the Illinois State Police Firearms Services Bureau, by and through their attorney, Lisa Madigan, Attorney General of Illinois, and hereby submit their memorandum of law in support of their motion for summary judgment, stating as follows:

## BACKGROUND

Plaintiffs seek a permanent injunction barring enforcement of the residency requirement of the Firearm Concealed Carry Act, 430 ILCS 66/40(a), thereby permitting the plaintiffs and their members to apply for an Illinois concealed carry license. Section 40 of the Carry Act permits nonresidents to apply, pursuant to rules of the Illinois State Police ("ISP"), for a concealed carry license if the nonresident is a resident of a state or U.S. territory with laws related to firearm ownership, possession, and carrying that are substantially similar to Illinois' requirements. The purpose of this requirement is to ensure public safety and prevent violent

---

[1] Leo Schmitz is automatically substituted in pursuant Rule 25(d) of the Federal Rules of Civil Procedure as the current Director of the Illinois State Police, replacing former Director Hiram Grau.

370

crime. Currently, Hawaii, New Mexico, South Carolina, and Virginia are "substantially similar," based on information provided by the jurisdictions in response to ISP's request for information.[2] (Ex. 1, Affidavit of Trame, at ¶¶ 26–29.)

The individual plaintiffs attest they are residents of Wisconsin, Colorado, Missouri, Iowa, Pennsylvania, or Indiana; would apply for a concealed carry permit if able; and would carry concealed firearms in Illinois but fear criminal prosecution. The individuals suggest they maintain "premises" in Illinois (*see*, *e.g.*, Doc. 18-1 at ¶ 2), but whether that is intended to constitute residency is unclear. A few attest they work in Illinois (Docs. 19 (military station), 19-2, 19-3); while others attest they "occasionally traverse" Illinois to visit relatives (Doc. 18-1); "frequently" visit and travel through Illinois to other states (Doc. 18-4); visit family in and make "periodic business trips" to Illinois (Doc. 19-4); or spend half of their time in Chicago (Doc. 19-1). One individual does not attest to any travel to or through Illinois. (Doc. 18-3). The organizational plaintiffs attest they have "many" nonresident members and conclude those unidentified members would apply for a concealed carry permit if able. (Docs. 18-2, 18-5, 21.)

Pursuant to 20 Ill. Admin. Code § 1231.110(c), ISP sent surveys to other jurisdictions requesting information about their firearm laws to determine whether those jurisdictions had "substantially similar" firearm laws. (Ex. 1 at ¶¶ 26–29.) ISP asked whether the jurisdiction regulated who may carry firearms in public, reported via national databases persons authorized to carry and persons denied, and prohibited persons voluntarily (in the last five years) or involuntarily admitted to mental health facilities from possessing or using firearms. Colorado, Maine, Maryland, Massachusetts, Nevada, Pennsylvania, and Rhode Island did not respond to Illinois' requests. Hawaii, New Mexico, South Carolina, and Virginia stated they met all of the

---

[2]ISP has proposed amended rules that may expand the number of states deemed to be "substantially similar" under the Carry Act. 39 Ill. Reg. 10717, 10740–41.

criteria. The remaining jurisdictions stated they did not have laws or procedures concerning one or more of the criteria. For example, and relevant to the plaintiffs' states of residence, Indiana, Iowa, Missouri, and Wisconsin stated they did not prohibit use or possession of firearms based on voluntary admissions to mental health facilities in the last five years and did not have a mechanism of tracking that information for their residents. (Ex. 1 at ¶ 29.) Iowa and Missouri also reported they do not participate in reporting licenses via the National Law Enforcement Telecommunications System, one of the systems used by Illinois to assess firearm qualifications and monitor continued qualifications. (Ex. 1 at ¶¶ 6, 10, 13, 14, 28–29.)

Because Illinois' regulations concerning the carrying of firearms by nonresidents are constitutional, Defendants request this Court enter judgment in favor of Defendants and against Plaintiffs.

## ISSUES AND ARGUMENT

Plaintiffs argue the residency requirement violates the Second Amendment right to keep and bear arms, the Fourteenth Amendment rights to equal protection and due process, and the Privileges and Immunities clause of Article IV of the United States Constitution, relative to certain nonresidents who wish to carry firearms in Illinois. Plaintiffs' various constitutional claims ultimately reduce to a Second Amendment challenge: whether the State may prohibit nonresidents from states without substantially similar firearm laws from obtaining Illinois concealed carry licenses consistent with the right to bear arms. Plaintiffs' claims fail as a matter of law.

Public carriage of firearms in Illinois is conditioned, with some exceptions, on possession of an Illinois concealed carry license. The restriction applicable to nonresidents from states without substantially similar firearm laws does not violate the right to bear arms in public

because it is reasonably related to Illinois' substantial interest in disarming those not qualified to carry firearms due to criminal history, mental illness, or other factors. Illinois has limited access to out-of-state information concerning nonresidents' qualifications to carry firearms in public in Illinois; unless a state gathers that information for the purpose of enforcing its own, substantially similar firearm laws, Illinois has no way to confirm that a nonresident from that state is qualified to carry a loaded firearm in public in Illinois, and would have no way to monitor that nonresident's ongoing qualifications were it to issue a license. Because the residency requirement does not violate the right to bear arms, Plaintiffs' various constitutional challenges premised on that right also fail.

I.     **The Carry Act and Related Regulations Do Not Violate the Second Amendment.**

Plaintiffs argue the residency requirement of the Carry Act constitutes a ban in violation of the Second Amendment as applied to them because, as residents from states lacking substantially similar firearm laws, they are prohibited from publicly carrying a firearm in Illinois. However, an examination of the Illinois firearm regulation scheme reveals that Illinois allows qualified individuals to possess firearms and carry them in public for the purpose of self-defense. Because that is all the Second Amendment requires, Plaintiffs' Second Amendment challenge fails.

A.     **The Illinois Firearm Regulation Scheme**

The Second Amendment confers two related individual rights: the right to keep arms and the right to bear arms. *See Dist. of Columbia v. Heller*, 554 U.S 570, 582-85 (2008); *McDonald v. Chicago*, 561 U.S. 742, 791 (2010) (applying Second Amendment to states). The right to keep arms is merely the right to possess them; the right to bear arms is the right to carry them in public for self-defense. *Heller*, 554 U.S at 582-84. Illinois has instituted separate regulatory schemes for

each right. The right to keep arms is governed by the FOID Card Act, which allows qualified

individuals to possess firearms. *See* 430 ILCS 65/1, *et seq*. However, a valid FOID card does not

permit its holder to carry firearms in public in a condition suitable for self-defense (*i.e.*, loaded

and immediately accessible). *See* 720 ILCS 5/24-1(a)(4), (a)(10); 720 ILCS 5/24-1.6(a)(1),

(a)(2), (a)(3)(A-5). Rather, that right—the right to bear arms—is governed by the Firearm

Concealed Carry Act, 430 ILCS 66/1, *et seq.*, which allows qualified individuals to *carry* arms.

> **1.      The FOID Card Act ensures only qualified individuals may possess firearms.**

Because nonresident applicants for a concealed carry license must meet all of the

qualifications for a FOID Card except residency, 430 ILCS 66/25, 40(c), the FOID Card Act is

examined first. The purpose of the FOID Card Act is "to promote and protect the health, safety,

and welfare of the public" by "provid[ing] a system of identifying persons who are not qualified

to acquire or possess firearms." 430 ILCS 65/1. To effect this purpose without infringing on the

Second Amendment right of "law-abiding, responsible citizens" to keep arms, *Heller*, 554 U.S.

at 635, the Act relies upon "longstanding prohibitions on the possession of firearms by felons

and the mentally ill," *id.*at 626, which are "presumptively lawful regulatory measures," *id.*at 627

n.26. *See* 430 ILCS 65/4(a)(2)(ii) (felony conviction bar); § 4(a)(2)(xiii) (juvenile adjudicated

delinquent if would have been felony had applicant been adult); § 4(a)(2)(iv) (patients in mental

health facility within past five years); § 4(a)(2)(xvi) (involuntarily mental health commitment).

The Act also prohibits licensure of persons who cannot be entrusted with firearms. *See* 430 ILCS

65/4(a)(2)(vii) (orders of protection); § 4(a)(2)(viii) (conviction involving firearm use or

possession within past five years); § 4(a)(2)(ix) (conviction of domestic violence offense that

constitutes federal prohibitor); § 4(a)(2)(iii) (narcotics addiction); *see alsoUnited States v. Yancy*,

621 F.3d 681, 687 (7th Cir. 2010) ("prohibiting illegal drug users from firearm possession"

constitutional under Second Amendment because "it is substantially related to the important governmental interest in preventing violent crime"). FOID Card applicants must submit evidence to ISP that none of these disqualifying conditions apply. 430 ILCS 65/4(a)(2).

Illinois' interest in assessing a person's qualifications to possess a firearm does not cease upon the issuance of a FOID Card. After all, an armed, card bearing person who once was qualified but no longer remains so may well present an even greater threat to the public than an armed person who was never qualified; the former's now-undeserved FOID Card might deceive law enforcement as to the threat posed by its holder. *Cf. Coram v. State*, 2013 IL 113867, ¶ 122 (Freeman, J., specially concurring) (issuing FOID card to person federally barred from possession renders system meaningless and threatens the public interest). Accordingly, any disqualifying condition constituting grounds to deny an applicant is also grounds to revoke a FOID Card if the condition is discovered or arises after issuance. *See* 430 ILCS 65/8.

To ensure prompt identification of later-arising disqualifying conditions, the General Assembly created a comprehensive system of reporting obligations to monitor ongoing qualifications. The Illinois Circuit Court Clerks must notify ISP of every final disposition of a criminal charge, delinquency petition, and involuntary commitment proceeding. 430 ILCS 65/8.1; 20 ILCS 2630/2.1(c); 20 ILCS 2630/2.2. The Illinois Department of Human Services ("DHS") must report information relating to mental illness to ISP. 430 ILCS 65/8.1(c); 740 ILCS 110/12(b).Every physician, clinical psychologist, and qualified examiner who determines that a person poses a clear and present danger to himself, herself, or others must report that determination within twenty-four hours to DHS, which in turn "shall immediately update its records and information relating to mental health and developmental disabilities, and if appropriate, shall notify the [ISP]." 430 ILCS 65/8.1(d)(1), (2); 405 ILCS 5/6-1.3.3; *see* 20 Ill.

Admin. Code § 1230.120. Finally, every law enforcement official and school administrator must report dangerous individuals directly to ISP within twenty-four hours. 430 ILCS 65/8.1(d)(2); 405 ILCS 5/6-1.3.3; 20 Ill. Admin. Code § 1230.120.

Nonresidents employed as law enforcement officers, armed security guards in Illinois, or members of the military permanently assigned in Illinois may apply for a FOID Card. 430 ILCS 65/4(a-10); 20 Ill. Admin Code § 1230.20(e). All nonresidents may possess firearms in Illinois without a FOID Card if their "firearms are unloaded and enclosed in a case," 430 ILCS 65/2(b)(9), or if they "are currently licensed or registered to possess a firearm in their resident state," 430 ILCS 65/2(b)(10). In addition, nonresidents may possess firearms in Illinois without a FOID Card if they are "hunters during hunting season, with valid nonresident hunting licenses and while in an area where hunting is permitted" (430 ILCS 65/2(b)(5)); "on a firing or shooting range recognized by [ISP]" (430 ILCS 65/2(b)(7)); or "at a firearm showing or display recognized by [ISP]" (430 ILCS 65/2(b)(8)).

> **2.    The Carry Act ensures only qualified individuals may publicly carry loaded and immediately accessible firearms.**

The purpose of the Firearm Concealed Carry Act is "to allow for a limited right to carry an operable handgun in public," *People v. Henderson*, 2013 IL App (1st) 113294, ¶ 34. In conjunction with the enforcement mechanisms under the Criminal Code, *see, e.g.* the aggravated unlawful use of a weapon ("AUUW") statute (720 ILCS 5/24–1.6), the Act "protect[s] the public and police officers from the inherent dangers and threats to safety posed by *any person* carrying in public a loaded and immediately accessible firearm on his person or in his vehicle." *People v. Fields*, 2014 IL App (1st) 130209, ¶ 61 (emphasis added).

Because "keep[ing] guns out of the hands of those individuals who by their prior conduct ha[ve] demonstrated that they may not possess a firearm without being a threat to society" and

"preventing armed mayhem" are important governmental objectives, *U.S. v. Williams*, 616 F.3d 685, 693 (7th Cir. 2010), Illinois' interest in limiting public carriage to qualified individuals is even greater than its interest in limiting mere possession of inaccessible and unloaded firearms under the FOID Card Act, and the qualifications required are correspondingly more comprehensive. *See also People v. Marin*, 342 Ill. App. 3d 716, 727–28, 795 N.E.2d 953, 962 (Ill. App. 1st Dist. 2003) ("Access to a loaded weapon on a public street creates a volatile situation vulnerable to spontaneous lethal aggression in the event of road rage or any other disagreement or dispute.") In addition to possessing and meeting the requirements for a currently valid FOID Card, an Illinois applicant for a concealed carry license cannot have been convicted within the past five years of a misdemeanor involving the use or threat of physical force or of two or more violations relating to driving while under the influence of alcohol or drugs. 430 ILCS 66/25(3). Similarly, the applicant cannot be subject to a pending arrest warrant, prosecution, or proceeding for an offense or action that could lead to disqualification to own or possess a firearm (430 ILCS 66/25(4)) or have been in residential or court-ordered treatment for alcoholism or drug use within the past five years (430 ILCS 66/25(5)). To confirm an applicant's qualifications, ISP conducts extensive background checks using national, state, and local records, as well as DHS files. 430 ILCS 66/35. In addition, the Carry Act allows state and local law enforcement agencies to submit objections to a license applicant. 430 ILCS 66/15; 20 Ill. Admin. Code § 1231.70.

    As under the FOID Card Act, any disqualifying condition that would constitute grounds to deny a concealed carry license is also grounds to revoke a license if discovered or arising after its issuance. 430 ILCS 66/70(a). Because applicants for concealed carry licenses must meet the requirements for a FOID Card, 430 ILCS 66/25(2); 430 ILCS 66/40(c), all of the reporting

obligations under the FOID Card Act also serve to monitor concealed carry licensees' ongoing qualifications under the Carry Act. In addition, disqualifying arrests are identified through daily reports to ISP from "[a]ll agencies making arrests for offenses which are required by statute to be collected, maintained or disseminated by the [ISP]." 20 ILCS 2630/2.1(a). All State's Attorneys must notify ISP of all charges and delinquency petitions filed to identify disqualifying prosecutions. 20 ILCS 2630/2.1(b).

Nonresident applicants for concealed carry licenses must meet the same requirements as resident applicants, except that rather than possessing a FOID Card, they must meet all qualifications to do so except for the Illinois residency requirement. 430 ILCS 66/40(c). As with resident license holders, Illinois has a substantial interest in monitoring the ongoing qualifications of nonresident license holders. Illinois cannot effectively monitor nonresidents' qualifications itself, however; out-of-state mental health providers and law enforcement agencies do not share the reporting obligations of their Illinois counterparts, and out-of-state criminal and mental health databases are not necessarily accessible to ISP or sufficiently comprehensive for Illinois licensing purposes. (*See generally* Ex. 1.) Rather than flatly banning nonresidents from obtaining Illinois concealed carry licenses, however, Illinois allows nonresidents from states "with laws related to firearm ownership, possession, and carrying, that are substantially similar" to Illinois' own to apply for an Illinois concealed carry license. 430 ILCS 66/40(b). A state has a firearm law substantially similar to Illinois' if it:

> regulates who may carry firearms, concealed or otherwise, in public; prohibits all
> who have involuntary mental health admissions, and those with voluntary
> admissions within the past 5 years, from carrying firearms, concealed or
> otherwise, in public; reports denied persons to NICS;[3] and participates in

---

[3] The National Instant Criminal Background Check System maintained by the Federal Bureau of Investigation.  20 Ill. Admin.Code § 1231.10.

reporting persons authorized to carry firearms, concealed or otherwise, in public through NLETs.[4]

20 Ill. Admin. Code § 1231.10. Because states with substantially similar firearm laws monitor

the criminal and mental health qualifications information relevant under Illinois law to assure

compliance with their own laws and make that information available through national databases,

Illinois can confirm that nonresidents from those states are qualified to hold an Illinois concealed

carry license.

Although nonresidents from states without similar laws (and therefore similar collection

and reporting of data) may not hold Illinois concealed carry licenses, they may transport a

concealed firearm in their vehicle without a license if they are not prohibited by federal law from

possessing a firearm or by their own states' laws from carrying a firearm in public, as evidenced

by their possession of a concealed carry license or permit by their own states, if applicable. 430

ILCS 66/40(e).

**B.      The Carry Act Does Not Violate the Second Amendment.**

Second Amendment challenges are governed by a two-pronged approach. *Ezell v.*

*Chicago*, 651 F.3d 684, 701–04 (7th Cir. 2011). First, courts consider the threshold question of

"whether the challenged law imposes a burden on conduct falling within the scope of the Second

Amendment's guarantee," *id.*at 704 (7th Cir. 2011) (citing *United States v. Marzzarella,* 614

F.3d 85, 89 (3d Cir. 2010)), because conduct beyond the scope of the Second Amendment is

categorically unprotected. *Id.* at 703. Where, as here, the regulated conduct falls within the scope

of the Second Amendment, *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012) (carriage of

firearms outside the home for purpose of self-defense is within scope of Second Amendment

right to bear arms), "there must be a second inquiry into the strength of the government's

---

[4]The National Law Enforcement Telecommunications System.20 Ill. Admin.Code § 1231.10.

justification for restricting or regulating the exercise of Second Amendment rights." *Ezell*, 651 F.3d at 703.

For this second inquiry, "the rigor of . . . judicial review will depend on how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right." *Ezell*, 651 F.3d at 703. Thus, while "a severe burden on the core Second Amendment right of armed self-defense will require an extremely strong public-interest justification and a close fit between the government's means and its end, . . . . laws restricting activity lying closer to the margins of the Second Amendment right, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified." *Id.* at 708. So called "means-end" or intermediate scrutiny is appropriate where, as here, the burden on Second Amendment rights lies outside of the core of the right. *See Yancey*, 621 F.3d at 683, 685 (applying intermediate scrutiny to categorical prohibition on habitual drug users, even though ban "wildly overinclusive"); *Williams*, 616 F.3d at 692 (applying means-end scrutiny to categorical prohibition on felons); *U.S. v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010) (applying means-end scrutiny to categorical prohibition on domestic violence misdemeanants).

       1.       **The residency requirement is subject to intermediate scrutiny because it regulates conduct outside the core of the Second Amendment.**

Plaintiffs incorrectly characterize the residency requirement as flatly banning public carriage (or even possession) of firearms by nonresidents (Doc. 20 at 24–25) and argue the requirement impacts a greater class of individuals than the law-abiding Illinois residents at issue in *Moore v. Madigan*, 702 F.3d 933, but review of the Illinois firearm regulation scheme belies this characterization. Illinois allows nonresidents to carry firearms in public with an Illinois concealed carry license where it can confirm, with the assistance of their states of residence, that they are not disqualified from doing so by conduct or mental illness. *See supra*, Section I.A.2.

380

Nonresidents may also carry concealed firearms in their vehicles regardless of their home states'

regulatory schemes. 430 ILCS 66/40(e); *Holmes*, 241 Ill. 2d at 521. Thus, the regulated conduct

is actually much narrower than claimed— the carriage of firearms outside of a vehicle in public

by nonresidents whose qualifications to do so as law-abiding, mentally healthy individuals

cannot be confirmed. *See Peterson v. Martinez*, 707 F.3d 1197, 1219 (Lucero, J. concurring

separately) ("[a]lthough the residency requirement . . . governs the vast majority of individuals

. . . , it burdens a relatively small proportion of individuals present in the state at any time.").

    This conduct falls outside the core protection of the second amendment—the "right of

law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at

635. "[O]utside the home, firearms rights have always been more limited, because public safety

interests often outweigh individual interests in self-defense." *United States v. Masciandaro*, 638

F.3d 458, 470 (4th Cir. 2011). Accordingly, courts have applied intermediate scrutiny to

regulation of public carriage. *See Drake v. Filko*, 724 F.3d 426, 430, 430 n.5 (3d Cir. 2013);

*Kachalsky v. Westchester*, 701 F.3d 81, 96 (2d Cir. 2012); *Masciandaro*, 638 F.3d at 471.

    The regulated conduct is also beyond the core of the Second Amendment because it

implicates longstanding prohibitions that are presumptively lawful. *See Heller*, 554 U.S. at 626–

27 & n.26; *Williams*, 616 F.3d at 692 (applying intermediate scrutiny to presumptively lawful

prohibition against possession of firearms by felons). Here, the regulated conduct lies at the

intersection of three presumptively lawful regulations: longstanding prohibitions against

possession by the criminally dangerous and mentally ill; public carriage of firearms; and

possession by nonresidents. Because the right belongs only to "law-abiding, responsible

citizens," *Heller*, 554 U.S. at 626, 627 n.26, 635, the prohibition against nonresidents carrying

firearms in public when their mental health and law-abiding qualifications to do so cannot be confirmed must also bear a presumption of lawfulness.

Prohibitions[5] against public carriage and carriage by nonresidents are similarly longstanding. The prohibition against public carriage is rooted in the English right codified by the Second Amendment. *See id.*at 599 (Second Amendment "codified a right inherited from our English ancestors") (internal quotation marks omitted); Patrick J. Charles, *The Faces of the Second Amendment Outside the Home: History Versus Ahistorical Standards of Review*, 60 Clev. St. L. Rev. 1, 7-8 (2012) ("[P]ublic regulation of arms is as old as the Norman Conquest or what eighteenth century commentators referred to as the beginning of the English Constitution."). Chief among such regulations was the 1328 Statute of Northampton, stating that "no person shall 'go nor ride armed by Night nor by Day in Fairs, Markets, nor in the Presence of the Justices or other Ministers nor in no Part elsewhere.'" Charles, 60 Clev. St. L. Rev. at 7–8 (quoting Statute of Northampton, 2 Edw. 3, c. 3 (Eng. 1328)). The statute was not only a prohibition on arms in the public concourse, but "[i]ts tenets also provided the basis of English legal reform for centuries to come," *id*. at 13, with three states—Massachusetts, North Carolina, and Virginia— "expressly incorporat[ing]" the Statue of Northampton "immediately after the adoption of the Constitution," *id.* at 31–32 (citing 2 The Perpetual Laws, of the Commonwealth of Massachusetts, from the Establishment of its Constitution to the Second Session of the General Court, in 1798 259 (Worcester, Isaiah Thomas 1799); Francois-Xavier Martin, A Collection of Statutes of the Parliament of England in Force in the State of North-Carolina 60-61 (Newbern 1792); A Collection of All Such Acts of the General Assembly of Virginia, of a Public and Permanent Nature, as are Now in Force 33 (Augustine Davis 1794)). The "legal tenets"

---

[5] Illinois merely regulates public carriage based on the ability to confirm qualifications.

underlying the Statute of Northampton persisted beyond the colonial period, and "[t]hroughout the nineteenth century numerous States enacted different versions." Charles, 60 Clev. St. L. Rev. at 40–41.

The prohibition against carriage of firearms by nonresidents dates back nearly a century. *See Heller v. Dist. of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011) (noting that "*Heller*[, 554 U.S 570, 626, 627 n.26 (2008),] considered 'prohibitions on the possession of firearms by felons' to be 'longstanding' although courts did not start to enact them until the early 20th century") (*citing* C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 708 (2009)). For example, in 1909, West Virginia conditioned carriage of a pistol, revolver, "or any other dangerous or deadly weapon of like kind and character" on:

> obtain[ing] a state license to carry any such weapon *within any county in this state* by publishing a notice in some newspaper published *in the county in which he resides*, setting forth his name, residence and occupation, and that on a certain day he will apply *to the circuit court of his county* for such state license . . . .

Act of Feb. 16, 1909, ch 51, 1909 W. Va. Acts 394, 395-96 (emphasis added). Similarly, a 1919 Montana statute allowed Montana judges to grant "permission to carry or bear concealed or otherwise a pistol or revolver," provided that "[n]o such permission shall be granted any person who is not a citizen of the United States, and who has not been an *actual bona fide resident of the State of Montana* for six (6) months immediately next preceding the date of such application." Act of Mar. 3, 1919, ch. 74, § 5, 1919 Mont. Acts 147, 148 (emphasis added). A 1921 Missouri statute prohibited a person from buying, borrowing, or receiving a "pistol, revolver or other firearm of a size which may be concealed upon the person, unless the buyer, borrower, or person receiving such weapon shall first obtain . . . a permit authorizing such person to acquire such weapon," where:

> [s]uch permit shall be issued by the circuit clerk *of the county in which the applicant for a permit resides in this state*, if the sheriff be satisfied that the

14 of 26

> person applying for the same is of good moral character and of lawful age and
> that the granting of the same will not endanger the public safety.

Act of Apr. 7, 1921, § 2, 1921 Mo. Laws 692 (emphasis added).

In sum, because public carriage of firearms by nonresidents in public outside of their vehicles when their mental health qualifications or criminal history cannot be confirmed is not at the core of the Second Amendment, the challenged statute is subject to intermediate scrutiny, in which "the government has the burden of demonstrating that its objective is an important one and that its objective is advanced by means substantially related to that objective." *Williams*, 616 F.3d at 692. The government has demonstrated that mental health status and criminal history status are critical to the safety of law enforcement and the public. The regulation at issue is substantially related to that objective. The challenged regulations are therefore constitutional.

> **2.      The Carry Act is reasonably related to Illinois' substantial interest in preventing unqualified people from publicly carrying loaded firearms.**

Plaintiffs' challenge to the Carry Act fails. The prohibition of firearm carriage outside the vehicle by nonresidents whose qualifications cannot be confirmed is reasonably related to the important governmental interest in "suppressing armed violence" by "keep[ing] guns out of the hands of presumptively risky people[,] . . . . including criminals, . . . mental defectives, armed groups who would supplant duly constituted public authorities, and others whose possession of firearms is similarly contrary to the public interest." *Yancey*, 621 F.3d at 683; *see also Fields*, 2014 IL App (1st) 130209, ¶ 57 ("[p]romoting and ensuring the safety of both the general public and police officers by limiting the accessibility of firearms in public to a less responsible or less mature group of people constitutes a substantial or important interest."); *see also Osterweil v. Bartlett*, 819 F.Supp.2d 72, 88 n.14 (collecting residency requirements of various states) (N.D.N.Y. 2011) *vacated on other grounds,* 738 F.3d 520 (2nd Cir. 2013). Limiting the right to carry a firearm in public to people whose qualifications can be confirmed is certainly reasonably

related to Illinois' interest in preventing unqualified people from carrying firearms in public. *See Yancey*, 621 F.3d at 684–85 (right to bear arms tied to concept of *virtuous citizenry* and unvirtuous may be disarmed).

Plaintiffs argue "there are ways short of a ban to ensure that only qualified non-residents obtain an Illinois CCL," but fail to offer a single practicable solution. For example, Plaintiffs assert nonresidents are no less competent or untrustworthy than residents and that if a nonresident is not qualified, the remedy is denial of a license. (Pls.' Br. 27.) However, this statement eludes the issue. The "peculiar evil" at stake is not that an individual nonresident is presumed to be less safe than a resident, but rather that nonresidents from dissimilar states, as a class, are substantially immune from the fundamental inquiries necessary to establish the requisite qualifications in the first place. (*See generally* Ex. 1.)

Nonetheless, even if there were more "narrow" ways to ensure a nonresident's qualifications, regulation of conduct beyond the core of the Second Amendment, as here, need only substantially related to the government interest. *Williams*, 616 F.3d at 692. This "means-end" inquiry merely requires "a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served." *Ezell*, 651 F.3d at 708.[6] Here, the fit is reasonable, allowing nonresidents whose qualifications can be confirmed with their states of residency to carry firearms in public with a valid Illinois concealed carry license and allowing nonresidents whose qualifications cannot be confirmed to carry concealed firearms in their vehicles without one. 430 ILCS 66/40(e); *cf. Holmes*, 241 Ill. 2d at 521.

---

[6] Thus, the fact that ISP has proposed new rules that rebalance the interests of public safety and the individual in favor of a less comprehensive monitoring scheme for nonresidents does not render the current rules unconstitutional.

Further, restricting public carriage to residents and nonresidents whose qualifications can be confirmed *is* the least restrictive means necessary. There is no way for Illinois to ensure that nonresidents from states without similar firearm laws are qualified to publicly carry firearms without endangering Illinois' citizens. Information on disqualifying out-of-state mental health conditions, arrests, and prosecutions is not reliably available through national databases. (Ex. 1 at ¶¶ 9–25.) Out-of-state mental health providers and law enforcement officials are under no obligation to notify Illinois should they discover a nonresident's disqualifying condition (so that an undeserved license can be revoked) and do not have the knowledge of Illinois law necessary to identify such a condition. (Ex. 1 at ¶¶ 16–25.) Plaintiffs insist they and their members are law-abiding, responsible citizens, but because they are nonresidents from states without similar firearm regulations and reporting methods, Illinois is unable to confirm these assurances of responsibility. Indeed, some of the individual plaintiffs hail from Colorado or Pennsylvania, two states that did not even respond to Illinois' surveys. Illinois cannot effectively evaluate and monitor the qualifications of citizens of states who will not even respond to requests for basic information.

Plaintiffs' request for a permanent injunction barring enforcement of the residency requirement essentially requires Illinois to simply give unknown numbers of nonresidents the benefit of the doubt, responding only *after* violence is committed. Plaintiffs ask for nonresidents to be treated *more* favorably than residents, in that nonresidents from dissimilar states are functionally immune to many of the same regulations and monitoring mechanisms applicable to residents.[7] The Second Amendment does not require public safety to be sacrificed in favor of a "wait and see" approach, nor does the Second Amendment require nonresidents to be treated

---

[7] Plaintiffs do not challenge the requirements of the FOID Card Act or the Carry Act unrelated to residency, and therefore concede that those requirements may be constitutionally applied.

more favorably than residents. Illinois is entitled to insist on meaningful assurances that residents and nonresidents alike are qualified to publicly carry loaded firearms.

II. **Illinois' restriction on public carriage of firearms by nonresidents whose qualifications cannot be confirmed and monitored does not violate the Privileges and Immunities Clause of Article IV, Section 2.**

Plaintiffs offer no authority, and Defendants have found none, establishing the right to bear arms is a "privilege" under the Privileges and Immunities Clause of Article IV. Rather, "[m]any, if not most [Supreme Court] cases expounding the Privileges and Immunities Clause have dealt with th[e] basic and essential activity" of pursuing "a common calling." *United Bldg. & Constr. Trades Counsel of Camden County & Vicinity v. Mayor & Counsel of Camden*, 465 U.S. 208, 219 (1984); *see also Conn. ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 95 (2d Cir. 2003) (collecting cases). Only those activities that are "sufficiently basic to the livelihood of the Nation . . . fall within the purview of the Privileges and Immunities Clause . . . ." *Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 64 (internal quotation marks omitted). Equal treatment is required "[o]nly with respect to those "privileges" and "immunities" bearing on the vitality of the Nation as a single entity." *Id.* Given the extensive history of regulation of public carriage and public carriage by nonresidents, the right to bear arms cannot be sufficiently basic to the livelihood of the Nation nor can it bear on the vitality of the Nation as a single entity so as to come within the Clause.

Even if the right to bear arms were a "privilege" under Article IV, Illinois' restrictions on public carriage by nonresidents from states without similar firearm laws would not violate Article IV. When a protected privilege or immunity is implicated by a discriminatory law, the State may defend the discrimination by showing that "(i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective." *Supreme Court of New Hampshire v. Piper*, 470

U.S. 274, 284 (1985)); *Crotty*, 346 F.3d at 94. The availability of less restrictive means is relevant to the consideration of whether the challenged discrimination is adequately related to the State's objective. *Sestric v. Clark*, 765 F.2d 655, 658 (7th Cir. 1985).

   The restriction at issue clearly satisfies this burden. The restriction on nonresidents holding Illinois concealed carry licenses is grounded in Illinois' inability to confirm and monitor their qualifications for their licenses—that is, the unavailability of adequate assurances that nonresidents would not endanger the public were they armed. *See supra*, Section I.A.2; I.B.2. Preventing public carriage by potentially dangerous nonresidents whose qualifications cannot be confirmed is a substantial reason to restrict nonresidents' carriage rights. *Cf. W.C.M. Window Co. v. Bernardi*, 730 F.2d 486, 497 (7th Cir. 1984) (state could "keep out nonresidents who had been exposed to some communicable disease of which the state was still substantially free" on ground that they constitute "a peculiar source of evil").

   Illinois' "monitoring interest is, in essence, an interest in continually obtaining relevant behavioral information," and Illinois has "just as much of an interest, for example, in discovering signs of mental instability demonstrated [out of state] as in discovering that instability [in state]." *Bach v. Pataki*, 408 F.3d 75, 91 (2d Cir. 2005) *overruled on other grounds*, *McDonald*, 561 U.S. at 748. Reporting obligations placed upon Illinois mental health professionals and law enforcement officials ensure that disqualifying conditions which arise in Illinois can be identified and acted upon, but there are no similar mechanisms available outside of Illinois if a nonresident's own state does not monitor such conditions for its own purposes. Accordingly, in considering the constitutionality of New York's restrictions on firearm licenses to nonresidents, the Second Circuit in *Bach* found it "self-evident" that "other States . . . cannot adequately play the part of monitor for the State of New York or provide it with a stream of behavioral

information approximating what New York would gather." *Id.*; *see also Peterson v. Martinez*, 707 F.3d 1197, 1220–24 (10th Cir. 2013) (Lucero, J., separately concurring) (concluding residency requirement for concealed carry license did not violate Second Amendment or privileges and immunities clause under intermediate scrutiny because requirement is substantially related to important government interest in assessing qualifications); *Peterson v. LaCabe*, 783 F. Supp. 2d 1167, 1175 (D. Colo. 2011) (residency requirement sufficiently related under Article IV to "substantial interest in restricting permits to those persons whose [qualification] information is more readily available" because State showed that "it is much more difficult and expensive to obtain information pertinent to an applicant's eligibility for a concealed handgun permit from out-of-state sources"). Other states have little incentive to gather and make available to Illinois information that has no independent relevance to those states, *see Bach*, 408 F.3d at 92–93; "Motivation is incentive driven—without these incentives, there is little reason to expect effective monitoring, if any." *Id.* at 93.

For this reason, the restriction on issuing Illinois concealed carry licenses to nonresidents from states that will not monitor those nonresidents' qualifications bears a substantial relationship to Illinois' objective of protecting the public by preventing unqualified people from holding licenses to carry firearms in public. Therefore, Plaintiffs' Privileges and Immunities claim fails.

III. **The Residency Requirement Does Not Violate the Equal Protection Clause of the Fourteenth Amendment Because It Is Rationally Related to Illinois' Legitimate Interest in Protecting the Public.**

Plaintiffs argue the Carry Act unconstitutionally discriminates between resident and nonresident applicants for Illinois concealed carry licenses, thereby restricting the Second Amendment rights of similarly situated nonresident applicants. Plaintiffs' challenge fails, however, because restrictions on firearm possession and carriage by nonresidents whose

qualifications cannot be confirmed is rationally related to Illinois' legitimate interest in

protecting the public from the readily apparent dangers of firearms in the hands of the

unqualified.

   "The Equal Protection Clause of the Fourteenth Amendment commands that no State

shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

essentially a direction that all persons similarly situated should be treated alike." *City of*

*Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiffs' claim fails at this initial

threshold because nonresidents from states without substantially similar firearm laws are not

similarly situated to Illinois residents or to nonresidents from states with substantially similar

firearm laws because their qualifications to possess an Illinois concealed carry license cannot be

confirmed or monitored. *See Bach*, 408 F.3d at 91-94; *Peterson v. LaCabe*, 783 F. Supp. 2d at

1175. Indeed, it is precisely because Plaintiffs are not "within [Illinois'] jurisdiction" for

purposes of the background checks and monitoring functions vital to ensuring safe, responsible

gun use that Plaintiffs are not similarly situated. *See Plyler v. Doe*, 457 U.S. 202, 210 (1982)

("Use of the phrase 'within its jurisdiction' . . . confirms[] the understanding that the protection

of the Fourteenth Amendment extends to anyone, citizen or stranger, who *is* subject to the laws

of a State . . . . *[U]ntil he leaves the jurisdiction* . . . he is entitled to the equal protection of the

laws that a State may choose to establish." (second emphasis added). When nonresidents depart

Illinois for their home states, they leave Illinois' jurisdiction and thereby immunize themselves

from the reach of Illinois' monitoring interests unless those states monitor similar information

and make that information available to Illinois. Thus, Plaintiffs are *not* "subject to the laws of

[Illinois]" in the crucial reference frame—Illinois' monitoring and reporting requirements—and

therefore are not similarly situated.

But even if Plaintiffs' claim survived this initial inquiry, it would fail to clear the next hurdle, because the challenged statutes readily pass scrutiny under the rational basis test. If a statutory classification does not impermissibly interfere with a fundamental constitutional right and is not based on a "suspect" class, courts apply the rational basis test. *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 313 (1976); *Sweeney v. Pence*,767 F.3d 654, 668 (7th Cir. 2014).[8] Here, the restrictions on nonresidents from dissimilar states do not violate their Second Amendment rights, *see supra* Section I.B.2, nor do Plaintiffs constitute a suspect class. *See Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 211–12 (5th Cir. 2012) (applying rational basis to equal protection challenge to age-based firearm restriction where persons under 21 had no fundamental right under second amendment and age was not a suspect classification); *Mosley*, 2015 IL 115872, ¶ 41 (equal protection challenge to firearm regulation subject to rational basis test where regulation did not burden core of Second Amendment right or discriminate against suspect class). Therefore, defendant's claim is subject to rational basis review, under which the statute is upheld if it "bears a reasonable relation to any proper legislative purpose." *Sweeney*, 767 F.3d at 670.[9]

---

[8] Plaintiffs' reliance on the dicta in *Sklar v. Byrne*, 727 F.2d 633 (7th Cir. 1984) is misplaced. There, the court merely restated the general rule, but did not find a fundamental right at issue or apply strict scrutiny. Plaintiffs must demonstrate *impermissible* interference with a fundamental constitutional right to trigger heightened scrutiny of the classification. *Murgia*, 427 U.S. at 313. Plaintiffs are not entitled to a greater level of scrutiny under an equal protection claim than is applicable to their asserted fundamental right. *See NRA*, 700 F.3d at 211–12. Because their Second Amendment claim fails, their equal protection claim is subject to rational basis scrutiny.

[9] Plaintiffs' cases offer no support for heightened scrutiny. In *Williams v. Vermont*, 472 U.S. 14, 23–24 (1985), the challenger was a resident and the Court invalidated the statute under rational basis. In *Metro. Life Ins. Co. v. Ward*, 470 U.S. 869 (1985), the Court found no legitimate state interest. In *Minton v. St. Bernard Parish Sch. Bd.*, 803 F.2d 129, 133 (5th Cir. 1986), the state offered no rationale for its classification. In *Obergefell v. Hodges*, 135 S. Ct. 2584, 2606–07 (2015), the Court did not specify the level of scrutiny applied, but found the state failed to

Illinois' residency requirement withstands this highly deferential scrutiny. *See Mathews v. De Castro*, 429 U.S. 181, 185 (1976) (under rational basis test, challenged statutes warrant "a strong presumption of constitutionality"). Prohibiting nonresidents from holding Illinois concealed carry licenses when their qualifications to do so cannot be confirmed is a reasonable way to promote the legitimate interest in preventing violence and injury from firearms possessed by those unqualified to carry them. *See supra* Section I.B.2. That some nonresidents otherwise qualified to possess an Illinois concealed carry license cannot obtain one because their qualifications cannot be confirmed or monitored does not render the prohibition unreasonable. The Equal Protection Clause "must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans,* 517 U.S. 620, 631 (1996). Here, the classifications are reasonably drawn to coincide with Illinois' inability to confirm and monitor the qualifications of nonresidents from certain states to carry a firearm without endangering the public. Therefore, Plaintiffs' equal protection claim fails.

## IV.     The Residency Requirement Does Not Violate the Due Process Clause.

Plaintiffs' Due Process Claim fails for the same reasons their claim under the Second Amendment fails. Indeed, the Due Process analysis is subsumed in the Second Amendment analysis. *See Williams v. Ind. State Police Dep't*, 797 F.3d 468, 472 (7th Cir. 2015) (where constitutional amendment addresses conduct at issue, "that amendment rather than generalized notions of substantive due process guides such claims."); *McCann v. Mangialardi,* 337 F.3d 787 (7th Cir. 2003). Plaintiffs' claim of procedural due process fails because Plaintiffs cannot establish a Second Amendment right to public carriage by nonresidents whose qualifications to

---

establish any foundation for the harm claimed and described the state's arguments as counterintuitive and illogical.

do so cannot be confirmed. Thus, Plaintiffs cannot establish a deprivation of life, liberty, or property to ground their Due Process claim.

<div align="center">

**CONCLUSION**

</div>

In *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010), the Court noted that although the Second Amendment applies to the states, "[s]tate and local experimentation with reasonable firearms regulations will continue under the Second Amendment." (alteration in original). Such experimentation can only work, however, if the states are permitted to insist that their regulations be satisfied by residents and nonresidents alike. Plaintiffs would foreclose experimentation, however, in favor of a race to the bottom, whereby each state would be constitutionally required to permit public carriage of firearms according to the customs of the states with the least restrictive laws, to the disadvantage of that state's own citizens. The Constitution does not require adherence to a uniform scheme of least regulation. Because Illinois' firearm regulations are constitutional, being reasonably related to important and substantial state interests, Plaintiffs' claims fail.

WHEREFORE, Defendants request this honorable Court enter judgment in favor of Defendants and against Plaintiffs.

Respectfully submitted,

THE DEFENDANTS,

Joshua D. Ratz, # 6293615
Assistant Attorney General
500 South Second Street
Springfield, IL 62706
Phone: (217) 557-0261
Fax: (217) 524-5091
E-Mail: jratz@atg.state.il.us

LISA MADIGAN, Attorney General, State of Illinois,

      Attorney for Defendants.

By: s/ Joshua D. Ratz
      Joshua D. Ratz, # 6293615
      Assistant Attorney General

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KEVIN W. CULP, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.: 14-3320 |
| | ) | |
| LISA MADIGAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF COMPLIANCE

I, Joshua D. Ratz, certify that the Issues and Argument section of this memorandum complies with the type volume limitation prescribed in Local Rule 7.1(B)(4)(b)(1) and Local Rule 7.1(D)(5), in that it consists of 6691 words and 37,081 characters (43,774 characters with spaces counted), counting all headings, footnotes, and quotations, based on the Word Count function of Microsoft Word Professional Plus 2010.

s/ Joshua D. Ratz
Joshua D. Ratz
Assistant Attorney General

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KEVIN W. CULP, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.: 14-3320 |
| | ) | |
| LISA MADIGAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on November 23, 2015 the foregoing Memorandum of Law in Support of Defendants' Motion for Summary Judgment was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing(s) to the following:

David G. Sigale
dsigale@sigalelaw.com

Respectfully submitted,

s/ Joshua D. Ratz
Joshua D. Ratz, Bar Number 6293615
Assistant Attorney General
500 South Second Street
Springfield, IL 62706
Phone: (217) 557-0261
Fax: (217) 524-5091
E-Mail: jratz@atg.state.il.us

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **KEVIN W. CULP, MARLOW DAVIS, FREDDIE REED-DAVIS, DOUGLAS W. ZYLSTRA, JOHN S. KOLLER, STEVE STEVENSON, PAUL HESLIN, MARLIN MANGELS, JEANELLE WESTROM, SECOND AMENDMENT FOUNDATION, INC., ILLINOIS CARRY, and ILLINOIS STATE RIFLE ASSOCIATION,** | ) ) ) ) ) ) ) ) ) ) ) | |
| **Plaintiffs** | ) ) | |
| **v.** | ) ) ) | No. 14-CV-3320 |
| **LISA MADIGAN, in her Official Capacity as Attorney General of the State of Illinois; LEO P. SCHMITZ, in his Official Capacity as Director of the Illinois State Police, and JESSICA TRAME, as Bureau Chief of the Illinois State Police Firearms Services Bureau,** | ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on Plaintiffs' Motion for

Preliminary Injunction (d/e 17). On October 16, 2015, the Court

Page **1** of **64**

held a hearing on the Motion.  Following the hearing, the Court took the matter under advisement.

The Motion is DENIED.  Although Plaintiffs have met the threshold requirements for a preliminary injunction, the balance of the harms and consideration of the public interest favor denying the request for a preliminary injunction.

## I. PROCEDURAL BACKGROUND

In October 2014, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief.  Compl. (d/e 1).  Plaintiffs allege that Section 40 of the Illinois Firearm Concealed Carry Act (430 ILCS 66/40) and all other statutory language that restricts otherwise-qualified nonresidents of Illinois the rights and privileges of carrying concealed firearms based solely on their state of residence violate Plaintiffs' Second Amendment rights, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the Privileges and Immunities Clause of Article IV, § 2, and the Due Process Clause of the Fourteenth Amendment.  See id., Counts I-IV. Currently, the Firearm Concealed Carry Act allows nonresidents to obtain an Illinois concealed carry license only if the nonresident is a

Page **2** of **64**

resident of a state or U.S. Territory with laws related to firearm ownership, possession, and carrying that are substantially similar to Illinois' requirements.  The Illinois State Police (ISP) has found that only four states have substantially similar laws: Hawaii, New Mexico, South Carolina, and Virginia.

The named Plaintiffs include nine individuals who work in or visit Illinois, hold concealed carry licenses in their resident states, and wish to carry concealed weapons in Illinois. The individual Plaintiffs are residents of Colorado, Indiana, Iowa, Missouri, Pennsylvania, and Wisconsin.

The named Plaintiffs also include three associations—the Second Amendment Foundation, Inc., Illinois Carry, and the Illinois State Rifle Association—whose members include non-Illinois residents who wish to obtain Illinois concealed carry licenses but do not have a concealed carry license from a state approved by the ISP. Plaintiffs assert that they (or their members) would apply for a concealed carry permit if able and would carry concealed firearms in Illinois but fear prosecution.  Compl. ¶¶ 21, 23, 25, 27; see also

720 ILCS 5/24-1 (unlawful use of weapons statute); 720 ILCS
5/24-1.6 (aggravated unlawful use of a weapon statute).

Plaintiffs have sued three defendants in their official capacity.
Plaintiffs sue Attorney General Lisa Madigan, who Plaintiffs assert
is responsible for executing and administering the laws of the State
of Illinois, including the Firearm Concealed Carry Act.  Also named
as a defendant is Leo P. Schmitz[1], the Director of the ISP, who is
responsible for executing and administering the Firearm Concealed
Carry Act.  Finally, Plaintiffs sue Jessica Trame, the Bureau Chief of
the ISP Firearms Services Bureau, who is the ISP employee directly
responsible for the administration of the Firearm Concealed Carry
Act.  <u>See</u> Compl. ¶¶ 29-31 (d/e 1); Defs. Answer ¶¶ 29-31 (d/e 13).

In the Complaint, Plaintiffs seek a declaratory judgment that
Section 40 of the Firearm Concealed Carry Act and all other Illinois
statutory language that restrict qualified nonresidents of Illinois

---

[1] Plaintiffs originally sued Hiram Grau in his official capacity as the Director of
ISP.  Since the filing of the lawsuit, Leo P. Schmitz has replaced Grau as
Director.  Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Schmitz
is substituted for Grau as a party defendant.

from carrying a concealed firearm based solely on their states of residence are null and void.  Compl., Prayer for Relief ¶ 2(a). Plaintiffs also ask that the Court issue preliminary and permanent injunctions against Defendants barring enforcement of Section 40 of the Firearm Concealed Carry Act and all other Illinois statutory language that restrict otherwise-qualified nonresidents of Illinois from carrying concealed firearms based solely on their states of residence.  Id. ¶ 2(b).

On August 7, 2015, Plaintiffs filed the Motion for Preliminary Injunction (d/e 17) at issue herein.  In the Motion, Plaintiffs ask the Court to preliminarily enjoin Defendants from enforcing the nonresident application ban contained in Section 40 of the Firearm Concealed Carry Act against Plaintiffs and/or their members. Motion ¶ 1.  Plaintiffs also ask that Defendants be preliminarily enjoined from enforcing any other sections of the Illinois Compiled Statutes which restrict the firearm rights and privileges of nonresidents of Illinois based solely on their states of residence.  Id. ¶ 2.

## II. RELEVANT ILLINOIS LAW REGARDING THE POSSESSION AND CARRYING OF FIREARMS

Two Illinois statutes govern this dispute: the Firearm Owners Identification Card Act (430 ILCS 65/0.01 et seq.,) (FOID Act) which permits qualified individuals to possess firearms, and the Firearm Concealed Carry Act (430 ILCS 66/1 et seq.), which permits qualified individuals to carry concealed handguns in public. Because nonresident applicants for a concealed carry license must meet all of the requirements for a FOID card except residency, the FOID Act is addressed first.

### A.     The FOID Act Regulates the Possession of Firearms in Illinois

Illinois regulates the possession of firearms through the FOID Act. The FOID Act generally prohibits a person from possessing a firearm in Illinois unless the person has a FOID card. 430 ILCS 65/2(a).

One of the requirements for obtaining a FOID card is that the applicant must be a resident of Illinois. See 430 ILCS 65/4 (a)(2)(xiv) (requiring that each applicant for a Firearm Owner's Identification Card submit evidence to the ISP that "[h]e or she is a

Page **6** of **64**

resident of the State of Illinois"). The FOID Act makes exceptions for law enforcement officers, armed security officers in Illinois, and United States Military personnel permanently assigned in Illinois. See 430 ILCS 65/4(a-10) (providing that a FOID applicant "who is employed as a law enforcement officer, an armed security officer in Illinois, or by the United States Military permanently assigned in Illinois and who is not an Illinois resident" must submit a driver's license or identification card number from their resident states); 430 ILCS 65/8(q) (providing that the ISP has the authority to deny a FOID card to nonresidents of Illinois except as provided in 430 ILCS 65/4(a-10)).

In addition, the FOID Act contains exceptions that allow nonresidents to possess a firearm in Illinois without a FOID card, including nonresidents who are currently licensed or registered to possess a firearm in their resident states (430 ILCS 65/2(b)(10)); certain nonresident hunters (430 ILCS 65/2(b)(5), (13)); nonresidents while on a firing or shooting range (430 ILCS 65/2(b)(7)); nonresidents while at a firearm showing or display recognized by the ISP (430 ILCS 65/2(8)); and nonresidents whose

firearms are unloaded and enclosed in a case (430 ILCS 65/2(9)).

See also Mishaga v. Schmitz, No. 10-cv-03187, 2015 WL 5731653

(C.D. Ill. Sept. 30, 2015) (finding the non-Illinois resident plaintiff

lacked standing to seek an order declaring the FOID Act

unconstitutional because she did not face a credible threat of

prosecution; the FOID Act permitted the plaintiff to possess a

functional firearm in the home of her Illinois-resident friend).

Further, an application for a FOID card may be denied or

revoked based on the applicant's criminal or mental health history

(among other reasons not relevant to the issues herein).  See

generally 430 ILCS 65/8; see also 430 ILCS 65/4 (requiring that an

applicant submit evidence to the ISP that he meets the

qualifications for obtaining a FOID card).  Grounds for denial

include that the applicant has been convicted of a felony (740 ILCS

65/8(c)); has been convicted within the past five years of battery,

assault, aggravated assault, violation of an order of protection, or a

substantially similar offense in another jurisdiction in which a

firearm was used or possessed (430 ILCS 65/8(k)); has been

convicted of domestic battery, aggravated domestic battery, or a

Page **8** of **64**

substantially similar offense in another jurisdiction before, on, or after January 1, 2012 (the effective date of Public Act 97-158, amending Section 8) (430 ILCS 65/8(l)); or is prohibited under Illinois state statute or federal law from acquiring or possessing a firearm or ammunition (430 ILCS 65/8(n)).[2]

In addition, the application may be denied or the license revoked if the person has been a patient in a mental health facility within the past five years (430 ILCS 65/8(e)); has been a patient in a mental facility more than five years ago and has not received a certification[3] from a qualified examiner that he is not a clear and present danger to himself or others (Id.); has a mental condition of such a nature that it poses a clear and present danger to the

---

[2] Those prohibited by federal law from possessing a firearm include those convicted of a crime punishable by imprisonment for a term exceeding one year; persons adjudicated as a mental defective or who have been committed to a mental institution; and persons convicted in any court of a misdemeanor crime of domestic violence.  See 18 U.S.C. § 922(g)(1), (g)(4), (g)(9).

[3] See 430 ILCS 65/8(u) (requiring that an person who had his FOID card revoked or denied because he was a patient in a mental health facility shall not be permitted to obtain a FOID card after the 5-year period has lapsed unless he receives a mental health evaluation and a certification that he is not a clear and present danger to himself or others); Mental Health Certification for Firearm Possession form, available at https://ispfsb.com/Public/Firearms/FOID/mentalhealthcert.pdf (all websites last visited December 4, 2015).

applicant or other person or the community (430 ILCS 65/8(f)); or has been adjudicated a mentally disabled person (430 ILCS 65/8(r)).

The FOID Act also contains a reporting mechanism that allows the ISP to monitor the ongoing qualifications of FOID card holders. See 430 ILCS 65/8.1.  For example, under the FOID Act, the Illinois circuit court clerks must notify the ISP of certain criminal arrest, charge, and disposition information.  See 430 ILCS 65/8.1(a) (requiring the circuit clerk to notify the ISP "of all final dispositions of cases for which [the ISP] has received information reported to it under Sections 2.1 and 2.2 of the Criminal Identification Act"); see also 20 ILCS 2630/2.1 (requiring the clerk of the circuit court, Illinois Department of Corrections, sheriff of each county, and state's attorney of each county to submit certain criminal arrest, charge, and disposition information to the ISP); 20 ILCS 2630/2.2 (requiring the circuit court clerk to report to the ISP's Firearm Owner's Identification Card Office convictions for certain violations of the Criminal Code when the defendant has been determined to be

Page **10** of **64**

subject to the prohibitions of 18 U.S.C. 922(g)(9)).[4]  In addition, a court that adjudicates an individual as a mentally disabled person or finds that a person has been involuntarily admitted must direct the circuit court clerk to notify the ISP's FOID department and forward a copy of the court order to the ISP.  430 ILCS 65/8.1(b).

In addition, the FOID Act requires that the Department of Human Services (DHS) report to the ISP all information collected under subsection (b) of Section 12 of the Mental Health and Developmental Disabilities Confidentiality Act[5] "for the purpose of determining whether a person who may be or may have been a

---

[4] Providing that a person convicted of a misdemeanor crime of domestic violence cannot possess a firearm.  18 U.S.C. § 922(g)(9).

[5] Section 12(b) of the Mental Health and Developmental Disabilities Confidentiality Act provides that all physicians, clinical psychologists, and qualified examiners must provide notice directly to DHS or his or her employer (who shall then notify DHS) within 24 hours of determining a person poses a clear and present danger to himself, herself, or others, or within 7 days after a person 14 years or older is determined to be a person with a developmental disability as described in Section1.1 of the FOID Act.  Notice of an admission of a patient—which includes a person who voluntarily receives mental health treatment as an inpatient or resident or who receives mental health treatment as an outpatient and who poses a clear and present danger to himself, herself, or to others—must be furnished to DHS within 7 days of admission.  DHS and all public or private hospitals and mental health facilities shall furnish to ISP only that information that may be required for determining whether an individual should be disqualified from receiving or retaining a FOID card.  740 ILCS 110/12(b); see also 430 ILCS 65/1.1 (defining "patient").

patient in a mental health facility is disqualified under State or

federal law from receiving or retaining a Firearm Owner's

Identification Card, or purchasing a weapon."  430 ILCS 65/8.1(c).

Similarly, every physician, clinical psychologist, or qualified

examiner who determines that a person poses a clear and present

danger to himself or others must notify DHS within 24 hours of that

determination.  430 ILCS 65/8.1(d)(1).  Further, a law enforcement

official or school administrator who determines a person poses a

clear and present danger to himself or others must notify the ISP

within 24 hours of that determination.  430 ILCS 65/8.1(d)(2).  DHS

must also update its records and, "if appropriate," notify the ISP.

430 ILCS 65/8.1(d).

## B.   The Firearm Concealed Carry Act Regulates the Carry of Concealed Weapons in Illinois

Illinois also provides a mechanism for individuals to carry a

concealed firearm in Illinois by way of the Firearm Concealed Carry

Act.  430 ILCS 66/1 et seq.  Illinois is a "shall issue" state, meaning

that the ISP must issue a license if the applicant meets the

qualifications, provides the application and documentation

required, submits the requisite fee, and does not pose a danger to himself or a threat to public safety as determined by the Carry Licensing Review Board.  430 ILCS 66/10(a).  The license is valid for five years and allows the licensee to carry a loaded or unloaded concealed or partially concealed firearm on or about his person and within a vehicle.  430 ILCS 66/10(c).

To qualify for a concealed carry license, the applicant must be at least 21 years of age; have a valid FOID card and, at the time of the application, meet the requirements for the issuance of a FOID card; have not been in residential or court-ordered treatment for alcoholism, alcohol detoxification, or drug treatment within five years immediately preceding the date of the application; and have completed firearms training.  430 ILCS 66/25(1), (2), (6).

In addition, the Firearm Concealed Carry Act imposes additional requirements relating to the applicant's criminal history. The applicant must not have been convicted or found guilty in any state of a misdemeanor involving the use or threat of physical force or violence to any person within five years preceding the date of the application or have two or more violations relating to driving while

Page **13** of **64**

under the influence of drugs or alcohol within five years preceding the date of the application.  430 ILCS 66/25(3).  Moreover, the applicant must not be the subject of a pending arrest, warrant, prosecution, or proceeding for an offense or action that could lead to disqualification to own or possess a firearm.  430 ILCS 66/25(4).

The Firearm Concealed Carry Act requires that ISP conduct background checks of the applicants for concealed carry licenses. 430 ILCS 66/35.  The background check must consist of a search of the following: the Federal Bureau of Investigation's National Instant Criminal Background Check System (NICS)[6]; all available state and local criminal history record information files, including records of juvenile adjudications; all available federal, state, and local records regarding wanted persons, domestic violence restraining orders, and protective orders; DHS files relating to mental health and developmental disabilities; and all other available

---

[6] According the FBI website, NICS is a "national system that checks available records on persons who may be disqualified from receiving firearms." https://www.fbi.gov/about-us/cjis/nics/general-information/fact-sheet. "The NCIS is a computerized background check system designed to respond within 30 seconds on most background check inquiries so the [Federal Firearms Licensees] receive an almost immediate response." Id.

Page **14** of **64**

records of any federal, state, local agency, or other public entity likely to contain information relevant to whether the applicant is prohibited from purchasing, possessing, or carrying a firearm.  430 ILCS 66/35 (also providing that the ISP may charge applicants for conducting the criminal history records check but that the fee shall not exceed the actual cost of the records check).

The specific statutory provision Plaintiffs challenge here, Section 40 of the Firearm Concealed Carry Act, governs nonresident concealed carry license applications.  Specifically, this section of the Firearm Concealed Carry Act directs ISP to by rule allow for nonresident license applications from any state or territory of the United States with laws related to firearm ownership, possession, and carrying "that are substantially similar to the requirements to obtain a license under" the Firearm Concealed Carry Act.  430 ILCS 66/40(b).  The ISP currently defines substantially similar as:

> The comparable state regulates who may carry firearms, concealed or otherwise, in public; prohibits all who have involuntary mental health admissions, and those with voluntary admissions within the past 5 years, from carrying firearms, concealed or otherwise, in public; reports denied persons to NICS; and participates in reporting persons authorized to carry firearms, concealed

or otherwise, in public through NLETs [sic] [(the National
Law Enforcement Telecommunications System)].

20 Ill. Admin. Code 1231.10.  According to the ISP's website, only

four states have substantially similar laws: Hawaii, New Mexico,

South Carolina, and Virginia.  See 20 Ill. Adm. Code 1231.110(c)

(providing that the ISP shall determine which states are

substantially similar); 20 Ill. Adm. Code 1231.110(b)(providing that

ISP "shall post on its website a list of all states determined to be

substantially similar"); https://www.ispfsb.com/Public/Faq.aspx

(listing the four states with substantially similar laws—Hawaii, New

Mexico, South Carolina, and Virginia).

The nonresident applicant must meet all of the requirements

contained in section 25 of the Firearm Concealed Carry Act, except

for the Illinois residency requirement.  430 ILCS 66/40(c).  The

nonresident applicant must submit a notarized document affirming

that he is eligible to own or possess a firearm under federal law and

the laws of his state or territory of residence; that, if applicable, he

has a license or permit to carry a firearm, concealed or otherwise,

issued by his state; that he understands Illinois law pertaining to

Page **16** of **64**

the possession and transport of firearms; and acknowledging that he is subject to the jurisdiction of the ISP and Illinois courts for any violation of the Firearm Concealed Carry Act.  Id.

The Firearm Concealed Carry Act specifically provides that nothing in the Act prohibits a nonresident from transporting a concealed firearm in his or her vehicle if the concealed firearm remains in the vehicle and the nonresident: is not prohibited from owning a firearm under federal law; is eligible to carry a firearm in public under the laws of his state of residence; and is not in possession of a license under the Firearm Concealed Carry Act. 430 ILCS 66/40(e).  If the vehicle is unattended, however, the firearm must be stored within a locked vehicle or a locked container.  Id.

The Firearm Concealed Carry Act imposes an additional reporting obligation.  Section 105 requires that school administrators report to the ISP when a student of a public or private elementary school, secondary, school, community college, college, or university is determined to pose a clear and present danger to himself or others within 24 hours of such determination.

430 ILCS 66/105 (but not indicating who makes that

determination).

### III. DEFENDANTS' JUSTIFICATION FOR
### THE RESIDENCY REQUIREMENT

Defendants support the residency requirement of the Firearm

Concealed Carry Act with the Affidavit of Defendant Trame, the

Bureau Chief of the ISP Firearms Services Bureau.  Trame explains

the difficulty of verifying nonresident applicants' identities, criminal

history, mental health information, and obtaining updated

nonresident information necessary to revoke a concealed carry

license.

According to Trame, the Firearms Services Bureau performs

an extensive background check on each applicant for a concealed

carry license. Trame Aff. ¶ 4.  This background check process is

intended to ensure public safety by identifying persons who are

unqualified to carry firearms.  Id. ¶ 8.

The background check includes queries of the national systems such as the National Crime Information Center (NCIC),[7] NICS, the Interstate Identification Index,[8] Immigration and Customs Enforcement, and NLETS.  The Bureau also checks the Illinois systems, including the Criminal History Record Information system, driver's license or identification systems maintained by the Secretary of State, and the Computerized Hot Files system, which is "a central online repository for numerous officer and public safety information repositories" that is maintained by the ISP.  Trame Aff. ¶ 6.  In addition, the applicant's information is made available to Illinois law enforcement agencies, which may submit an objection to a concealed carry license applicant.  Trame Aff. ¶ 7; see also 430

---

[7] This is the mechanism criminal justice agencies use to access over 13 million active records.  The NCIC database consists of 21 files, including 14 "persons" files such as the National Sex Offender Registry, Foreign Fugitives, Immigration Violations, Orders of Protection, and Wanted Persons.  See Trame Aff. ¶ 13.  "The NCIC has operated under a shared management concept between the FBI and federal, state, local, and tribal criminal justice users since its inception."  https://www.fbi.gov/about-us/cjis/ncic.

[8] The Interstate Identification Index is the national criminal history record system.  See Trame Aff. ¶ 13.  Thirty-two states participate only in the Interstate Identification Index while 19 participate in Interstate Identification Index and the National Fingerprint File.  https://www.fbi.gov/about-us/cjis/cc/quick-links-to-maps/IIImaps.

ILCS 66/15 (providing that any law enforcement agency may

submit an objection to a license applicant); 430 ILCS 66/5 (defining

law enforcement agency to include "any federal, State, or local law

enforcement agency, including offices of State's Attorneys and the

Office of the Attorney General").

## A.   Defendants Identify the Difficulties in Verifying Nonresident Applicant's Identities

Trame states that the ISP does not have direct access to other

states' driver's license, state ID, or similar databases.  Therefore, to

verify a nonresident's identity, the Firearm Services Bureau must

rely on NLETS to check the validity of an out-of-state driver's

license.  Trame Aff. ¶ 10.  Currently, the ISP is not able to receive

identifying photographs or signatures from NLETS but has

contracted for development of a system that would allow the ISP

access to such information.  Arizona, California, Colorado, Kansas,

New York, New Hampshire, Oklahoma, South Carolina, and the

District of Columbia do not currently make images available to

NLETS.  Id.

Page **20** of **64**

**B.    Defendants Identify the Difficulties in Verifying Nonresident Criminal History**

For Illinois residents, the Firearm Services Bureau is able to locate criminal history through Illinois' Criminal History Record Inquiry, a system maintained by ISP, the Computerized Hot Files, and from federal systems.  Because the Bureau does not have direct access to other states' local or state criminal history databases, the Bureau relies on federal databases to obtain criminal history information on nonresidents.  Trame Aff. ¶ 12.

Trame indicates, however, that many states provide the federal databases with only a summary of an arrest.  This information is often inadequate to assess an applicant's eligibility for a concealed carry license.  Id.    Although the ISP may request a criminal record if the federal database is incomplete, many jurisdictions charge for records, and ISP does not have funds appropriated to pay for any records.  Id.

The ISP uses NLETS to determine whether a nonresident applicant's state-issued concealed carry license is valid and to check the continued validity of the home-state issued concealed

carry license every 90 days.  Trame Aff. ¶ 13.  The ISP is unable to obtain accurate and updated information via NLETS for residents from states that do not fully participate in those systems.  Id. ¶ 14 (ISP is also unable to obtain accurate and updated information via NCIC for those states that do not fully participate in NCIC).

In addition, information from the Interstate Identification Index may be limited because states are not uniform in their reporting of different levels and types of offenses. Id. ¶ 15.   Only the National Fingerprint File provides detailed extracts directly from states' local databases.  Id.  However, as of August 2015, only 19 states participate in the NFF: Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Maryland, Minnesota, Missouri, Montana, North Carolina, New Jersey, Ohio, Oklahoma, Oregon, Tennessee, West Virginia, and Wyoming.  Id.

## C.    Defendants Identify the Difficulties in Verifying Nonresident Mental Health Information

Through the Illinois DHS FOID Mental Health System, the Firearm Services Bureau can access information on Illinois mental health facility admissions and determine whether an individual has

been involuntarily admitted into a mental health facility in Illinois
or been a patient in a mental health facility in Illinois within the
past five years or more.  Trame Aff. ¶ 17.  This System does not,
however, contain records on out-of-state mental health facility
admissions.  Id. ¶ 18.  In addition, the ISP does not have access to
other states' mental health facility admission databases, to the
extent the other states may have them.  Id.

Trame states that, in her experience, federal databases contain
only limited information regarding involuntary mental health
admissions or mental disability adjudications and do not contain
voluntary mental health admission information.  Trame Aff. ¶ 19.
To search for mental health information regarding nonresidents, the
ISP is limited to information available through the NICS Index, but
not all states participate in the NICS Index.  Id. ¶ 20.  NICS
contains information from participating states regarding individuals
prohibited from firearm possession for mental health reasons under

18 U.S.C. § 922(g)(4)[9] but again does not provide any information on voluntary mental health admissions.  Id.

## D. Defendants Identify the Difficulties in Obtaining Updated Nonresident Information Necessary to Revoke a Concealed Carry License

Trame states that all resident concealed carry license holders are checked against the Illinois Criminal History Record Inquiry and DHS Mental Health Systems (by virtue of their FOID card) for any new conditions that would disqualify them from holding a FOID card or a concealed carry license.  Trame Aff. ¶ 21.  All concealed carry license holders, both resident and nonresident, are checked against the federal databases on a quarterly basis.  Id.

Trame explains in her affidavit why it is difficult for the Firearm Services Bureau to obtain updated nonresident information relevant to revoking a concealed carry license.  Trame claims that, while Illinois physicians, Illinois school administrators, Illinois circuit clerks, and DHS are required to report certain mental health information to the ISP, no such requirement is imposed on out-of-

---

[9] This statute provides that it is unlawful for any person who has been adjudicated as a mental defective or who has been committed to a mental institution from possessing a firearm or ammunition.  18 U.S.C. § 922(g)(4).

state physicians, administrators, and circuit clerks to report information to the ISP.  Trame Aff. ¶ 22.  Moreover, daily checks of the DHS Mental Health Systems would not reveal information concerning persons in other states.  Id.

The ISP can request information from out-of-state mental health entities, but many of the out-of-state mental health entities do not provide mental health information even after an ISP request.  Id. ¶ 24.  According to Trame, the ISP's lack of access to this type of data held by other states would make it virtually impossible to effectively conduct the level of screening and monitoring on nonresident concealed carry license applications that is performed on resident applicants.  Id. ¶

**E.    Illinois Surveyed Other States to Determine Whether the Other States Have Substantially Similar Laws Regulating Firearms**

In 2013, the ISP sent surveys to the 49 other states and the District of Columbia requesting information regarding their regulation of firearms use.  The survey sought information on each state's reporting and tracking mechanisms relative to criminal activity and mental health issues for the purpose of determining if

Page **25** of **64**

the other states' laws were substantially similar to Illinois' law.  In 2014, the ISP sent a second survey to those states who did not respond to the first survey.  Most states and the District of Columbia eventually responded but for seven states:  Colorado, Maine, Maryland, Massachusetts, Nevada, Pennsylvania, and Rhode Island.  The survey asked:

1.  Does your state issue a Concealed Carry License?

2.  Does your state participate in reporting Concealed Carry Licenses via the National Law Enforcement Teletype System (NLETS)?

3.  Does your state report all involuntary (or adjudicated) mental health admissions to the National Instant Criminal Background Check System (NICS)?

4.  Does your state prohibit the use or possession of firearms based on a voluntary mental health admission within the last five years?

5.  Does your state have a mechanism to track or report voluntary mental health admissions for the purpose of revoking or approving a concealed carry license?

6.  If you answered "No" to questions 4 or 5, is there pending legislation that addresses the concern of mental health admissions with regards to possession of firearms?

Page **26** of **64**

<u>See</u> Trame Aff., Ex. C (d/e 23-3).

Based on these two surveys (and, according to defense counsel at the hearing, the receipt of additional information), the ISP determined that four states had laws similar to Illinois that regulate who may carry firearms in public, report persons authorized to carry through NLETS, report denied persons through NICS, prohibit persons voluntarily admitted to a mental health facility in the last five years from possessing or using firearms, and prohibit persons involuntarily admitted to mental health facilities from possessing or using firearms.  Trame Aff. ¶ 28.  These states were Hawaii, New Mexico, South Carolina, and Virginia.  <u>Id.</u>

Trame states that the Firearm Services Bureau would not have the time or resources to properly research the necessary information for nonresident applicants if all such nonresidents could apply for a concealed carry license.  Trame Aff. ¶ 30.  The Firearm Concealed Carry Act requires that the ISP either approve or deny an application within as few as 90 days from the date received, subject to certain exceptions.  <u>Id.</u>  To process applications this quickly, Trame believes it is likely that the out-of-state

Page **27** of **64**

applicants would not be held to the same standards set forth in the

FOID Act or the Firearm Concealed Carry Act as Illinois residents

are held.  Id.  Otherwise, applications would have to be approved

without a complete and thorough background check.  Id.

Applicants residing in states that lack reporting and eligibility

requirements similar to Illinois and who are issued licenses under

the Firearm Concealed Carry Act cannot be held to the same

monitoring standards (notification of mental health issues or a

subsequent felony conviction that would disqualify the person from

possessing/carrying a firearm) necessary to ensure continued

eligibility due to the lack of, or an inability to obtain—either at all or

in a timely manner—information concerning those nonresidents.

Id.

## IV. PLAINTIFFS HAVE STANDING TO BRING THIS SUIT

Defendants do not object to Plaintiffs' standing.  However,

standing is jurisdictional and is not subject to waiver.  Freedom

From Religion Found., Inc. v. Nicholson, 536 F.3d 730, 737 (7th

Cir. 2008).

Page **28** of **64**

The individual Plaintiffs include the following nine individuals. Plaintiff Kevin W. Culp is an Air Force Colonel stationed on orders at Scott Air Force Base near Belleville, Illinois, but he is a legal resident of Pennsylvania.  Culp possesses a license to carry a concealed weapon from Pennsylvania and Florida.  Culp is also a Basic Pistol Instructor and meets the qualifications to be an Illinois concealed carry licensing instructor.

Marlow Davis is a resident of Wisconsin. Davis is retired and spends approximately one-half of his time in Chicago.  Davis holds a Wisconsin license to carry a concealed weapon.

Freddie Reed-Davis, the wife of Marlow Davis, is also a resident of Wisconsin.  Reed-Davis is a nurse working in Chicago. Reed-Davis holds a Wisconsin license to carry a concealed weapon.

Douglas W. Zylstra is a resident of Indiana.  He possesses an Indiana license to carry a concealed weapon, a Utah concealed carry license, and an instructor certification from Utah.  Zylstra is an ISP concealed carry instructor working for a firearm training company in Lansing, Illinois.

Page **29** of **64**

John S. Koller is a resident of Colorado.  He holds a license to carry a concealed weapon from Colorado, Utah, Nevada, and Arizona.  Koller was born and raised in Chicago and visits family in the Chicago area.  He also makes periodic business trips to Illinois.

Steve Stevenson is also a resident of Colorado.  Stevenson holds concealed carry licenses from Colorado and Utah.  Stevenson occasionally traverses Illinois on I-80 and I-88 to visit relatives in Illinois and Michigan.

Paul Heslin is a resident of Missouri.  He holds a Missouri and Florida license to carry a concealed weapon and a Type 03 federal firearms license.[10]  He is also an Illinois certified concealed carry instructor.

Marlin Mangels is a resident of Iowa.  Mangels possesses a concealed carry license from Iowa, Utah, and Arizona.  Mangels frequently rides his bicycle up the River Road in Illinois, eats in restaurants in Hamilton, Illinois, travels to see his wife's family in

---

[10] This is a Collector of Curios and Relics license. 18 U.S.C. § 923(b); see https://www.atf.gov/firearms/listing-federal-firearms-licensees-ffls-2015

the Chicago area, and travels I-80 through Illinois to visit friends in Massachusetts.

Jeanelle Westrom is a resident of Iowa.  Westrom possesses a license to carry a concealed weapon from Iowa and Georgia.  She has a firearms business in Iowa and a separate firearms business in Geneseo, Illinois, where she spends a considerable amount of her time.  Westrom also has three federal firearms licenses that are required for her businesses.

The individual Plaintiffs are licensed to possess concealed handguns in their states of residence.  The individual Plaintiffs are prohibited by Section 40 of the Firearm Concealed Carry Act from applying for and obtaining Illinois concealed carry licenses because their states of residence are not approved for applications for concealed carry licensing by Defendants. The individual Plaintiffs would carry a loaded and functional concealed handgun in public for self-defense but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment.

The named Plaintiffs also include several organizations.  The individual Plaintiffs are members of these organizations.

Page **31** of **64**

The organizations include the Second Amendment Foundation, Inc. (SAF), a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. The purposes of SAF include education, research, publishing, and legal action focusing on the Constitutional right to own and possess firearms.

SAF brings this action on behalf of itself and its members. SAF has over 650,000 members and supporters nationwide. SAF's membership includes nonresidents of Illinois who wish to obtain Illinois concealed carry licenses but do not have a concealed carry license from a state approved by the ISP. These members would carry a loaded and functional concealed handgun in public for self-defense but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment.

Illinois Carry is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Shelbyville, Illinois. Illinois Carry is dedicated to the preservation of Second Amendment rights. Illinois Carry's purposes

Page **32** of **64**

include education and supporting and defending the people's right to keep and bear arms.

Illinois Carry has over 10,000 members and supporters in Illinois and many members outside the State of Illinois.  Members of Illinois Carry who are not residents of Illinois and do not have a concealed carry license from an approved state are prohibited from applying for and obtaining an Illinois concealed carry license. Those members would carry a loaded and functional concealed handgun in public for self-defense but refrain from doing so because they fear arrest, prosecution, fine, and imprisonment.

The Illinois State Rifle Association is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois.  The Illinois State Rifle Association has over 17,000 members and supporters in Illinois, and many members outside the State of Illinois.  The purposes of the Illinois State Rifle Association include securing the Constitutional right to privately own and possess firearms in Illinois through education, outreach, and litigation.  The Illinois State Rifle Association brings this action on behalf of itself and its members.

Page **33** of **64**

Members of the Illinois Rifle Association who are not residents of Illinois and do not have concealed carry licenses from an approved state are prohibited from applying and obtaining an Illinois concealed carry license.  However, those members would carry a loaded and functional concealed handgun in public for self-defense but do not do so because they fear arrest, prosecution, fine, and imprisonment.

"Standing exists when the plaintiff suffers an actual or impending injury, no matter how small; the injury is caused by the defendant's acts; and a judicial decision in the plaintiff's favor would redress the injury." See Ezell v. City of Chi., 651 F.3d 684, 695 (7th Cir. 2011) (quoting Bauer v. Shepard, 620 F.3d 704, 708 (7th Cir. 2010)) (internal quotation marks omitted).

In this case, Plaintiffs characterize the statute as imposing a complete ban on qualified nonresidents in 45 states, Washington, D.C., and U.S. territories from publicly carrying firearms while Illinois residents and those nonresidents from a few states are not so banned.  According to Plaintiffs, this statute violates their Second Amendment right to keep and bear arms, as well as their

Page **34** of **64**

rights under the Equal Protection Clause of the Fourteenth Amendment, the Privileges and Immunities Clause of Article IV of the Constitution, and the Fourteenth Amendment Due Process Clause.  Because the individual Plaintiffs allege that they have suffered an actual injury caused by Defendants' acts (enforcement of the statute), the individual Plaintiffs have alleged causation and injury.  Moreover, a decision enjoining the enforcement of Section 40 of the Firearm Concealed Carry Act would redress the individual Plaintiffs' injury.  Therefore, the individual Plaintiffs have satisfied the requirement that a judicial decision in their favor would redress their injury.  Although the individual Plaintiffs did not apply for a concealed carry permit, this fact does not deprive them of standing because the residency requirement in the statute demonstrates that the permit would not have been granted even had they applied. See, e.g., Sporhase v. Neb., ex rel. Douglas, 458 U.S. 941, 944 n.2 (1982) (finding that the appellants' failure to submit an application did not deprive them of standing to challenge the reciprocity requirement because they would not have been granted a permit had they applied for one).

<div align="center">Page **35** of **64**</div>

The organizational Plaintiffs also have standing. The SAF, Illinois Carry, and the Illinois Rifle Association allege that they have members who are not residents of Illinois and who do not have concealed carry licenses from an approved state.  These members want to carry loaded and functional concealed handguns in public in Illinois for self-defense but do not do so because they fear arrest, prosecution, fine, and imprisonment.  These organizations meet the requirements for association standing because: "(1) their members would otherwise have standing to sue in their own right; (2) the interests the associations seek to protect are germane to their organizational purposes; and (3) neither the claim asserted nor the relief requested requires the participation of individual association members in the lawsuit." Ezell, 651 F.3d at 696 (citing United Food & Commercial Workers Union Local 751 v. Brown Grp., 517 U.S. 544, 553 (1996); Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977); Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors, 522 F.3d 796, 801–02 (7th Cir. 2008)).

Page **36** of **64**

# V. ANALYSIS

As noted above, Plaintiffs seek a preliminary injunction enjoining Defendants from enforcing against Plaintiffs and/or their members the nonresident application ban contained in the Firearm Concealed Carry Act and any other laws that restrict nonresidents' firearm rights and privileges.

"A preliminary injunction is an extraordinary remedy that is available only when the movant shows clear need." <u>Turnell v. CentiMark Corp.</u>, 796 F.3d 656, 661 (7th Cir. 2015). A party seeking to obtain a preliminary injunction must demonstrate: (1) a reasonable likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that the party will suffer irreparable harm if the injunction is not granted. <u>See Planned Parenthood of Ind., Inc., v. Comm'n of Ind. State Dep't of Health</u>, 699 F.3d 962, 972 (7th Cir. 2012). The threshold for establishing a likelihood of success on the merits is low. <u>Mich. v. U.S. Army Corps of Eng'rs</u>, 667 F.3d 765, 782 (7th Cir. 2011); <u>see also Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S., Inc.</u>, 549 F.3d 1079, 1096 (7th Cir. 2008) (noting that the party seeking a preliminary injunction

"must show that it has a 'better than negligible' chance of success on the merits on at least one of its claims," which is an "admittedly low requirement") (citations omitted).

If these threshold conditions are met, the district court then weighs the balance of the harm to the parties if the injunction is granted or denied.  <u>Girl Scouts of Manitou</u>, 549 F.3d at 1086.  That is, the Court must consider the irreparable harm to Plaintiffs if the preliminary injunction is wrongfully denied versus the irreparable harm to Defendants if the preliminary injunction is wrongfully granted.  <u>Turnell</u>, 796 F.3d at 662.  The Court must also consider the effects, if any, the grant or denial of the preliminary injunction would have on non-parties (the public interest).  <u>Id.</u>

In weighing the harm, the Court applies a sliding scale approach.  <u>Id.</u> That is, "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor."  <u>Roland Mach. Co. v. Dresser Indus., Inc.</u>, 749 F.2d 380, 387 (7th Cir. 1984).  This balancing test requires that the Court "exercise its discretion 'to arrive at a decision based on a subjective evaluation of

Page **38** of **64**

the import of the various factors and a personal, intuitive sense about the nature of the case.'" Girl Scouts of Manitou, 549 F.3d at 1086 (quoting Lawson Prods., Inc. v. Avnet, Inc., 782 F.2d 1429, 1436 (7th Cir. 1986)).  Whether to grant a preliminary injunction is within the Court's discretion.  Ashcroft v. ACLU, 542 U.S. 656, 664 (2004) (noting that the Supreme Court and appellate courts review preliminary injunctions for an abuse of discretion); but see Turnell, 796 F.3d at 662 (noting that a "district court may abuse its discretion by making a clear factual error or a mistake of law").

## A.   Plaintiffs Can Satisfy the Threshold Requirements for a Preliminary Injunction

1.   Plaintiffs Have Demonstrated a Reasonable Likelihood of Success on the Merits of Their Second Amendment Claim

Plaintiffs argue that they can show a strong likelihood of success on the merits of their claim that Section 40 of the Firearm Concealed Carry Act violates the Second Amendment.  According to Plaintiffs, the law denies virtually all nonresidents of Illinois the fundamental Second and Fourteenth Amendment right of handgun possession available to Illinois residents.  Plaintiffs claim that the State has no interest in denying virtually all nonresidents the right

to handgun possession based solely on their state of residence.  As
such, Plaintiffs assert that under any level of scrutiny, the statute
must be enjoined.

The Second Amendment of the United States Constitution
provides:

> A well regulated Militia, being necessary to the security of
> a free State, the right of the people to keep and bear
> Arms, shall not be infringed.

U.S. Const. amend. II.  In <u>District of Columbia v. Heller</u>, the United
States Supreme Court held that there is a guaranteed "individual
right to possess and carry weapons in case of confrontation" based
on the Second Amendment.  <u>Heller</u>, 554 U.S. 570, 592 (2008) (also
holding that the Second Amended "codified a <u>pre-existing</u> right")
(emphasis in original).  Consequently, the Court found that the
District of Columbia's ban on handgun possession in the home
violated the Second Amendment.  <u>Id.</u> at 635.

Nonetheless, the Court recognized that the right was not
unlimited, and that:

> nothing in our opinion should be taken to cast doubt on
> longstanding prohibitions on the possession of firearms
> by felons and the mentally ill, or laws forbidding the

> carrying of firearms in sensitive places such as schools
> and government buildings, or laws imposing conditions
> and qualifications in the commercial sale of arms.

Id. at 627 (also recognizing that limits on the carrying of dangerous and unusual weapons may be imposed).

Two years later, in McDonald v. City of Chicago, 561 U.S. 742, 750 (2010), the Supreme Court held that the Second Amendment was fully applicable to the states through the due process clause of the Fourteenth Amendment.  The Court noted that "the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those fundamental rights necessary to our system of ordered liberty."  Id. at 778.

Since then, the Seventh Circuit has addressed several cases involving the Second Amendment.  See, e.g., Friedman v. City of Highland Park, Ill., 784 F.3d 406 (7th Cir. 2015), petition for cert. filed (finding that an ordinance that prohibited the possession of assault weapons or large-capacity magazines did not violate the Second Amendment); Moore v. Madigan, 702 F.3d 933, 942 (7th Cir. 2012) (directing the district court to enter declarations that Illinois' unlawful use of weapons and aggravated unlawful use of a

Page **41** of **64**

weapon statutes—which generally prohibited the carrying of guns in public in Illinois—violated the Second Amendment and to enter permanent injunctions); Ezell, 651 F.3d at 711 (finding the plaintiffs were entitled to a preliminary injunction against Chicago's firing range ban).  In each of these cases, the Seventh Circuit has explicitly or implicitly used a two-step framework to analyze the claim.  See, e.g., Friedman, 784 F.3d 406; Moore, 702 F.3d 933; Ezell, 651 F.3d at 702-03.  Under that framework, the court (1) determines whether the restricted activity is protected by the Second Amendment and (2) if so, examines the "strength of the government's justification for restricting or regulating the exercise of Second Amendment rights."  Ezell, 651 F.3d at 702-03.

Under step one, the Court must determine whether the restricted activity is protected by the Second Amendment in the first place.  Ezell, 651 F.3d at 701.  If the government can establish that the challenged firearms law regulates activity that falls outside the scope of the Second Amendment as it was understood at the relevant historical time—1791, when the Second Amendment was ratified, or 1868, when the Fourteenth Amendment was ratified—

then the analysis ends.  <u>Ezell</u>, 651 F.3d at 703; <u>but</u> <u>see</u> <u>Moore</u>, 702 F.3d at 935 (suggesting that the critical year is always 1791).  In such a case, the regulated activity is unprotected and the law is not subject to further Second Amendment review.  <u>Ezell</u>, 651 F.3d at 703.  If the government cannot make such a showing, either because the "historical evidence is inconclusive or suggests that the regulated activity is <u>not</u> categorically unprotected," then the Court must examine the second step of the framework.  <u>Ezell</u>, 651 F.3d at 703 (emphasis in original).  In this case, Defendants concede that the regulated conduct falls within the scope of the Second Amendment.  Defs. Mem. at 10.

Turning to the second step of the framework, the Court must inquire into the "strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." <u>Ezell</u>, 651 F.3d at 703.  Specifically, the Court must examine the "regulatory means the government has chosen and the public-benefits end it seeks to achieve." <u>Id.</u>  The rigor of this review depends on "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on the right."

Page **43** of **64**

Ezell, 651 F.3d at 703; see also Ill. Ass'n of Firearms Retailers v. City of Chi., 961 F.Supp.2d 928, 935 (N.D. Ill. 2014) ("[T]he level of scrutiny applied varies according to the breadth of the challenged Second Amendment restriction").

Broad prohibitory laws restricting core Second Amendment rights are likely categorically unconstitutional.  Ezell, 651 F.3d at 703 (citing Heller and McDonald, which involved regulations that prohibited handgun possession in the home).  For other laws, however, the appropriate standard of review is somewhere between intermediate and strict scrutiny, as Heller made clear that a rational basis review was inappropriate in the Second Amendment context.  Heller, 554 U.S. at 628 n. 27 (holding that "if all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would be redundant with the separate constitutional prohibitions on irrational laws, and would have no effect"); Ezell, 651 F.3d at 703; but see Friedman, 784 F.3d at 410 ("But instead of trying to decide what 'level' of scrutiny applies, and how it works, inquiries that do not resolve any concrete dispute, we think it better to ask whether a regulation

Page **44** of **64**

bans weapons that were common at the time of ratification or those that have 'some reasonable relationship to the preservation or efficiency of a well regulated militia' [citations omitted] and whether law-abiding citizens retain adequate means of self-defense.").

When determining the appropriate level of scrutiny, courts have noted that "a severe burden on the core Second Amendment right of self-defense will require an extremely strong public interest justification and a close fit between the government's means and its end." Ezell, 651 F. 3d at 708.  In contrast, laws that restrict "activity lying closer to the margins of the Second Amendment right, laws that merely regulate rather than restrict, and modest burdens on the right may be more easily justified." Id.  "How much more easily depends on the relative severity of the burden and its proximity to the core of the right." Id.; compare United States v. Skoien, 614 F.3d 638, 643-44 (7th Cir. 2010) (en banc) (accepting the United States' concession that some form of strong showing, possibly intermediate scrutiny, applied to review law that barred persons convicted of a misdemeanor crime of domestic violence from possessing a firearm); United States v. Williams, 616 F.3d 685,

Page **45** of **64**

692 (7th Cir. 2010) (applying intermediate scrutiny to examine statute that prohibits felons from possessing guns but not deciding whether intermediate scrutiny is the precise test applicable to all challenges to gun restrictions); United States v. Yancey, 621 F.3d 681, 683 (7th Cir. 2010) (citing Skoien and Williams and evaluating whether the government made a strong showing that the statute prohibiting habitual drug abusers from possessing a firearm was substantially related to an important governmental objective but not deciding whether a different kind of regulation might require a different approach); with Ezell, 651 F.3d at 708 (applying a more rigorous showing than applied in Skoien, "if not quite 'strict scrutiny,'" where plaintiffs were law-abiding citizens, the firing range ban was not merely regulatory, and the ban seriously encroached on an important corollary to the exercise of the core right to possess firearms for self-defense); Moore, 702 F.3d at 940 (requiring something more than the level of scrutiny applied in Skoien because the gun rights of the entire law-abiding adult population of Illinois were affected by the "blanket prohibition on carrying guns in public").

Page **46** of **64**

Although Plaintiffs assert that Section 40 of the Firearm Concealed Carry Act fails under any standard of scrutiny, Plaintiffs also argue that the prohibition on virtually all nonresidents constitutes a severe burden on the core Second Amendment right of self-defense and violates the rights of even more law-abiding people than in the Moore case.  Pls. Mem. at 16 (citing Moore, 702 F.3d at 940 (noting that the law affected "the gun rights of the entire law-abiding adult population of Illinois").  Therefore, Plaintiffs assert that a level of scrutiny akin to strict scrutiny should be applied.

Defendants argue that the conduct falls outside the core protections of the Second Amendment, which Defendants describe as the right of law-abiding citizens to use arms in defense of hearth and home.  Defs. Mem. at 11.  Defendants also argue that the regulated conduct is outside the core protections of the Second Amendment because the regulation implicates longstanding prohibitions that are presumptively lawful—prohibitions against possession by the criminally dangerous and mentally ill; public carriage of firearms; and possession by nonresidents.  Defs. Mem. at 12.  Defendants cite laws pertaining to prohibitions against

Page **47** of **64**

public carriage of firearms dating back nearly a century.  Mot. at

13.  For example, Defendants cite statutes that required obtaining a

firearm carry license in the county in which the person resides or

requiring that an individual be a resident of the state.  See Act of

Feb. 16, 1909, ch. 51, 1909 W. Va. Acts 394, 395-96; Act of Mar. 3,

191, ch. 74, § 5, 1919 Mont. Acts 147, 148; At of Apr. 7, 1921, § 2,

1921 Mo. Laws 692.  Accordingly, Defendants assert that

intermediate scrutiny should apply.

Determining the correct level of scrutiny here is difficult

because, on the one hand, the regulation infringes on most

nonresidents' Second Amendment right to carry a handgun for self-

defense.[11]  Moreover, while some courts have held that the core

Second Amendment right is self-defense in the home, the Seventh

---

[11] The law is not a wholesale ban on all nonresidents, which might warrant a
different result.  See Application of Griffiths, 413 U.S. 717, 725 (1973) ("Nor
would the possibility that some resident aliens are unsuited to the practice of
law be a justification for a wholesale ban" on resident aliens practicing law in
the state); Palmer v. D.C., 59 F. Supp. 3d 173, 184 (D.D.C. 2014) (finding a
total ban on carrying a handgun outside the home for self-defense was
unconstitutional under any standard of scrutiny and, enjoining "the District
from completely banning the carrying of handguns in public for self-defense by
otherwise qualified non-residents based solely on the fact that they are not
residents of the District"), appeal dismissed, No. 14-7180, 2015 WL 1607711
(D.C. Cir. Apr. 2, 2015).

Circuit in <u>Moore</u> clearly held that the Supreme Court "decided that the amendment confers a right to bear arms for self-defense, which is as important outside the home as inside." <u>Moore</u>, 702 F.3d at 942.  Under Illinois law, the residents of all but four states cannot apply for or obtain a concealed carry license in Illinois because their states do not have substantially similar laws.  Further, as was the case in <u>Moore</u> and <u>Ezell</u>, which applied something more than intermediate scrutiny, Plaintiffs are law-abiding, responsible citizens and the case involves the central self-defense component of the Second Amendment.  See <u>Ezell</u>, 651 F.3d at 708; <u>Moore</u>, 702 F.3d at 940.

On the other hand, the Supreme Court specifically stated that long-standing prohibitions on the possession of firearms by felons and the mentally ill are permissible.  <u>Heller</u>, 554 U.S. at 627.  If Illinois' law is considered a prohibition on certain people carrying concealed handguns in public, then intermediate scrutiny would be appropriate.  See <u>Moore</u>, 702 F. 3d at 940 (a law that merely bans guns in certain places or forbids a class of persons who present a higher than average risk of misusing a gun from possessing them

Page **49** of **64**

444

require a lesser showing of justification).  Admittedly, the law at issue here does not just prohibit nonresidents who are felons or mentally ill from obtaining a license because the law limits nonresident applications based on the nonresident's states' law.  However, the regulations are meant to identify individuals who would be unqualified to carry a concealed firearm—something Defendants assert they cannot do if the nonresident's state does not have substantially similar laws.  The very few cases that have addressed a similar issue (and which involved bans on most, if not all, nonresidents) suggest that intermediate scrutiny is appropriate.

For example, in Peterson v. Martinez, 707 F.3d 1197 (10th Cir. 2013), the majority found that Colorado law, which did not grant nonresidents concealed carry licenses, did not violate the Second Amendment.  The majority found that carrying a concealed firearm was not protected by the Second Amendment because bans on the concealed carry of firearms were longstanding.  The concurring judge further noted, however, that even if concealed carry were protected, he would have applied intermediate scrutiny and found the state carried its burden.  Id. at 1216 (Lucero, J., concurring).  In

that case, the government had proffered unrefuted evidence demonstrating that much of the information necessary to determine whether an individual was qualified was kept in locally maintained databases and Colorado did not have access to such information with respect to nonresident applicants.  The concurring judge would have found that, while the residency requirement governed the vast majority of individuals in the United States, it burdened a relatively small proportion of individuals present in the state at any time.  Id. at 1219.  In light of the state officials' statements that they would be unable to determine whether a nonresident applicant was qualified to obtain a concealed handgun license, the concurring judge concluded that the residency requirement was substantially related to the stated governmental objective.  Id. at 1217; see also, e.g., Bach v. Pataki, 408 F.3d 75, 92-94 (2d Cir. 2005), overruled on other grounds by McDonald, 561 U.S. 742 (2010) (holding, on review of a Privileges and Immunities Clause claim, that New York's interest in monitoring gun licenses was substantial and that the restriction of licenses to residents and those working primarily within the state was sufficiently related to that interest).  The Court

Page **51** of **64**

notes, however, that <u>Peterson</u> may be distinguishable because
Colorado allows open carry for residents and nonresidents alike,
which would suggest that the prohibition on concealed carry by
nonresidents was less onerous.  <u>See</u> <u>Peterson</u>, 707 F.3d at 1209
(noting that the law the plaintiff was challenging did not "affect the
ability of non-residents to openly carry firearms in the state").

Upon review of the relevant case law and the regulation at
issue, the Court finds that intermediate scrutiny is appropriate.
The statute at issue does not ban all nonresidents from public carry
in Illinois, the statute regulates which nonresidents may publicly
carry in Illinois, and the statute only burdens a small number of
people at any one time.  Because the regulation does not constitute
a complete ban and instead regulates concealed carry by
nonresidents in Illinois, intermediate scrutiny is appropriate.

Intermediate scrutiny requires that the law must be
"substantially related to an important government objective."  <u>Clark
v. Jeter</u>, 486 U.S. 456, 461 (1988); <u>see</u> <u>also</u> <u>Friedman</u>, 784 F. 3d at
410 (Manion, J., dissenting) (noting that "intermediate scrutiny
does not require that the ordinance be the least restrictive means,

Page **52** of **64**

but that it serve an important government interest in a way that is substantially related to that interest"). Intermediate scrutiny requires a reasonable fit between the ends and the means, not necessarily a fit that is perfect. Ezell, 651 F.3d at 708 (quoting Bd. of Trs. of State Univ. of N.Y. v. Fox, 492 U.S. 469, 480 (1989)).

Defendants assert that Plaintiffs do not have a reasonable likelihood of success on the merits because they cannot show a Second Amendment violation. Defendants argue that Firearm Concealed Carry Act is reasonably related to Illinois' substantial interest in preventing unqualified people from publicly carrying loaded firearms. Defendants assert that Illinois cannot ensure that nonresidents from states without similar firearms laws are qualified to publicly carry firearms without endangering Illinois' citizens. Defs. Mem. at 16. Even if Defendants could confirm an applicant were qualified when he or she applied, Defendants have no means to ensure that that individual continues to be qualified. Information on disqualifying out-of-state mental health conditions, arrests, and prosecutions is not reliably available through national databases. Id. Moreover, out-of-state mental health providers and

Page **53** of **64**

law enforcement officials are under no obligation to notify Illinois should they discover a nonresident's disqualifying condition.  Id.

In response, Plaintiffs argue that the statute will not survive intermediate scrutiny.  Plaintiffs assert the State has no interest in denying virtually all nonresidents their right to handgun possession based solely on their states of residence and they should at least be allowed to apply for a concealed carry license.  Pls. Mem. at 17. Plaintiffs assert that it is enough that the nonresidents would have to meet the same qualifications that every Illinois concealed carry license holder must meet.  Id. at 20 (argument raised in support of the Equal protection challenge).  At the hearing, Plaintiffs argued that Illinois trusts nonresidents with firearms in numerous other capacities, as demonstrated by the exceptions to the FOID Act for hunting, carrying a weapon in a vehicle, and possessing a functional firearm in the home of an Illinois resident.  See 430 ILCS 65/2(b)(5), 2(b)(9), 2(b)(10), 2(b)(13).  Plaintiffs additionally pointed out, by way of example, that if an Illinois resident with an Illinois concealed carry license goes to college in a state without laws

Page **54** of **64**

substantially similar to Illinois, Illinois is not in a position to monitor that person's conduct in that other state.

At this stage of the litigation, the Court finds that Plaintiffs can show at least a better-than-negligible likelihood of success on the merits. While Defendants have pointed to evidence tending to show an important and strong governmental interest, it is possible that Defendants' evidence will not ultimately show that the regulations will, in actuality, alleviate the problem identified—preventing unqualified individuals from publicly carrying loaded firearms. See, e.g., Mance v. Holder, 74 F. Supp. 3d 795, 813 (N.D. Tex. 2015) (finding that the federal interstate handgun transfer ban was unconstitutional on its face, even under intermediate scrutiny, because the defendants did not carry their burden of showing how the ban would "alleviate, in a material way, the problem of prohibited persons obtaining handguns" and unconstitutional as applied because the plaintiffs likely did not pose the threat to public safety that motivated Congress to enact the ban), appeal filed. For instance, the Court notes that the survey sent to the other states may not have been tailored toward finding out all of the information

Illinois claims it needs to ensure that the other state has
substantially similar laws.  In addition, on the record currently
before the Court, two of the states found to have substantially
similar laws answered one of the questions on the survey, "no."  <u>See</u>
d/e 23-1, p. 41 of 87; d/e 23-2, p. 63 of 87 (wherein New Mexico
and Virginia answered "No" to Question No. 5—"Does your state
have a mechanism to track or report voluntary mental health
admissions for the purpose of revoking or approving a concealed
carry license?").

Consequently, the Court finds that Plaintiffs can show at least
a better-than-negligible likelihood of success on the merits.  Having
found that Plaintiffs have a better-than-negligible chance of success
on their Second Amendment claim, the Court need not address
Plaintiffs' likelihood of success on the merits of the remaining
claims. <u>See</u> <u>Girls Scouts</u>, 549 F.3d at 1096.

2.    <u>Plaintiffs Can Show Irreparable Harm and No Adequate
      Remedy at Law</u>

To obtain a preliminary injunction, the movant must
"establish that it will be irreparably harmed if it does not receive

preliminary relief, and that money damages and/or an injunction

ordered at final judgment would not rectify that harm." <u>Abbott</u>

<u>Labs. v. Mead Johnson & Co</u>, 971 F.2d 6, 16 (7th Cir. 1992).  As

stated in <u>Roland Machinery</u>:

> The absence of an adequate remedy at law is a
> precondition to any form of equitable relief. The
> requirement of irreparable harm is needed to take care of
> the case where although the ultimate relief that the
> plaintiff is seeking is equitable, implying that he has no
> adequate remedy at law, he can easily wait till the end of
> trial to get that relief.

749 F.2d at 386.

Plaintiffs argue that they enjoy a fundamental right to keep

and bear arms.  The denial of that right, even temporarily,

constitutes irreparable harm for purposes of granting injunctive

relief.

In <u>Ezell</u>, the Seventh Circuit recognized that irreparable harm

is presumed for some kinds of constitutional violations, such as

First Amendment violations.  <u>Ezell</u>, 651 F.3d at 699.  The Court

stated, "[t]he Second Amendment protects similarly intangible and

unquantifiable interests." <u>Id.</u>  Moreover, the <u>Ezell</u> Court noted that

<u>Heller</u> held that the central component of the right to possess

Page **57** of **64**

firearms is for protection, and infringement of such a right could not be compensated by damages.  Id.

Defendants attempt to distinguish Ezell on the basis that Ezell involved a firing-range ban which, coupled with Chicago's training requirement, implicated a ban on the core right to possess firearms in the home for self-protection.  Defendants contend that Plaintiffs cannot demonstrate any infringement on their right to defend "hearth and home" because they live in other states and the Carry Act only concerns public carriage.  Defendants also contend that Plaintiffs have failed to demonstrate any continuing violation because they travel or visit only occasionally or half of their time, they have not indicated that they work in places that would allow them to bring their firearms to work (for those who work in Illinois), and those who travel on Illinois highways are permitted to carry the gun inside a vehicle so long as the gun is unloaded and cased.  Finally, Defendants argue that the Plaintiffs only seek the ability to apply for a license and whether they would be found qualified is speculative.

Page **58** of **64**

Given the strong language in <u>Ezell</u>, Plaintiffs meet the requirement of showing a lack of an adequate remedy at law and irreparable harm if the injunction is not granted. <u>See</u> <u>Bolton v. Bryant</u>, 71 F. Supp. 3d 802, 818 (N.D. Ill. 2014) (holding that the denial of a license to carry a concealed weapon without due process of law would infringe on the plaintiff's  Second Amendment right, he would suffer irreparable harm, and he would have no adequate remedy at law) (citing <u>Ezell</u>, 651 F.3d 699); <u>see</u> <u>also</u> <u>e.g.</u>, <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976) (plurality opinion) ("the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury").[12]

## B. The Balance of Harms and the Public Interest Weigh in Favor of Denying the Preliminary Injunction

Because the Court has found that Plaintiffs have a reasonable likelihood of success on the merits, no adequate remedy at law, and irreparable harm, the Court must weigh the balance of harm to the parties if the injunction is granted or denied.  The Court must also

---

[12] The Seventh Circuit has noted that "<u>Heller</u> and <u>McDonald</u> suggest that First Amendment analogues are more appropriate" to develop the appropriate level of scrutiny for reviewing Second Amendment violations.  <u>Ezell</u>, 651 F. 3d at 706.

consider the public interest.  And, as noted above, the likelihood of

success on the merits affects the balance of the harms.  <u>Planned</u>

<u>Parenthood</u>, 699 F. 3d at 972; <u>Backpage.com, LLC v. Dart</u>, --- F.

Supp. 3d ---, No. 15 C 06340, 2015 WL 5174008, at *12 (N.D. Ill.

Sept. 2, 2015)(finding that the small likelihood of success on the

merits affected the balancing test and concluding that the plaintiff

therefore must establish that the balance of harms "falls decisively

on its side"), <u>appeal</u> <u>filed</u>.

Plaintiffs argue that the balance of interests favor immediate

injunctive relief.  According to Plaintiffs, they are certain to prevail

on the merits.  Absent relief, they will continue to suffer irreparable

injury, if not actual physical harm.  According to Plaintiffs, the

State has no legitimate interest in the prohibition, and the public

interest strongly favors equal protection of the law, respecting

fundamental rights, and the ability of all law-abiding persons in

Illinois to defend themselves equally.  Plaintiffs also ask that the

Court at least allow them to apply for a concealed carry license.

Defendants disagree that the balance of interests favor

immediate injunctive relief.  Defendants assert that the goal of

Page **60** of **64**

preserving the status quo warrants denial of the Plaintiffs' motion in favor of preserving the current firearm scheme pending a full adjudication on the merits.  The risk to the public of an erroneous decision involving firearms is self-evident and outweighs the speculative harm to Plaintiffs while the case proceeds.  Defendants also assert that even if Plaintiffs are entitled to injunctive relief at this stage, their request is overly broad.  Even if a preliminary injunction were warranted, the Court should order no more than that the ISP permit the named Plaintiffs who have expressed a desire to apply to do so notwithstanding the residency requirements.

Before balancing the harms, the Court must determine how likely Plaintiffs are to win because that likelihood affects the balance of harms.  The Court finds that Plaintiffs' likelihood of success is neither strong nor weak.  Therefore, the balance of harms must weigh slightly more in Plaintiffs' favor than in Defendants' favor for the preliminary injunction to be granted.  See, e.g., Roland Mach., 749 F.2d at 387 (the more likely the plaintiff is to win, the less heavily the balance of harms must favor the plaintiff

and vice versa).  Moreover, the effect on the public must favor granting a preliminary injunction.

In this case, the balance of harms favors denying a preliminary injunction.  When comparing the potential irreparable harm faced by Plaintiffs if the preliminary injunction is wrongfully denied versus the potential irreparable harm faced by Defendants if the preliminary injunction is wrongfully granted, the Court finds that balance of harms weights more strongly in favor of Defendants.  Defendants have indicated that they do not have the funds to perform a complete record search of applicants in other states.  Even if Plaintiffs meet the application requirements and are issued a concealed carry license, Defendants do not have the means to monitor those Plaintiffs in the same manner that Illinois residents are monitored.  Therefore, if the preliminary injunction is erroneously granted, Plaintiffs could obtain concealed carry licenses because they qualify, but Illinois would have no procedure in place to ensure continued compliance with the Illinois requirements should Plaintiffs' circumstances change.  Moreover, the public has a strong interest in ensuring that those permitted to carry concealed

Page **62** of **64**

handguns in Illinois are qualified to do so and remain qualified to

do so even after the license is granted.  <u>See</u>, <u>e.g.</u>, <u>See</u> <u>Bolton</u>, 71 F.

Supp. 3d at 818 (finding the harm to the plaintiff if the preliminary

injunction were denied did not overcome the harm to the public

interest where the public had a significant interest in "keeping a

concealed weapon out of the hands of a man who allegedly

impersonated a peace officer and unlawfully used a weapon").

In contrast, while Plaintiffs are being denied the ability to

carry concealed in Illinois, Plaintiffs are permitted to carry

concealed handguns in their home states, can bring firearms to

Illinois in their vehicles, can possess functioning firearms in the

homes of Illinois residents with permission, can hunt, and can take

their firearms to shooting ranges.  The Court points this out not to

suggest that the harm is measured by the extent to which the right

to bear arms may be exercised in another jurisdiction.  <u>See</u> <u>Ezell</u>,

651 F.3d at 697 (rejecting the argument that the plaintiffs did not

suffer irreparable harm because they could travel longer distances

to use a firing range, which was a quantifiable expense). Instead,

the Court mentions this fact to demonstrate that the extent of the

Page **63** of **64**

irreparable harm is limited to those occasions when Plaintiffs will be present in Illinois in a capacity in which they would be able to carry a concealed handgun if they had the appropriate license.  Moreover, the Court by no means intends to diminish the potential irreparable harm to Plaintiffs by not being able to carry concealed in Illinois. However, given that the Plaintiffs' likelihood of success on the merits is not strong and the balance of harms favors Defendants and the public, the Court denies Plaintiffs' request for a preliminary injunction.

## VI. CONCLUSION

For the reasons stated, Plaintiffs' Motion for Preliminary Injunction (d/e 17) is DENIED.

ENTER: December 4, 2015

FOR THE COURT:

      s/Sue E. Myerscough
      SUE E. MYERSCOUGH
      UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| KEVIN W. CULP, MARLOW DAVIS, | ) | |
| FREDDIE REED-DAVIS, | ) | |
| DOUGLAS W. ZYLSTRA, | ) | |
| JOHN S. KOLLER, STEVE STEVENSON, | ) | |
| PAUL HESLIN, MARLIN MANGELS, | ) | |
| JEANELLE WESTROM, | ) | |
| SECOND AMENDMENT FOUNDATION, | ) | |
| INC., ILLINOIS CARRY and | ) | |
| ILLINOIS STATE RIFLE ASSOCIATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 3:14-CV-3320-SEM-TSH |
| | ) | |
| LISA MADIGAN, in her Official Capacity | ) | |
| as Attorney General of the State of Illinois; | ) | |
| HIRAM GRAU, in his Official Capacity as | ) | |
| Director of the Illinois State Police, and | ) | |
| JESSICA TRAME, as Bureau Chief of the | ) | |
| Illinois State Police Firearms Services | ) | |
| Bureau, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF APPEAL

Plaintiffs, KEVIN W. CULP, MARLOW DAVIS, FREDDIE REED-DAVIS, DOUGLAS

W. ZYLSTRA, JOHN S. KOLLER, STEVE STEVENSON, PAUL HESLIN, MARLIN

MANGELS, JEANELLE WESTROM, SECOND AMENDMENT FOUNDATION, INC.,

ILLINOIS CARRY and ILLINOIS STATE RIFLE ASSOCIATION, do hereby appeal to the

United States Court of Appeals for the Seventh Circuit from the decision of this Court entered on

December 7, 2015, that denied Plaintiffs' Motion for a Preliminary Injunction (Dkt. #29).

By:    /s/ David G. Sigale
David G. Sigale
Attorney for Plaintiffs

LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com